# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MENOMINEE INDIAN TRIBE<br>OF WISCONSIN<br>P.O. Box 970<br>Keshena, WI 54135-0970<br><br>    PLAINTIFF,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br>MICHAEL O. LEAVITT, in his official capacity<br>as Secretary,<br>U.S. Department of Health & Human Services<br>200 Independence Ave, S.W.<br>Washington, DC 20201<br><br>CHARLES W. GRIM, in his official capacity as<br>Director<br>Indian Health Service (HQ)<br>801 Thompson Avenue, Ste. 400<br>Rockville, MD 20852-1627<br><br>    DEFENDANTS. | Civil Action No. _____<br><br>**COMPLAINT** |

Served:  The Honorable Alberto R. Gonzales
Attorney General of the United States
Department of Justice
950 Pennsylvania Avenue, NW
Washington, D.C. 20530-0001

The Honorable Jeffrey A. Taylor
United States Attorney for the District of Columbia
Judiciary Center Building
555 Fourth Street, NW
Washington, D.C. 20530

## COMPLAINT

The Plaintiff, for its cause of action against the Defendants named above, alleges as follows:

## INTRODUCTION AND SUMMARY

1. This is a suit for breach of contract under the Contract Disputes Act, 41 U.S.C. § 601 et seq., for money damages against the United States and the Indian Health Service ("IHS") in the Department of Health and Human Services ("DHHS"). Plaintiff, the Menominee Indian Tribe of Wisconsin ("Menominee" or the "Tribe"), a federally recognized Indian tribe, operates public health facilities and provides public health services to tribal members and other beneficiaries pursuant to its agreements with the IHS under the Indian Self-Determination and Education Assistance Act, Pub. L. 93-638, as amended, 25 U.S.C. § 450 et seq. ("ISDEAA").

2. Defendants breached Menominee's contracts by failing to pay the full contract support costs ("CSC") owed to Menominee under the ISDEAA and the Tribe's contracts and annual funding agreements ("AFAs") for calendar years ("CYs") 1995-2004. The ISDEAA requires payment of both program funds—the amount the Secretary of DHHS ("Secretary") would otherwise have spent—as well as direct and indirect CSC. Specifically, the IHS underpaid indirect CSC ("IDC"), which allows contractors to pay for administrative and overhead expenses so that contractors can operate programs at the same level the Secretary would have done.

3. Defendants breached the contracts by underpaying IDC in two distinct ways. First, the IHS failed to pay the full IDC in each year as calculated by applying the federally approved IDC rate to the Tribe's program base. We refer to these breaches as the "shortfall claims." Second, the IHS applied an incorrect IDC rate to begin with, further exacerbating the underpayments. We refer to this theory of breach as the "miscalculation claim."

4. The Tribe's shortfall claims are directly supported by the Supreme Court's ruling in *Cherokee Nation v. Leavitt*, 543 U.S. 631 (2005), where the Court held that the IHS breached

tribal contractors' agreements by failing to pay the full CSC required by the ISDEAA, when the IHS had funds available to reprogram from its unrestricted lump-sum appropriation.

5. Directly supporting the Tribe's miscalculation claims is the Tenth Circuit Court of Appeals' decision in *Ramah Navajo Chapter v. Lujan*, 112 F.3d 1455 (10th Cir. 1997). There the court held that the Department of the Interior's method of calculating IDC—the identical method used by the IHS and challenged here—was illegal.

6. The Tribe's claims also distinguish between the so-called "lump-sum years" and the "capped" years. In the lump-sum years, FY 1997 and before, CSC for the operation of Indian health programs was paid from the IHS's unrestricted lump-sum appropriation. In the capped years, Congress limited to specific dollar amounts the funds available to the IHS to pay CSC. The Tribe asserts that the CSC "caps" limited only the amount of CSC the Secretary could distribute to tribes, not the liability of the United States to pay the full CSC required by the ISDEAA.

## JURISDICTION AND VENUE

7. This controversy arises under several ISDEAA contracts between the United States and Menominee for operation of Indian health programs. This court has subject matter jurisdiction under the ISDEAA and the CDA. 25 U.S.C. § 450m-1(a) (providing original jurisdiction to United States district courts, concurrent with Court of Federal Claims, over civil actions for money damages arising under ISDEAA contracts); 41 U.S.C. § 609(a) (granting jurisdiction to Court of Federal Claims over CDA claims where action filed within twelve months from receipt of contracting officer's decision). This court also has jurisdiction pursuant to 28 U.S.C. §§ 1331 (federal question) and 1362 (civil actions brought by Indian tribe).

8. On September 7, 2005, Menominee faxed and mailed the IHS letters requesting a contracting officer's decision on shortfall and miscalculation claims for each year, CY 1995-2004.

9. In letters dated April 28, 2006, the IHS contracting officer denied the Tribe's claims for all years. The Tribe received some of those letters on May 5, 2006, and some on May 10, 2006. Thus the Tribe has exhausted its administrative remedies, and filed this action within twelve months of receiving the decisions, as required by the CDA. 41 U.S.C. § 609.

## PARTIES

10. Plaintiff Menominee Indian Tribe of Wisconsin is a federally recognized Indian tribe located in the State of Wisconsin. For many years, the Tribe has contracted with the United States under the ISDEAA to provide health care services to members of the Tribe and other beneficiaries. The Tribe has a contract under which annual funding agreements ("AFAs") are negotiated pursuant to 25 U.S.C. § 450l, the Model Agreement required by the ISDEAA.

11. Defendant United States is a party to every ISDEAA contract, including those of the Tribe. 25 U.S.C. § 450l(c), Model Agreement § 1(a)(1).

12. Defendant Michael O. Leavitt is the Secretary of Health and Human Services and is charged by law with the responsibility for implementing the ISDEAA with respect to DHHS and IHS. Each individually named plaintiff is sued in his official capacity.

13. Defendant Charles W. Grim is the Director of the IHS, the agency within the DHHS charged by law with the responsibility for implementing the ISDEAA and other health laws benefiting Indians.

## STATEMENT OF FACTS

The ISDEAA

14. During all of the years at issue in this appeal, CYs 1995-2004, Menominee provided health care services to eligible individuals pursuant to agreements entered into with the Secretary of the DHHS and the IHS under Title I of the ISDEAA, 25 U.S.C. § 450 et seq.

15. The ISDEAA authorizes Menominee and other tribes and tribal organizations to assume responsibility to provide programs, functions, services and activities ("PFSAs") that the Secretary would otherwise be obligated to provide. In return, the Secretary must provide the Tribe two types of funding under Section 106(a) of the ISDEAA: (1) "program" funds, the amount the Secretary would have provided for the PFSAs had the IHS retained responsibility for them, see 25 U.S.C. § 450j-1(a)(1), sometimes called the "Secretarial amount" or the "106(a)(1) amount"; and (2) "contract support costs," the reasonable administrative and overhead costs associated with carrying out the PFSAs, see id. § 450j-1(a)(2) and (3).[1] See also id. § 450l(c), Model Agreement § 1(b)(4) (funding amount "shall not be less than the applicable amount determined pursuant to section 106(a) of the [ISDEAA]").

16. There are three types of CSC: (1) start-up costs, which are one-time costs to plan, prepare for and assume operation of a new or expanded PFSA, see 25 U.S.C. § 450j-1(a)(5) & (6); (2) indirect costs ("IDC"), costs incurred for a common or joint purpose benefiting more than

---

[1] Section 106(a)(2) of the ISDEAA mandates as follows:

> (2) There shall be added [to the 106(a)(1) amount] contract support costs which shall consist of an amount for the reasonable costs for activities which must be carried on by a tribal organization as a contractor to ensure compliance with the terms of the contract and prudent management, but which—
> (A) normally are not carried on by the respective Secretary in his direct operation of the program; or
> (B) are provided by the Secretary in support of the contracted program from resources other than those under contract.

25 U.S.C. § 450j-1(a)(2).

one PFSA, such as administrative and overhead costs, *see id.* § 450j-1(a)(2); and (3) direct CSC ("DCSC"), expenses directly attributable to a certain PFSA but not captured in either the IDC pool or the 106(a)(1) amount, such as workers compensation insurance or other expenses the Secretary would not have incurred because, for example, the government is self-insured, *see id.* § 450j-1(a)(3)(A).

17. At issue in this action is the IHS's underpayment of IDC. IDC funds are recurring to the Area Offices, IHS Circular 96-04 § 4.A(4)b, and, provided they are justified in subsequent years, must be paid to the Tribe at the prior year's level unless that level exceeds 100% of the Tribe's needs. *Id.* § 4.A(4)b and c.

18. Designation of indirect CSC funds as recurring is significant because the agency paid recurring funds at the previous year's level (at a minimum) unless that level would exceed 100% of the Tribe's need as required by the Circular. *Id.* § 4.A(4)b and c.

19. These IHS Circular provisions reflect a statutory requirement. Under the ISDEAA, the amount of CSC paid to Menominee may not be reduced from year to year unless the Tribe's need for CSC in a subsequent year drops or one of five narrow exceptions applies. Section 106(b)(2) of the ISDEAA states that the amount of funds required by subsection (a), including CSC, "shall not be reduced by the Secretary in subsequent years except pursuant to —

    (A) a reduction in appropriations from the previous fiscal year for the program or function to be contracted;
    (B) a directive in the statement of the managers accompanying a conference report on an appropriation bill or continuing resolution;
    (C) a tribal authorization;
    (D) a change in the amount of pass-through funds needed under a contract;
or
    (E) completion of a contracted project activity or program[.]"

25 U.S.C. 450j-1(b)(2).

20. The model agreement mandated by section 108 of the IDEAA, and used by Menominee and the IHS as the basis of their contracts, incorporates this stable-funding provision and conditions. *See* 25 U.S.C. § 450(*l*)(c), Model Agreement § 1(b)(14)(A) ("funding for each such successor annual funding agreement shall only be reduced pursuant to section 106(b) of [the ISDEAA]"); Indian Self-Determination Agreement between the Menominee Indian Tribe of Wisconsin and the Department of Health and Human Services Indian Health Service (Contract No. 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, Jan. 1, 1996) § (b)(14)(A) ("Contract") (same).

21. IHS Circular 96-04 also incorporates the statutory stable-funding requirement and conditions. The Circular, signed by Michael Trujillo, the Director of the IHS, was binding on and followed by the agency, and sets out detailed guidance on CSC funding methodology. In relevant part, the Circular provides that, "Prior year funds provided for indirect CSC to each awardee, if justified in subsequent years, shall not be reduced by the IHS, except as authorized in section 106(b) of the [ISDEAA]." IHS Circular 96-04 § 4.A(4)c. The Circular does not make this commitment subject to availability; rather it makes clear that an "[a]wardee should expect to receive these funds continuously, only if they continue to be justified for at least the same amount or greater annual need." *Id.*

The Shortfall Claims

22. The ISDEAA requires that, upon approval of the contract, "the Secretary shall add the full amount of funds to which the contractor is entitled under [section 106(a) of the ISDEAA]." 25 U.S.C. § 450j-1(g). As noted above, one component of the required CSC under section 106(a) is IDC funding, which covers administrative and overhead costs, allowing all program funds to be used to provide health care PSFAs for Menominee members and other beneficiaries.

23. For Menominee, as for most tribal contractors, the "full amount" of IDC was (and is) determined by multiplying an established IDC rate by the amount of the direct cost base. *See* 25 U.S.C. § 450j-1(c)(2)-(6) (Secretary to report annually to Congress on IDC rates, direct cost bases, IDC pool amounts, and IDC shortfalls). The rate is computed by dividing the IDC pool—the total amount considered to be required for overhead and administrative costs—by the total direct program base—the total amount of all PFSAs performed by the Tribe (whether funded by federal, state, or tribal funds).

24. On March 1, 2005, the U.S. Supreme Court held that the amounts available under section 106(a) to pay tribes the full CSC due under their contracts include the agency's entire unrestricted lump-sum appropriation. *Cherokee Nation v. Leavitt*, 543 U.S. 631, 642-43 (2005). Thus the IHS should have reprogrammed funds to pay tribal contractors the full CSC due under their contracts for FY 1994 through FY 1997 when Congress appropriated a lump sum for the IHS without earmarking an amount for CSC.

25. However, the IHS took no such action. Instead the agency vastly underpaid CSC to Menominee. Based on the Tribe's records and calculations, and the negotiated IDC rates, the IHS underpaid the Tribe the following amounts in the years at issue:

/ / / / /

/ / / / /

/ / / / /

/ / / / /

/ / / / /

/ / / / /

/ / / / /

Table 1. Shortfall Claim Summary

| Contract Year | Program Base | IDC Rate | IDC Need (Base x Rate) | IDC Awarded | IDC Shortfall |
|---|---|---|---|---|---|
| 1995 | $4,623,969 | 13.80% | $424,152 | $363,229 | $60,923 |
| 1996 | $4,731,509 | 14.99% | $505,131 | $349,230 | $155,901 |
| 1997 | $4,109,764 | 13.94% | $404,938 | $320,061 | $84,877 |
| 1998 | $4,287,838 | 9.66% | $383,176 | $321,216 | $61,960 |
| 1999 | $4,523,552 | 9.80% | $408,660 | $319,200 | $89,460 |
| 2000 | $4,843,446 | 10.88% | $490,177 | $338,147 | $152,030 |
| 2001 | $5,698,014 | 9.70% | $512,256 | $417,118 | $95,138 |
| 2002 | $6,004,809 | 9.50% | $529,428 | $413,879 | $115,549 |
| 2003 | $6,948,651 | 10.66% | $697,353 | $413,819 | $283,534 |
| 2004 | $7,151,833 | 11.27% | $760,293 | $405,682 | $354,611 |
| TOTAL | | | | | $1,453,983 |

The amounts in the table above represent only the "shortfall claims," and do not capture the additional underpayments resulting from the IHS's use of diluted IDC rates arrived at through the flawed method discussed next.

The Miscalculation Claims

26.    For Menominee and most other ISDEAA contractors, IDC rates were processed through the Department of the Interior's Office of Inspector General ("OIG") until November 2002, then through Interior's National Business Center ("NBC") thereafter. The process did not differ materially between the two entities. As noted above, the procedure involved producing a ratio between the so-called IDC pool, the amount considered necessary to run the contractor's entire PFSAs—the numerator—and the total direct funding from those PFSAs—the denominator. For ISDEAA funding purposes, once set, the ratio or percentage is then applied by the Secretary to the IHS portion of the direct cost base, the denominator, and the resulting figure is then recognized by the IHS as the Indian tribal contractor's IDC need for the current year. While the recognized need in Menominee's case was never paid—which is the subject of the

shortfall claims set forth above—the miscalculation claims assert that the need was understated to begin with.

27. Since the inception of the ISDEAA, the Secretary, through OIG and later NBC, has employed government manuals known as OMB [Office of Management and Budget] Circular A-87, as modified, and OASC-10 to determine the IDC rate. The method set forth in these manuals requires that all programs run by the contractor be included in the base, including those from other (non-ISDEAA) federal agencies. For the most part, these other federal agencies do not reimburse IDC as a separate budget supplement, and heavily restrict or forbid the use of program dollars for IDC, i.e. administration. Meanwhile, for most contractors, the IDC pool, or numerator, remains generally fixed. This method systematically undercalculates the IDC needed to operate IHS ISDEAA contracts.

28. For example, in 1995 the Tribe's total direct cost base of $18,805,146 included $3,010,771 in non-ISDEAA federal programs, most of which paid little if any IDC. By including these latter funds in the denominator of the IDC rate calculation, Defendants diluted Menominee's rate considerably.

29. The method set forth in OMB Circular A-87 and OASC-10, and the resulting rates employed by the Secretary, do not accurately determine Menominee's true costs of operating the IHS's contracted programs. In recognition of the miscalculation this method produces, the court in *Ramah Navajo, supra*, has required the Bureau of Indian Affairs ("BIA") and OIG (and now NBC) to change their method of calculating IDC rates for BIA ISDEAA contracts.

30. In addition to miscalculating IDC rates for the base year, OIG and NBC have incorrectly computed carry-forward adjustments under Circular A-87, another error the Secretary has adopted in (mis)applying the funding provisions of the ISDEAA. Carry-forwards are

computations of over- and under-recoveries of IDC for the base year that lead to adjustments to a future year's rate through positive or negative carry-forwards at the conclusion of the base year. In each year at issue, Menominee was not reimbursed its full IDC need, which means the Tribe incurred under-recoveries (shortfalls). In this circumstance, the Tribe should be compensated for IDC shortfalls through carry-forward adjustments from at least two separate appropriations: the base year's (current year's), and a future year's. In other words, funding for the base year's IDC is, for the Tribe, not completed until after services are performed.

31. Instead, however, Defendants employed theoretical over-recovery carry-forwards to improperly deflate the Tribe's IDC rate still further. For example, in calculating the 1998 rate, Defendants carried forward a purported $226,462 over-recovery from 1996, when in fact the Tribe, as shown in Table 1 above, actually incurred in 1996 a $155,901 shortfall.

32. For Menominee, the miscalculations of base year rates and carry-forwards have produced severe underpayment of IDC, the consequences of which have been severe fiscal problems, diminution of direct program services, and depletion of tribal financial resources, in direct contravention of the purposes and policy of the ISDEAA.

33. Defendants' use of incorrect and illegal IDC rates and incorrect carry-forward computations violates the mandate of the ISDEAA to pay the full CSC incurred by Menominee in carrying out federal health care PFSAs under their contracts. *See* 25 U.S.C. §§ 450j-1(d)(1) and (2); *id.* §§ 450j-1(a)(2) and (g); *id.* § 450*l*(c), Model Agreement § 1(c)(2).

Stable-Funding Rule

34. The IHS's failure to pay the proper amount of CSC in CY 1997 hurt Menominee not only in that year but in subsequent ones. Had the IHS paid the full amount in the lump-sum year CY 1997, as it was required to do under the rule of *Cherokee Nation*, the IHS would have

been required to pay, and in fact would have paid, the Tribe at least that same amount in CYs 1998, 1999 and 2000 under the stable-funding provisions in section 106(b) of the ISDEAA, section (b)(14) of the Contract, and IHS Circular 96-04, provided that amount did not exceed Menominee's total need during those years, which it did not. *See* ¶¶ 18-21, *supra*.

35. In FY 1998 and thereafter, Congress included language in the appropriations bills providing that total CSC payments by the agency were "not to exceed" a certain specified amount.[2] Notwithstanding these purported "caps," however, the IHS was contractually bound to pay the Tribe at least its full CY 1997 requirement under the provisions cited above.

36. Appropriations designated for CSC increased in FY 1998, FY 1999 and FY 2000.[3] As a result, appropriations were not reduced in a way to permit IHS to invoke the section 106(b)(2)(A) exception to the stable-funding rule. Nor did any other 106(b) exception apply in those years. The ISDEAA, Menominee's contracts, and Circular 96-04 make clear that CSC funds "shall not be reduced" from year to year unless one of those five narrow exceptions applies.

## FIRST CLAIM FOR RELIEF

### Breach of Contract – Shortfall

37. All prior allegations are adopted by reference.

39. Prior to FY 1998, the appropriations bills did not restrict the amount of CSC, including IDC, available to the IHS to pay the full need of tribal contractors as required by the

---

[2] *E.g.*, Dep't of the Interior & Related Agencies Appropriations Act, Pub. L. No. 105-83, 111 Stat. 1543, 1582-83 (1997) (providing that, in FY 1998, "not to exceed $168,702,000 shall be for payments to tribes and tribal organizations for contract support costs associated with ongoing contracts or grants or compacts").

[3] *See id.* (appropriating $168,702,000 for CSC for ongoing contracts in FY 1998, a $7.98 million increase over FY 1997); Pub. L. No. 105-277 (Oct. 21, 1998), 112 Stat. 2681-279 ($203,781,000 in FY 1999, a $35 million increase); Pub. L. No. 106-113 (Nov. 29, 1999), 113 Stat. 1501A-182 ($228,781,000 in FY 2000, a $25 million increase).

ISDEAA. In *Cherokee Nation*, the Supreme Court held that the IHS should have reprogrammed funds from its unrestricted lump-sum appropriation to pay tribal contractors the full CSC due under their contracts. The IHS paid Menominee less than its full CSC requirement in CY 1995, 1996 and 1997. In doing so, the IHS breached its agreements with Menominee and violated the ISDEAA's requirement of full payment from available appropriations, as affirmed by the Supreme Court in *Cherokee Nation*. The Tribe's shortfall claims for the "lump-sum" years, CY 1995-1997, are indistinguishable from the claims at issue in *Cherokee Nation*. Defendants breached their statutory and contractual duties to pay the Tribe's full CSC in 1995-1997, and damaged the Tribe in amount to be established by the proof.

40. Beginning in FY 1998, the annual appropriations acts for Indian health programs contained limitations or "caps" under which the amount of CSC paid by the IHS was "not to exceed" a certain amount. *See supra* note 2. The effect of these caps was to limit the amount the Secretary could pay to each contractor based on a pro rata apportionment of the appropriated "not to exceed" amount. But these limitations did not limit or reduce the United States' obligation to pay the full contracted and legally required amount of CSC, including IDC, after services were performed. Nor did it fulfill or extinguish Defendants' duty to request from Congress sufficient appropriations to meet the United States' contractual obligations to tribes under the ISDEAA.

41. Defendants breached their statutory and contractual duties, notwithstanding the appropriations caps, to pay the Tribe's full CSC in 1998-2004, and damaged the Tribe in amount to be established by the proof.

## SECOND CLAIM FOR RELIEF

### Breach of Contract – Miscalculation Claim

42. All prior allegations are adopted by reference.

43. Defendants further damaged Menominee in CY 1995-2004 by employing the flawed IDC rate calculation methodology described above and declared illegal in *Ramah Navajo*.

44. By miscalculating Menominee's IDC rate, and by failing to pay even the full requirement established by the diluted rate, Defendants damaged the Tribe in an amount to be established by the proof.

## THIRD CLAIM FOR RELIEF

### Breach of Contract - Stable Funding

45. All prior allegations are adopted by reference.

46. Assuming *arguendo* that the caps discussed in the First Claim above did limit the United States' CSC obligations, Defendants nonetheless breached the stable-funding requirements of section 106(b) of the ISDEAA, incorporated into Menominee's contracts and IHS Circular No. 96-04. *See* ¶¶ 34-36, *supra*. Had the Tribe been paid the proper amount, $404,938 (even at the miscalculated rate) in the lump-sum year CY 1997, that amount would have recurred and been paid in subsequent years. Yet in CY 1998, 1999 and 2000, the IHS paid the Tribe less than that amount, in violation of the statutory and contractual stable-funding rule, thereby damaging the Tribe in CY 1998-2000 in an amount to be established by the proof.

## FOURTH CLAIM FOR RELIEF

### Breach of Trust

47. All prior allegations are adopted by reference.

48. The ISDEAA recognizes and reflects the trust responsibility of the United States to Indian tribes and people by mandating full funding of ISDEAA contracts, including IDC. The Secretary failed to take all steps necessary to fully fund the Tribe's contracts.

49. This breach of trust arises from and is related to the contracts at issue and thus falls within the jurisdiction of this Court under 25 U.S.C. § 450m-1(a) and under the CDA as incorporated in the ISDEAA by 25 U.S.C. § 450m-1(d).

50. This breach of trust has damaged the Tribe in an amount to be established by the proof.

## PRAYER FOR RELIEF

51. The Tribe therefore prays the orders and judgment of the Court as follows:

A. That money damages be awarded against the Defendant United States for underpayment of IDC in the amount established by the evidence.

B. That pre- and post-judgment interest on the award and reasonable attorney fees and costs be awarded to the extent provided by law.

C. That the Court grant such further relief as it may deem proper.

Respectfully Submitted,

_____
F. Michael Willis (D.C. Bar No. 467462)
HOBBS, STRAUS, DEAN & WALKER, LLP
2120 L Street, NW, Suite 700
Washington, DC 20037
202-822-8282 (Tel.)
202-296-8834 (Fax)

Attorney for the Menominee Indian Tribe
of Wisconsin

DATED: May 3, 2007.

## CERTIFICATE OF SERVICE

    I, F. Michael Willis, hereby certify that on this 3rd day of May, 2007, I caused the Menominee Indian Tribe of Wisconsin's Summons, Complaint, and Certificate required by LCvR 7.1 to be served by having copies shipped via certified mail upon the following:

    Michael O. Leavitt, Secretary
    U.S. Department of Health & Human Services
    200 Independence Avenue, S.W.
    Washington, DC  20201

    Charles W. Grim, Director
    Indian Health Service (HQ)
    801 Thompson Avenue, Suite 400
    Rockville, MD  20852-1627

    The Honorable Alberto R. Gonzales
    Attorney General of the United States
    Department of Justice
    950 Pennsylvania Avenue, NW
    Washington, D.C.  20530-0001

    The Honorable Jeffrey A. Taylor
    United States Attorney for the District of Columbia
    Judiciary Center Building
    555 Fourth Street, NW
    Washington, D.C.  20530

                                              F. Michael Willis
                                              HOBBS, STRAUS, DEAN & WALKER, LLP
                                              2120 L Street, NW, Suite 700
                                              Washington, DC  20037
                                              202-822-8282 (Tel.)
                                              202-296-8834 (Fax)

May 3, 2007

JS-44
(Rev.1/05 DC)

# CIVIL COVER SHEET

## I (a) PLAINTIFFS
Menominee Indian Tribe of Wisconsin

88888

## DEFENDANTS
Michael O. Leavitt, Secretary of Dept. of Health and Human Services and Charles W. Grim, Director of Indian Health Service

**(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF** 88888
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT
(IN U.S. PLAINTIFF CASES ONLY) _____
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

**(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)**
F. Michael Willis (D.C. Bar No. 467462)
Geoffrey D. Strommer
Hobbs, Straus, Dean & Walker, LLP
2120 L. Street, N.W., Suite 700
Washington, DC 20037
202-822-8282

**ATTORNEYS (IF KNOWN)**

Case: 1:07-cv-00812
Assigned To : Roberts, Richard W.
Assign. Date : 5/3/2007
Description: Admn. Agency Review

## II. BASIS OF JURISDICTION
(PLACE AN x IN ONE BOX ONLY)

- ○ 1 U.S. Government Plaintiff
- ◉ 2 U.S. Government Defendant
- ○ 3 Federal Question (U.S. Government Not a Party)
- ○ 4 Diversity (Indicate Citizenship of Parties in item III)

## III CITIZENS FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) FOR DIVERSITY CASES ONLY!

| | PTF | DFT | | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ○ 1 | ○ 1 | Incorporated or Principal Place of Business in This State | ○ 4 | ○ 4 |
| Citizen of Another State | ○ 2 | ○ 2 | Incorporated and Principal Place of Business in Another State | ○ 5 | ○ 5 |
| Citizen or Subject of a Foreign Country | ○ 3 | ○ 3 | Foreign Nation | ○ 6 | ○ 6 |

## IV. CASE ASSIGNMENT AND NATURE OF SUIT
(Place a X in one category, A-N, that best represents your cause of action and **one** in a corresponding Nature of Suit)

### ○ A. Antitrust
☐ 410 Antitrust

### ○ B. Personal Injury/Malpractice
☐ 310 Airplane
☐ 315 Airplane Product Liability
☐ 320 Assault, Libel & Slander
☐ 330 Federal Employers Liability
☐ 340 Marine
☐ 345 Marine Product Liability
☐ 350 Motor Vehicle
☐ 355 Motor Vehicle Product Liability
☐ 360 Other Personal Injury
☐ 362 Medical Malpractice
☐ 365 Product Liability
☐ 368 Asbestos Product Liability

### ◉ C. Administrative Agency Review
☐ 151 Medicare Act

**Social Security:**
☐ 861 HIA ((1395ff)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405(g)
☐ 864 SSID Title XVI
☐ 865 RSI (405(g)

**Other Statutes**
☐ 891 Agricultural Acts
☐ 892 Economic Stabilization Act
☐ 893 Environmental Matters
☐ 894 Energy Allocation Act
☒ 890 Other Statutory Actions (If Administrative Agency is Involved)

### ○ D. Temporary Restraining Order/Preliminary Injunction
Any nature of suit from any category may be selected for this category of case assignment.

*(If Antitrust, then A governs)*

### ○ E. General Civil (Other) OR ○ F. Pro Se General Civil

**Real Property**
☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent, Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

**Personal Property**
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

**Bankruptcy**
☐ 422 Appeal 28 USC 158
☐ 423 Withdrawal 28 USC 157

**Prisoner Petitions**
☐ 535 Death Penalty
☐ 540 Mandamus & Other
☐ 550 Civil Rights
☐ 555 Prison Condition

**Property Rights**
☐ 820 Copyrights
☐ 830 Patent
☐ 840 Trademark

**Federal Tax Suits**
☐ 870 Taxes (US plaintiff or defendant
☐ 871 IRS-Third Party 26 USC 7609

**Forfeiture/Penalty**
☐ 610 Agriculture
☐ 620 Other Food &Drug
☐ 625 Drug Related Seizure of Property 21 USC 881
☐ 630 Liquor Laws
☐ 640 RR & Truck
☐ 650 Airline Regs
☐ 660 Occupational Safety/Health
☐ 690 Other

**Other Statutes**
☐ 400 State Reapportionment
☐ 430 Banks & Banking
☐ 450 Commerce/ICC Rates/etc.
☐ 460 Deportation

☐ 470 Racketeer Influenced & Corrupt Organizations
☐ 480 Consumer Credit
☐ 490 Cable/Satellite TV
☐ 810 Selective Service
☐ 850 Securities/Commodities/ Exchange
☐ 875 Customer Challenge 12 USC 3410
☐ 900 Appeal of fee determination under equal access to Justice
☐ 950 Constitutionality of State Statutes
☐ 890 Other Statutory Actions (if not administrative agency review or Privacy Act

| ○ G. *Habeas Corpus/ 2255* | ○ H. *Employment Discrimination* | ○ I. *FOIA/PRIVACY ACT* | ○ J. *Student Loan* |
|---|---|---|---|
| ☐ 530 Habeas Corpus-General<br>☐ 510 Motion/Vacate Sentence | ☐ 442 Civil Rights-Employment (criteria: race, gender/sex, national origin, discrimination, disability age, religion, retaliation)<br><br>*(If pro se, select this deck)* | ☐ 895 Freedom of Information Act<br>☐ 890 Other Statutory Actions (if Privacy Act)<br><br>*(If pro se, select this deck)* | ☐ 152 Recovery of Defaulted Student Loans (excluding veterans) |

| ○ K. *Labor/ERISA (non-employment)* | ○ L. *Other Civil Rights (non-employment)* | ○ M. *Contract* | ○ N. *Three-Judge Court* |
|---|---|---|---|
| ☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt. Reporting & Disclosure Act<br>☐ 740 Labor Railway Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act | ☐ 441 Voting (if not Voting Rights Act)<br>☐ 443 Housing/Accommodations<br>☐ 444 Welfare<br>☐ 440 Other Civil Rights<br>☐ 445 American w/Disabilities-Employment<br>☐ 446 Americans w/Disabilities-Other | ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholder's Suits<br>☐ 190 Other Contracts<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | ☐ 441 Civil Rights-Voting (if Voting Rights Act) |

**V. ORIGIN**

◉ 1 Original Proceeding   ○ 2 Removed from State Court   ○ 3 Remanded from Appellate Court   ○ 4 Reinstated or Reopened   ○ 5 Transferred from another district (specify)   ○ 6 Multi district Litigation   ○ 7 Appeal to District Judge from Mag. Judge

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)

Breach of contract under the Contract Disputes Act, 41 U.S.C. Section 601 et seq.; Indian Self-Determination Act, 25 U.S.C. 450 et seq.

**VII. REQUESTED IN COMPLAINT**   ☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23   DEMAND $ _____   Check YES only if demanded in complaint   JURY DEMAND: YES ☐ NO ☒

**VIII. RELATED CASE(S) IF ANY**   (See instruction)   YES ☐   NO ☒   If yes, please complete related case form.

DATE May 3, 2007   SIGNATURE OF ATTORNEY OF RECORD _[signature]_

**INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44**
Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I.   COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III.   CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV.   CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

VI.   CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII.   RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.

