IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| MENOMINEE INDIAN TRIBE OF WISCONSIN, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case Number: 1:07cv00812 |
| UNITED STATES OF AMERICA, MICHAEL O. LEAVITT, Secretary of the Department of Health and Human Services, and CHARLES W. GRIM, Director of the Indian Health Service | ) ) ) ) ) ) ) ) | Hon. Reggie B. Walton |
| Defendants. | ) ) ) | |

## DEFENDANTS' MOTION TO DISMISS

Defendants hereby move pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6) to dismiss

Plaintiff's Complaint. The reasons for this motion are set forth in the accompanying

memorandum of law.

Dated: Aug. 15, 2007              Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

JEFFREY A. TAYLOR
United States Attorney

SHEILA M. LIEBER
Deputy Branch Director

Of Counsel:

MARIAN C. NEALON
CLAIRE D. DE CHAZAL
Assistant Regional Counsel
U.S. Department of Health and
    Human Services
Office of General Counsel, Region V
233 North Michigan Avenue - Suite 700
Chicago, IL 60601
voice: (312) 886-1693
fax: (312) 886-1718

_____/s/ *Tamara Ulrich*_____
TAMARA ULRICH (NY Bar)
Trial Attorney
U.S. Department of Justice, Civil Division
Federal Programs Branch
20 Massachusetts Ave., N.W.
P.O. Box 883
Washington, D.C.  20044
voice: (202) 305-1432
fax: (202) 616-8470

Attorneys for Defendants

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

MENOMINEE INDIAN TRIBE )
OF WISCONSIN, )
 )
Plaintiff, )
 )
v. )  Case Number: 1:07cv00812
 )
UNITED STATES OF AMERICA, )  Hon. Reggie B. Walton
MICHAEL O. LEAVITT, Secretary )
of the Department of Health and )
Human Services, and CHARLES W. )
GRIM, Director of the Indian Health )
Service )
 )
Defendants. )
 )

**MEMORANDUM OF LAW IN SUPPORT
OF DEFENDANTS' MOTION TO DISMISS**

PETER D. KEISLER
Assistant Attorney General

JEFFREY A. TAYLOR
United States Attorney

SHEILA M. LIEBER
Deputy Branch Director

Of Counsel:

MARIAN C. NEALON
CLAIRE D. DE CHAZAL
Assistant Regional Counsel
U.S. Department of Health and
    Human Services
Office of General Counsel, Region V
233 North Michigan Avenue - Suite 700
Chicago, IL 60601
voice: (312) 886-1693
fax: (312) 886-1718

TAMARA ULRICH (NY Bar)
Trial Attorney
U.S. Department of Justice, Civil Division
Federal Programs Branch
20 Massachusetts Ave., N.W.
P.O. Box 883
Washington, D.C.  20044
voice: (202) 305-1432
fax: (202) 616-8470

Attorneys for Defendants

## TABLE OF CONTENTS

PAGE

AUTHORITIES. ......................................................................................................... iii

INTRODUCTION.......................................................................................................... 1

STATUTORY BACKGROUND..................................................................................... 2

FACTUAL AND PROCEDURAL BACKGROUND. ................................................... 4

STANDARD OF REVIEW. .......................................................................................... 5

ARGUMENT. ................................................................................................................ 7

I.      BECAUSE THE STATUTE OF LIMITATIONS HAS PASSED FOR
        PLAINTIFF'S CLAIMS TO FUNDS FROM CONTRACT YEARS
        1996, 1997, AND 1998, THIS COURT LACKS JURISDICTION OVER
        THOSE CLAIMS............................................................................................... 7

II.     LACHES APPLIES TO PLAINTIFF'S CLAIMS FOR CONTRACT
        YEAR 1995........................................................................................................ 8

III.    THIS CASE SHOULD BE DISMISSED BECAUSE DEFENDANTS
        FULLY PERFORMED UNDER PLAINTIFF'S CONTRACTS. ....................... 10

        A.      Defendants Fully Performed Under the 1995 Contract............................ 11

        B.      Defendants Fully Performed Under the 1996 Contract............................ 12

        C.      Defendants Fully Performed Under the 1997 Contract............................ 12

        D.      Defendants Fully Performed Under the 1998 Contract............................ 13

        E.      Defendants Fully Performed Under the 1999 Contract............................ 13

        F.      Defendants Fully Performed Under the 2000 Contract............................ 14

        G.      Defendants Fully Performed Under the 2001 Contract............................ 14

        H.      Defendants Fully Performed Under the 2002 Contract............................ 14

        I.      Defendants Fully Performed Under the 2003 Contract............................ 15

        J.      Defendants Fully Performed Under the 2004 Contract............................ 15

IV.    THE ISDA DOES NOT ALTER THE CONTRACT ANALYSIS. ...................... 16

V.    THE CASE SHOULD BE DISMISSED BECAUSE PLAINTIFF HAS WAIVED ANY CLAIM TO ADDITIONAL FUNDING. .......................... 18

    A.    Plaintiff Has Waived Any Claim to Additional Funding........................... 19

    B.    Plaintiff Is Estopped from Seeking Additional Funding........................... 22

VII.    PLAINTIFF'S BREACH OF TRUST CLAIM SHOULD BE DISMISSED.................................................................................................... 25

CONCLUSION. .................................................................................................................. 27

## TABLE OF AUTHORITIES

**CASES**                                                                       **PAGE(s)**

A.C. Aukerman Co. v. R.L. Chaides Constr. Co.,
    960 F.2d 1020 (Fed. Cir. 1992).......................................................................... 8

Advanced Materials, Inc. v. Perry,
    108 F.3d 307 (Fed. Cir. 1997)........................................................................... 10

Aleutian Constructors v. United States, 24 Cl. Ct. 372, 384 (1991)............................................. 19

Babbitt v. Oglala Sioux Tribal Public Safety Dep't,
    194 F.3d 1374 (Fed. Cir. 1999)......................................................................... 18

Bell Atlantic Corp. v. Twombly,
    __ U.S. __, 127 S. Ct. 1955 (2007).................................................................. 6

Beta Sys., Inc. v. United States,
    838 F.2d 1179 (Fed. Cir. 1988)......................................................................... 22

Bowles v. Russell,
    __ U.S. __, 127 S. Ct. 2360 (2007).................................................................. 7

CarrAmerica Realty Corp. v. Kaidanow,
    321 F.3d 165 (D.C. Cir.). ................................................................................. 8

*Cherokee Nation v. Leavitt,
    543 U.S. 631, 125 S. Ct. 1172 (2005)........................................................... 10, 16, 17, 20

Cornetta v. United States,
    881 F.2d 1372 (Fed. Cir. 1988)......................................................................... 9

Craft Mach. Works, Inc. v. United States,
    926 F.2d 1110 (Fed. Cir. 1991)......................................................................... 10

Do-Well Mach. Shop, Inc. v. United States,
    870 F.2d 637 (Fed. Cir. 1989)........................................................................... 20

EEOC v. St. Francis Xavier Parochial Sch.,
    117 F.3d 621 (D.C. Cir. 1997). ........................................................................ 6

E. Walters & Co. v. United States,
    576 F.2d 362 (Cl. Ct. 1978). ............................................................................ 19, 24

Fed. for Am. Immigration Reform, Inc. v. Reno,
    897 F. Supp. 595 (D.D.C. 1995), aff'd, 93 F.3d 897 (D.C. Cir. 1996). ............................ 6

Hartford Accident & Indem. Co., 130 Ct. Cl. 490, 567 (1955). ................................... 24

Herbert v. Nat'l Acad. of Sciences,
    974 F.2d 192 (D.C. Cir. 1992). ............................................................. 5

Hermes Consol., Inc. v. United States,
    58 Fed. Cl. 409 (2003), rev'd on other grounds sub nom.,
    Tesoro Haw. Corp. v. United States, 405 F.3d 1339 (Fed. Cir. 2005)...................... 19, 22

Herson v. Gibralter Bldg. & Loan Ass'n,
    864 F.2d 848 (D.C. Cir. 1989). ............................................................. 18

Hills Materials Co. v. Rice,
    982 F.2d 514 (Fed. Cir. 1992)............................................................. 17

Hometown Fin. Inc. v. United States,
    409 F.3d 1360 (Fed. Cir. 2005)............................................................. 17

James M. Ellett Constr. Co. v. United States,
    93 F.3d 1537 (Fed. Cir. 1996)............................................................. 7

Kaempe v Myers,
    367 F.3d 958 (D.C. Cir. 2004). ............................................................. 6

Ling-Temco-Vought, Inc. v. United States,
    475 F.2d 630 (Ct. Cl. 1973). ............................................................. 21

MAPCO Alaska Petroleum, Inc. v. United States,
    27 Fed. Cl. 405 (1992), rev'd by implication on other grounds by
    Tesoro Haw. Corp. v. United States, 405 F.3d 1339 (Fed. Cir. 2005).......................... 22

Mexican Intermodal Equip., S.A. v. United States,
    61 Fed. Cl. 55 (2004). ............................................................. 9, 21

Oceanic S.S. Co. v. United States, 165 Ct. Cl. 217, 225 (1964)................................... 7

Pueblo of Zuni v. United States,
    467 F. Supp. 2d 1114 (D.N.M. 2006). ....................................................... 17, 18

Ramah Navajo Sch. Bd. v. Babbitt,
    87 F.3d 1338 (D.C. Cir. 1996). ............................................................. 18, 25

Reservation Ranch v. United States,
    39 Fed. Cl. 696 (1997), aff'd on other grounds,
    217 F.3d 850 (Fed. Cir. Sept. 9, 1999). ........................................................ 19

*Samish Indian Nation v. United States,
    419 F.3d 1355 (Fed. Cir. 2005)........................................................... 17, 18, 26

Seaboard Lumber Co. v. United States,
    903 F.2d 1560 (Fed. Cir. 1990)...................................................................... 19

Shearson/Am. Express, Inc. v. McMahon,
    482 U.S. 220, 107 S. Ct. 2332 (1987)............................................................ 20

Sociotechnical Research Applications, Inc. v. Whitman,
    No. 01-1232, 2002 WL 123557 (Fed. Cir. Jan. 30, 2002). ........................... 10

Titan Corp. v. West,
    129 F.3d 1479 (Fed. Cir. 1997)...................................................................... 10

Tunica-Biloxi Tribe of Louisisana v. United States,
    No. 02-2413 (D.D.C. Dec. 9, 2003). ............................................................ 1, 7

*Tunica-Biloxi Tribe of Louisiana v. United States,
    No. 02-2413 (D.D.C. Jan. 22, 2004). ............................................................ 25

Union Pac. R.R. Co. v. United States,
    847 F.2d 1567 (Fed. Cir. 1988)...................................................................... 24

United States v. Mitchell,
    445 U.S. 535. .................................................................................................. 26

Venture Assocs. Corp. v. Zenith Data Sys. Corp.,
    987 F.2d 429 (7th Cir. 1993). .......................................................................... 6

Welch v. Sherwin,
    300 F.2d 716 (D.C. Cir. 1962). ...................................................................... 10

Whittaker Elec. Sys. v. Dalton,
    124 F.3d 1443 (Fed. Cir. 1997)...................................................................... 19

## STATUTES AND REGULATIONS

25 U.S.C. § 450................................................................................................. 1

25 U.S.C. § 450a(b). ............................................................................................ 2

25 U.S.C. § 450b. ........................................................................................... 4, 16

25 U.S.C. § 450f. ......................................................................................... passim

25 U.S.C. § 450j. .......................................................................................... 3, 17

25 U.S.C. § 450j-1. .................................................................................... 3, 4, 25

25 U.S.C. § 450l. ........................................................................................... 3, 17

25 U.S.C. §450m-1. ..................................................................................... passim

31 U.S.C. § 1301(c). ........................................................................................ 22

41 U.S.C. § 601 et seq. ................................................................................. passim

41 U.S.C. § 605(a). .......................................................................................... 4, 6

41 U.S.C. § 609(a). ............................................................................................. 6

41 U.S.C. § 612. ............................................................................................... 23

25 C.F.R. § 900.12. ......................................................................................... 3, 16

25 C.F.R. § 900.31. ........................................................................................... 20

25 C.F.R. § 900.150-900.176. ............................................................................. 20

Fed. R. Civ. P. 12(b)(1). ..................................................................................... 5, 6

Fed. R. Civ. P. 12(b)(6). ....................................................................................... 6

Dep't of the Interior & Related Agencies  Appropriations Act, 1995, Pub. L. No.
    103-332, 108 Stat. 2499, 2527-28, 2536, 2537-38 (1994). ........................................... 9, 22

Omnibus Consol. Rescissions and Appropriations Act of 1996, Pub. L. No. 104-134, 110
    Stat. 1321, 1321-189 (1996). ........................................................................ 22

Dep't of the Interior & Related Agencies Appropriations Act, Pub. L. No. 105-83, 111 Stat.
    1543, 1582-83, 1589 (1997). ......................................................................... 22

Omnibus Consol. & Emergency Supp. Appropriations Act, 1999, Pub. L. No. 105-277, 112
    Stat. 2681, 2681-278-79, 2681-286 (1998). ........................................................... 23

<u>Consol. Appropriations Act, 2000</u>, Pub. L. No. 106-113, 113 Stat. 1501, 1501A-181-82, 1501A-190 (1999)........................................................................................... 23

<u>Dep't of the Interior & Related Agencies Appropriations Act, 2001</u>, Pub. L. No. 106-291, 114 Stat. 922, 978-79, 987 (2000). .................................................................. 23

<u>Dep't of the Interior & Related Agencies Appropriations Act</u>, Pub. L. No. 107-62, 115 Stat. 411, 456, 465 (2001)........................................................................................... 23

<u>Dep't of the Interior & Related Agencies Appropriations Act</u>, Pub. L. No. 108-7, 117 Stat. 11, 260, 270 (2003)............................................................................................. 23

<u>Dep't of the Interior & Related Agencies Appropriations Act, 2004</u>, Pub. L. No. 108-108, 117 Stat. 1241, 1293 (2003)..................................................................................... 23

## <u>INTRODUCTION</u>

Plaintiff Menominee Indian Tribe of Wisconsin entered into contracts with the government to provide certain health care services to tribal members pursuant to the Indian Self Determination and Education Assistance Act, 25 U.S.C. § 450 <u>et seq.</u> ("ISDA"). After performing under these contracts for many years and renewing its contracts numerous times, Plaintiff has brought breach of contract and breach of trust claims to recover additional funds for indirect contract support costs in contract years 1995 through 2004. Relying on snippets of language from the ISDA, Plaintiff alleges various theories through which it claims it should have been awarded additional money under its government contracts. The bottom line, however, is that the contracts themselves (to which Plaintiff agreed) specified dollar amounts that would be paid to Plaintiff for indirect contract support costs. As Plaintiff concedes in its complaint, the government paid indirect contract support costs in an amount equal to the amounts specified in those contracts. Because the government paid Plaintiff in accordance with the express terms of the contracts, there has been no breach of contract and Plaintiff's claims must be dismissed for failure to state a claim.

As a threshold matter, several years of Plaintiff's claims are time-barred. Plaintiff did not meet the applicable statute of limitations for three of the contract years at issue (1996 through 1998), which this Court has noted is jurisdictional. <u>See</u> <u>Tunica-Biloxi Tribe of Louisiana v. United States</u>, No. 02-2413, slip op. at 10 (D.D.C. Dec. 9, 2003). Therefore, this Court lacks jurisdiction over claims for those years. Similarly, Plaintiff unreasonably delayed for over eleven years in bringing its claims for contract year 1995. As such, claims for that year are barred by laches.

1

In addition to the fact that the government fully performed under the express terms of the contracts, Plaintiff's claims for additional contract support costs have been waived as a matter of law and Plaintiff is estopped from raising such a claim.  Finally, Plaintiff's breach of trust claim must also be dismissed for failure to state a claim.  There is no cognizable trust duty that Plaintiff alleges has been breached by the government.  In any event, Plaintiff's breach of trust claim for monetary damages is untenable because the government has not waived sovereign immunity for this claim.

## STATUTORY BACKGROUND

Congress enacted the ISDA to allow Indian tribes to contract with the federal government to operate many of the programs which the government previously operated for the benefit of Indians, through what is termed a self-determination contract.  The ISDA has the stated purpose to "permit an orderly transition from Federal domination of programs for, and services to, Indians to effective and meaningful participation by the Indian people in the planning, conduct, and administration of those programs and services."  25 U.S.C. § 450a(b).  To achieve these policy objectives, the ISDA provides a framework for the orderly transfer of the administration and operation of traditionally government-run programs to the Indian people.  A primary means for achieving this transfer is the self-determination contract.

Section 450f(a)(1) of the ISDA directs the Secretary of Health and Human Services ("the Secretary" or "HHS"), "upon the request of any Indian tribe by tribal resolution, to enter into a self-determination contract or contracts with a tribal organization to plan, conduct, and

administer programs or portions thereof . . . ."  25 U.S.C. § 450f(a)(1).[1]  Each ISDA contract has

three components:  the contract itself, modifications or amendments to the contract, and, since

1995, annual funding agreements ("AFAs").  See id. § 450*l* (providing for a model contract); id.

§ 450*l*(c)(e)(2) (providing for written modifications to the contract); id. §§ 450*l*(c)(b)(4), (c)(f)(2)

(providing for an AFA).  The funding levels for an ISDA contract are generally described in the

AFA.

There are many self-determination contracts remain in effect for more than one year,

Tribal contractors must submit AFA proposals each year, which are then subject to

individualized negotiations between the Secretary and the contractor.  See id. § 450j-1(a)(3)(B);

25 C.F.R. § 900.12.  If the parties are unable to agree on the appropriate funding level, the

Secretary can decline the proposal in part or in full.  The Tribal contractor has the right either to

seek review of a declination through the administrative appeals process or by a direct federal

court action.  See 25 U.S.C. § 450f(b).

There are two types of funding for each ISDA contract.  First, the tribal contractor

receives the amount the Secretary "would have otherwise provided for the operation of the

programs" ("Secretarial amount"), which "shall not be less than the appropriate Secretary would

have otherwise provided for the operation of the programs."  25 U.S.C. § 450j-1(a)(1).  Second, it

receives contract support costs ("CSC").  Id. § 450j-1(a)(2).

CSC can be broken down into three categories.  See id. § 450j-1(a)(3)(A).  First, there are

direct CSC, which are administrative costs of the contracted-for program, such as unemployment

---

[1]  The statute also applies to certain (non-healthcare) services provided to Native
Americans by the Department of Interior and the Secretary of Interior by the Interior's Bureau of
Indian Affairs ("BIA").  However, BIA contracts are not at issue in this case.

taxes or workers' compensation insurance.  See id. § 450j-1(a)(3)(A)(i); id. § 450b(c).  Second, in the initial year of a contract, CSC may include "startup costs consisting of the reasonable costs that have been incurred or will be incurred on a one-time basis."  Id. § 450j-1(a)(5).  Finally, there are indirect CSC, which are administrative costs that are shared by several different programs or services.  See id. § 450j-1(a)(3)(A)(ii); id. § 450b(f).  Indirect CSC are the only funds at issue in this lawsuit.  See Compl. ¶¶ 2, 3, 17.

The ISDA permits payment of only those CSC that are reasonable in light of the activities to be conducted.  See id. § 450j-1(b).  The ISDA directs that the ISDA appropriations of the Indian Health Service ("IHS"), the component agency of HHS that is responsible for the operation and administration of healthcare programs for Native Americans and for entering into ISDA healthcare contracts, "may be expended only for costs directly attributable to [ISDA contracts or grants] and no funds . . . shall be available for any [CSC] associated with [any non-IHS contracts or grants]."  Id. § 450j-2.  Finally, IHS's payment of CSC, like all funding under the ISDA, is subject to the availability of appropriations.  See id. § 450j-1(b); id. § 450j(c).

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff is a federally recognized Indian tribe that has contracted with the United States pursuant to the ISDA to provide health care services to members of the tribe and other beneficiaries.  Compl. ¶ 10.  Plaintiff has a contract under which AFAs are negotiated pursuant to the ISDA.  Id.  Plaintiff brings this action under the Contract Disputes Act, 41 U.S.C. § 601 et seq. ("CDA").  Id. ¶ 1.  Specifically, Plaintiff alleges that the government breached its ISDA contracts with it for the contract years 1995 through 2004 by underpaying indirect CSC.  Plaintiff maintains several theories of recovery.  Plaintiff's first claim is a "shortfall claim," which alleges

4

that IHS should have reprogrammed money from its lump-sum appropriation to pay the "full amount" of indirect CSC when there was a shortfall in funding for each fiscal year.  Id.  ¶¶ 22-25, 37-41.  Plaintiff's second claim is a "miscalculation" claim, in which Plaintiff alleges that the defendants used a "flawed . . . rate calculation methodology" in establishing indirect CSC.  Id. ¶¶ 26-33, 42-44.  Plaintiff's third claim is that the defendants "breached the stable funding requirements of [ISDA] section 106(b)" by paying less than $404,938 for fiscal years 1998 through 2000.  Id. ¶¶ 34-36, 45-46.  Plaintiff's fourth claim is for breach of trust because the Secretary "failed to take all steps necessary to fully fund the Tribe's contracts."  Id. ¶ 48.

Pursuant to the CDA, which requires that contract claims against the government first be submitted to the contracting officer for a decision, see 41 U.S.C. § 605(a), Plaintiff submitted its claims to the Indian Health Service in September 2005 for fiscal years 1995 through 2004.  See Compl. ¶ 8.[2]  IHS denied the claims for all years.  Id. ¶ 9.  Plaintiff alleges that it received IHS's denials of Plaintiff's claims on May 5, 2006 and May 10, 2006.  Id. ¶ 9.  Plaintiff filed the instant action on May 3, 2007.

## STANDARD OF REVIEW

Rule 12(b)(1) permits a defendant to move to dismiss a claim on the ground that the court lacks jurisdiction over the subject matter.  Where necessary, "the court may consider the complaint supplemented by undisputed facts evidenced in the record, or the complaint supplemented by undisputed facts plus the court's resolution of disputed facts."  Herbert v. Nat'l

---

[2] Plaintiff states that it submitted its claims on September 7, 2005.  IHS records indicate that Plaintiff's letters regarding contract years 1995 through 2000 were dated September 7, 2005 and that its letters to IHS for contract years 2001 through 2004 were dated September 9, 2005. For the purposes of this motion to dismiss, Defendants will accept Plaintiff's allegations regarding the dates of the letters as true.

Acad. of Sciences, 974 F.2d 192, 197 (D.C. Cir. 1992).  Accordingly, a motion to dismiss for

lack of jurisdiction that relies on matters outside the pleadings, such as a declaration or other

documents, should not be converted to a Rule 56 motion for summary judgment.  See Fed. for

Am. Immigration Reform, Inc. v. Reno, 897 F. Supp. 595, 600 n.6 (D.D.C. 1995), aff'd, 93 F.3d

897 (D.C. Cir. 1996).  Defendants assert that this Court lacks jurisdiction over Plaintiff's claims

for contract years 1996 through 1998, because the jurisdictional statute of limitations for those

claims has expired.  Defendants move to dismiss all claims for contract years 1996 through 1998

under Rule 12(b)(1) of the Federal Rules of Civil Procedure because the jurisdictional statute of

limitations has expired for those claims.

Defendants also assert that Plaintiff has failed to state a claim with respect to each

contract year at issue, and move to dismiss all claims under Rule 12(b)(6) of the Federal Rules of

Civil Procedure.  A motion to dismiss for failure to state a claim should be granted where the

complaint fails to "state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  A

court may grant a Rule 12(b)(6) motion when a complaint does not contain allegations that

support recovery under a viable legal theory.  Bell Atlantic Corp. v. Twombly, __ U.S. __, 127 S.

Ct. 1955, 1969 (2007).  In deciding a motion to dismiss under Rule 12(b)(6), a court "may

consider only the facts alleged in the complaint, any documents either attached to or incorporated

in the complaint and matters of which [it] may take judicial notice."  EEOC v. Francis Xavier

Parochial Sch.. 117 F.3d 621, 624 (D.C. Cir. 1997).  Because the contracts are central to

Plaintiff's allegations and are referenced in the Complaint, see Compl. ¶¶ 2, 3, 7, 10, 25, 39, 41,

46, they are incorporated therein.  See Kaempe v Myers, 367 F.3d 958, 965 (D.C. Cir. 2004);

Venture Assocs. Corp. v. Zenith Data Sys. Corp., 987 F.2d 429, 431 (7th Cir. 1993).

## ARGUMENT

I.     **BECAUSE THE STATUTE OF LIMITATIONS HAS PASSED FOR PLAINTIFF'S CLAIMS TO FUNDS FROM CONTRACT YEARS 1996, 1997, AND 1998, THIS COURT LACKS JURISDICTION OVER THOSE CLAIMS**

The Contract Disputes Act governs Plaintiff's claims.  See Compl. ¶ 7; 25 U.S.C.

§ 450m-1(d); 41 U.S.C. § 609(a).  The CDA is a waiver of sovereign immunity and the time

limitations found therein operate as conditions on that waiver.  James M. Ellett Constr. Co. v.

United States, 93 F.3d 1537, 1541-42 (Fed. Cir. 1996).  Statutory time limits are jurisdictional in

nature, and courts do not have the power to create equitable exceptions to them.  Bowles v.

Russell, __ U.S. __, 127 S. Ct. 2360, 2366 (2007); see also See Tunica-Biloxi Tribe, No. 02-

2413, slip op. at 10 (Dec. 9, 2003).  In 1994, Congress enacted a six-year statute of limitations

for Contract Disputes Act claims.  41 U.S.C. § 605(a) ("Each claim by a contractor against the

government relating to a contract and each claim by the government against a contractor relating

to a contract shall be submitted within 6 years after the accrual of the claim.").  Because Plaintiff

did not raise claims related to its 1996 through 1998 CSC funding within six years of their

accrual, these claims must be dismissed for lack of subject matter jurisdiction.

Plaintiff signed contract number 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, which covered contract years 1996

through 1998, on December 21, 1995, see Ex. B at 11, and subsequently signed AFAs for those

contract years.  Because these documents were signed after the passage of the CDA's statue of

limitations, this statute of limitations applies to this contract and its related AFAs.

At the latest, Plaintiff's contract claims accrued by the end of each contract year (which

correspond with the calendar year).  See Oceanic S.S. Co. v. United States, 165 Ct. Cl. 217, 225

(1964) (per curiam) ("A claim against the United States first accrues on the date when all the

events have occurred which fix the liability of the Government and entitle the claimant to institute the action.  Therefore, where a claim is based upon a contractual obligation of the Government to pay money, the claim first accrues on the date when the payment becomes due and is wrongfully withheld in breach of the contract.") (internal citations omitted).  Plaintiff's claims under the 1996 contract accrued by the end of December 1996, and the statute of limitations on these claims expired by the end of December 2002.  Plaintiff's claims under the 1997 contract accrued by the end of December 1997, and the statute of limitations on these claims expired by the end of December 2003.  Plaintiff's claims under the 1998 contract accrued by the end of December 1998, and the statute of limitations on these claims expired by the end of December 2004.  By its own admission, Plaintiff did not submit any of its claims for contract years 1996 through 1998 to the contracting officer until September 7, 2005.  <u>See</u> Compl. ¶ 8. This falls well outside of the CDA's six-statute of limitations period.  Consequently, the Court lacks jurisdiction over those claims.

## II.    LACHES APPLIES TO PLAINTIFF'S CLAIMS FOR CONTRACT YEAR 1995

Arguably, the CDA statute of limitations does not apply to Plaintiff's 1995 contract because it was signed prior to the passage of the CDA statute of limitations.  However, the doctrine of laches should apply.  "Laches applies where there has been an unfair and prejudicial delay by a plaintiff in bringing an action."  <u>CarrAmerica Realty Corp. v. Kaidanow</u>, 321 F.3d 165, 171 (D.C. Cir.), <u>op. supplemented by</u> 331 F.3d 999 (D.C. Cir. 2003).  Laches applies when: (1) there is an unreasonable and inexcusable delay from the time the claimant knew or reasonably should have known about its claim; and (2) that this delay caused either economic prejudice or injury to the defendant's ability to mount a defense.  <u>A.C. Aukerman Co. v. R.L. Chaides Constr.</u>

8

Co., 960 F.2d 1020, 1032 (Fed. Cir. 1992); Cornetta v. United States, 881 F.2d 1372, 1377-78

(Fed. Cir. 1988).  Both of these elements are met here.

First, Plaintiff delayed more than eleven years before bringing this lawsuit.  Plaintiff's

cause of action accrued by December 1995 at the latest, when the contract year ended and

Plaintiff had been fully paid under the contract.  Plaintiff was fully aware at this time of its

payment under the contract – if it had disputes regarding the amount of payment, it could have

brought suit immediately.  This 11-year delay is nearly double the current statute of limitations,

and is certainly long enough to meet the standards under the first prong of the test for laches.  See

Mexican Intermodal Equip., S.A. v. United States, 61 Fed. Cl. 55, 71 (2004) (noting delays

ranging from 3½ to 5 years can constitute unreasonable delay).

Second, Defendants have been economically prejudiced by this delay, as the

appropriations for 1995 have long since lapsed.  Congress appropriated money to IHS for Indian

Health Services, available for one year.  See Dep't of the Interior & Related Agencies

Appropriations Act, 1995, Pub. L. No. 103-332, 108 Stat. 2499, 2527-28, 2536, 2537-38 (1994).

Congress specifically stated in the Appropriations Act that "[n]o part of any appropriation

contained in this Act shall remain available for obligation beyond the current fiscal year unless

expressly so provided herein."  Id., 108 Stat. at 2536.  By law, IHS funds for ISDA contracts had

to be obligated within the appropriation year.  Id., 108 Stat. at 2528.  Therefore, by the terms of

the Appropriations Act itself, this funding has long since expired, and to allow Plaintiff to revive

a claim for appropriations that expired over a decade ago would be extremely prejudicial to

Defendants.[3]

## III.    THIS CASE SHOULD BE DISMISSED BECAUSE DEFENDANTS FULLY PERFORMED UNDER PLAINTIFF'S CONTRACTS

The foundation of Plaintiff's complaint is that Defendants breached the contracts they maintained with Plaintiff by failing to pay the full contract support costs owed to Plaintiff.  See Compl. ¶ 1, 2.  However, a review of the contracts demonstrates that none of the contracts has been breached.  To the contrary, Defendants fully performed all of its obligations under the express terms of the contracts at issue.

The Supreme Court has recently interpreted the nature of ISDA contracts, and has held that ISDA contracts are to be interpreted like any other contract, holding the parties to the explicit terms of the contract.  Cherokee Nation v. Leavitt, 543 U.S. 631, 639, 125 S. Ct. 1172, 1178 (2005).  In Cherokee Nation, the government argued that ISDA contracts were unique, government-to-government agreements to which general contract law did not apply.  Id. at 638, 125 S. Ct. at 1178.  The Supreme Court rejected this argument, finding nothing in the statutory language that warranted such special treatment of ISDA contracts and finding that "Congress, in respect to the binding nature of a promise, meant to treat alike promises made under the Act and

---

[3]  This is particularly true because the 1995 contract contained a limitation of cost provision, which specified the total cost to the government would not exceed $4,623,969.  See Ex. A at 004, 016.  This provision limits the government's liability to that amount, and the government should have been able to rely on the fact that it would not need to provide additional funds well into the future. See, e.g., Sociotechnical Research Applications, Inc. v. Whitman, No. 01-1232, 2002 WL 123557, at *3-4 (Fed. Cir. Jan. 30, 2002) (finding limitation of cost provision limited government's liability for funds allotted in the contract); Advanced Materials, Inc. v. Perry, 108 F.3d 307, 310 (Fed. Cir. 1997) (finding the government's estimated cost a ceiling for its contractual liability when contract contained a limitation of cost provision); Titan Corp. v. West, 129 F.3d 1479, 1482 (Fed. Cir. 1997) (holding the government is not liable for additional costs in the face of a limitation of cost provision).

ordinary contractual promises (say, those made in procurement contracts)." Id. at 639, 125 S. Ct. at 1178 (emphasis in original). Therefore, in order to determine whether there has been a breach of contract, the Court must look to the terms of the contracts and the explicit promises made therein.

The plain language of a contract is controlling. Craft Mach. Works, Inc. v. United States, 926 F.2d 1110, 1113 (Fed. Cir. 1991). As the D.C. Circuit has noted, a contract "must be enforced as written." Welch v. Sherwin, 300 F.2d 716, 718 (D.C. Cir. 1962). In this case, each of the contracts specified the amount of funding for indirect CSC that the government would provide to Plaintiff, and the government provided the full funding specified in the contracts. Because the government fully performed under the express terms of the contracts (including each AFA), there has been no breach and Plaintiff's case must be dismissed.

A.    Defendants Fully Performed Under the 1995 Contract

The government entered into contract number 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 with Plaintiff to provide for the continued operation and administration by the Tribe of the Menominee Tribal Health Service Program. See Ex A at 003, § C(1).[4] The contract provided funding from January 1, 1995 through December 31, 1995. Payment for indirect CSCs, which is the subject of this lawsuit, is set forth within this contract. Section G(6) lists a line-item figure for indirect CSC (labeled "CSC IDC") to be paid under the contract as $300,429. See Defs.' Ex. A at 007. A subsequent modification to the contract increased this amount by $31,400. Id. at 012-13. Thereafter, the

_____

[4] Because of the voluminous nature of the document, Defendants have attached only relevant excerpts of the 1995 contract as Exhibit A. For the remainder of the contract years, Defendants' exhibits contain the contracts and/or AFAs, without attachments, as well as relevant modifications to the contracts.

government issued a second increase of $31,400 for indirect CSC. Id. at 015-16. In sum, the total indirect CSC that the government promised for the 1995 contract was $363,229. This is the exact amount that Plaintiff alleges was paid for indirect CSC under this contract. See Compl. ¶ 25. Because the government paid the entire amount for indirect CSC that was promised to Plaintiff in the contract, there has been no breach of the 1995 contract.

**B.     Defendants Fully Performed Under the 1996 Contract**

The parties entered into contract number 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 for 1996, as well as an Annual Funding Agreement for that year. See Ex. B. The AFA specifies the amounts due to Plaintiff under the contract for 1996. Section 3(a) is labeled "Funds to be Provided" and states that the payment for indirect CSC in 1996 would be $319,230. See id. at 020. In a subsequent contract modification, $30,000 was added to the indirect CSC for the 1996 contract. See id. at 028. Therefore, the total funds contractually promised by the government under the 1996 contract for indirect CSC was $349,230. This is the exact amount Plaintiff alleges was paid for indirect CSC under this contract. See Compl. ¶ 25. Because the government paid the entire amount for indirect CSC that was promised in the contract, there has been no breach of the 1996 contract.

**C.     Defendants Fully Performed Under the 1997 Contract**

Contract number 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 continued to apply in 1997, and funding under the contract was governed by an AFA. The AFA for 1997 contained a "Funds to be Provided" section, stating that the payment for indirect CSC in 1997 would be $319,200. See Ex. C at 005. A subsequent modification to the AFA added an additional $861 to this amount. See id. at 015. Therefore, the total funds contractually promised by the government under the 1997 AFA for indirect CSC was $320,061. This is the exact amount Plaintiff alleges was paid for indirect CSC

under this contract.  <u>See</u> Compl. ¶ 25.  Because the government paid the entire amount for indirect CSC that was promised in the contract, there has been no breach of the 1997 contract.

**D.      Defendants Fully Performed Under the 1998 Contract**

Contract number 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 continued to apply in 1998, and funding under the contract was governed by an AFA.  The AFA for 1998 contained a "Funds to be Provided" section, stating that the payment for indirect CSC in 1998 would be $319,200.  <u>See</u> Ex. D at 005. Modification 21 to the AFA contained three additional amounts for indirect CSC: $498 (labeled CSC/IDC in the modification), $618 (labeled CSC/IDC in the modification) and $900 (labeled OEH CSC IDC in the modification).  <u>See id.</u> at 016.  Therefore, the total amount for indirect CSC under the 1998 contract was $321,216.  This is the exact amount Plaintiff alleges was paid for indirect CSC under this contract.  <u>See</u> Compl. ¶ 25.  Because the government paid the entire amount for indirect CSC that was promised in the contract, there has been no breach of the 1998 contract.

**E.      Defendants Fully Performed Under the 1999 Contract**

Contract number 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 applied in 1999, along with an accompanying AFA.  The AFA for 1999 contained a "Funds to be Provided" section, stating that the payment for indirect CSC in 1999 would be $319,200.  <u>See</u> Ex. E at 021.  There were no modifications that affected the amounts of indirect CSC to be paid in 1999.  Therefore, the total amount for indirect CSC under the 1999 contract was $319,200.  This is the exact amount Plaintiff alleges was paid for indirect CSC under this contract.  <u>See</u> Compl. ¶ 25.  Because the government paid the entire amount for indirect CSC that was promised in the contract, there has been no breach of the 1999 contract.

13

### F.     Defendants Fully Performed Under the 2000 Contract

Contract number 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 continued to apply in 2000, and funding was governed by an AFA. The AFA for 2000 contained a "Funds to be Provided" section, stating that the payment for indirect CSC in 2000 would be $319,200. See Ex. F at 004. Three contract modifications raised the funding for indirect CSC in 2000: modification 00-15 added $5,884, modification 00-17 added $2,173, and modification 00-18 added $10,890. See id. at 013, 016, 021. Therefore, the total amount for indirect CSC under the 2000 contract was $338,147. This is the exact amount Plaintiff alleges was paid for indirect CSC under this contract. See Compl. ¶ 25. Because the government paid the entire amount for indirect CSC that was promised in the contract, there has been no breach of the 2000 contract.

### G.     Defendants Fully Performed Under the 2001 Contract

Contract number 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 continued to apply in 2001, and funding was governed by an AFA. The AFA for 2001 contained a "Funds to be Provided" section, stating that the payment for indirect CSC in 2001 would be $338,147. See Ex. G at 005. Two contract modifications raised the funding for indirect CSC in 2001: modification 01-24 added $69,551 and modification 01-25 added $9,420. See id. at 016, 019. Therefore, the total amount for indirect CSC under the 2001 contract was $417,118. This is the exact amount Plaintiff alleges was paid for indirect CSC under this contract. See Compl. ¶ 25. Because the government paid the entire amount for indirect CSC that was promised in the contract, there has been no breach of the 2001 contract.

### H.     Defendants Fully Performed Under the 2002 Contract

Contract number 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 applied in 2002, along with an AFA. The AFA for 2002 contained a "Funds to be Provided" section, stating that the estimated payment for indirect CSC

in 2002 would be $407,698.  <u>See</u> Ex. H at 020.  Subsequently modification number 02-8 added $6,181 for indirect CSC.  <u>See id.</u> at 031.  Therefore, the total amount for indirect CSC under the 2002 contract was $413,879.  This is the exact amount that Plaintiff alleges was paid for indirect CSC under this contract.  <u>See</u> Compl. ¶ 25.  Because the government paid the entire amount for indirect CSC that was promised in the contract, there has been no breach of the 2002 contract.

### I.     Defendants Fully Performed Under the 2003 Contract

Contract number 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 continued to be in effect for 2003, and funding was governed by an AFA.  The AFA for 2003 contained a "Funds to be Provided" section, stating that the payment for indirect CSC in 2003 would be $413,879.  <u>See</u> Ex. I at 005. Modification 03-10 subsequently deducted $60 from this amount.  <u>See id.</u> at 016.  Therefore, the total amount for indirect CSC under the 2003 contract was $413,819.  This is the exact amount Plaintiff alleges was paid for indirect CSC under this contract.  <u>See</u> Compl. ¶ 25.  Because the government paid the entire amount for indirect CSC that was promised in the contract, there has been no breach of the 2003 contract.

### J.     Defendants Fully Performed Under the 2004 Contract

Contract number 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 continued to be in effect for 2004, and funding was governed by an AFA.  The AFA for 2004 contained a "Funds to be Provided" section, stating that the payment for indirect CSC in 2004 would be $413,819.  <u>See</u> Ex. J at 005.  Two contract modifications altered this amount:  modification 04-21 deducted $9,103, and modification 04-25 added $966.  <u>See id.</u> at 016, 019.  Therefore, the total amount for indirect CSC under the 2004 contract was $405,682.  This is the exact amount Plaintiff alleges was paid for indirect CSC under this contract.  <u>See</u> Compl. ¶ 25.  Because the government paid the entire amount for

indirect CSC that was promised in the contract, there has been no breach of the 2004 contract.

## IV.    THE ISDA DOES NOT ALTER THE CONTRACT ANALYSIS

Despite the fact that Defendants fully complied with the terms of the contract, Plaintiff asserts a breach because Defendants allegedly did not comply with the ISDA.  See Compl. ¶ 2. Such an allegation, however, runs directly contrary to the Supreme Court's holding in Cherokee Nation, which mandates that ISDA contracts be treated as any other procurement contract, where the parties are to rely on the terms and conditions therein.  Cherokee Nation, 543 U.S. at 643-45, 125 S. Ct. at 1180-81.

Moreover, the mere fact that the ISDA is incorporated into the contracts does nothing to further Plaintiff's claims of breach.  The ISDA does not mandate the payment of a specific amount of indirect CSC or that a specific formula be included in the contract.  Rather than providing specific dollar amount for funding, the ISDA requires that the parties negotiate a contract.  See e.g., 25 U.S.C. §§ 450b(g); 450j(c).  An ISDA contract negotiation starts with a contractor's proposal.  See 25 U.S.C. §§ 450f(a)(2), 450j-1(a)(3)(B); 25 C.F.R. §§ 900.12, 900.8(h).  A contract proposal will be accepted if the Secretary agrees to the proposed terms.  See 25 U.S.C. § 450f(a)(2).  If the Secretary declines the proposal, the Tribe or Tribal organization may:  (1) challenge the Secretary's declination in an administrative proceeding or directly in federal court as inconsistent with the ISDA, see id. §450f(b)(3), or (2) acquiesce in the terms offered by the Secretary and accept the contract and funding.  If the contractor does not avail itself of immediate review and instead acquiesces in the amount of funding proposed by IHS, the contractor is bound by the negotiated amount in the executed contract.  If the contractor determines at a later time that the amount of funding is insufficient, it can suspend operation of

16

the contract or retrocede the program for lack of funding. See id. §§ 450*l*(c)(b)(5), 450j(e). In future annual funding agreement negotiations, the contractor may again propose desired terms and if they are rejected by IHS, the contractor can force a declination and obtain review in federal court. The availability of immediate judicial review prior to contract formation demonstrates Congress's intent that a Tribe or Tribal organization must challenge the Secretary's rejection of the proposed amounts at the time of contract formation. The statutory scheme and purpose demonstrates that there is no "independent" right under the ISDA to CSC.

This is the conclusion that was reached in a well-reasoned decision by the Federal Circuit in Samish Indian Nation v. United States, 419 F.3d 1355 (Fed. Cir. 2005). In Samish, the Federal Circuit reviewed the ISDA and determined that its funding provisions did not curtail the Secretary's discretion to pay funds, did not set clear standards for the Secretary's payment of funds, did not specify precise amounts to be paid, and did not compel the payment of funds. See 419 F.3d at 1364; see also Pueblo of Zuni v. United States, 467 F. Supp. 2d 1114, 1116-17 (D.N.M. 2006). Therefore, regardless of whether Plaintiff characterizes its claims as "shortfall" claims under the ISDA, see Compl. ¶ 22, or "miscalculation" claims under the ISDA, see Compl. ¶ 33, Plaintiff's theories that the ISDA demands an alternate amount of payment under the contracts must fail. It is the contracts themselves that create an entitlement to CSC, the scope of which is determined under traditional contract principles.[5] See Cherokee Nation, 543 U.S. at

---

[5] Even if the Court were to find that the ISDA, as incorporated into the contracts, requires payment in an amount other than that specified in the contract, the Court would still need to resolve conflicting (not ambiguous) provisions in the contracts. Any such conflict should be resolved by reference to contract law directing that a specific provision of a contract governs over a general one. See Hometown Fin. Inc. v. United States, 409 F.3d 1360, 1369 (Fed. Cir. 2005); Hills Materials Co. v. Rice, 982 F.2d 514, 517 (Fed. Cir. 1992). Here, there were specific provisions setting the dollar amounts for indirect CSC, which would govern.

639, 125 S. Ct. at 1178; <u>Samish</u>, 419 F.3d at 1364; <u>Pueblo of Zuni</u>, 467 F. Supp. 2d at 1116-17.

It is clear that, following traditional contract principles, there has been no breach.[6]

## V.    THE CASE SHOULD BE DISMISSED BECAUSE PLAINTIFF HAS WAIVED ANY CLAIM TO ADDITIONAL FUNDING

Even assuming, <u>arguendo</u>, that the ISDA required a specific amount for indirect CSC or

prohibited the use of indirect cost rates, Plaintiff has waived (and is therefore estopped from

raising) any claim to additional funding because they continuously and knowingly acquiesced to

the amounts in their ISDA agreements.  Plaintiff's knowing and voluntary acceptance is

demonstrated by the fact that (1) it failed in each year to challenge the funding levels and funding

terms proposed for its agreements pursuant to the procedures available to it under the ISDA,

(2) it executed the relevant agreements year after year, (3) it performed under the agreements, and

(4) it accepted funding from the Secretary under the agreements.  The Secretary, as a party to

these agreements, relied upon the enforceability of their terms, and acted to his detriment in

assuming other obligations.  Under these circumstances, the law of waiver and estoppel preclude

any claims that Plaintiff might raise for additional funding.

---

[6]  Because the omission of a breach of contract disposes of Plaintiff's claims in their entirety, Defendants base their motion to dismiss on this ground.  There are several defenses that Defendant has not raised in the instant motion, but will raise in a motion for summary judgment, if necessary.  These include the fact that Plaintiff signed a release waiving all claims for contract years 1996 through 1998, which disposes of all of Plaintiff's claims for these years, <u>see</u> <u>Herson v. Gibralter Bldg. & Loan Ass'n</u>, 864 F.2d 848, 854 (D.C. Cir. 1989), and the fact that because Congress imposed a statutory cap on CSC in years between 1998-2004 and because IHS has already obligated all but minor amounts of the capped funds, no additional CSC funding can be awarded to Plaintiff for those years.  <u>See</u> <u>Babbitt v. Oglala Sioux Tribal Public Safety Dep't</u>, 194 F.3d 1374, 1378 (Fed. Cir. 1999); <u>Ramah Navajo Sch. Bd. v. Babbitt</u>, 87 F.3d 1338, 1345 (D.C. Cir. 1996).

18

### A.    Plaintiff Has Waived Any Claim to Additional Funding.

When a government contractor believes that the government has violated a statute by including improper terms or conditions in a government contract, the contractor cannot simply accept the contract and continue contract performance, without protest.  To do so effects a waiver of the contractor's claim.  See Whittaker Elec. Sys. v. Dalton, 124 F.3d 1443, 1446 (Fed. Cir. 1997) ("The doctrine of waiver precludes a contractor from challenging the validity of a contract . . . where it fails to raise the problem prior to execution, or even prior to litigation.");  Seaboard Lumber Co. v. United States, 903 F.2d 1560, 1563 (Fed. Cir. 1990) (recognizing that acceptance of contract provisions that are different from those in the Constitution or a statute can demonstrate voluntary and knowing waiver of a right); Hermes Consol., Inc. v. United States, 58 Fed. Cl. 409, 417 (2003) (finding waiver when, inter alia, the contractor bid "over and over" on solicitations containing the same clauses that it challenged as illegal, rev'd on other grounds sub nom., Tesoro Haw. Corp. v. United States, 405 F.3d 1339 (Fed. Cir. 2005); Reservation Ranch v. United States, 39 Fed. Cl. 696, 712 (1997) (holding that party to a government contract waived presumed statutory right by agreeing to contract with contrary term), aff'd on other grounds, 217 F.3d 850 (Fed. Cir. Sept. 9, 1999) (unpublished mem.).

In fact, there is little better evidence of an intent to waive an alleged statutory or regulatory right than (a) not taking advantage of pre-execution remedies, (b) signing a contract, (c) performing the contract, and (d) accepting funds under the contract.  See Aleutian Constructors v. United States, 24 Cl. Ct. 372, 384 (1991) ("Continuance of the contract is the most common and clearest case of waiver."); E. Walters & Co. v. United States, 576 F.2d 362, 368 (Cl. Ct. 1978) (finding that contractor waived claim that contract violated regulation by

consciously choosing to "fully perform the contract as if there were contemporaneous agreement of the parties on the proper interpretation of the [regulation]").  Courts reviewing claims of waiver of statutory rights have considered whether Congress intended to preclude waiver of any substantive protection.  Do-Well Mach. Shop, Inc. v. United States, 870 F.2d 637, 641 (Fed. Cir. 1989). The court in Do-Well explained:

> We must assume that if Congress intended the substantive protection afforded by a given statute to include protection against waiver of the right to a judicial forum, that intention will be deducible from text or legislative history.  Having made the bargain, the party should be held to it unless Congress itself has evinced an intention to preclude a waiver of judicial remedies for the statutory rights at issue.

Id. (citation, internal quotation marks, and alterations omitted).  Cf. Cherokee Nation, 543 U.S. at 641-43, 646 (disfavoring a statutory interpretation that "would undo a binding governmental contractual promise").  The burden to show that Congress intended to preclude waiver is on the party opposing waiver.  Shearson/Am. Express, Inc. v. McMahon, 482 U.S. 220, 227, 107 S. Ct. 2332, 2338 (1987).

Here, Congress provided Tribes and Tribal organizations with a powerful vehicle – the declination action – for immediate federal court review of the Secretary's decision to decline to fund a contract at the level or under the terms proposed by the Tribe or Tribal organization.  See 25 U.S.C. §§ 450m-1(a), 450f(a)(2), 450f(b).  For example, if the Secretary declines to accept the funding levels or funding terms proposed by a Tribal contractor, either for purposes of a new self-determination contract or for purposes of an AFA, § 450f(a)(2) of the ISDA provides that the Tribe or Tribal organization can challenge the basis for that "declination" through an administrative process, described in 25 C.F.R. § 900.150-900.176, or directly in federal court. See id. § 450f(b); 25 C.F.R. § 900.31.  If a Tribe or Tribal organization chooses to go to federal

court, § 450m-1(a) gives federal courts the power to review a Secretary's declination decision for its compliance with ISDA and, if the decision was in error, to enjoin the Secretary "to reverse a declination finding . . . or to compel the Secretary to award and fund an approved self-determination contract." 25 U.S.C. § 450m-1(a). Thus, the typical result of a successful declination action challenging the funding levels offered by the Secretary is an order compelling the Secretary to enter into a contract in conformity with the Tribe or Tribal organization's proposal. In this respect, the Tribe or Tribal organization has every incentive to ensure that the terms and conditions of any contract that it signs embody everything to which it believes it is entitled. By executing agreements that provided for a particular funding level, Plaintiff affirmatively signaled an intent to forego any additional benefits that it now purports to read into the ISDA.[7]

Changing course by seeking relief at this late date and after accepting funding under its agreements, Plaintiff has "retained all options for itself" and "made its calculation entirely in its own favor, without proper consideration of the defendant's position," thus violating the "basic principle calling for fair treatment of both parties." Ling-Temco-Vought, Inc. v. United States, 475 F.2d 630, 638 (Ct. Cl. 1973). See also Mexican Intermodal Equip., 61 Fed. Cl. at 70 ("[The plaintiff] belatedly seeks the benefit of a bargain it did not make, which, if permitted by this

---

[7] Additionally, each contract contained a "limitation of cost" provision that stated no additional funds would be provided. See Ex. A at 004 (1995 contract), Ex. B at 007 (1996-1998 contract), Ex. E at 006 (1999-2001 contract), Ex. H at 005 (2002-2204 contract). Since 1996, these provisions allowed Plaintiff to request additional funds in writing and, if the funds were not forthcoming, to suspend performance under the contract. Id. Plaintiff chose not to suspend performance under contracts, but continued performing and entering into subsequent contracts with the government.

court, would tend to undermine the fairness of the procurement process.").[8]  Under these

circumstances, contractors like Plaintiff that fail to take advantage of ISDA's declination review

procedure and enter into contracts should be held to the four corners of those contracts.  They

have agreed to these terms, and they accepted funding under these agreements.  The existence of

the contract and AFAs, as well as both parties performance thereunder, should be deemed

sufficient evidence a waiver of any rights or claims that Plaintiffs might have otherwise had

under the ISDA.

### B.    Plaintiff Is Estopped from Seeking Additional Funding.

Not only did Plaintiff fail to object – and instead accepted – funding under its AFAs, the

Secretary relied to his detriment on the funding levels and funding amounts negotiated by the

parties and set forth in the agreements.  All pertinent appropriations that might have been

available for obligation in Plaintiff's 1995-2004 agreements (had they challenged the funding

levels prior to execution) have lapsed as a matter of law.[9]  31 U.S.C. § 1301(c).  Had Plaintiffs

---

[8]  There are some older cases in which courts have declined to apply waiver or estoppel when a contract was found to be illegal.  See, e.g., Beta Sys., Inc. v. United States, 838 F.2d 1179, 1185-86 (Fed. Cir. 1988); MAPCO Alaska Petroleum, Inc. v. United States, 27 Fed. Cl. 405, 416 (1992), rev'd by implication on other grounds by Tesoro Haw. Corp. v. United States, 405 F.3d 1339 (Fed. Cir. 2005).  The court in Hermes compared the two lines of cases and concluded that the cases in which courts declined to apply waiver were cases in which the contractor raised its complaint at contract formation or at an early juncture in the dispute, and in which the government's illegal contract outweighed the contractor's wrongdoing.  See 58 Fed. Cl. at 413.  Neither of these factors are present here to avoid the application of waiver.

[9]  Each of the relevant appropriations acts from 1995 through 2004 required IHS to obligate the funds therein within the fiscal year.  See Department of the Interior & Related Agencies Appropriations Act, 1995, Pub. L. No. 103-332, 108 Stat. 2499, 2527-28, 2536 (1994) (appropriating funds to IHS to be available within the fiscal year); Omnibus Consol. Rescissions and Appropriations Act of 1996, Pub. L. No. 104-134, 110 Stat. 1321, 1321-189, 1321-196 (1996) (appropriating funds to IHS to be available within the fiscal year); Dep't of the Interior & Related Agencies Appropriations Act, Pub. L. No. 105-83, 111 Stat. 1543, 1582-83, 1589 (1997)

raised their objections prior to contract execution, the Secretary would have had a full range of options: he could have litigated the issue, he could have attempted to re-negotiate the funding levels with Plaintiff, or he could have agreed to provide additional funds if appropriated funds were available and not already obligated. Further, had Plaintiff raised its claims and been successful years ago, the Secretary necessarily would have obligated additional funds for Plaintiff's agreements and not for other purposes. This would have ensured that the Secretary not exceed the limitations set by Congress and thus circumvent Congress's exclusive power to appropriate funds. See U.S. Const., art. I, § 9, cl. 7.

Conversely, if the Court permits Plaintiff to raise its claims now and if it is successful, the Secretary will be responsible for liquidation of all of the original obligations incurred by the Secretary (in reliance on the funding levels provided to Plaintiffs) as well as the obligations that Plaintiff maintains should now be considered part of Plaintiff's agreements.[10] Plaintiff should be estopped from challenging the terms in its agreements at this late date as it had every opportunity

---

(appropriating funds for ongoing CSC to be available to IHS for obligation for one year); Omnibus Consol. & Emergency Supp. Appropriations Act, 1999, Pub. L. No. 105-277, 112 Stat. 2681, 2681-278-79, 2681-286 (1998) (appropriating funds for ongoing CSC to be available to IHS for one year); Consol. Appropriations Act, 2000, Pub. L. No. 106-113, 113 Stat. 1501, 1501A-181-82, 1501A-190 (1999) (appropriating funds for CSC to be available to IHS for one year); Dep't of the Interior & Related Agencies Appropriations Act, 2001, Pub. L. No. 106-291, 114 Stat. 922, 978-79, 987 (2000) (appropriating funds for CSC to be available to IHS for one year); Dep't of the Interior & Related Agencies Appropriations Act, Pub. L. No. 107-62, 115 Stat. 411, 456, 465 (2001) (appropriating funds for CSC to be available to IHS for one year); Dep't of the Interior & Related Agencies Appropriations Act, Pub. L. No. 108-7, 117 Stat. 11, 260-61, 270 (2003) (appropriating funds for CSC to be available to IHS for one year); Dep't of the Interior & Related Agencies Appropriations Act, 2004, Pub. L. No. 108-108, 117 Stat. 1241, 1293, 1302 (2003) (appropriating funds for CSC to be available to IHS for one year).

[10] While monetary relief would presumably come from the Judgment Fund, the CDA requires IHS to repay these amounts. See 41 U.S.C. § 612.

23

– including a wide range of statutory review procedures specifically prescribed for this purpose –
to timely attempt to demand more favorable contract terms prior to contract execution.

In a central case explaining estoppel, a government contractor claimed that, by exercising
a contract option which, in effect, permitted the government to procure the contractor's product
at an extremely low price, the government had violated its own regulations. E. Walters & Co. v.
United States, 576 F.2d 362, 368 (Ct. Cl. 1978). The Court held that the contractor was estopped
from raising its claim because it had failed to object to the allegedly illegal option at the time of
the contract award and instead fully performed the contract. Id. As the Court explained it:

> Had plaintiff protested the use of the option provision at the time of award,
> defendant would have been in a position to either reaffirm its use of the option
> provision, in apparent disregard of [the regulatory] prohibition, with the further
> knowledge that it could later be faced with a claim for the [higher] price . . . or it
> could have elected instead, to [omit the challenged provision but award the
> contract to the next lowest bidder] . . . . Plaintiff's silence deprived the
> Government of that relatively painless alternative.

Id.; see also Union Pac. R.R. Co. v. United States, 847 F.2d 1567, 1570 (Fed. Cir. 1988)
(applying equitable estoppel against government contractor that complied with a contract term it
later challenged because the government could not be put back in the same position as before the
challenge); Hartford Accident & Indem. Co., 130 Ct. Cl. 490, 567 (1955) (finding that contractor
was estopped from arguing that contract terms were invalid because it knew the terms and
accepted payment under the contract).

In summary, Plaintiff accepted funding from the Secretary for many years under
agreements that it now alleges – after all funds obligated in the contract have been provided to it
and any additional finds that might have been available to IHS have lapsed as a matter of law –
conflict with the ISDA. The doctrines of waiver and estoppel, as well as basic principles of

24

fairness, dictate that Plaintiff's case be dismissed.

**VII.    PLAINTIFF'S BREACH OF TRUST CLAIM SHOULD BE DISMISSED**

Plaintiff's Fourth Claim alleges that the "Secretary failed to take all steps necessary to fully fund the Tribe's contracts," which constitutes a breach of trust. Compl. ¶ 48. This claim must be dismissed because Defendants have not breached any duties to Plaintiff. As described above, Defendants paid all of the indirect costs specified in the contracts. Therefore, there can be no breach of trust based on the contracts themselves, as Defendants fully performed under the contracts.

To the extent Plaintiff alleges that Defendants had an extra-contractual duty to take additional steps to acquire more funding for Plaintiff's contracts, this Court has already rejected such a claim. See Tunica-Biloxi Tribe of Louisiana v. United States, No. 02-2413, slip op. at 7-8 (D.D.C. Jan. 22, 2004). The Court found that the ISDA imposes no duty on the government to seek additional funding for CSC. See id.; see also Ramah Navajo Sch. Bd., 87 F.3d at 1346 ("Congress clearly included the proviso [of 25 U.S.C. § 450j-1(b)] . . . to make evident that the Secretary is not required to distribute money if Congress does not allocate that money to him under the Act."). The Court further found that a breach of trust claim is "not redressable because even if the Court concluded that the Secretary had a duty to request additional appropriations, the mere act of compelling him to ask for additional funds does not mean that funds would be appropriated." Tunica-Biloxi, No. 02-2413, Jan. 22, 2004 slip op. at 8.

Plaintiff's breach of trust claim must also be dismissed because Defendants have not waived sovereign immunity for the relief Plaintiff seeks in this claim. "It is elementary that the United States, as a sovereign, is immune from suit save as it consents to be sued . . . and the

terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit."

United States v. Mitchell, 445 U.S. 535, 538. 100 S. Ct. 1349, 1351 (1980) (citation and internal

quotation marks omitted).  Moreover, waivers of sovereign immunity "cannot be implied but

must be unequivocally expressed."  Id.  Plaintiff seeks damages "in an amount to be calculated

by the proof" as a remedy for its breach of trust claim, and relies on the ISDA and CDA as the

jurisdictional basis for this claim.  Compl. ¶¶ 49, 50.  These statutes, however, do not provide for

monetary recovery for breach of trust.  Rather, the ISDA provides the district court with

jurisdiction over civil actions for injunctive relief and for "money damages arising under

contracts."  See 25 U.S.C. § 450m-1(a).  The government's waiver of sovereign immunity is

limited to contract damages under the CDA and not for independent claims of breach of trust.  Id.

§§ 450m-1(a); 450m-1(d); see also Samish, 419 F.3d at 1367-68 (finding that the ISDA did not

"convert the underlying statutory programs into entitlements fairly analogized to a trust corpus").

Because there is no waiver of sovereign immunity for money damages for breach of trust in this

Court, any such claim should be dismissed for lack of subject matter jurisdiction.

**CONCLUSION**

For the foregoing reasons, Defendant's motion to dismiss should be granted.

Dated: Aug. 15, 2007                    Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

JEFFREY A. TAYLOR
United States Attorney

SHEILA M. LIEBER
Of Counsel:                             Deputy Branch Director

MARIAN C. NEALON                    _____/s/ *Tamara Ulrich*_____
CLAIRE D. DE CHAZAL                 TAMARA ULRICH (NY Bar)
Assistant Regional Counsel           Trial Attorney
U.S. Department of Health and        U.S. Department of Justice, Civil Division
    Human Services                   Federal Programs Branch
Office of General Counsel, Region V  20 Massachusetts Ave., N.W.
233 North Michigan Avenue - Suite 700 P.O. Box 883
Chicago, IL 60601                    Washington, D.C.  20044
voice: (312) 886-1693                voice: (202) 305-1432
fax: (312) 886-1718                  fax: (202) 616-8470

                                     Attorneys for Defendants

# EXHIBIT A

# MENOMINEE TRIBE'S 1995 CONTRACT WITH IHS (with ATTACHMENTS) CONTRACT #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 EFFECTIVE DATE JANUARY 1, 1995

DEFS.' EX. A 001

OMB. 190-0115

| AWARD/CONTRACT | 1 THIS CONTRACT IS A RATED ORDER UNDER DPAS (15 CFR 350) | RATING: ▶ | PAGE | OF | PAGES |
|---|---|---|---|---|---|
| | | | 1 | | 68 |

| 2. CONTRACT (Proc. Inst. Ident.) NO. | 3. EFFECTIVE DATE | 4. REQUISITION/PURCHASE REQUEST/PROJECT NO. |
|---|---|---|
| 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 | 1/01/95 | 95-50-1036 |

5. ISSUED BY                    CODE [          ]    6. ADMINISTERED BY (If other than Item 5)    CODE [          ]

INDIAN HEALTH SERVICE
BEMIDJI AREA OFFICE
211 FEDERAL BUILDING
BEMIDJI, MN 56601-3060

7. NAME AND ADDRESS OF CONTRACTOR (No., street, city, county, State and ZIP Code)

Menominee Indian Tribe of Wisconsin
Post Office Box 970
Keshena, Wis. 54135-0970

8. DELIVERY
☐ FOB ORIGIN    N/A    ☐ OTHER (See below)

9. DISCOUNT FOR PROMPT PAYMENT
N/A

10. SUBMIT INVOICES (4 copies unless otherwise specified) TO THE ADDRESS SHOWN IN ▶

ITEM
SEE SECTION
G.3., PG 53

CODE [          ]    FACILITY CODE [          ]

11. SHIP TO/MARK FOR    CODE [          ]

N/A

12. PAYMENT WILL BE MADE BY    CODE [          ]

DIVISION OF PAYMENT MANAGEMENT (DPM)
PAYMENT MANAGEMENT SYSTEM (PMS)
P.O. BOX 6021 ROCKVILLE MD 20852

13. AUTHORITY FOR USING OTHER THAN FULL AND OPEN COMPETITION:
☐ 10 U.S.C. 2304(c)(    )    ☒ 41 U.S.C. 253(c)( 5 )

25 USC 450 (g)

14. ACCOUNTING AND APPROPRIATION DATA

SEE SECTION G.6., PG 55
EIN# 39-1205576

| 15A. ITEM NO. | 15B. SUPPLIES/SERVICES | 15C. QUANTITY | 15D. UNIT | 15E. UNIT PRICE | 15F. AMOUNT |
|---|---|---|---|---|---|
| 1. | Administrative Services | NOT TO EXCEED | | | ESTIMATED |
| 2. | Contract Health Services (CHS) | | | | $3,316,729 |
| 3. | Direct Medical Services | | | | |
| 4. | Dental Services | | | | |
| 5. | Community Health Services | | | | |
| | 15G. TOTAL AMOUNT OF CONTRACT ▶ | | | | $$3,316,729 |

16. TABLE OF CONTENTS

| (✓) | SEC. | DESCRIPTION | PAGE(S) | (✓) | SEC. | DESCRIPTION | PAGE(S) |
|---|---|---|---|---|---|---|---|
| | | PART I — THE SCHEDULE | | | | PART II — CONTRACT CLAUSES | |
| X | A | SOLICITATION/CONTRACT FORM | 1 | X | I | CONTRACT CLAUSES | 62-67 |
| | B | SUPPLIES OR SERVICES AND PRICES/COSTS | | | | PART III — LIST OF DOCUMENTS, EXHIBITS AND OTHER ATTACH. | |
| X | C | DESCRIPTION/SPECS./WORK STATEMENT | 2-48 | X | J | LIST OF ATTACHMENTS | 68 |
| | D | PACKAGING AND MARKING | | | | PART IV — REPRESENTATIONS AND INSTRUCTIONS | |
| | E | INSPECTION AND ACCEPTANCE | | | K | REPRESENTATIONS, CERTIFICATIONS AND OTHER STATEMENTS OF OFFERORS | |
| X | F | DELIVERIES OR PERFORMANCE | 49-51 | | | | |
| X | G | CONTRACT ADMINISTRATION DATA | 52-58 | | L | INSTRS., CONDS., AND NOTICES TO OFFERORS | |
| X | H | SPECIAL CONTRACT REQUIREMENTS | 59-61 | | M | EVALUATION FACTORS FOR AWARD | |

CONTRACTING OFFICER WILL COMPLETE ITEM 17 OR 18 AS APPLICABLE

17. ☐ CONTRACTOR'S NEGOTIATED AGREEMENT (Contractor is required to sign this document and return _____ copies to issuing office.) Contractor agrees to furnish and deliver all items or perform all the services set forth or otherwise identified above and on any continuation sheets for the consideration stated herein. The rights and obligations of the parties to this contract shall be subject to and governed by the following documents: (a) this award/contract, (b) the solicitation, if any, and (c) such provisions, representations, certifications, and specifications, as are attached or incorporated by reference herein. (Attachments are listed herein.)

18. ☐ AWARD (Contractor is not required to sign this document.) Your offer on Solicitation Number _____ including the additions or changes made by you which additions or changes are set forth in full above, is hereby accepted as to the items listed above and on any continuation sheets. This award consummates the contract which consists of the following documents: (a) the Government's solicitation and your offer, and (b) this award/contract. No further contractual document is necessary.

| 19A. NAME AND TITLE OF SIGNER (Type or print) | 20A. NAME OF CONTRACTING OFFICER |
|---|---|
| Glen Miller    Chairman, Menominee Indian Tribe of Wis. | Karen M. Boyle    Contracting Officer |
| 19B. NAME OF CONTRACTOR | 20B. UNITED STATES OF AMERICA |
| BY _(Signature)_ (Signature of person authorized to sign) | BY _(Signature)_ (Signature of Contracting Officer) |
| 19C. DATE SIGNED  11-10-94 | 20C. DATE SIGNED  11/30/94 |

DEFS.' EX. A 002

SECTION C                                        CONTRACT NO. 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

## DESCRIPTION/SPECIFICATIONS

### 1. PURPOSE

The purpose of this P.L. 93-638 renewal contract between the Indian Health Service (IHS) and the Menominee Indian Tribe of Wisconsin is to provide for the continued operation and administration by the Tribe of the Menominee Tribal Health Service Program.

### 2. TARGET POPULATION

The target population for this contract is the 3,967 estimated eligible Indians residing within the Menominee Service Area of Menominee, Langlade, Oconto, and Shawano counties of Wisconsin.

### 3. PROGRAM DESCRIPTION

The Menominee Indian Tribe, hereinafter referred to as Contractor shall continue to administer and operate the Menominee Tribal Health Services Program on the Menominee Indian Reservation utilizing the tribal health facility at Keshena, Wisconsin. The Menominee Health Center is fully accredited by the Joint Commission of Accreditation of Hospital Organization (JCAHO). The purpose of this comprehensive health service program is to provide high quality ambulatory medical, dental, community health services, and the administration thereof for eligible individuals residing within the target area. The Contractor may also provide services to non-beneficiaries on a fee-for-service basis as authorized by IHS Manual 2-4.3 I (emergency cases) and IHS manual 2-3.3J (non-emergency cases).1. The Tribal Health Services Program consists of the following components:

a. Administrative Services

   (1) Administration
   (2) Data Processing
   (3) Medical Records
   (4) Maintenance and Housekeeping

b. Contract Health Services

c. Direct Medical Services

   (1) Physician
   (2) Ambulatory Nursing
   (3) Pharmacy
   (4) Radiology
   (5) Laboratory
   (6) Emergency Medical Services (Supported with Program Income)
   (7) Cardiovascular Surveillance and Intervention Project.

d. Direct Dental Services

e. Community Health Services

DEFS.' EX. A 003

SECTION G

CONTRACT NO. 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

## CONTRACT ADMINISTRATION DATA

1. **PAYMENT**

   a. Limitation of Cost: Subject to General Provision Clause 3, Limitation of Cost the total cost to the Government, including all direct and indirect costs for the performance of this contract, shall not exceed $3,316,729.00 until and unless the Contractor is notified in writing by the Contracting Officer that this ceiling amount has been increased.

   b. Allowable Cost: The Contractor will be reimbursed for all costs incurred in the performance of this contract, claimed by the Contractor, and accepted by the Contracting Officer, in accordance with General Provision Clause 3, Limitation of Cost, General Provision Clause 4, Allowable Cost, and General Provision Clause 5, Negotiated Overhead Rates, if appropriate.

   c. Travel and Subsistence: The Contractor shall be reimbursed for actual transportation costs and travel allowances/per diem of personnel authorized to travel under this contract in accordance with the Contractor's established policy, if such policy has been approved by the Contracting Officer. In the event the Contractor has not established and approved policy, such reimbursements shall not exceed those established by the Standard Government Travel Regulations in effect at the time travel is performed.

   d. Direct Cost: The Contractor will be reimbursed for all costs incurred directly and specifically in the performance of this contract, claimed at actual cost by the Contractor, and accepted by the Contracting Officer.

   e. Indirect Cost: The allowable indirect costs under this contract shall be established in accordance with the procedures set forth in General Provision Clause 5, Negotiated Overhead Rates. Beginning on the effective date of this contract, indirect costs shall be reimbursed at the provisional fixed rate of 12.73% percent of the direct costs chargeable to this contract less capital expenditures and pass through funds.

2. **METHOD OF PAYMENT**

   a. Payments under this contract shall be paid with funds made available under the Payment Management System under the Public Health Service (PHS) used to advance funds to grant and contract recipients.

   b. The Contractor will be notified by the Area Office regarding the transfer of the payment function.

   (1) Full name (where practicable), title, phone number, and complete mailing address of responsible official(s) to whom check payment are to be sent, and who may be contacted concerning the bank account information requested below.

   (2) The following bank account information required to accomplish wire transfers:

52

DEFS.' EX. A 004

SECTION G

## CONTRACT ADMINISTRATION DATA

(a) Transfer of payment function to the Division of Payment Management System (DPM)/Payment management System (PMS), P.O. Box 6021, Rockville, MD 20852.

(b) The Contractor must have the necessary hardware (IBM) compatible computer with a modem) to use Smartlink II/ACH.

(c) The Contractor must have a special bank account for their IHS 638 Tribal Contracts.

(e) The Contractor will be contacted by their PMS account representative and IHS Area contract representative regarding the procedures needed for payment.

(C) The Contractor will provide proper funds request documentation to PMS. The Contractor will submit timely the PMS expenditure reports (272's) to PMS on a quarterly basis, as required.

(4) The Contractor will request draw-downs (manual or automated) from PMS. The PMS will assess draw-downs for "excess cash".

(5) The Contractor will provide a quarterly status per PMS instructions.

Quarterly PMS sends the Contractor a 272 report to complete and return. A copy of the 272 report is sent to the area office by the contractor. The report lists all PMS authorizations, cumulative, and current figures. The contractor verifies the authorizations and cash advances in the report and records this quarters's disbursement activity.

(6) The Contractor will send invoices to Area Contracting to determine the allowability, allocability, and reasonableness of costs.

(7) Analysis and reconciliation of current costs is the responsibility of the FMO staff.

The Contractor _must_ submit quarterly invoices timely in order for reconcilliation by Area Finance of previously submitted PMS 272 disbursements.

3. Submission of Invoice. Place of Payment and Financial Reporting (August 1989)

   a. Advance Payment Method

      If a tribal contractor receives advance payments through the Division of Payment Management (DPM), Payment Managemnt System (PMS), Rockville, MD, it may submit financial data either on a modified SF-269A, "Financial Status Report (Short Form)," in accordance with the instructions entitled "Instructions for Preparing Standard Form 269A, Financial Status Report (Short Form), under P. L. 93-638" found in Attachment I, Section J of this contract or on an SF-1034, Public Voucher, and SF-1034 (Continuation Sheet), following the instructions cited in paragraph B. below. Regardless of the financial reporting form selected, quarterly financial reports are

53

DEFS.' EX. A 005

SECTION G

CONTRACT NO. 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

## CONTRACT ADMINISTRATION DATA

required to be submitted with 30 days of the end of each calendar quarter. The tribal contractor may, at its discretion, submit financial reports at more frequent intervals.

1.   Financial reporting under this contract shall be accomplished monthly using the SF-269/A. Instructions/preparation of the SF-269/A are found in Section J, List of Attachments.

b.   Reimbursement Method of Payment: Any tribal contractor not receiving advance payment as provided in paragraph. above shall submit a SF-1034, "(Public Voucher for Purchases and Services Other than Personal)" and a SF-1035 (Continuation Sheet) to the Government monthly by the 15th day of the month following the month for which the costs were incurred. The SF-1034 and SF-1035 should be prepared and submitted in accordance with General Provision Clause 4, Allowable Costs, and in accordance with the procedures stated in Section J, entitled "Instruction for Preparing Vouchers under P.L. 93-638 Cost reimbursement type contracts". Expenditures shall be listed by category totals to show actual costs incurred. The Government will make provisional payments on all invoices pending the completion of a final review of the tribal Contractor's cost records. The tribal Contractor shall certify on the monthly voucher the following statement:

"I certify that all payments requested are for the appropriate purposes and in accordance with the contract".

c.   Invoices and financial reports shall be sent as follows:

Nancy Miller-Korth, Project Officer
Rhinelander Field Office
9 S. Brown Street, Box 537
Rhinelander, WI  54501

## 4.   FINANCIAL REPORTING REQUIREMENTS FOR CONTRACTS CONSIDERED AS MATURE (AUGUST 1989)

This contract is considered to be mature. As such, the tribal contractor is required to provide a quarterly expenditure report only, using either the modified SF-269A (Financial Status Report – Short Form) or the SF-1034/1035 (Public Voucher and Continuation Sheet). However, the tribal contractor may., at it's option, submit such reports at more frequent intervals. Instructions for completion of these forms are included in Attachment I of this contract. Quarterly reports shall be submitted to the Contracting Officer within 30 calendar days following the end of each calendar quarter.

## 5.   DESIGNATION OF PROJECT OFFICER

The Project Officer representing the Government for the purpose of this contract shall be designated in writing by the Contracting Officer. Such designation will set forth the duties specifically delegated in regard to the performance of this contract. A copy of the designation will be provided to the Contractor.

DEFS.' EX. A 006

SECTION G

CONTRACT NO. 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

## CONTRACT ADMINISTRATION DATA

The major responsibility of the Project Officer is to assist the Contractor in the resolution of program problems encountered during the performance of this contract including the provision of technical assistance in the development of new programs.

6. ACCOUNTING AND APPROPRIATION DATA

Estimated FY'95 Funding

| | | | | | | |
|---|---|---|---|---|---|---|
| H/C | 7550390 | J461151 | 5-39146.61 | 55.75 | 25.82 | $1,838,800 |
| CSC DIR | 7550390 | J461170 | 5-39846.61 | 55.75 | 25.81 | 152,100 ✓ |
| CHS | 75-5/6-0390 | J46ZP75 | 5-55046.66 | 55.75 | 25.82 | 913,100 |
| PHN (NEW) | 7550390 | J461171 | 5-39246.72 | 55.75 | 25.82 | 3,000 |
| DEN | 7550390 | J461164 | 5-39146.62 | 55.75 | 25.82 | 39,300 |
| H&C CVDS N/R | 7550390 | J461151 | 5-39146.61 | 55.75 | 25.82 | 70,000 |
| CSC IDC | 7550390 | J461170 | 5-39146.61 | 55.75 | 25.85 | 300,429 |
| TOTAL | | | | | | $3,316,729 |

7. PROPERTY REQUIREMENTS (AUGUST 1990)

a. For purposes of this clause, "personal property" means supplies, materials, equipment and other tangible property, both expendable and non-expendable, but does not include real property or property affixed thereto (related personal property).

b. For purposes of this clause, "nonexpendable personal property" means all personal property having a useful life of more than one year after being placed in use.

** (1) Subject to the following conditions, the contractor may take title to all personal property acquired by the contractor under this contract from the date of inclusion of this clause in the contract and thereafter and must provide written notification of its intent to the Contracting Officer. If the contractor elects to take title to personal property, that election shall apply to all applicable property and may not be exercised on an item-by-item basis.

(a) In addition to the requirements of the clause of this contract entitled "Subcontracting," if the contractor will take title to personal property, the written approval of the Contracting Officer shall be required prior to:

Purchase of nonexpendable personal property (other than ADP and telecommunications equipment) having an acquisition cost of $25,000 or more per item; an

(b) Purchase of ADP and telecommunications equipment regardless of purchase price.

DEFS.' EX. A 007

SECTION G                                    CONTRACT NO. 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

<u>CONTRACT ADMINISTRATION DATA</u>

c.  Property, title to which vests in the contractor, shall be used only for the
    purposes of this contract or for the purposes of other Federal contracts or
    grants or related administrative purposes which are federally funded, either
    directly or indirectly. The contractor shall establish, operate, and maintain
    such system(s) of control, security, and recordkeeping for such personal
    property as the contractor determines is necessary except that such system(s)
    shall, as a minimum:

    (1) Designate a specific employee(s) or official(s) as responsible for overall
        control, security, and recordkeeping for all personal property;

    (2) Designate additional employees or officials as deemed necessary to be
        responsible for physical security, utilization monitoring and maintenance
        of personal property;

    (3) For all capitalized, non-expendable personal;

        (a) Maintain an itemized inventory listing which includes for each item
            the following information; generic name; manufacturer; make; model and
            serial number (if known); physical location of the item; purchase
            price, if known, or estimated original acquisition cost of the item;
            identification of the contract under which the item is most often
            used; year of manufacture or, if unknown, year acquired; and an
            indication as to whether or not the item is under warranty and the
            warranty expiration date.

        (b) Provide a current updated copy of the itemized inventory listing
            required in (i) above to the Contracting Officer at least once each
            year.

        (c) Conduct a physical inventory and inspection of all capitalized and
            sensitive items at least once each year and reconcile the results of
            the physical inventory with the inventory listing; investigate any
            differences discovered; take appropriate actions to collect for any
            damages or losses and to prevent such loss or damage in the future;
            and report inventory results and actions taken to the Contracting
            Officer at least once each year.

    (4) Assure that approval of the Contracting Officer is obtained before disposal
        of any nonexpendable personal property unless such disposal is for trade-in
        or sale of an item(s) where the proceeds from sale or the trade-in value
        of the item(s) will be applied to the purchase of a replacement item(s)
        which will provide at least the same end-use functions(s) as the item(s)
        traded or sold.

        (a) The Government has the right to transfer title to such property to the
            Federal Government or an otherwise eligible third party. This right
            will normally be exercised by the Government if the contracted program
            or project is transferred from one contractor to another or is
            reassumed by the Government. If the Government decides to exercise
            this right, the Contracting Officer shall issue written disposition
            instructions within 120 days after the end of Federal support of the

56

DEFS.' EX. A 008

SECTION G

CONTRACT NO. 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

### CONTRACT ADMINISTRATION DATA

project for which the property in question was acquired or, if previously federally owned, under which it is being used.

(b)  In addition to the requirements of the clause of this contract entitled "Subcontracting," the prior written approval of the Contracting Officer shall be required for;

(1)  The purchase, lease or rental of any interest in real property; or;

(2)  The alteration or renovation of facilities.

d.  Failure to obtain the prior written approvals required by this clause may result in disallowance of costs.

\*\* SEE SECTION H-Item 8 (Title to Contractor Acquired Personal Property)

8.  ADMINISTRATION OF GOVERNMENT PROPERTY (ALTERNATE I) (AUGUST 1990)

A.  This clause applies to the administration of all personal property whose title is held by the Federal Government. This includes all Government-furnished personal property, personal property acquired by the Contractor under this contract prior to the date of inclusion of the clause entitled "Property Requirements (August 1990)" in the contract, and any personal property acquired by the Contractor under this contract after that date if the Contractor does not elect to take title to such property upon acquisition.

B.  The IHS Property Administrator is the authorized representative of the IHS Contracting Officer for the purpose of administering the contract requirements and obligations relative to the Government property. The IHS Property Administrator shall be designated in writing by the Contracting Officer and a copy of the designation shall be provided to the contractor.

C.  In accordance with General Provision clause 12 "Government Property", the Contractor shall establish and maintain written procedures for the maintenance, repair, protection and preservation, control of and accountability for Government property consistent with the provisions of DHHS Publication (OS) 686, Contractors Guide for Control of Government Property (1990). A copy of the manual (OS) 686 will be provided to the Contractor by the IHS Property Administrator.

Exhibit D of the manual may be used as a guide in preparing the written procedures which shall be furnished to the Property Administrator within 60 days after the effective date of this contract.

D.  When the contract is completed, a final inventory shall be taken by the Contractor and submitted to the IHS Property Administrator. The following certificate signed by an authorized official of the Contractor shall be provided with each copy of the final inventory.

I do hereby certify as (Title of Authorized Official) of (name of contract) that the attached inventory reports are complete and correctly list and describe all

57

DEFS.' EX. A 009

SECTION G

CONTRACT NO. 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

## CONTRACT ADMINISTRATION DATA

items of material, supplies, and equipment furnished to the Contractor, for use in the performance of the contract No. 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 which, as of this date, have not been consumed in performance of this contract; and that I will immediately notify the Contracting Officer of any change affecting these inventory reports at any time prior to final disposition of the inventory.

E.  The Contractor shall furnish to the IHS Property Administrator an inventory of Government-owned property within 90 days after the effective date of the contract and in the format shown in the manual (74-115).

F.  All Government-owned property listed under Contract No. 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 is hereby transferred and made a part of this contract.

9.  UNILATERAL MODIFICATIONS (AUGUST 1989)

This contract may not be modified unilaterally except that modifications which only change a mailing address, correct a typographical error, make similar non-substantive changes which do not affect the contractual rights of the parties, or add funds up to a previously authorized contract funding level may be made unilaterally by the Contracting Officer.

10  REDUCTIONS IN FUNDING (AUGUST 1989)

The amount of funds provided under this contract shall not be reduced by IHS except that the amount may be reduced in the subsequent years as provided in Section 106(b)(2) of Public Law 93-638, as amended (Amendments), or, as a result of changed circumstances or factors, as provided in Section 10(c)(2) of those amendments.

DEFS.' EX. A 010

# MODIFICATION No. 8 to MENOMINEE'S
## 1995 CONTRACT No. 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
## MODIFICATION EFFECTIVE DATE: 9/13/95

DEFS.' EX. A 011

| ~~AMENDMENT OF SOLICITATION~~ / DIFICATION OF CONTRACT | | | ~~CONTRACT~~ ID CODE | PAGE OF PAGES | |
|---|---|---|---|---|---|
| | | | 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 | 1 | 2 |
| 2. ~~AMENDMENT~~/MODIFICATION NO.  EIGHT (8) | 3. EFFECTIVE DATE  9/13/95 | 4. REQUISITION/PURCHASE REQ. NO.  95-50-1190/1185 (9/8 & 6/95) | | 5. PROJECT NO. (If applicable) | |

6. ISSUED BY                          CODE | |

7. ADMINISTERED BY (If other than Item 6)      CODE | |

INDIAN HEALTH SERVICE
BEMIDJI AREA OFFICE
ROOM 211, FEDERAL BUILDING
BEMIDJI, MN  56601-3060

**OMB: 0990-0115**

8. NAME AND ADDRESS OF CONTRACTOR (No., street, county, State and ZIP Code)

MENOMINEE TRIBE OF INDIANS

PO BOX 970

KESHENA, WI 54135-0970

(√) 9A. AMENDMENT OF SOLICITATION NO.

9B. DATED (SEE ITEM 11)

10A. MODIFICATION OF CONTRACT/ORDER NO.
X  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

10B. DATED (SEE ITEM 13)
01/01/95

CODE | FACILITY CODE |

11. THIS ITEM ONLY APPLIES TO AMENDMENTS OF SOLICITATIONS

[ ] The above numbered solicitation is amended as set forth in Item 14. The hour and date specified for receipt of Offers [ ] is extended, [ ] is not extended.

Offers must acknowledge receipt of this amendment prior to the hour and date specified in the solicitation or as amended, by one of the following methods:
(a) By completing Items 8 and 15, and returning _____ copies of the amendment; (b) By acknowledging receipt of this amendment on each copy of the offer submitted; or (c) By separate letter or telegram which includes a reference to the solicitation and amendment numbers. FAILURE OF YOUR ACKNOWLEDGMENT TO BE RECEIVED AT THE PLACE DESIGNATED FOR THE RECEIPT OF OFFERS PRIOR TO THE HOUR AND DATE SPECIFIED MAY RESULT IN REJECTION OF YOUR OFFER. If by virtue of this amendment you desire to change an offer already submitted, such change may be made by telegram or letter, provided each telegram or letter makes reference to the solicitation and this amendment, and is received prior to the opening hour and date specified.

12. ACCOUNTING AND APPROPRIATION DATA (If required)
SEE BLOCK #14A

13. THIS ITEM APPLIES ONLY TO MODIFICATIONS OF CONTRACTS/ORDERS,
IT MODIFIES THE CONTRACT/ORDER NO. AS DESCRIBED IN ITEM 14.

(√) | A. THIS CHANGE ORDER IS ISSUED PURSUANT TO: (Specify authority) THE CHANGES SET FORTH IN ITEM 14 ARE MADE IN THE CONTRACT ORDER NO. IN ITEM 10A.

B. THE ABOVE NUMBERED CONTRACT/ORDER IS MODIFIED TO REFLECT THE ADMINISTRATIVE CHANGES (such as changes in paying office, appropriation date, etc.) SET FORTH IN ITEM 14, PURSUANT TO THE AUTHORITY OF FAR 43.103(b).

C. THIS SUPPLEMENTAL AGREEMENT IS ENTERED INTO PURSUANT TO AUTHORITY OF:
X          25 USC 450(g)

D. OTHER (Specify type of modification and authority)

E. IMPORTANT: Contractor [ ] is not, [X] is required to sign this document and return __TWO__ copies to the issuing office.

14. DESCRIPTION OF ~~AMENDMENT~~/MODIFICATION (Organized by UCF section headings, including solicitation/contract subject matter where feasible.)

The purpose of this modification is to add in FY'95 Indirect Cost CSC shortfall funds in the amount of $31,400 to supplement IDC FY'95 shortfall; also to reduce equipment replacement in the amount of -$14,900; therefore, total increase to this modification is $16,500; the Accounting and Appropriation Data will be revised to show increase.

With this consideration, the following changes are made to this contract:

Except as provided herein, all terms and conditions of the document referenced in Item 9A or 10A, as heretofore changed, remains unchanged and in full force and effect.

15A. NAME AND TITLE OF SIGNER (Type or print) | 16A. NAME AND TITLE OF CONTRACTING OFFICER (Type or print)

Dennis Murphy, Contracting Officer

15B. CONTRACTOR/OFFEROR | 15C. DATE SIGNED | 16B. UNITED STATES OF AMERICA | 16C. DATE SIGNED

_____           BY _____                    9/13/95
(Signature of person authorized to sign)              (Signature of Contracting Officer)

NSN 7540-01-152-8070
PREVIOUS EDITION UNUSABLE

30-105

STANDARD FORM 30 (REV. 10-83)
Prescribed by GSA
FAR (48 CFR) 53.243

DEFS.' EX. A 012

Contract No. 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                                                              Page 2 of 2
Modification No. Eight (8)

A. In Section G,5., Accounting and Appropriation Data is revised to read as follows:

    5. <u>ACCOUNTING AND APPROPRIATION DATA</u>

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| MH/NR | 7540390 | J460159 | 4-39146.63 | 55.75 | 25.82 | $ | 7,400 |
| HC/NR | 7540390 | J461151 | 4-39146.61 | 55.75 | 25.82 | | 47,182 |
| M&I | 75X0391 | J461167 | 4-29040.76 | 55.75 | 25.82 | | 29,233 |
| Health Ed | 7540390 | J461162 | 4-39246.73 | 55.75 | 25.82 | | 3,000 |
| H/C CO | 7540390 | J461151 | 4-39146.61 | 55.75 | 25.82 | | 520,095 |
| CSC IDC CO | 7540390 | J461170 | 4-39846.61 | 55.75 | 25.85 | | 48,211 |
| OEH | 75X0390 | J461168 | 4-29246.77 | 55.75 | 25.82 | | 745 |
| | | | | | | | |
| H/C | 7550390 | J461151 | 5-39146.61 | 55.75 | 25.82 | $1,965,000 | |
| CSCDR | 7550390 | J461170 | 5-39846.61 | 55.75 | 25.81 | 152,100 | |
| CHS | 75-5/6-0390 | J46ZP75 | 5-55046.66 | 55.75 | 25.82 | 1,004,700 | |
| PHN | 7550390 | J461171 | 5-39246.72 | 55.75 | 25.82 | 5,580 | |
| DEN | 7550390 | J461164 | 5-39146.62 | 55.75 | 25.82 | 51,000 | |
| MH/NR | 7550390 | J460159 | 5-39146.63 | 55.75 | 25.82 | 5,000 | |
| H&C CVDSNR | 7550390 | J461151 | 5-39146.61 | 55.75 | 25.82 | 106,100 | |
| ALC/437 | 7550390 | J461159 | 5-39146.64 | 55.75 | 25.82 | -0- | |
| ALC/570 | 7550390 | J461165 | 5-39146.64 | 55.75 | 25.82 | -0- | |
| ALC/690 | 7550390 | J461166 | 5-39146.64 | 55.75 | 25.82 | -0- | |
| HLTH ED | 7550390 | J461162 | 5-39246.73 | 55.75 | 25.82 | 11,400 | |
| OEH | 75X0391 | J461168 | 5-29246.77 | 55.75 | 25.82 | 3,100 | |
| * CSC/IDC | 7550390 | J461170 | 5-39146.61 | 55.75 | 25.85 | 331,829 | (+$31,400) |
| CHEF | 75X0390 | J465175 | 5-41146.51 | 55.75 | 25.82 | 13,594 | |
| * OEHE/Eq/NR | 75X0391 | J461172 | 5-29646.71 | 55.75 | 25.82 | 234,500 | (-$14,900) |
| M&I | 75X0390 | J461167 | 5-29040.76 | 55.75 | 25.82 | 52,800 | |

        TOTAL CONTRACT AMOUNT/TOTAL FY'95 FUNDS  $4,592,569 (+$16,500)

B. The contract line item increases will be allocated to the following line items:

    Equipment        -$14,900
    Indirect Cost     31,400
    TOTAL INCREASE  $16,500

C. SECTION G,  Item 1., a. is changed to read as follows:

    1. PAYMENT:

        a. Limitation of Cost: Subject to General Provision Clause 3, Limitation of Cost the
        total cost to the Government, including all direct and indirect costs for
        Contract No. 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 the performance of this contract, shall not exceed
        $4,592,569 until and unless the Contractor is notified in writing by the
        Contracting Officer that this ceiling amount has been increased.

E. The contract amount is hereby increased by $16,500 from $4,576,069 to $4,592,569 by
  reason of this modification.

F. The contract funding period remains unchanged as a result of this modification.

G. There are no other changes made by reason of this modification.

L-ME9518.M08

DEFS.' EX. A 013

**MODIFICATION No. 9 to MENOMINEE'S
1995 CONTRACT No. 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
MODIFICATION EFFECTIVE DATE: 9/21/95**

DEFS.' EX. A 014

| AMENDMENT OF SOLICITATION/MODIFICATION OF CONTRACT | | CONTRACT ID CODE | PAGE OF PAGES |
|---|---|---|---|
| | | 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 | 1 | 2 |

| 2. AMENDMENT/MODIFICATION NO. | 3. EFFECTIVE DATE | 4. REQUISITION/PURCHASE REQ. NO. | 5. PROJECT NO. (If applicable) |
|---|---|---|---|
| NINE (9) | 9/21/95 | 95-50-1206 | |

| 6. ISSUED BY | CODE | | 7. ADMINISTERED BY (If other than Item 6) | CODE |
|---|---|---|---|---|

INDIAN HEALTH SERVICE
BEMIDJI AREA OFFICE
ROOM 211, FEDERAL BUILDING
BEMIDJI, MN 56601-3060

**OMB: 0990-0115**

| 8. NAME AND ADDRESS OF CONTRACTOR (No., street, county, State and ZIP Code) | (√) | 9A. AMENDMENT OF SOLICITATION NO. |
|---|---|---|

MENOMINEE TRIBE OF INDIANS

PO BOX 970

KESHENA, WI 54135-0970

| | 9B. DATED (SEE ITEM 11) |
|---|---|
| | 10A. MODIFICATION OF CONTRACT/ORDER NO. |
| X | 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 |
| | 10B. DATED (SEE ITEM 13) |
| | 01/01/95 |

| CODE | FACILITY CODE |
|---|---|

## 11. THIS ITEM ONLY APPLIES TO AMENDMENTS OF SOLICITATIONS

☐ The above numbered solicitation is amended as set forth in Item 14. The hour and date specified for receipt of Offers ☐ is extended, ☐ is not extended.

Offers must acknowledge receipt of this amendment prior to the hour and date specified in the solicitation or as amended, by one of the following methods:

(a) By completing Items 8 and 15, and returning _____ copies of the amendment; (b) By acknowledging receipt of this amendment on each copy of the offer submitted; or (c) By separate letter or telegram which includes a reference to the solicitation and amendment numbers. FAILURE OF YOUR ACKNOWLEDGMENT TO BE RECEIVED AT THE PLACE DESIGNATED FOR THE RECEIPT OF OFFERS PRIOR TO THE HOUR AND DATE SPECIFIED MAY RESULT IN REJECTION OF YOUR OFFER. If by virtue of this amendment you desire to change an offer already submitted, such change may be made by telegram or letter, provided each telegram or letter makes reference to the solicitation and this amendment, and is received prior to the opening hour and date specified.

12. ACCOUNTING AND APPROPRIATION DATA (If required)

SEE BLOCK #14A

## 13. THIS ITEM APPLIES ONLY TO MODIFICATIONS OF CONTRACTS/ORDERS, IT MODIFIES THE CONTRACT/ORDER NO. AS DESCRIBED IN ITEM 14.

| (√) | A. THIS CHANGE ORDER IS ISSUED PURSUANT TO: (Specify authority) THE CHANGES SET FORTH IN ITEM 14 ARE MADE IN THE CONTRACT ORDER NO. IN ITEM 10A. |
|---|---|
| | B. THE ABOVE NUMBERED CONTRACT/ORDER IS MODIFIED TO REFLECT THE ADMINISTRATIVE CHANGES (such as changes in paying office, appropriation date, etc.) SET FORTH IN ITEM 14, PURSUANT TO THE AUTHORITY OF FAR 43.103(b). |
| | C. THIS SUPPLEMENTAL AGREEMENT IS ENTERED INTO PURSUANT TO AUTHORITY OF: |
| X | 25 USC 450(g) |
| | D. OTHER (Specify type of modification and authority) |

E. IMPORTANT: Contractor ☐ is not, ☑ is required to sign this document and return **TWO** copies to the issuing office.

14. DESCRIPTION OF AMENDMENT/MODIFICATION (Organized by UCF section headings, including solicitation/contract subject matter where feasible.)

The purpose of this modification is to add a **second increase** of FY'95 Indirect Cost CSC shortfall funds in the amount of $31,400 to supplement IDC FY'95 shortfall and revise the the Accounting and Appropriation Data accordingly.

With this consideration, the following contractual changes are made:

Except as provided herein, all terms and conditions of the document referenced in Item 9A or 10A, as heretofore changed, remains unchanged and in full force and effect.

| 15A. NAME AND TITLE OF SIGNER (Type or print) | 16A. NAME AND TITLE OF CONTRACTING OFFICER (Type or print) |
|---|---|
| | Dennis Murphy, Contracting Officer |

| 15B. CONTRACTOR/OFFEROR | 15C. DATE SIGNED | 16B. UNITED STATES OF AMERICA | 16C. DATE SIGNED |
|---|---|---|---|
| (Signature of person authorized to sign) | 9-25-95 | BY (Signature of Contracting Officer) | 9/21/95 |

NSN 7540-01-152-8070
PREVIOUS EDITION UNUSABLE

30-105

STANDARD FORM 30 (REV. 10-83)
Prescribed by GSA
FAR (48 CFR) 53.243

DEFS.' EX. A 015

Contract No. 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                                          Page 2 of 2
Modification No. Nine (9)

A. In Section G,5., Accounting and Appropriation Data is revised to read as follows:

    5.  <u>ACCOUNTING AND APPROPRIATION DATA</u>

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| MH/NR | 7540390 | J460159 | 4-39146.63 | 55.75 | 25.82 | $ | 7,400 |
| HC/NR | 7540390 | J461151 | 4-39146.61 | 55.75 | 25.82 | | 47,182 |
| M&I | 75X0391 | J461167 | 4-29040.76 | 55.75 | 25.82 | | 29,233 |
| Health Ed | 7540390 | J461162 | 4-39246.73 | 55.75 | 25.82 | | 3,000 |
| H/C CO | 7540390 | J461151 | 4-39146.61 | 55.75 | 25.82 | | 520,095 |
| CSC IDC CO | 7540390 | J461170 | 4-39846.61 | 55.75 | 25.85 | | 48,211 |
| OEH | 75X0390 | J461168 | 4-29246.77 | 55.75 | 25.82 | | 745 |
| | | | | | | | |
| H/C | 7550390 | J461151 | 5-39146.61 | 55.75 | 25.82 | | $1,965,000 |
| CSCDR | 7550390 | J461170 | 5-39846.61 | 55.75 | 25.81 | | 152,100 |
| CHS | 75-5/6-0390 | J46ZP75 | 5-55046.66 | 55.75 | 25.82 | | 1,004,700 |
| PHN | 7550390 | J461171 | 5-39246.72 | 55.75 | 25.82 | | 5,580 |
| DEN | 7550390 | J461164 | 5-39146.62 | 55.75 | 25.82 | | 51,000 |
| MH/NR | 7550390 | J460159 | 5-39146.63 | 55.75 | 25.82 | | 5,000 |
| H&C CVDSNR | 7550390 | J461151 | 5-39146.61 | 55.75 | 25.82 | | 106,100 |
| ALC/437 | 7550390 | J461159 | 5-39146.64 | 55.75 | 25.82 | | -0- |
| ALC/570 | 7550390 | J461165 | 5-39146.64 | 55.75 | 25.82 | | -0- |
| ALC/690 | 7550390 | J461166 | 5-39146.64 | 55.75 | 25.82 | | -0- |
| HLTH ED | 7550390 | J461162 | 5-39246.73 | 55.75 | 25.82 | | 11,400 |
| OEH | 75X0391 | J461168 | 5-29246.77 | 55.75 | 25.82 | | 3,100 |
| * CSC/IDC | 7550390 | J461170 | *5-39146.61 | 55.75 | 25.85 | | -0- (-331,829) |
| * CSC/IDC | 7550390 | J461170 | *5-39846.61 | 55.75 | 25.85 | | 363,229 (+363,229) |
| CHEF | 75X0390 | J465175 | 5-41146.51 | 55.75 | 25.82 | | 13,594 |
| OEHE/Eq/NR | 75X0391 | J461172 | 5-29646.71 | 55.75 | 25.82 | | 234,500 |
| M&I | 75X0390 | J461167 | 5-29040.76 | 55.75 | 25.82 | | 52,800 |

   * Accounting code correction and increase by $31,400

        TOTAL CONTRACT AMOUNT/TOTAL FY'95 FUNDS  $4,623,969 (+$31,400)

B. The contract line item increases will be allocated to the following line items:

    Indirect Cost     31,400
    TOTAL INCREASE   $31,400

C. SECTION G, Item 1., a. is changed to read as follows:

   1.  PAYMENT:

      a.  Limitation of Cost: Subject to General Provision Clause 3, Limitation of Cost the total cost to the Government, including all direct and indirect costs for Contract No. 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 the performance of this contract, shall not exceed $4,623,969 until and unless the Contractor is notified in writing by the Contracting Officer that this ceiling amount has been increased.

E. The contract amount is hereby increased by $31,400 from $4,592,569 to $4,623,969 by reason of this modification.

F. The contract funding period remains unchanged as a result of this modification.

G. There are no other changes made by reason of this modification.

DEFS.' EX. A 016

# EXHIBIT B

# MENOMINEE TRIBE'S 1996 SELF-DETERMINATION AGREEMENT WITH IHS
## CONTRACT # 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
## EFFECTIVE DATE: JANUARY 1, 1996

DEFS.' EX. B 001

INDIAN SELF-DETERMINATION AGREEMENT

BETWEEN

THE MENOMINEE INDIAN TRIBE OF WISCONSIN

AND THE

DEPARTMENT OF HEALTH AND HUMAN SERVICES

INDIAN HEALTH SERVICE



EFFECTIVE AS OF JANUARY 1, 1996

IHS CONTRACT NUMBER 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

DEFS.' EX. B 002



SELF-DETERMINATION CONTRACT MODEL AGREEMENT
BETWEEN THE SECRETARY HEALTH AND HUMAN SERVICES
AND THE
THE MENOMINEE TRIBE OF WISCONSIN

## CONTENTS

a.   AUTHORITY AND PURPOSE

    (1)   Authority
    (2)   Purpose
        (A)   Program Services, Functions and Activities
        (B)   Program Specific Appropriations

b.   TERMS, PROVISIONS, AND CONDITIONS

    (1)   Term
    (2)   Effective Date
    (3)   Program Standards
    (4)   Funding Amount
    (5)   Limitation of Costs
    (6)   Payment
        (A)   In General
        (B)   Quarterly, Semiannual, Lump-Sum, and Other
            Methods of Payment
    (7)   Records and Monitoring
        (A)   In General
        (B)   Recordkeeping System
        (C)   Responsibilities of Contractor
    (8)   Property
        (A)   In General
        (B)   Records
        (C)   Joint Use Agreements
        (D)   Acquisition of Property
        (E)   Confiscated or Excess Property
        (F)   Screener Identification Card
        (G)   Capital Equipment

    (9)   Availability of Funds
    (10)  Transportation
    (11)  Federal Program Guidelines, Manuals, or Policy Directives
    (12)  Disputes
        (A)   Third Party Mediation Defined
        (B)   Alternative Procedures
        (C)   Effect of Decisions
    (13)  Administrative Procedures of Contractor
    (14)  Successor Annual Funding Agreement
        (A)   In General
        (B)   Information
    (15)  Contract Requirement;  Approval by Secretary
        (A)   In General
        (B)   Requirements

DEFS.' EX. B 003



c.   OBLIGATIONS OF THE CONTRACTOR

    (1)   Contract Performance
    (2)   Amount of Funds
    (3)   Contracted Programs
    (4)   Trust Services for Individual Indians
    (5)   Fair and Uniform Services

d.   OBLIGATION OF THE UNITED STATES

    (1)   Trust Responsibility
    (2)   Good Faith
    (3)   Programs Retained

e.   OTHER PROVISIONS

    (1)   Designated Officials
    (2)   Contract Modifications or Amendment
        (A)   In General
        (B)   Exception
    (3)   Officials not to Benefit
    (4)   Covenant Against Contingent Fees

f.   ATTACHMENTS

    (1)   Approval of Contract
    (2)   Annual Funding Agreement
        (A)   In General
        (B)   Incorporation by Reference

DEFS.' EX. B 004



(a)  AUTHORITY AND PURPOSE

   (1)  AUTHORITY

This agreement, denoted a Self-Determination Contract (referred to in this agreement as the "Contract"), is entered into by the Secretary of Health and Human Service (referred to in this agreement as the "Secretary"), for and on behalf of the United States pursuant to title I of the Indian Self-Determination and Education Assistance Act (25 U.S.C. 450 et.seq.) and by the authority of the Menominee Tribal Government (referred to in this agreement as the "Contractor". The provisions of title I of the Indian Self-Determination and Education Assistance Act (25 U.S.C. 450 et seq.) are incorporated in this agreement.

   (2)  PURPOSE

Each provision of the Indian Self-Determination and Education Assistance Act (25 U.S.C. 450 et. seq.) and each provision of this Contract shall be liberally construed for the benefit of the Contractor to transfer the funding and the following related functions, services, activities, and programs (or portions thereof), that are otherwise contractible under section 102(a) of such Act, including all related administrative functions, from the Federal Government to the Contractor:

Utilizing the Tribally owned health facility at the Menominee Tribal Clinic, located in Keshena, Wisconsin, the areas of education, prevention, health care maintenance and intervention will be stressed. Components of the Health Center Program will include:

     I. Administrative Services
II. Ambulatory Services:
  A. Medical Services, including:
    1. Physicians
    2. Nurse Practitioner (NP)
    3. Pharmacy Services
    4. Laboratory Services
    5. Ambulatory Care Nursing
    6. Medical and Technical Relief Coverage including:
      Medical Director, Radiology Technicians, Dentists, Hospital
      Coverage–Physicians, Nutritionist, Psychotherapists.
    7. X-ray Services
  B. Dental Services (Direct and Contract Health)
  C. Audiology
  D. Clinic/Program Administration
  E. Contract Health Services (CHS). including Inpatient,
    Outpatient, and Optical.
  F. Patient Transportation Services

1

DEFS.' EX. B 005

G. Emergency Medical Services

III. Preventive Health Services:
    A. Dental Prevention Services
    B. Environmental Health and Sanitarian Services
    C. Public Health Nursing Services (CHNS)
    D. Nutrition Services
    E. Human Resource Center (HRC)
      [1] Mental Health and Social Services
    F. Healthy Heart Program
    G. Health Promotion Disease Prevention
    H. Aids Prevention and Aids Health Education
    I. Wellness
    J. Maternal Child Health/CHR
    K. Family Planning Services

(b)   TERMS, PROVISIONS, AND CONDITIONS

  (1)   TERMS

Pursuant to section 105(c)(1) of the Indian Self-Determination and Education Assistance Act (25 U.S.C. 450j(c)(1), term of this contract shall be indefinite, until cancelled by Tribal Legislative action. Pursuant to section 105(d)(1) of such Act (25 U.S.C.j.(d), upon the election by the Contractor, the period of this Contract shall be determined on the basis of a calendar year, unless the Secretary and the Contractor agree on a different period in the annual funding agreement incorporated by reference in subsection (f)(2).

  (2)   EFFECTIVE DATE

This Contract shall become effective upon the date of the approval and execution by the Contractor and the Secretary, unless the Contractor and the Secretary agree on an effective date other than the date specified in this paragraph.

The effective date of this agreement shall be January 1, 1996.

  (3)   PROGRAM STANDARD

The Contractor agrees to administer the program, services, functions and activities (or portions thereof) listed in subsection (a)(2) of the Contract in conformity with the following standards:

Joint Commission on Accreditation of Health Care Organizations.

  (4)   FUNDING AMOUNT

Subject to the availability of appropriations, the Secretary shall make available to the Contractor the total amount specified in the annual funding agreement incorporated by reference in subsection (f)(2). Such

2

DEFS.' EX. B 006

amount shall not be less than the applicable amount determined pursuant to section 106(a) of the Indian Self-Determination and Education Assistance Act (25 U.S.C. 405j-1).

(5)    LIMITATION OF COSTS



The Contractor shall not be obligated to continue performance that requires and expenditure of funds in excess of the amount of funds awarded under this contract.  If, at any time, the Contractor has reason to believe that the total amount required for performance of this contract or a specific activity conducted under this contract, the Contractor shall provide reasonable notice to the appropriate Secretary.  If the appropriate Secretary does not take such action as may be necessary to increase the amount of funds awarded under this contract, the Contractor may suspend performance of the Contract until such time additional funds are awarded.

(6)    Payment

(A)    In General

Payments to the Contractor under this contract shall --

(i) be made as expeditiously as practicable; and

(ii)  include financial arrangements to cover funding during periods covered by joint resolutions adopted by Congress making continuing appropriations, to the extent permitted by such resolutions.

(B)    QUARTERLY, SEMIANNUAL, LUMP-SUM, AND OTHER METHODS OF PAYMENTS

(i)  In General

Pursuant to Section 108(b) of the Indian Self-Determination and Education Assistance Act, and notwithstanding any other provision of law, for each fiscal year covered by this contract, the Secretary shall make available to the Contractor the funds specified for the fiscal year under the annual funding agreement incorporated by reference pursuant to subsection (f)(2) by paying to the Contractor, on a quarterly basis, one-quarter of the total fiscal year, in a lump-sum payment or as semi-annual payments, or any other method of payment authorized by law, in accordance with such method as may be requested by the Contractor and specified in the annual funding agreement.

(ii)  Method of Quarterly Payment

3

DEFS.' EX. B 007

If quarterly payments are specified in the annual funding agreement incorporated by reference pursuant to subsection (f)(2), each quarterly payment made pursuant to clause (a) shall be made on the first day of each quarter of the fiscal year, except that in any case in which the contract year coincided with the Federal fiscal year, payment for the first quarter shall be made not later than the date that is 10 calendar days after the date on which the Office of Management and Budget apportions the appropriations for the fiscal year for the programs, services, functions, and activities subject to this contract.

### (iii) Applicability

Chapter 39 of Title 31, United States Code, shall apply to the payment of funds due under this Contract and the annual funding agreement referred to in clause (i).

## (7)   Records and Monitoring

### (A)   In General

Except for previously provided copies of tribal records that the Secretary demonstrates are clearly required to be maintained as part of the recordkeeping system of the Department of the Interior or the Department of Health and Human Services (or both), records of the Contractor shall not be considered Federal records for purposes of Chapter 5 of Title 5, United States Code.

### (B)   Recordkeeping System

The Contractor shall maintain a recordkeeping system and, upon reasonable advance request, provide reasonable access to such records to the Secretary.

### (C)   Responsibilities of Contractor

The Contractor shall be responsible for managing the day-to-day operations conducted under this Contract and for monitoring activities conducted under this Contract to ensure compliance with the contract and applicable Federal requirements. With respect to the monitoring activities of the Secretary, the routine monitoring visits shall be limited to not more than one performance monitoring visit for this contract by the head of each operating division, departmental bureau, or departmental agency, or duly authorized representative of such head unless--

(i) the Contractor agrees to one or more additional visits; or

4

DEFS.' EX. B 008

   (ii)  the appropriate official determines that there is a reasonable
         cause to believe that grounds for reassumption of the Contract,
         suspension of contract payments, or other serious contract
         performance deficiency may exist.

No additional visit referred to in clause (ii) shall be made until
such time as reasonable advance notice that includes a description of
the nature of the problem that requires the additional visit has been
given to the Contractor.

(8)   Property

  (A)   In General

   _  As provided in Section 105(f) of the Indian Self-Determination and
      Education Assistance Act (25 U.S.C. 450j (f), at the request of the
      Contractor, the Secretary may make available, or transfer to the
      Contractor, all reasonable divisible real property, facilities,
      equipment, and personal property that the Secretary has used to
      provide or administer the programs, services, functions, and
      activities covered by this contract. A mutually agreed upon list
      specifying the property, facilities, and equipment so furnished shall
      also be prepared by the Secretary, with the concurrence of the
      Contractor, and periodically revised by the Secretary, with the
      concurrence of the Contractor.

  (B)   Records

      The Contractor shall maintain a record of all property referred to in
      subparagraph (A) or other property acquired by the Contractor under
      Section 105(f)(2)A of such Act for purposes of replacement.

  (C)   Joint Use Agreements

      Upon the request of the Contractor, the Secretary and the Contractor
      shall enter into a separate joint use agreement to address the shared
      use by the parties of real or personal property that is not
      reasonably divisible.

  (D)   Acquisition of Property

      The Contractor is granted the authority to acquire such excess
      property as the Contractor may determine to be appropriate in the
      judgement of the Contractor to support the programs, services,
      functions, and activities operated pursuant to this contract.

  (E)   Confiscated or Excess Property

      The Secretary shall assist the Contractor in obtaining such
      confiscated or excess property as may become available to tribes,
      tribal organizations, or local governments.

5

DEFS.' EX. B 009

(F)    Screener Identification Card

A screener identification card (General Services Administration form 2946) shall be issued to the Contractor not later than the effective date of this contract. The designated official shall, upon request, assist the Contractor in securing the use of the card.

(G)    Capital Equipment

The Contractor shall determine the capital equipment, leases, rentals, property, or services the Contractor requires to perform the obligations of the Contractor under this subsection, and shall acquire and maintain records of such capital equipment, property rentals, leases, property, or services through applicable procurement procedures of the Contractor.

(9)    Availability of Funds

Notwithstanding any other provision of law, any funds provided under this contract--

(A)    shall remain available until expended; and

(B)    with respect to such funds, no further--

(i) approval by the Secretary, or
(ii) justifying documentation from the Contractor, shall be required prior to the expenditure of such funds.

(10)    Transportation

Beginning on the effective date of this contract, the Secretary shall authorize the Contractor to obtain interagency motor pool vehicles and related services for performance of any activities carried out under this Contract.

(11)    Federal Program Guidelines, Manuals or Policy Directives

Except as specifically provided in the Indian Self-Determination and Education Assistance Act (25 U.S.C. 450 et seq.) the Contractor is not required to abide by program guidelines, manuals, or policy directives of the Secretary, unless otherwise agreed to by the Contractor and the Secretary, or otherwise required by law.

(12)    Disputes

(A)    Third-Party Mediation Defined

6

DEFS.' EX. B 010

For the purposes of this contract, the term "third-party mediation" means a form of mediation whereby the Secretary and the Contractor nominate a third party who is not employed by or significantly involved with the Secretary of the Interior, the Secretary of Health and Human Services, or the Contractor, to serve as a third-party mediator to mediate disputes under this contract.

(B)    Alternative Procedures

In addition to, or an alternative to, remedies and procedures prescribed by Section 110 of the Indian Self-Determination and Education Assistance Act (25 U.S.C. 450m-1), the parties to this Contract may jointly—

(i) submit disputes under this contract to third-party mediation;

(ii)  submit the dispute to the adjudicatory body of the Contractor including the tribal court of the Contractor.

(iii) submit the dispute to mediation processes provided for under the laws, policies, or procedures of the Contractor; or

(iv)  use the administrative dispute resolution processes authorized in Subchapter IV of Chapter 5 of Title 5, United States Code.

(C)    Effect of Decisions

The Secretary shall be bound by decisions made pursuant to the processes set forth in subparagraph (B), except that the Secretary shall not be bound by any decision that significantly conflicts with the interest of Indians or the United States.

(13)    Administrative Procedures of Contractor

Pursuant to the Indian Civil Rights Act of 1968 (25 U.S.C. 1301 et seq.) the laws, policies, and procedures of the Contractor shall provide for administrative due process (or the equivalent of administrative due process) with respect to programs, services, functions, and activities that are provided by the Contractor pursuant to this contract.

(14)    Successor Annual Funding Agreement

(A)    In General

Negotiations for a successor annual funding agreement, provided for in subsection (f)(2) shall begin not later than 120 days prior to the conclusion of the preceding annual funding agreement.  Except as

7

DEFS.' EX. B 011

provided in Section 105(c)(2) of the Indian Self-Determination and Education Assistance Act (25 U.S.C. 450j(c)(2) the funding for each such successor annual funding agreement shall only be reduced pursuant to Section 106(b) of such Act (25 U.S.C. 450j-1(b)).

(B)    Information

The Secretary shall prepare and supply relevant information, and promptly comply with any request by the Contractor for information that the Contractor reasonably needs to determine the amount of funds that may be available for a successor annual funding agreement, as provided for in subsection (f)(2) of this Contract.

(15)    Contract Requirements; Approval by Secretary

(A)    In General

Except as provided in subparagraph (B) for the term of the Contract, section 2103 of the Revised Statutes (25 U.S.C. 81) and section 16 of the Act of June 18, 1934 (48 stat. 987, chapter 576), shall not apply to any contract entered into in connection with this contract.

(B)    Requirements

Each contract entered into by the Contractor with a third party in connection with performing the obligation of the Contractor under this contract shall--

(i) be in writing

(ii)    identify the interested parties, the authorities of such parties, and purposes of the contract;

(iii) state the work to be performed under the contract; and

(iv)   state the process for making any claim, the payments to be made, and the term of the Contract, which shall be fixed.

(c)    OBLIGATIONS OF THE CONTRACTOR

(1)    Contract Performance

Except as provided in subsection d(2), the Contractor shall perform the programs, services, functions, and activities as provided in the annual funding agreement under subsection f(2) of this contract.

(2)    Amount of Funds

The total amount of funds to be paid under this contract pursuant to Section 106 (a) shall be determined in an annual funding agreement

8

DEFS.' EX. B 012

entered into between the Secretary and the Contractor, which shall be incorporated into this contract.

(3)    Contracted Programs

Subject to the availability of appropriated funds, the Contractor shall administer the programs, services, functions and activities identified in this contract and funded through the annual funding agreement under section f(2).

(4)    Trust Services for Individual Indians

(A) In General

To the extent that the annual funding agreement provides funding for the delivery of trust services to individual Indians that were formerly provided by the Secretary, the Contractor shall maintain at least the same level of service as was previously provided by the Secretary, subject to the availability of appropriated funds for such services.

(B) Trust Services to Individual Indians

For the purposes of this paragraph only, the term "trust services for individual Indians" means only those services that pertain to land or financial management connected to individually held allotments.

(5)    Fair and Uniform Services

The Contractor shall provide services under this contract in fair and uniform manner and shall provide access to an administrative or judicial body empowered to adjudicate or otherwise resolve complaints, claims, and grievances brought by program beneficiaries against the Contractor arising out of the performance of the contract.

(d)    OBLIGATION OF THE UNITED STATES

(1)    Trust Responsibility

(A)    In General

The United States reaffirms its trust responsibility to the Menominee Indian Tribe of Wisconsin to protect and conserve the trust resources of the Indian tribes and of individual Indians.

(B)    Construction of the Contract

Nothing in this contract is intended to, nor shall be construed, to terminate, waive, modify, or reduce the trust responsibility of the United States to the tribes or individual Indians. The Secretary shall act in good faith in upholding said trust responsibility.

9

DEFS.' EX. B 013

(2)    Good Faith

To the extent that health programs are included this contract, and within available funds, the Secretary shall act in good faith in cooperating with the Contractor to achieve the goals set forth in Chapter 18 of Title 25, United States Code.

(3)    Program Retained

As specified in the annual funding agreement, the United States hereby retains the programs, services, functions, and activities with respect to the tribe(s) that are not specifically assumed by the Contractor in annual funding agreement under subsection f(2).

(e)    OTHER PROVISIONS

(1)    Designated Officials

Not later than the effective date of this contract, the United States shall provide to the Contractor, and the Contractor shall provide to the United States, a written designation of a senior official to serve as a representative for notices, proposed amendments to the contract, and other purposes for this contract.

(2)    Contract Modifications or Amendments

(A)    In General

Except as provided in subparagraph (B), no modification to this contract shall take effect unless such modification is made in the form of a written amendment to the contract, and the Contractor and the Secretary provide written consent for the modification.

(B)    Exception

The addition of supplement funds for programs, functions, and activities (or portions thereof) already included in the annual funding agreement under subsection (f)(2), and the reduction of funds pursuant to section 106(b)(2), shall not be subject to subparagraph (A).

(3)    Officials not to Benefit

No member of Congress, or resident commissioner, shall be admitted to any share or part of any contract executed pursuant to this contract, or to any benefit that may arise from such contract. This paragraph may not be construed to apply to any contract with a third party entered into under this contract if such contract is made with a corporation for general benefit of the corporation.

10

DEFS.' EX. B 014

(4)   Covenant Against Contingent Fees

The parties warrant that no person or selling agency has been employed
or retained to solicit or secure any contract executed pursuant to this
contract upon on agreement, or understanding for a commission
percentage, brokerage, or contingent fee, excepting bonafide employees
or bonafide established commercial or selling agencies maintained by the
Contractor for the purpose of securing business.

(f)   ATTACHMENTS

(1)   Approval of Contract

Unless previously furnished to the Secretary, the resolution of the
Menominee Indian Tribe authorizing the contracting of the programs,
services, functions, and activities identified in this contract is
attached to this contract as attachment 1.

(2)   Annual Funding Agreement

(A)   In General

The annual funding agreement under this contract shall only contain--

(i)   terms that identify the programs, services, functions, and
activities to be performed or administered, the general budget
category assigned, the funds to be provided, and the time and
method of payment; and

(ii)  such other provisions, including a brief description of the
programs, services, functions, and activities to be performed
(including those supported by financial resources other then
those provided by the Secretary), to which the parties agree.

(B)   Incorporation by Reference

The annual funding agreement is hereby incorporated in its entirety
in this contract and attached to this contract as attachment 2.

Dated This ___31 ST___ Day of _December_ , 1995.

Menominee Indian Tribe of Wisconsin

By _Betty Jo Warnick_
    (Designated Tribal Official)

11

DEFS.' EX. B 015

United States of America, Department of Health and
Human Services, Indian Health Service

By _____
Area Director, Bemidji Area Indian Health Services

By _____
Contracting Officer, Bemidji Area Indian Health Service

12

DEFS.' EX. B 016

# ATTACHMENT 2 (ANNUAL FUNDING AGREEMENT) TO MENOMINEE TRIBE'S 1996 SELF-DETERMINATION AGREEMENT WITH IHS CONTRACT # 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

# AFA EFFECTIVE DATES: JANUARY 1, 1996 – DECEMBER 31, 1996

DEFS.' EX. B 017

ATTACHMENT   2

TO INDIAN   SELF-DETERMINATION AGREEMENT

IHS CONTRACT NUMBER 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

ANNUAL FUNDING AGREEMENT

BETWEEN THE SECRETARY OF HEALTH AND HUMAN SERVICES

AND

THE MENOMINEE INDIAN TRIBE OF WISCONSIN



JANUARY  1, 1996 - DECEMBER 31, 1996

DEFS.' EX. B 018

Menominee Indian Tribe of Wisconsin                    <u>**ANNUAL FUNDING AGREEMENT '96**</u>

## Section 1 - Purpose

This Annual Funding Agreement is entered into by the <u>MENOMINEE INDIAN TRIBE OF WISCONSIN</u> (referred to in this agreement as Contractor) and the U.S. Department of Health and Human Services, Indian Health Service (referred to in this agreement as IHS) in accordance with Sec. 108 (25 USC 4501) (c) Section 1, (f)(2) and pursuant to the Self-Determination Model Agreement No. 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 dated January 1, 1996, under the provisions of Title 1 of P.L. 93-638, as amended.

## Section 2 - List of Programs, Functions, Services, and Activities to be Performed

The Contractor agrees to provide the programs, functions, services, and activities (PFSA) as consolidated under the general budget categories listed below and in accordance with the Program Standards listed in the Model Agreement:

I. Administrative Services

II. Ambulatory Services:
   A. Medical Services, including:
      1. Physicians
      2. Nurse Practitioner (NP)
      3. Pharmacy Services
      4. Laboratory Services
      5. Ambulatory Care Nursing
      6. Medical and Technical Relief Coverage including:
         Medical Director, Radiology Technicians, Dentists, Hospital Coverage-Physicians, Nutritionist, Psychotherapists.
      7. X-ray Services
   B. Dental Services (Direct and Contract Health)
   C. Audiology
   D. Clinic/Program Administration
   E. Contract Health Services (CHS). including Inpatient, Outpatient, and Optical.
   F. Patient Transportation Services
   G. Emergency Medical Services

III. Preventive Health Services:
   A. Dental Prevention Services
   B. Environmental Health and Sanitarian Services
   C. Public Health Nursing Services (CHNS)
   D. Nutrition Services
   E. Human Resource Center (HRC)
      [1] Mental Health and Social Services
   F. Healthy Heart Program

1

DEFS.' EX. B 019

Menominee Indian Tribe of Wisconsin                 ANNUAL FUNDING AGREEMENT '96

        G. Health Promotion Disease Prevention
        H. Aids Prevention and Aids Health Education
        I. Wellness
        J. Maternal Child Health/CHR
        K. Family Planning Services

**Section 3 – Funds to be Provided**

    The funding amounts available to the Contractor for the period of this annual funding agreement shall be as follows:

    a. <u>Budget Period 1/1/96 – 12/31/96</u>                 <u>Estimated FY'96 Funds</u>

| | | | | |
|---|---|---|---|---|
| H/C | 7560390 | J461151 | 6-39146.61 25.82 | $1,944,000 |
| CSC/Dir/25.81 | 7560390 | J461170 | 6-39846.61 25.81 | 152,100 |
| CSC/IDC/HIST | 7560390 | J461170 | 6-39846.61 25.85 | 319,230 |
| MH | 7560390 | J461169 | 6-39146.63 25.82 | 5,000 |
| CHS | 75-6/7-0390 | J46JP75 | 6-56046.66 25.82 | 1,002,400 |
| DENTAL | 7560390 | J461164 | 6-39146.62 25.82 | 39,900 |
| PHN (new) | 7560390 | J461171 | 6-39246.72 25.82 | 3,000 |
| | | | | $3,465,630 |

    Note: (1) BAO will withhold an additional $266,100 of H/C funds for C.O. detail of: MD, Colman $71,400; MD, Culhane $64,900; MD, Exner $74,500; M.D. Holcomb $55,300; for the period 10-1-95 thru 9-30-96.

           (2) The CSC IDC historical amount is $319,230 and is considered non-recurring and must be used for indirect cost only.

**Section 4 – Time and Method of Payment**

    The time and method of payment of funds to the Contractor for the operation and administration of the programs, functions, services, and activities identified under this agreement shall be as follows:

1. <u>As requested by the Tribe and authorized by section (a) (6)(B) or the Model Agreement,</u> for all programs of a recurring nature for which amounts have been determined prior to the beginning of the Annual Funding Agreement (AFA) Year <u>the Secretary shall provide a single lump sum payment as of the first day of the AFA Year</u> or as soon thereafter as practicable or reasonably possible.

2. In the event of a "Continuing Resolution" the Secretary will provide the maximum funding allowed.

2

DEFS.' EX. B 020

Menominee Indian Tribe of Wisconsin_____    ANNUAL FUNDING AGREEMENT '96

Section 5 - Brief Description of PFSA to be Provided

Programs, Services, Function, and Activities.  The Contractor shall operate
the following programs:

A. Administrative Services
1. Administration - The Menominee Indian Tribe and its delegate Socio-
   Economic Committee is responsible for overall operation of the Tribal
   comprehensive health program, which is under the administrative
   supervision of the Tribal Health Administrator and medical direction by
   the medical director.  Responsibilities include planning and developing
   organizational objectives, designing operational plans and establishing
   policy, allocating resources, organizing work processes, staffing,
   retaining human resources, directing, controlling, and monitoring
   organizational activities.

2. Medical Records - Maintains all outpatient health care records in POMR
   format, transcribes progress notes, handles record transfers to and from
   the Menominee Tribal Clinic, provides coding and pricing for all route
   slips, ensures patient records are maintained in a standardized format
   according to policy, processes, monitors, and submits ambulatory patient
   care data to appropriate IHS agency.  Ensures proper registration of all
   patients utilizing services at the clinic.

3. Billing - Maintains patient account information such as demographic and
   insurance coverage through patient registration, processes all service
   charges and reimbursements for care, tracks third party billings,
   provides management data for cash flow projections, utilizes and
   maintains a computer system for processing all billing components,
   maintains computer security, and provides periodic software upgrades.

4. Contract Health Services - A contract health service program is operated
   for all eligible individuals residing within the Menominee Tribal
   Clinic's service delivery area.  This includes procurement of health
   services not available at the clinic.  Clinic physicians make referrals
   to designated preferred health care providers.  A CHS policy and
   procedure manual defines department operations.

5. Maintenance and Housekeeping - Maintenance and housekeeping is
   responsible for the repair, maintenance and cleaning of the entire
   health care facility.

<u>3</u>

DEFS.' EX. B 021

Menominee Indian Tribe of Wisconsin

B. Direct Medical Care

1. Medical Services – Direct patient care consists of physician and nursing services. Medical care services are directed by an Medical Director who directs patient care at the outpatient clinic. The ambulatory nursing component consists of state licensed registered nurses (RNs) and licensed practical nurses (LPNS). Departmental operations are governed by the medical department's policy and procedure manual.

2. Laboratory Services – Two medical technologists and a laboratory aide provide laboratory services under the direct supervision of staff physicians. The laboratory performs a variety of diagnostic tests, including routine chemistry, urinalysis, hematology, bacteriology, coagulation, endocrinology, and immunology. Outside reference laboratories are utilized for specialized testing. An approved laboratory policy and procedure manual plan governs the laboratory operation.

3. Radiology Services – An x-ray technologist provides routine diagnostic x-rays of the musculoskeleton as ordered by staff physicians. Established protocols are defined in the radiology department's policy and procedure manual.

4. Pharmacy – The pharmacy department is staffed by three pharmacists and two pharmacy technicians. The pharmacy service promotes the rational use of pharmaceutical products within community health and patient care management plans; the correct dispensing, use and administration of pharmaceutical products by patients; clinical staff consultation and monitoring and off site pharmacy services monitoring. The pharmacy is responsible for obtaining pharmaceutical drugs from appropriate sources according to standard procedures. Dispensing, counseling and related services shall be provided on receipt of authorized prescriptions from approved health center and subcontract medical (off site) and dental providers. Department operations are defined in a pharmacy policy and procedure manual.

5. Women's Personal Health – The Women's Personal Health Program is staffed by a registered nurse and an outreach worker. Services offered include pregnancy testing, reproductive health, birthcontrol counseling, followup on sexually transmitted disease and abnormal pap smears, prenatal education, childbirth preparation classes, and post partum/postnatal services to women of all ages. The WPH program is a direct service program under this contract with funding support from contract income. Program direction and supervision is provided by the health administrator and designated staff.

6. Emergency Medical Services – The emergency medical services department provides twenty four hour emergency medical service to the reservation/county. It is staffed by state licensed emergency medical

<u>4</u>

DEFS.' EX. B 022

technicians. Levels of care are provided at the EMT Basic, EMT defibrillation and EMT advanced airway levels. An EMS policies and procedures manual governs the operation. The EMS program is a direct service program under this contract with funding support from contract income. Program direction and supervision is provided by the health director and designated staff.

C. Dental

1. Dental– The dental department is staffed by three dentists, a dental hygienist, five dental assistants and a dental receptionists. Program services encompass the total practice of general dentistry. Dental hygiene services including education and preventative planning activities are provided by a full time dental hygienist. The dental policy and procedures manual defines the scope of services.

D. Community Health

1. Environmental Health  –  An environmental health specialist (sanitarian) is employed to plan, organize, and direct a comprehensive program to identify and address environmental conditions which may effect the health of the Menominee Indian Reservation residents. These areas include, community injury control, water quality, waste management, food, celebrations, institutional environmental health, vector control, recreational sanitation, epidemiological investigations, emergency situations, promotion of tribal codes and ordinances, industrial hygiene, operation and maintenance activities, general administrative activities, annual environmental planning, construction, radon testing and mitigation.

2. Community Health Nursing Service – Community health nursing provides services in coordination with the staff physicians. The community health nurse incorporates into practice knowledge of clinical nursing, community and social organization, ecology, biological, psychological, and social sciences. The primary focus of community health nursing is the prevention of illness, the promotion and maintenance of health and the provision of needed therapeutic services. A policy and procedures manual defines department operations.

3. Human Resource Center – The HRC department is responsible for providing outpatient mental health services. Individual, family and group therapy is available for family difficulties, marital problems, separation and divorce, parent–child difficulties, depression, anxiety, suicidal thoughts or actions, and school behavior problems. The department is staffed by two masters level psychologists and two masters level clinical social workers. A departmental policy and procedures manual governs program operations.

DEFS.' EX. B 023

Menominee Indian Tribe of Wisconsin                    **ANNUAL FUNDING AGREEMENT '96**

4. Optical – The optical department is staffed by two contracted optometrists, licensed by the Wisconsin State Optometry Board of Examiners. The following services are provided: eye examinations, eye glasses and contact lens. A departmental policy and procedures manual defines program operations.

5. Nutrition – A registered dietician provides nutrition education and counseling services for the Menominee community.

6. Audiology – An audiologist consultant is contracted to provide a full range of audiology screening, testing and referral services for the Menominee community.

7. Healthy Heart – The healthy heart program is directed by a registered nurse and a health fitness instructor. The program is aimed at reducing the high prevalence of cardiovascular disease for the Menominee People. Prevention activities will be continued and new wellness programs will be developed to reduce the risk of cardiovascular disease of people of all ages (children, youth, and adults) that take place in multiple settings (schools, work sites, and community).

## Section 6 – Other Provisions to which Parties Agree

1. Reporting Requirements

   a. For each fiscal year which the Contractor receives or expends funds pursuant to P.L. 93-638, the Contractor shall submit to the Secretary a single agency audit report required by Chapter 75 of Title 31, United States Code.

   b. The Contractor shall make an annual report to the Indian people in fulfillment of the Sec. 5(c) of P.L. 93-638 requirement for reports and information to Indian people. This annual report will include the PFSA provided and the costs incurred. A copy of this report will also be provided to IHS.

   c. Resource Patient Management System (RPMS) (Automated)

      (1) Patient Registration
      (2) Patient Care Component (medical)
      (3) Patient Care Component (dental)
      (4) Patient Care Component (Pharmacy)
      (4) Contract Health Services (2.0)
      (5) Immunization Report
      (6) Community Health Activity Report (PHN)

6

DEFS.' EX. B 024

Menominee Indian Tribe of Wisconsin          **ANNUAL FUNDING AGREEMENT '96**

    d. Mental Health Report/Social Service System. Submit Quarterly to Area
       Mental Health Coordinator (Note: RPMS system being implemented MH/PCC)

    e. Environmental Health Reporting System (Manual)
       Submit to Area Chief Environmental Health Services Branch

    f. IHS Headquarters PFSA/Tribal Shares

          1. The initial FY'96 AFA does not include IHS Headquarter's
            PFSA/Tribal Shares Funding with the agreement that PFSA
            and related funds will be incorporated by amendment as the
            negotiations are completed and funding is made available
            to the Area Office.

          2. The IHS Headquarters PFSA/Tribal Share calculation
            shall be provided to the Menominee Tribe for
            consideration. It is understood that the IHS may not be
            able to contract the total calculated PFSA/Tribal
            Shares during FY'96. It is anticipated that
            negotiations and decisions regarding available
            PFSA/Tribal Shares will be completed within 90 days of
            the initial AFA effective date.

    g.    Bemidji Area PFSA/Tribal Shares

        1. The initial FY'96 AFA does not include Bemidji Area
          PFSA/Tribal Shares funding with the agreement that PFSA
          and related funds will be incorporated by amendment as
          these negotiations are completed.

        2. Subject to negotiations and Tribal concurrence, the
          Bemidji Area PFSA/Tribal Shares for FY'96 are based on
          the Bemidji Area Title I PFSA/Tribal Share calculations.
          It is understood that the Bemidji Area will not be able
          to contract the total calculated PFSA/Tribal Shares
          during FY'96. Area Office Shares funding is proposed at
          25% of calculated shares.

        3. Subject to Negotiations, the Bemidji Area proposes to
          retain 75% of the calculated PFSA/Tribal share amount of
          the Bemidji Area office and shall continue to provide the
          same level of service and support available to all Tribal
          operated programs under Title I.

        4. The calculated (Wisconsin Field Office) PFSA/Tribal Share
          of $37,064 is included in the GLITC Health Service Annual
          Funding Agreement for the period ending 9/31/96.

DEFS.' EX. B 025

Menominee Indian Tribe of Wisconsin                      **ANNUAL FUNDING AGREEMENT '96**

    h.    Other Retained PFSA/Tribal Shares

        1. Bio-med services calculated at $6,400 is retained for
          services provided by Area bio-med technician and Area
          bio-med equipment related support.

2. The Term of this Annual Funding Agreement shall be for the period
January 1, 1996 thru December 31, 1996.

    DATED THIS ___31ST___ DAY OF _December_ , 1995

        Menominee Indian Tribe of Wisconsin

    BY _____
          Designated Official

    UNITED STATES OF AMERICA, DEPARTMENT OF HEALTH AND
        HUMAN SERVICES, INDIAN HEALTH SERVICE

    BY _____
    Contracting Officer, Bemidji Area Office, Indian Health Service

DEFS.' EX. B 026

**MODIFICATION No. 5 to MENOMINEE'S
1996 AFA
CONTRACT No. 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
MODIFICATION EFFECTIVE DATES:
1/1/96-12/30/96**

DEFS.' EX. B 027

09/25/96  WED 08:35 FAX 1 218 ⎯⎯ 1512    OFF HEALTH PROG    ☒002

## ANNUAL FUNDING AGREEMENT MODIFICATION

AGREEMENT NO. 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                REQUISITION NO. 96-50-119B
MODIFICATION NO. 96-05                                    Page 1 of 2
EFFECTIVE:  January 1, 1996 - December 30, 1996

ISSUED BY:                               CONTRACTOR:

Indian Health Service                   Menominee Indian Tribe of Wisconsin
Bemidji Area Office                      P.O. Box 970
Room 211, Federal Building              Keshena, WI 54135
Bemidji, Minnesota 56601

AUTHORITY:  25 USC 450(g), P.L. 93-638, as Amended

A.    AFA No. 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 is hereby modified to increase the contract amount
      by $217,104 which reflects increases for: Bemidji Area Title I Shares
      ($50,343), Headquarters Title I Tribal Shares ($104,064), CHS Deferred
      Services ($3,500), M&I funding ($59,197) and non-recurring FY'96 CSC/IDC
      Shortfall ($ 30,000).

B.    Section 3, Funds to be Provided, of the AFA is revised to included the
      funding increase of $ 247,104.

      Section 3 – Funds to be Provided

      The funding amounts available to the Contractor for this annual funding
      agreement shall be as follows:

C.    ACCOUNTING AND APPROPRIATION DATA is changed to read as follows:

      Budget Period 1/1/96 – 12/31/96

| | | | | | |
|---|---|---|---|---|---|
| H/C | 7560390 J461151 | 6-39146.61 | 25.82 | 55.75 | $ 945,818(+67,941 +50,343) |
| H/C | 7560390 J461151 | 6-39146.61 | 25.82 | " | 1,987,100 |
| CSCDir | 7560390 J461170 | 6-39846.61 | 25.81 | " | 152,100 |
| CSC/IDC | 7560390 J461170 | 6-39846.61 | 25.85 | " | 349,230( 30,000) |
| HlthEdHQ | 7560390 J461162 | 6-39246.73 | 25.82 | " | 4,127( 4,127) |
| AlcHQ | 7560390 J461159 | 6-39146.64 | 25.82 | " | 11,588(+11,588) |
| MH | 7560390 J461169 | 6-39146.63 | 25.82 | " | 6,635(+ 1,535) |
| CHS 75-6/7-0390 | J46ZJ75 | 6-56046.66 | 25.82 | " | 1,011,293(+ 5,393 (+ 3,500) |
| CHR/HQ | 7560390 J461173 | 6-39246.74 | 25.82 | " | 7,638(+ 7,638) |
| DENTAL | 7560390 J461164 | 6-39146.62 | 25.82 | " | 47,924(+ 2,524) |
| PHN | 7560390 J461171 | 6-39246.72 | 25.82 | " | 6,418(+ 3,318) |
| M&I | 75X0391 J461167 | 6-29040.76 | 25.82 | " | 59,197(+59,197) |
| OEH/IPP | 75X0391 J461168 | 6-29246.77 | 25.82 | " | 3,100 |
| EH/EQUI | 75X0391 J461172 | 6-29646.71 | 25.82 | " | 128,941 |
| | | | | Total | $4,721,109(+247,104) |

DEFS.' EX. B 028

09/25/96   WED 08:36 FAX 1 218 75⌀ 3512      OFF HEALTH PROG                                    ☒003

Annual Funding Agreement 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                          **Page 2 of 2**
Modification No. 96-05

D.    The Model Agreement total amount is hereby increased by $ 247,104 from
      $4,474,005 to $4,721,109 by reason of this modification.

E.    Section 6-Other Provisions to Which Parties Agree of subject AFA is
      revised to add the following as i :

      i. Bemidji Area FY'96 PFSA/Tribal Shares

      1.  The Annual Funding Agreement is modified to incorporate Bemidji
          Area PFSA/Tribal Shares.  The tribe has accepted the Bemidji Area
          Office PFSA/Tribal Share calculations for Title I at 25% of the
          amount calculated for Area Office PFSA/Tribal Shares.  The
          resulting funding of $ 50,343 shall be used to augment and support
          Health Programs operations.

      2.  The AFA excludes $ 37,064 pro-rated share of the base field office
          portion of the Bemidji Area calculated PFSA/Tribal Shares for
          FY'96 Title I. Funding is included in the Great Lakes Inter-Tribal
          Council Field Office service contract for the period 10/1/95-
          9/30/96.

      j.  IHS Headquarters PFSA/Tribal Shares

          The Annual Funding Agreement is modified to incorporate programs,
          functions, services, and activities (PFSA) otherwise managed or
          operated by IHS Headquarters.  The tribe and health program will
          assume PFSA and related funding in the amount of $ 104,064
          identified in the FY'96 Title I spreadsheet.

F.    There are no other changes to this AFA by reason of this modification.


G.a. _____        G.b. _Betty Jo Wozniek_____
     **Contractor Name/Title (Optional)**          **Contractor**
                                                   **Signature and Date(Optional)**


H.a. _DENNIS MURPHY_____            H.b. _____ 9/24/96
     **Contracting Officer**                       **Contracting Officer**
                                                   **Signature and Date**

DEFS.' EX. B 029

# EXHIBIT C

# MENOMINEE TRIBE'S ATTACHMENT 2-97 TO IHS CONTRACT No. 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 AFA EFFECTIVE: 1/1/97 – 12/31/97

DEFS.' EX. C 001

ATTACHMENT 2-97

TO INDIAN SELF-DETERMINATION AGREEMENT

IHS CONTRACT NUMBER 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

ANNUAL FUNDING AGREEMENT

BETWEEN THE SECRETARY OF HEALTH AND HUMAN SERVICES

AND

THE MENOMINEE INDIAN TRIBE OF WISCONSIN



RECEIVED
1997 JAN 21 A 11: 08
CONTRACTING OFFICE
INDIAN HEALTH SERVICE

JANUARY 1, 1997 – DECEMBER 31, 1997

DEFS.' EX. C 002

ANNUAL FUNDING AGREEMENT

BETWEEN THE

MENOMINEE INDIAN TRIBE OF WISCONSIN

AND THE

DEPARTMENT OF HEALTH AND HUMAN SERVICES

JANUARY 1, 1997 - DECEMBER 31, 1997

CONTENTS

SECTION

1.   PURPOSE

2.   LIST OF PROGRAMS, FUNCTIONS, SERVICES, AND
     ACTIVITIES TO BE PERFORMED

3.   FUNDS TO BE PROVIDED

4.   TIME AND METHOD OF PAYMENT

5.   BRIEF DESCRIPTION OF PFSA'S TO BE PROVIDED

6.   OTHER PROVISIONS TO WHICH PARTIES AGREE


ATTACHMENT A - TRIBAL BUDGET

DEFS.' EX. C 003

Menominee Indian Tribe of Wisconsin                    Annual Funding Agreement '97

Section 1     Purpose

              This Annual Funding Agreement is entered into by the Menominee Indian Tribe
              of Wisconsin (referred to in this agreement as Contractor) and the U.S.
              Department of Health and Human Services, Indian Health Service (referred to in
              this agreement as IHS) in accordance with Sec. 108 (25 USC 4501) © Section 1,
              (f), (2) and pursuant to the Self-Determination Model Agreement No. 239-96-
              0030, dated January 1, 1996, under the provisions of Title I of P.L. 93-638, as
              amended.

Section 2     List of Programs, Functions, Services, and Activities to be Performed

              The Menominee Indian Tribe, hereinafter referred to as Contractor shall continue
              to administer and operate the Menominee Tribal Health Services Program on the
              Menominee Indian Reservation utilizing the tribal health facility at Keshena,
              Wisconsin.  The Menominee Health Center is fully accredited by the Joint
              Commission of Accreditation of Hospital Organizations (JCAHO).  The purpose
              of this comprehensive health service program is to provide high quality
              ambulatory medical, dental, community health services, and the administration
              thereof for eligible individuals residing within the target area.  The Contractor
              may also provide services to non-beneficiaries on a fee-for-service basis as
              authorized by IHS Manual 2-4.3 I (emergency cases) and IHS Manual 2-3.3 J
              (non-emergency cases).1.

              The Contractor agrees to provide the programs, functions, services, and activities
              (PFSA) as consolidated under the general budget categories listed below and in
              accordance with the Program Standards listed in the Model Agreement:

              A.     Administrative Services

              B.     Ambulatory Services:
                     1.     Medical Services, including:
                            a.     Physicians
                            b.     Nurse Practitioner (NP)
                            c.     Pharmacy Services
                            d.     Laboratory Services
                            e.     Ambulatory Care - Nursing
                            f.     Medical and Technical Relief Coverage including:
                                   Medical Director, Radiology Technicians, Dentists,
                                   Hospital Coverage-Physician, Nutritionist,
              Psychotherapists.
                     2.     Dental Services (Direct and Contract Health)
                     3.     Audiology

DEFS.' EX. C 004

Menominee Indian Tribe of Wisconsin                     Annual Funding Agreement '97

    4.     Clinic/Program Administration
    5.     Contract Health Services (CHS), including Inpatient, Outpatient, and Optical.
    6.     Patient Transportation Services
    7.     Emergency Medical Services

C.    Preventive Health Services:

    1.     Dental Prevention Services
    2.     Environmental Health and Sanitarian Services
    3.     Public Health Nursing Services (CHNS)
    4.     Nutrition Services
    5.     Human Resource Center (HRC)
          a.     Mental Health and Social Services
    6.     Healthy Heart Program
    7.     Health Promotion Disease Prevention
    8.     Aids Prevention and Aids Health Education
    9.     Wellness
    10.    Maternal Child Health/CHR
    11.    Family Planning Services

Section 3    Funds to be Provided

The funding amounts available to the Contractor for the period of this annual funding agreement shall be as follows:

a.    1/1/97 - 12/31/97        Estimated '97 Amount

| | | | | | | |
|---|---|---|---|---|---|---|
| H/C | 7570390 | J461151 | 7-39146.61 | 41.8B | 55.75 | $1,951,200 |
| DIR/CSC | 7570390 | J461170 | 7-39846.61 | 41.8A | 55.75 | 152,100 |
| IDC/CSC | 7570390 | J461170 | 7-39846.61 | 41.8E | 55.75 | 319,200 |
| MH | 7570390 | J461169 | 7-39146.63 | 41.8B | 55.75 | 5,100 |
| CHS | 75-7/8-0390 | J46ZK75 | 7-39146.66 | 41.8B | 55.75 | 1,002,400 |
| DEN | 7570390 | J461164 | 7-57046.66 | 41.8B | 55.75 | 39,900 |
| PHN | 7570390 | J461171 | 7-39246.72 | 41.8B | 55.75 | 3,000 |
| | | | TOTAL | | | $3,472,900 |

Note:  (1)    BAO will withhold $318,900 of H/C funds for C.O. detail of MD, Colman $57,000; MD, Culhane $86,000; MD, Exner $122,000; and, MD, Holcomb $53,900 for the period 10/1/96 thru 9/30/97.

          BAO will also withhold $8,700 for BIO-Med services.

DEFS.' EX. C 005

Menominee Indian Tribe of Wisconsin                    Annual Funding Agreement '97

      (2)     The CSC IDC historical amount is $319,200 and is considered non-recurring and must be used for indirect costs only.

Section 4    Time and Method of Payment

The time and method of payment of funds to the Contractor for the operation and administration of the programs, functions, services, and activities identified under this agreement shall be as follows:

1.    As requested by the Tribe and authorized by section (a)(6)(B) or the Model Agreement, for all programs of a recurring nature for which amounts have been determined prior to the beginning of the Annual Funding Agreement (AFA) Year the Secretary shall provide a single lump sum payment as of the first day of the AFA year or as soon thereafter as practicable or possible.

2.    In the event of a "Continuing Resolution", the Secretary will provide the maximum funding allowed.

Section 5    Brief Description of PFSA's to be Provided

Programs, Functions, Services and Activities. The Contractor shall operate the following programs:

1.    Administrative Services

    a.    Administration - The Menominee Indian Tribe and its delegate Socio-Economic Committee is responsible for overall operation of the tribal comprehensive health program, which is under the administrative supervision of the Tribal Health Administrator and medical direction by the Medical Director. Responsibilities include planning and developing organization objectives, designing operational plans and establishing policy, allocating resources, organizing work processes, staffing, retaining human resources, directing, controlling, and monitoring organizational activities.

    b.    Medical Records - Maintains all outpatient health care records in POMR format, transcribes progress notes, handles record transfers to and from the Menominee Tribal Clinic, provides coding and pricing for all route slips, ensures patient records are maintained in a standardized format according to policy, processes, monitors, and submits ambulatory patient care data to appropriate IHS agency. Ensures proper registration of all patients utilizing services at the

DEFS.' EX. C 006

clinic.

c.    Billing - Maintains patient account information such as demographic and insurance coverage through patient registration, processes all service charges and reimbursements for care, tracks third party billings, provides management data for cash flow projections, utilizes and maintains a computer system for processing all billing components, maintains computer security, and provides periodic software upgrades.

d.    Contract Health Services - A contract health services program is operated for all eligible individuals residing within the Menominee Tribal Clinic's service delivery area. This includes procurement of health services not available at the clinic. Clinic physicians make referrals to designated preferred health care providers. A CHS policy and procedure manual defines department operations.

e.    Maintenance and Housekeeping – Maintenance and housekeeping is responsible for the repair, maintenance and cleaning of the entire health care facility.

2.    Direct Medical Care

a.    Medical Services - Direct patient care consists of physician and nursing services. Medical care services are directed by an Medical Director who directs patient care at the outpatient clinic. The ambulatory nursing component consists of state licensed registered nurses (RNS) and licensed practical nurses (LPNs). Departmental operations are governed by the medical department's policy and procedures manual.

b.    Laboratory Services - Two medical technologists and a laboratory aide provide laboratory services under the direct supervision of staff physicians. The laboratory performs a variety of diagnostic tests, including routine chemistry, urinalysis, hematology, bacteriology, coagulation, endocrinology, and immunology. Outside reference laboratories are utilized for specialized testing. An approved laboratory policy and procedures manual plan governs the laboratory operation.

c.    Radiology Services - An x-ray technologist provides routine diagnostic x-rays of the musculoskeleton as ordered by staff physicians. Established protocols are defined in the radiology

department's policy and procedures manual.

d.   Pharmacy – The pharmacy department is staffed by three
     pharmacists and two pharmacy technicians. The pharmacy
     services promotes the rational use of pharmaceutical products
     within community health and patient care management plans; the
     correct dispensing, use and administration of pharmaceutical
     products by patients; clinical staff consultation and monitoring and
     off site pharmacy services monitoring. The pharmacy is
     responsible for obtaining pharmaceutical drugs from appropriate
     sources according to standard procedures. Dispensing, counseling
     and related services shall be provided on receipt of authorized
     prescriptions form approved health center and subcontract medical
     (off site) and dental providers. Department operations are defined
     in a pharmacy policy and procedures manual.

e.   Women's Personal Health – The Women's Personal Health
     Program is staffed by a registered nurse and an outreach worker.
     Services offered include pregnancy testing, reproductive health,
     birth control counseling, follow up on sexually transmitted disease
     and abnormal pap smears, prenatal education, childbirth
     preparation classes, and post partum/postnatal services to women
     of all ages. The WPH program is a direct services program under
     this contract with funding support from contract income. Program
     direction and supervision is provided by the health administrator
     and designated staff.

f.   Emergency Medical Services – the emergency medical services
     department provides twenty four hour emergency medical services
     to the reservation/county. It is staffed by state licensed emergency
     medical technicians. Levels of care are provided at the EMT
     Basic, EMT defibrillation and EMT advanced airway levels. An
     EMS policies and procedures manual governs the operation. The
     EMS program is a direct services program under this contract with
     funding support from contract income. Program direction and
     supervision is provided by the health director and designated staff.

3.   Dental

a.   Dental – The dental department is staffed by three dentists, a dental
     hygienist, five dental assistants and a dental receptionist. Program
     services encompass the total practice of general dentistry. Dental
     hygiene services including education and preventative planning

DEFS.' EX. C 008

activities are provided by a full time dental hygienist. The dental policy and procedures manual defines the scope of services.

4.    Community Health

a.    Environmental Health - An environmental health specialist (sanitarian) is employed to plan, organize, and direct a comprehensive program to identify and address environmental conditions which may effect the health of the Menominee Indian Reservation residents. These areas include, community injury control, water quality, waste management, food, celebrations, institutional environmental health, vector control, recreational sanitation, epidemiological investigations, emergency situations, promotion of tribal codes and ordinances, industrial hygiene, operation and maintenance activities, general administrative activities, annual environmental planning, construction, radon testing and mitigation.

b.    Community Health Nursing Services - Community Health Nursing provides services in coordination with the staff physicians. The community health nurse incorporates into practice knowledge of clinical nursing, community and social organization, ecology, biological, psychological, and social sciences. The primary focus of community health nursing is the prevention of illness, the promotion and maintenance of health and the provision of needed therapeutic services. A policy and procedures manual defines department operations.

c.    Human Resource Center - The HRC department is responsible for providing outpatient mental health services. Individual, family and group therapy is available for family difficulties, marital problems, separation and divorce, parent-child difficulties, depression, anxiety, suicidal thoughts or actions, and school behavior problems. The department is staffed by two masters level psychologists and two masters level clinical social workers. A departmental policy and procedures manual governs program operations.

d.    Optical - The optical department is staffed by two contracted optometrists, licensed by the Wisconsin State Optometry Board of Examiners. The following services are provided: eye examinations, eye glasses and contact lens. A departmental policy and procedures manual defines program operations.

DEFS.' EX. C 009

<u>Menominee Indian Tribe of Wisconsin</u>                    <u>Annual Funding Agreement '97</u>

    e.    Nutrition - A registered dietician provides nutrition education and counseling services for the Menominee community.

    f.    Audiology - An audiologist consultant is contracted to provide a full range of audiology screening, testing and referral services for the Menominee community.

    g.    Healthy Heart - The healthy heart program is directed by a registered nurse and a health fitness instructor. The program is aimed at reducing the high prevalence of cardiovascular disease for the Menominee people. Prevention activities will be continued and new wellness programs will be developed to reduce the risk of cardiovascular disease of people of all ages (children, youth, and adults) that take place in multiple settings (schools, work sites, and community).

**Section 6**    <u>Other Provisions to which Parties Agree</u>

1.    Reporting Requirements

    a.    For each fiscal year which the Contractor receives or expends funds pursuant to P.L. 98-638, the Contractor shall submit to the Secretary a single agency audit report required by Chapter 75 of Title 31, United States Code.

    b.    The Contractor shall make an annual report to the Indian people in fulfillment of the Sec. 5 © of P.L. 93-638 requirement for reports and information to Indian people. This annual report will include the PFSAs provided and the costs incurred. A copy of this report will also be provided to IHS.

    c.    Resource Patient Management System (RPMS)(Automated)

        (1)    Patient Registration
        (2)    Patient Care Component (medical)
        (3)    Patient Care Component(dental)
        (4)    Patient Care Component(Pharmacy)
        (5)    Contract Health Services (2.0)
        (6)    Immunization Report
        (7)    Community Health Activity Report (PHN)

    d.    Mental Health Report/Social Service System. Submit Quarterly to Area Mental Health Coordinator (Note: RPMS) system being

DEFS.' EX. C 010

<u>Menominee Indian Tribe of Wisconsin</u>                    <u>Annual Funding Agreement '97</u>

implemented (MH/PCC)

    e.    Environmental Health Reporting System (Manual). Submit to Area Chief Environmental Health Services Branch.

2.    IHS Headquarters PFSA/Tribal Shares

    a.    The initial FY'97 AFA does not include IHS Headquarter's PFSA/Tribal Shares funding with the agreement that PFSA and related funds will be incorporated by amendment as the negotiations are completed and funding is made available to the Area Office.

    b.    The IHS Headquarters PFSA/Tribal Shares calculation shall be provided to the Menominee Tribe for consideration. It is understood that the IHS may not be able to contract the total calculated PFSA/Tribal Shares during FY'97. It is anticipated that negotiations and decisions regarding available PFSA/Tribal Shares will be completed within 90 days of the initial AFA effective date.

3.    Bemidji Area PFSA/Tribal Shares

    a.    The initial FY'97 AFA does not include Bemidji Area PFSA/Tribal Shares funding with the agreement that PFSA and related funds will be incorporated by modification as these negotiations are completed.

    b.    Subject to negotiations and Tribal concurrence, the Bemidji Area PFSA/Tribal Shares for FY'97 are based on the Bemidji Area Title I PFSA/Tribal Shares calculations. It is understood that the Bemidji Area will not be able to contract the total calculated PFSA/Tribal Shares during FY'97. Area Office shares funding is proposed at 60% of calculated shares.

    c.    Subject to negotiations, the Bemidji Area proposes to retain 40% of the calculated PFSA/Tribal Shares amount of the Bemidji Area Office and shall continue to provide the same level of service and support available to all Tribal operated programs under Title I.

    d.    The calculated (Wisconsin Field Office) PFSA/Tribal Shares of $37,064 is included in the GLITC Health Services Annual Funding Agreement for the period ending 9/30/97.

DEFS.' EX. C 011

<u>Menominee Indian Tribe of Wisconsin</u>                <u>Annual Funding Agreement '97</u>

    e.    Other Retained PFSA/Tribal Shares

        (1)    Bio-med services calculated at $8,700 is retained for services provided by Area bio-med technician and Area bio-med equipment related support.

4.    The term of this Annual Funding Agreement shall be for the period January 1, 1997 thru December 31, 1997.

5.    TORT Claims Coverage

    a.    For purposes of Federal Tort Claims Act Coverage, the contractor and its employees (including individuals performing personal services contracts with the contractor to provide health care services) are deemed to employees of the Federal government while performing work under this contract. This status is not changed by the source of the funds used by the contractor to pay the employee's salary and benefits unless the employee receives additional compensation for performing covered services from anyone other than the contractor.

    b.    Under this contract, the contractor's employee may be required as a condition of employment to provide health services to non-IHS beneficiaries in order to meet contractual obligations. These services may be provided in either contractor or non-contractor facilities. The employee's status for Federal Tort Claims Act purpose is not affected.

6.    Program Income, Including Medicare/Medicaid

All Medicare, Medicaid or other program income received by the Tribe shall be treated as additional supplemental funding to that negotiated in the Annual Funding Agreement and the Tribe may retain all such income, pursuant to section 106 (m) of the Act. Medicare/Medicaid collections of the Tribe under Title IV of Public Law 94-437, as amended, shall be used by the Tribe in accordance with any applicable statutory restrictions on the use of such funds. The Tribe is obligated to seek third party reimbursement as provided by federal law.

7.    Eligiblity for Services

In determining eligibility for services the Tribe shall comply with applicable eligibility provisions set forth in the Indian Health Care

DEFS.' EX. C 012

<u>Menominee Indian Tribe of Wisconsin</u>                <u>Annual Funding Agreement '97</u>

Improvement Act, as amended, other statutory law and applicable
regulations.

DATED THIS _17^{Th}_ DAY OF _January_, 1997

MENOMINEE INDIAN TRIBE OF WISCONSIN

BY _Betty Jo Wozniak_
            Designated Official

UNITED STATES OF AMERICA, DEPARTMENT OF HEALTH AND
HUMAN SERVICES, INDIAN HEALTH SERVICE

BY _____
            Contracting Officer
Bemidji Area Office, Indian Health Service

DEFS.' EX. C 013

**AFA MODIFICATION No. 14 to IHS
CONTRACT No. 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
EFFECTIVE: 1/1/96-12/31/97**

DEFS.' EX. C 014

ANNUAL FUNDING AGREEMENT MODIFICATION

AGREEMENT NO. 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                          PAGE 1 OF 2
MODIFICATION NO. 97-14                             REQ. NO.:        97-50-1176
EFFECTIVE:   JANUARY 1, 1996 - DECEMBER 31, 1997                    09/09/97

ISSUED BY:                                  CONTRACTOR:
INDIAN HEALTH SERVICE                       MENOMINEE INDIAN TRIBE OF
BEMIDJI AREA OFFICE                         WISCONSIN
ROOM 211, FEDERAL BUILDING                  PO BOX 910
BEMIDJI, MN  56601-3060                     KESHENA, WI  54135-0910

AUTHORITY:  25 USC 450(g), P.L. 93-638,  as Amended

A.  Annual Funding Agreement No. 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 is hereby modified to add the FY'97 non-recurring
    H/C Director's Health Emergency funds in the amount of $16,660, and non-recurring FY'97
    Indirect Cost Shortfall funds in the amount of $861.
    Total increase to contract of $17,461.

    In order to accomplish this action, the following contractual change is made:

1.  Section 3, Funds to be Provided, of the FY'97 Annual Funding Agreement is revised as follows:

    Section 3 - Funds to be Provided

    The funding amounts available to the Contractor for the period of this annual funding agreement
    shall be as follows:

| H/C  Area | 7570390 | J461151 | 7-39146.61 | 55.75 | 41.8B | 98,166 | |
|-----------|---------|---------|------------|-------|-------|--------|--|
| H/C | 7570390 | J461151 | 7-39146.61 | 55.75 | 41.8B | 2,043,760 | (+16,660) |
| DIR/CSC | 7570390 | J461170 | 7-39846.61 | 55.75 | 41.8A | 152,100 | |
| IDC/CSC | 7570390 | J461170 | 7-39846.61 | 55.75 | 41.8E | 320,061 | (+    861) |
| MH | 7570390 | J461169 | 7-39146.63 | 55.75 | 41.8B | 6,100 | |
| CHS | 757/80390 | J46ZK75 | 7-57046.66 | 55.75 | 41.8B | 1,022,550 | |
| DEN | 7570390 | J461164 | 7-39146.62 | 55.75 | 41.8B | 48,300 | |
| PHN | 7570390 | J461171 | 7-39246.72 | 55.75 | 41.8B | 10,360 | |
| M&I | 75X0391 | J461167 | 7-29040.76 | 55.75 | 41.8B | 77,260 | |
| OEH Eq. | 75X0391 | J461172 | 7-29646.71 | 55.75 | 41.8B | 48,933 | |
| IPP | 75X0391 | J461168 | 7-29246.77 | 55.75 | 41.8B | 4,708 | |
| CHEF | 76X0390 | J465175 | 7-41146.51 | 55.75 | 41.8B | 25,675 | |
| HE | 7570390 | J461162 | 7-39246.73 | 55.75 | 41.8B | 530 | |
| Dir Ops | 7570390 | J461173 | 7-39646.80 | 55.75 | 41.8B | 1,700 | |
| ALC | 7570390 | J461166 | 7-39146.64 | 55.75 | 41.8B | 2,000 | |

|  |  |  |  |
|--|--|--|--|
|  | PR - Certification of Funds | Sub-total | 3,862,203  (+17,521) |
| Concur: | rha        Sept 6, 1997 | | |
| Budget | men97m14 | | |

DEFS.' EX. C 015

ANNUAL FUNDING AGREEMENT MODIFICATION

AFA No. 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                                                         Page 2 of 2
Modification No. 97-14

FY'97 Headquarters Shares

| | | | | | | |
|---|---|---|---|---|---|---|
| H/C | 7,570,390 | J461151 | 7-39146.61 | 55.75 | 41.8B | 40,735 |
| DEN | 7,570,390 | J461164 | 7-39146.62 | 55.75 | 41.8B | 2,975 |
| MH | 7,570,390 | J461169 | 7-39146.63 | 55.75 | 41.8B | 3,037 |
| ALC 437 | 7,570,390 | J461159 | 7-39146.64 | 55.75 | 41.8B | 10,218 |
| PHN | 7,570,390 | J461171 | 7-39246.72 | 55.75 | 41.8B | 2,478 |
| Hlth Ed | 7,570,390 | J461162 | 7-39246.73 | 55.75 | 41.8B | 3,081 |
| CHR | 7,570,390 | J461174 | 7-39246.74 | 55.75 | 41.8B | 6,537 |
| Dir.Ops. | 7,570,390 | J461173 | 7-39646.80 | 55.75 | 41.8B | 18,653 |
| CHS/Res | 757/80390 | J46ZK75 | 7-57046.66 | 55.75 | 41.8B | 4,028 |
| | | | | | HQ'97 | 91,742 |
| | | | SUBTOTAL FY 97 | | | $3,953,945 |

FY'98 Headquarters Shares (October 1 to December 31, 1997)

| | | | | | | |
|---|---|---|---|---|---|---|
| H/C | 7,580,390 | J461151 | 8-39146.61 | 55.75 | 41.8B | 13,579 |
| DEN | 7,580,390 | J461164 | 8-39146.62 | 55.75 | 41.8B | 991 |
| MH | 7,580,390 | J461169 | 8-39146.63 | 55.75 | 41.8B | 1,012 |
| ALC 437 | 7,580,390 | J461159 | 8-39146.64 | 55.75 | 41.8B | 3,405 |
| PHN | 7,580,390 | J461171 | 8-39246.72 | 55.75 | 41.8B | 826 |
| Hlth Ed | 7,580,390 | J461162 | 8-39246.73 | 55.75 | 41.8B | 1,027 |
| CHR | 7,580,390 | J461174 | 8-39246.74 | 55.75 | 41.8B | 2,180 |
| Dir.Ops. | 7,580,390 | J460073 | 8-39646.80 | 55.75 | 41.8B | 6,218 |
| CHS/Res | 758/90390 | J46ZQ75 | 8-58046.66 | 55.75 | 41.8B | 1,342 |
| | | | | | HQ'98 | 30,580 |
| | | | TOTAL AFA Est. Funding | | | $3,984,525 |

Note: the FY'98 HQ Shares are subject to the
availability of funds, will be disbused upon the '98
Congressional allowances

B.  AFA No. 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 is hereby increased by $17,521 from $3,967,004 to
$3,984,525 as a result of this modification.

C.  The funding period remains unchanged ending December 31, 1997.

D.  There are no other changes as a result of this modification.

E.  a. Dennis Murphy                  b. _[signature]_  9/9/97
    **Contracting Officer**        **Contracting Officer Signature    Date**

DEFS.' EX. C 016

# EXHIBIT D

# MENOMINEE TRIBE'S 1998 AFA
## 1/1/98-12/31/98
## ATTACHMENT 2-98 TO
## IHS CONTRACT No. 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

DEFS.' EX. D 001

ATTACHMENT 2-98

TO INDIAN SELF-DETERMINATION AGREEMENT

IHS CONTRACT NUMBER 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

ANNUAL FUNDING AGREEMENT

BETWEEN THE SECRETARY OF HEALTH AND HUMAN SERVICES

AND

THE MENOMINEE INDIAN TRIBE OF WISCONSIN



JANUARY 1, 1998 – DECEMBER 31, 1998

DEFS.' EX. D 002

ANNUAL FUNDING AGREEMENT

BETWEEN THE

MENOMINEE INDIAN TRIBE OF WISCONSIN

AND THE

DEPARTMENT OF HEALTH AND HUMAN SERVICES

JANUARY 1, 1998 - DECEMBER 31, 1998

CONTENTS

SECTION

1.    PURPOSE

2.    LIST OF PROGRAMS, FUNCTIONS, SERVICES, AND
      ACTIVITIES TO BE PERFORMED

3.    FUNDS TO BE PROVIDED

4.    TIME AND METHOD OF PAYMENT

5.    BRIEF DESCRIPTION OF PFSA'S TO BE PROVIDED

6.    OTHER PROVISIONS TO WHICH PARTIES AGREE


ATTACHMENT A  - TRIBAL BUDGET

DEFS.' EX. D 003

MENOMINEE INDIAN TRIBE OF WISCONSIN                AFA No.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, CY'98

Section 1    Purpose

This Annual Funding Agreement is entered into by the Menominee Indian Tribe of Wisconsin (referred to in this agreement as Contractor) and the U.S. Department of Health and Human Services, Indian Health Service (referred to in this agreement as IHS) in accordance with Sec. 108 (25 USC 4501) © Section 1, (f), (2) and pursuant to the Self-Determination Model Agreement No. 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, dated January 1, 1996, under the provisions of Title I of P.L. 93-638, as amended.

Section 2    List of Programs, Functions, Services, and Activities to be Performed

The Menominee Indian Tribe, hereinafter referred to as Contractor shall continue to administer and operate the Menominee Tribal Health Services Program on the Menominee Indian Reservation utilizing the tribal health facility at Keshena, Wisconsin.  The Menominee Health Center is fully accredited by the Joint Commission of Accreditation of Hospital Organizations (JCAHO).  The purpose of this comprehensive health service program is to provide high quality ambulatory medical, dental, community health services, and the administration thereof for eligible individuals residing within the target area.  The Contractor may also provide services to non-beneficiaries on a fee-for-service basis as authorized by IHS Manual 2-4.3 I (emergency cases) and IHS Manual 2-3.3 J (non-emergency cases).1.

The Contractor agrees to provide the programs, functions, services, and activities (PFSA) as consolidated under the general budget categories listed below and in accordance with the Program Standards listed in the Model Agreement:

A.    Administrative Services
    1.    Administration
    2.    Medical Records
    3.    Billing
    4.    CHS
    5.    Housekeeping/Maintenance
B.    Ambulatory Services:
    1.    Medical Services, including:
        a.    Physicians
        b.    Nurse Practitioner (NP)
        c.    Physician Assistant
        d.    Pharmacy Services
        e.    Laboratory Services
        f.    Ambulatory Care - Nursing

DEFS.' EX. D 004

MENOMINEE INDIAN TRIBE OF WISCONSIN          AFA No.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, CY'98

       g.    Medical and Technical Relief Coverage including:
           Medical Director, Radiology Technicians, Dentists,
           Hospital Coverage-Physician, Nutritionist,
           Psychotherapists.

2. Dental Services (Direct and Contract Health)
3. Audiology
4. Clinic/Program Administration
5. Contract Health Services (CHS), including Inpatient, Outpatient, and Optical.
6. Patient Transportation Services
7. Emergency Medical Services

C. Preventive Health Services:

1. Dental Prevention Services
2. Environmental Health and Sanitarian Services
3. Public Health Nursing Services (CHNS)
4. Nutrition Services
5. Mental Health
6. Wellness Program
7. Health Promotion Disease Prevention
8. Aids Prevention and Aids Health Education
9. Maternal Child Health/CHR
10. Family Planning Services

Section 3    Funds to be Provided

a. The funding amounts available to the Contractor for the period of this annual funding agreement shall be as follows:

| 1/1/98 - 12/31/98 | | | | | | Estimated '98 Amount |
|---|---|---|---|---|---|---|
| H/C | 7580390 | J461151 | 8-39146.61 | 41.8B | 55.75 | $2,051,049 |
| DIR/CSC | 7580390 | J461170 | 8-39846.61 | 41.8A | 55.75 | 152,100 |
| IDC/CSC | 7580390 | J461170 | 8-39846.61 | 41.8E | 55.75 | 319,200 |
| MH. | 7580390 | J461169 | 8-39146.63 | 41.8B | 55.75 | 6,100 |
| CHS | 75-8/9-0390 | J46ZQ75 | 8-39146.66 | 41.8B | 55.75 | 1,013,250 |
| DEN | 7580390 | J461164 | 8-57046.66 | 41.8B | 55.75 | 48,300 |
| PHN | 7580390 | J461171 | 8-39246.72 | 41.8B | 55.75 | 8,000 |
| HE | 7580390 | J461162 | 8-39246.73 | 41.8B | 55.75 | 180 |
| DIR OPS | 7580390 | J461173 | 8-39646.80 | 41.8B | 55.75 | 1,700 |
| OEH Equip | 75X0391 | J461172 | 8-29646.61 | 41.8B | 55.75 | 51,344 |
| | | | | | Total | 3,780,694 |

DEFS.' EX. D 005

MENOMINEE INDIAN TRIBE OF WISCONSIN          AFA No.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, CY'98

Note: (1)  BAO will withhold $248,900 of H/C funds for C.O. detail of MD,
           Culhane $118,050; and, MD, Exner $130,850; for the period
           10/1/97 thru 9/30/98. Amount includes $80,000 for special pay,
           subject to adjustment after actual special pay is determined. $600
           will be charged for the IPA/MOAs.

           BAO will also withhold $8,480 for BIO-Med services.

(2)  The CSC IDC historical amount is $319,200 and is considered
     non-recurring and must be used for indirect costs only.

FY'98 Area Tribal Shares @100%

| | | | | | | |
|---|---|---|---|---|---|---|
| H/C | 7580390 | J461151 | 8-39146.61 | 55.75 | 41.8B | 54,782 |
| DEN | 7580390 | J461164 | 8-39146.62 | 55.75 | 41.8B | 14,782 |
| MH | 7580390 | J461169 | 8-39146.63 | 55.75 | 41.8B | 34,782 |
| HE | 7580390 | J461162 | 8-39246.73 | 55.75 | 41.8B | 34,781 |
| | | | | | Total | $139,127 |

FY'98 Headquarters Tribal Shares @75% for the period 1/1/98 to 9/30/98

| | | | | | | |
|---|---|---|---|---|---|---|
| H/C | 7580390 | J461151 | 8-39146.61 | 55.75 | 41.8B | 54,246 |
| DEN | 7580390 | J461164 | 8-39146.62 | 55.75 | 41.8B | 3,337 |
| MH | 7580390 | J461169 | 8-39146.63 | 55.75 | 41.8B | 4,506 |
| PHN | 7580390 | J461171 | 8-39246.72 | 55.75 | 41.8B | 2,478 |
| HE | 7580390 | J461162 | 8-39246.73 | 55.75 | 41.8B | 3,081 |
| CHR | 7580390 | J461174 | 8-39246.74 | 55.75 | 41.8B | 6,538 |
| DIR OPS | 7580390 | J461173 | 8-39646.80 | 55.75 | 41.8B | 32,441 |
| CHS/Res | 758/90390 | J46ZQ75 | 8-58046.66 | 55.75 | 41.8B | 4,028 |
| | | | | | Total | 110,655 |

FY'99 H.Q. Tribal Shares @25% for the period 10/1/98 to 12/31/98

| | | | | | | |
|---|---|---|---|---|---|---|
| H/C | 7590390 | J461151 | 9-39146.61 | 55.75 | 41.8B | 18,082 |
| DEN | 7590390 | J461164 | 9-39146.62 | 55.75 | 41.8B | 1,112 |
| MH | 7590390 | J461169 | 9-39146.63 | 55.75 | 41.8B | 1,502 |
| PHN | 7590390 | J461171 | 9-39246.72 | 55.75 | 41.8B | 826 |
| HE | 7590390 | J461162 | 9-39246.73 | 55.75 | 41.8B | 1,027 |
| CHR | 7590390 | J461174 | 9-39246.74 | 55.75 | 41.8B | 2,180 |
| DIR OPS | 7590390 | J461173 | 9-39646.80 | 55.75 | 41.8B | 10,814 |
| CHS/Res | 759/00390 | J46Z 75 | 9-58046.66 | 55.75 | 41.8B | 1,343 |
| | | | | | Total | 36,886 |

Total Contract $4,067,362

DEFS.' EX. D 006

MENOMINEE INDIAN TRIBE OF WISCONSIN          AFA No.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, CY'98

Headquarters Tribal Shares are pro-rated for calendar year tribes @ 75/25. The FY'99 HQ shares are subject to the availability of funds and will be disbursed based upon the FY'99 congressional appropriations.

Section 4     Time and Method of Payment

The time and method of payment of funds to the Contractor for the operation and administration of the programs, functions, services, and activities identified under this agreement shall be as follows:

1. As requested by the Tribe and authorized by section (a)(6)(B) or the Model Agreement, for all programs of a recurring nature for which amounts have been determined prior to the beginning of the Annual Funding Agreement (AFA) Year the Secretary shall provide a single lump sum payment as of the first day of the AFA year or as soon thereafter as practicable or possible.

2. In the event of a "Continuing Resolution", the Secretary will provide the maximum funding allowed.

Section 5     Brief Description of PFSA's to be Provided

Programs, Functions, Services and Activities. The Contractor shall operate the following programs:

1. Administrative Services

    a. Administration – The Menominee Indian Tribe and its delegate Health Committee is responsible for overall operation of the tribal comprehensive health program, which is under the administrative supervision of the Tribal Health Administrator and medical direction by the Medical Director. Responsibilities include planning and developing organization objectives, designing operational plans and establishing policy, allocating resources, organizing work processes, staffing, retaining human resources, directing, controlling, and monitoring organizational activities.

    b. Medical Records – Maintains all outpatient health care records in POMR format, transcribes progress notes, handles record transfers to and from the Menominee Tribal Clinic, provides coding and pricing for all route slips, ensures patient records are maintained in a standardized format according to policy, processes, monitors, and submits ambulatory patient care data to appropriate IHS agency.

DEFS.' EX. D 007

Ensures proper registration of all patients utilizing services at the clinic.

c.   Billing - Maintains patient account information such as demographic and insurance coverage through patient registration, processes all service charges and reimbursements for care, tracks third party billings, provides management data for cash flow projections, utilizes and maintains a computer system for processing all billing components, maintains computer security, and provides periodic software upgrades.

d.   Contract Health Services - A contract health services program is operated for all eligible individuals residing within the Menominee Tribal Clinic's service delivery area. This includes procurement of health services not available at the clinic. Clinic physicians make referrals to designated preferred health care providers. A CHS policy and procedure manual defines department operations.

e.   Maintenance and Housekeeping - Maintenance and housekeeping is responsible for the repair, maintenance and cleaning of the entire health care facility.

2.   Direct Medical Care

a.   Medical Services - Direct patient care consists of physician, mid-level practitioner including physician assistant, nurse practitioner, and nursing services. Medical care services are directed by an Medical Director who directs patient care at the outpatient clinic. The ambulatory nursing component consists of state licensed registered nurses (RNS) and licensed practical nurses (LPNs). Departmental operations are governed by the medical department's policy and procedures manual.

b.   Laboratory Services - Two medical technologists and a laboratory aide provide laboratory services under the direct supervision of staff physicians. The laboratory performs a variety of diagnostic tests, including routine chemistry, urinalysis, hematology, bacteriology, coagulation, endocrinology, and immunology. Outside reference laboratories are utilized for specialized testing. An approved laboratory policy and procedures manual plan governs the laboratory operation.

c.   Radiology Services - An x-ray technologist provides routine

DEFS.' EX. D 008

diagnostic x-rays of the musculoskeleton as ordered by staff physicians. Established protocols are defined in the radiology department's policy and procedures manual.

d. Pharmacy - The pharmacy department is staffed by three pharmacists and two pharmacy technicians. The pharmacy services promotes the rational use of pharmaceutical products within community health and patient care management plans; the correct dispensing, use and administration of pharmaceutical products by patients; clinical staff consultation and monitoring and off site pharmacy services monitoring. The pharmacy is responsible for obtaining pharmaceutical drugs from appropriate sources according to standard procedures. Dispensing, counseling and related services shall be provided on receipt of authorized prescriptions form approved health center and subcontract medical (off site) and dental providers. Department operations are defined in a pharmacy policy and procedures manual.

e. Women's Personal Health - The Women's Personal Health Program is staffed by a registered nurse and an outreach worker. Services offered include pregnancy testing, reproductive health, birth control counseling, follow up on sexually transmitted disease and abnormal pap smears, prenatal education, childbirth preparation classes, and post partum/postnatal services to women of all ages. The WPH program is a direct services program under this contract with funding support from contract income. Program direction and supervision is provided by the health administrator and designated staff.

f. Emergency Medical Services - the emergency medical services department provides twenty four hour emergency medical services to the reservation/county. It is staffed by state licensed emergency medical technicians. Levels of care are provided at the EMT Basic, EMT defibrillation and EMT advanced airway levels. An EMS policies and procedures manual governs the operation. The EMS program is a direct services program under this contract with funding support from contract income. Program direction and supervision is provided by the health director and designated staff.

DEFS.' EX. D 009

MENOMINEE INDIAN TRIBE OF WISCONSIN                    AFA No.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, CY'98

3.    Dental

  a.    Dental - The dental department is staffed by three dentists, a dental
        hygienist, five dental assistants and a dental receptionist. Program
        services encompass the total practice of general dentistry. Dental
        hygiene services including education and preventative planning
        activities are provided by a full time dental hygienist. The dental
        policy and procedures manual defines the scope of services.

4.    Community Health

  a.    Environmental Health - An environmental health specialist
        (sanitarian) is employed to plan, organize, and direct a
        comprehensive program to identify and address environmental
        conditions which may effect the health of the Menominee Indian
        Reservation residents. These areas include, community injury
        control, water quality, waste management, food, celebrations,
        institutional environmental health, vector control, recreational
        sanitation, epidemiological investigations, emergency situations,
        promotion of tribal codes and ordinances, industrial hygiene,
        operation and maintenance activities, general administrative
        activities, annual environmental planning, construction, radon
        testing and mitigation.

  b.    Community Health Nursing Services - Community Health Nursing
        provides services in coordination with the staff physicians. The
        community health nurse incorporates into practice knowledge of
        clinical nursing, community and social organization, ecology,
        biological, psychological, and social sciences. The primary focus
        of community health nursing is the prevention of illness, the
        promotion and maintenance of health and the provision of needed
        therapeutic services. A policy and procedures manual defines
        department operations.

  c.    Mental Health - The Mental Health department is responsible for
        providing outpatient mental health services. Individual, family and
        group therapy is available for family difficulties, marital problems,
        separation and divorce, parent-child difficulties, depression,
        anxiety, suicidal thoughts or actions, and school behavior
        problems. The department is staffed by two masters level
        psychologists and two masters level clinical social workers. A
        departmental policy and procedures manual governs program
        operations.

DEFS.' EX. D 010

MENOMINEE INDIAN TRIBE OF WISCONSIN                AFA No.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, CY'98

      d.    Optical - The optical department is staffed by two contracted optometrists, licensed by the Wisconsin State Optometry Board of Examiners. The following services are provided: eye examinations, eye glasses and contact lens. A departmental policy and procedures manual defines program operations.

      e.    Nutrition - A registered dietician provides nutrition education and counseling services for the Menominee community.

      f.    Audiology - An audiologist consultant is contracted to provide a full range of audiology screening, testing and referral services for the Menominee community.

      g.    Wellness Program - The wellness program is directed by a registered nurse and a health fitness instructor. The program is aimed at reducing the high prevalence of cardiovascular disease for the Menominee people. Prevention activities will be continued and new wellness programs will be developed to reduce the risk of cardiovascular disease of people of all ages (children, youth, and adults) that take place in multiple settings (schools, work sites, and community).

Section 6    Other Provisions to which Parties Agree

    1.    Reporting Requirements

      a.    For each fiscal year which the Contractor receives or expends funds pursuant to P.L. 98-638, the Contractor shall submit to the Secretary a single agency audit report required by Chapter 75 of Title 31, United States Code.

      b.    The Contractor shall make an annual report to the Indian people in fulfillment of the Sec. 5 © of P.L. 93-638 requirement for reports and information to Indian people. This annual report will include the PFSAs provided and the costs incurred. A copy of this report will also be provided to IHS.

      c.    Resource Patient Management System (RPMS)(Automated)

          (1)    Patient Registration
          (2)    Patient Care Component(dental)
          (3)    Patient Care Component(Pharmacy)
          (4)    Contract Health Services (2.0)

DEFS.' EX. D 011

MENOMINEE INDIAN TRIBE OF WISCONSIN                AFA No.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, CY'98

    (5)  Immunization Report
    (6)  Community Health Activity Report (PHN)

  d.  Environmental Health Reporting System (Manual). Submit to
    Area Chief Environmental Health Services Branch.

2.  IHS Headquarters PFSA/Tribal Shares

  a.  For FY'98, IHS Headquarters PFSA/Tribal Shares are available to
    the Menominee Indian Tribe at 100% of unemcumbered programs,
    functions, services and actitivies in the amount of $213,316.
    Headquarters Tribal Shares are pro-rated for calendar year tribes @
    75/25. The FY'99 HQ shares are subject to the availability of
    funds and will be disbursed based upon the FY'99 congressional
    appropriations.

    PFSA/Tribal retained by IHS Headquarters for the benefit of the
    Menominee Indian Tribe are as follows:

| | |
|---|---|
| Total Available | $213,316 less retained |
| IRM Support Fund | - 34,394 |
| IRM Staff & Operations - HQW | - 22,896 |
| Dir Ops (16.4%) | - 8,484 |
| Total | $147,541 |

3.  Bemidji Area PFSA/Tribal Shares

  a  For FY'98 the Bemidji Area PFSA/Tribal Shares are available to
    the Menominee Indian Tribe at 100% of unemcumbered program,
    functions, services and activities in the amount of $204,280.

    PFSA/Tribal Shares retained by the Bemidji Area Office for the
    benefit of the Menominee Indian Tribe are as follows:

| | |
|---|---|
| Total Available | $ 204,280 less retained |
| MIS | -22,498 |
| Health Info. Mgmt. | - 5,591 |
| GLITC | -37,064 |
| Total | $ 139,127 |

  b.  The calculated (Wisconsin Field Office) PFSA/Tribal Shares of
    $37,064 is included in the GLITC Health Services Annual Funding
    Agreement for the period ending 9/30/98.

DEFS.' EX. D 012

<u>MENOMINEE INDIAN TRIBE OF WISCONSIN</u>          <u>AFA No.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, CY'98</u>

    c.    Other Retained PFSA/Tribal Shares

        (1)    Bio-med services calculated at $8,480 is retained for services provided by Area bio-med technician and Area bio-med equipment related support.

4.    The term of this Annual Funding Agreement shall be for the period January 1, 1998 thru December 31, 1998.

5.    TORT Claims Coverage

    a.    For purposes of Federal Tort Claims Act Coverage, the contractor and its employees (including individuals performing personal services contracts with the contractor to provide health care services) are deemed to employees of the Federal government while performing work under this contract. This status is not changed by the source of the funds used by the contractor to pay the employee's salary and benefits unless the employee receives additional compensation for performing covered services from anyone other than the contractor.

    b.    Under this contract, the contractor's employee may be required as a condition of employment to provide health services to non-IHS beneficiaries in order to meet contractual obligations. These services may be provided in either contractor or non-contractor facilities. The employee's status for Federal Tort Claims Act purpose is not affected.

6.    Program Income, Including Medicare/Medicaid

All Medicare, Medicaid or other program income received by the Tribe shall be treated as additional supplemental funding to that negotiated in the Annual Funding Agreement and the Tribe may retain all such income, pursuant to section 106 (m) of the Act. Medicare/Medicaid collections of the Tribe under Title IV of Public Law 94-437, as amended, shall be used by the Tribe in accordance with any applicable statutory restrictions on the use of such funds. The Tribe is obligated to seek third party reimbursement as provided by federal law.

DEFS.' EX. D 013

MENOMINEE INDIAN TRIBE OF WISCONSIN          AFA No.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, CY'98

7.   Eligibility for Services

In determining eligibility for services the Tribe shall comply with
applicable eligibility provisions set forth in the Indian Health Care
Improvement Act, as amended, other statutory law and applicable
regulations.

DATED THIS _1st_ DAY OF _January_, 1998

MENOMINEE INDIAN TRIBE OF WISCONSIN

BY _Betty Jo Wopnick_
          Designated Official

UNITED STATES OF AMERICA, DEPARTMENT OF HEALTH AND
HUMAN SERVICES, INDIAN HEALTH SERVICE

BY _____
          Contracting Officer
Bemidji Area Office, Indian Health Service

DEFS.' EX. D 014

# MODIFICATION No. 98-21 to MENOMINEE'S 1998 AFA
## CONTRACT No. 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

## EFFECTIVE 9/23/98

DEFS.' EX. D 015

## MODEL/ANNUAL FUNDING AGREEMENT MODIFICATION

| 1. AGREEMENT NO. | 2. MODIFICATION NO. | 3. EFFECTIVE | 4. REQUISITION NO. | 5. PAGE OF PAGES | |
|---|---|---|---|---|---|
| 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 | 98-21 | 09/23/98 | 98-50-1169 | 1 | 3 |

| 6. ISSUED BY: | 7. MONTH TOUR NAME AND ADDRESS: | 8. PAYMENT MADE BY: |
|---|---|---|
| Indian Health Services<br>Bemidji Area Office<br>211 Federal Building<br>Bemidji, Minnesota  56601 | Menominee Tribe of Wisconsin<br>P.O. Box 910<br>Keshena, Wiscsonin  54135 | Indian Health Service<br>Aberdeen Area Finance<br>115 Fourth Avenue<br>Aberdeen, S. Dak. 57401 |

9. AUTHORITY: PL 93-450 OR PL 95-638 AS AMENDED

10. DESCRIPTION OF MODIFICATION

A.   AFA No. 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 is hereby modified to increase the funding amount by $8,653 which reflects reobligation of $6,637 of H/C funds to reduce the total C.O. withholding to reflect actual cost of $242,263, to add $$618 of FY'97 CSC IDC shortfall, $900 of FY'97 OEH CSC IDC, and $498 of FY 98 CSC IDC shortfall.

In order to accomplish this action, the following contractual changes are made:

1.   Section 3. Funds to be Provided, of the '98 AFA is hereby revised as follows:

   a.   The funding amounts available to the Contractor for the period of this annual funding agreement shall be as follows:

| 1/1/98 - 12/31/98 | | | | Estimated '98 Amount | | | |
|---|---|---|---|---|---|---|---|
| H/C | 7580390 | J461151 | 8-39146.61 | 41.8B | 55.75 | 2,212,347 | (+6,637) |
| CSC/DIR | 7580390 | J461170 | 8-39846.61 | 41.8A | 55.75 | 152,100 | |
| CSC/IDC | 7580390 | J461170 | 8-39846.61 | 41.8E | 55.75 | 319,698 | (+498) NR |
| CSC/IDC | 7570390 | J461170 | 7-39846.61 | 41.8E | 55.75 | 618 | (+618) NR |
| CHS | 758/90390 | J46ZQ75 | 8-58046.66 | 41.8B | 55.75 | 1,022,240 | |
| PHN | 7580390 | J461171 | 8-39246.72 | 41.8B | 55.75 | 9,090 | |
| HE | 7580390 | J461162 | 8-39246.73 | 41.8B | 55.75 | 570 | |
| MH | 7580390 | J461169 | 8-39146.63 | 41.8B | 55.75 | 7,650 | |
| DEN | 7580390 | J461164 | 8-39146.62 | 41.8B | 55.75 | 51,080 | |
| CHR | 7580390 | J461174 | 8-39246.74 | 41.8B | 55.75 | 10 | |
| DIR OPS | 7580390 | J461173 | 8-39646.80 | 41.8B | 55.75 | 580 | |
| OEH Equipment | 75X0391 | J461172 | 8-29646.71 | 41.8B | 55.75 | 51,344 | |
| M&I | 75X0391 | J461167 | 8-29046.76 | 41.8B | 55.75 | 94,970 | |
| M&I Project | 75X0391 | J461167 | 7-29040.26 | 41.8B | 55.75 | 13,000 | |
| IPP | 75X0391 | J461168 | 8-29246.77 | 41.8B | 55.75 | 1,000 | |
| ALC | 7580390 | J461166 | 8-39146.64 | 41.8B | 55.75 | 4,900 | |
| OEH CSC IDC | 75X0391 | J462001 | 7-29446.71 | 41.8E | 55.75 | 900 | (+900) NR |
| | | | | Total FY'98 Est. | | 3,942,097 | (+8,653) |

Note: BAO will withhold $242,263 of H/C funds to C.O. detail of MD Culhane ($115,344); and ($126,919) for MD Exner, for the period 10/1/97 thru 9/30/98. Amount includes $80,000 for special pay. BAO will also withhold $8,480 for Bio-Med Services. $600 is assessed for IPA/MOA administration.

| 11. NAME AND TITLE OF SIGNER (Typed or Printed) | 12. NAME OF CONTRACTING OFFICER (Typed or Printed) | |
|---|---|---|
| | Dennis Murphy, Contracting Officer | |
| **13. CONTRACTOR'S SIGNATURE AND DATE** | **14. CONTRACTING OFFICER SIGNATURE AND DATE** | |
| | | 09/23/98 |

Funding Certification      Budget   II   dtd.  Sept 22, 1998                    men98m21

DEFS.' EX. D 016

## MODEL/ANNUAL FUNDING AGREEMENT MODIFICATION

| AGREEMENT NO. | MODIFICATION NO. | | REQUISITION NO. | PAGE OF PAGES | |
|---|---|---|---|---|---|
| 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 | 98-21 | | 98-50-1169 | 2 | 3 |

FY'98 Area Tribal Shares @100%

| | | | | | |
|---|---|---|---|---|---|
| H/C | 7580390 | J461151 | 8-39146.61 | 55.75 41.8B | 54,782 |
| DEN | 7580390 | J461164 | 8-39146.62 | 55.75 41.8B | 14,782 |
| MH | 7580390 | J461169 | 8-39146.63 | 55.75 41.8B | 34,782 |
| HE | 7580390 | J461162 | 8-39246.73 | 55.75 41.8B | 34,781 |
| | | | | Total | 139,127 |

FY'98 Headquarters Tribal Shares @ 75% for the period 1/1/98 to 9/30/98

| | | | | | |
|---|---|---|---|---|---|
| H/C | 7580390 | J461151 | 8-39146.61 | 55.75 41.8B | 54,246 |
| DEN | 7580390 | J461164 | 8-39146.62 | 55.75 41.8B | 3,337 |
| MH | 7580390 | J461169 | 8-39146.63 | 55.75 41.8B | 4,506 |
| PHN | 7580390 | J461171 | 8-39246.72 | 55.75 41.8B | 2,478 |
| HE | 7580390 | J461162 | 8-39246.73 | 55.75 41.8B | 3,081 |
| CHR | 7580390 | J461174 | 8-39246.74 | 55.75 41.8B | 6,538 |
| Dir Ops | 7580390 | J461173 | 8-39646.80 | 55.75 41.8B | 32,441 |
| CHS/Res | 758/90390 | J46ZQ75 | 8-58046.66 | 55.75 41.8B | 4,028 |
| | | | | Total | 110,655 |

FY'99 Headquarters Tribal Shares @ 25% for the period 10/1/98 to 12/31/98

| | | | | | |
|---|---|---|---|---|---|
| H/C | 7590390 | J461151 | 9-39146.61 | 55.75 41.8B | 18,082 |
| DEN | 7590390 | J461164 | 9-39146.62 | 55.75 41.8B | 1,112 |
| MH | 7590390 | J461169 | 9-39146.63 | 55.75 41.8B | 1,502 |
| PHN | 7590390 | J461171 | 9-39246.72 | 55.75 41.8B | 826 |
| HE | 7590390 | J461162 | 9-39246.73 | 55.75 41.8B | 1,027 |
| CHR | 7590390 | J461174 | 9-39246.74 | 55.75 41.8B | 2,180 |
| Dir Ops | 7590390 | J461173 | 9-39646.80 | 55.75 41.8B | 10,814 |
| CHS/Res | 759/00390 | J46ZD75 | 9-59046.66 | 55.75 41.8B | 1,343 |
| | | | | Total | 36,886 |

FY'98 Aberdeen Area Tribal Shares

| | | | | | |
|---|---|---|---|---|---|
| H/C | 7580390 | J461151 | 8-39146.61 | 55.75 41.8B | 25,193 |
| | | | | Total Contract | 4,253,958 (+8,653) |

DEFS.' EX. D 017

## MODEL/ANNUAL FUNDING AGREEMENT MODIFICATION

| 1. AGREEMENT NO. | 2. MODIFICATION NO. | 3. | 4. REQUISITION NO. | 5. PAGE OF PAGES | |
|---|---|---|---|---|---|
| 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 | 98-21 | | 98-50-1169 | 3 | 3 |

Headquarters Tribal Shares are pro-rated for calendar year tribes.  75/25

The FY'99 HQ Shares are subject to the availability of funds and will be disbursed based upon

the FY'99 congressional apppropriations.

B.    The FY'98 AFA funding amount is hereby increased by $8,653 from $4,245,305 to $4,253,958 by reason of this modification.

C.    The FY'98 AFA funding period remains unchanged as a result of this modification.

D.    There are no other changes by reason of this modification.

DEFS.' EX. D 018

# EXHIBIT E

# MENOMINEE TRIBE/IHS CONTRACT
## CONTRACT No. 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
### (with ATTACHED RESOLUTION No. 98-48)

DEFS.' EX. E 001

DUPLICATE OF ORIGINAL

INDIAN SELF-DETERMINATION AGREEMENT

BETWEEN

THE MEMOMINEE INDIAN TRIBE OF WISCONSIN

AND THE

DEPARTMENT OF HEALTH AND HUMAN SERVICES
INDIAN HEALTH SERVICE

IHS AGREEMENT NUMBER 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



Effective  January 1, 1999

DEFS.' EX. E 002

### SELF-DETERMINATION CONTRACT MODEL AGREEMENT
### BETWEEN THE SECRETARY OF HEALTH AND HUMAN SERVICES
### AND THE
### MENOMINEE INDIAN TRIBE OF WISCONSIN

## CONTENTS

a. AUTHORITY AND PURPOSE
  (1) Authority
  (2) Purpose
    (A) Program Services, Functions, and Activities

b. TERMS, PROVISIONS, AND CONDITIONS
  (1) Term
  (2) Effective Date
  (3) Program Standards
  (4) Funding Amount
  (5) Limitation of Costs
  (6) Payment
    (A) In General
    (B) Quarterly, Semiannual, Lump-sum, and Other Methods of Payment
  (7) Record and Monitoring
    (A) In General
    (B) Recordkeeping System
    (C) Responsibilities of Contractor
  (8) Property
    (A) In General
    (B) Records
    (C) Joint Use Agreements
    (D) Acquisition of Property
    (E) Confiscated or Excess Property
    (F) Screener Identification Card
    (G) Capital Equipment
  (9) Availability of Funds
  (10) Transportation
  (11) Federal Program Guidelines, Manuals, or Policy Directives
  (12) Disputes
    (A) Third Party Mediation Defined
    (B) Alternative Procedures
    (C) Effect of Decisions
  (13) Adminstrative Procedures of Contractor
  (14) Successor Annual Funding Agreement
    (A) In General
    (B) Information
  (15) Contract Requirement; Approval by Secretary
    (A) In General
    (B) Requirements

DEFS.' EX. E 003

MENOMINEE INDIAN TRIBE                                 AREEMENT NO. 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

a.   **AUTHORITY AND PURPOSE**

   (1)   **AUTHORITY**

        This agreement, denoted a Self-Determination Contract (referred to in this agreement
        as the "Contract"), is entered into by the Secretary of Health and Human Services
        (referred to in this agreement as the "Secretary"), for and on behalf of the United States
        pursuant to Title I of the Indian Self-Determination and Education Assistance Act
        (25 USC 450 et.seq.) and by the authority of the Menominee Indian Tribe of Wisconsin
        (referred to in this agreement as the "Contractor". The provisions of Title I of the Indian
        Self-Determination and Education Assistance Act (25 USC 450 et.seq.) are incorporated
        in this agreement.

   (2)   **PURPOSE**

        Each provision of the Indian Self-Determination and Education Assistance Act
        25 USC 450 et.seq.) and each provision of this Contract shall be liberally construed
        for the following related program services, functions, and activities ( or portion thereof),
        that are otherwise contractible under section 102(a) of such Act, including all related
        administrative functions, from the Federal Government to the Contractor.

        Utilizing the Tribally owned health facility at the Menominee Tribal Clinic, located in
        Keshena, Wisconsin, the areas of education, prevention, health care maintenance and
        intervention will be stressed. Components of Health Center Program will include:

        I.  Administrative Services
        II. Ambulatory Services
            A. Medical Services, including:
                1. Physicians
                2. Nurse Preacitioner (NP)
                3. Pharmacy Services
                4. Laboratory Services
                5. Ambulatory Care Nursing
                6. Medical and Technical Relief coverage including:
                    Medical Director, Radiology Technicians, Dentists, Hospital Coverage,
                    Nutritionist, Psychotherapists.
                7. X-ray Services
            B. Dental Services (Direct and Contract Health)
            C. Audiology
            D. Clinic/Program Administration
            E. Contract Health Services (CHS), including Inpatient, Outpatient, and Optical.
            F. Patient Transportation Services
            G. Emergency Medical Services

DEFS.' EX. E 004

MENOMINEE INDIAN TRIBE                                    AGREEMENT NO. 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

III. Preventive Health Services
  A. Dental Prevention Services
  B. Environmental Health and Sanitarian Services
  C. Public Health Nursing Services (CHNs)
  D. Nutrition Services
  E. Mental Health
     [1] Mental Health and Social Services
  F. Healthy Heart Program
  G. Health Promotion Disease Prevention
  H. Aids Prevention and Aids Health Education
  I. Wellness
  J. Maternal Child Health/CHR
  K. Family Planning Services
  L. Honoring Our Children
  M. Breast/Cervical Cancer
  N. Rural Infant Health

b.   **TERM, PROVISIONS, AND CONDITIONS**

  (1)   **TERM**

  Pursuant to section 105 (c)(1) of the Indian Self-Determination and Education Assistance Act (25 USC 450j(c)(1), term of this mature contract shall be January 1, 1999 to December 31, 2001.  Pursuant to section 105(fd)(1) of such Act (25 USCj(d). Upon the election by the Contractor, the period of this Contract shall be determined on the basis of a calendar year, unless the Secretary and the Contractor agree on a different period in the annual funding agreement incorporated by reference in subsection (f)(2).

  (2)   **EFFECTIVE DATE**

  This Contract shall become effective upon the date of the approval and execution by the Contractor and the Secretary, unless the Contractor and the Secretary agree on an effective date other than the date specified in this paragraph.

  The effective date of this Agreement shall be January 1, 1999.

  (3)   **PROGRAM STANDARDS**

  The Contractor agrees to administer the program services, functions, and activities (or portions thereof) listed in subsection (a)(2) of the Contract in conformity with the following standards:
  Joint Commission on Accreditation of Health Care Organizations.

DEFS.' EX. E 005

MENOMINEE INDIAN TRIBE                                         AGREEMENT NO. 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

(4)    **FUNDING AMOUNT**

Subject to the availability of appropriations, the secretary shall make available to the Contractor the total amount specified in the annual funding agreement incorporated by reference in subsection (f)(2). Such amount shall not be less than the applicable amount determined pursuant to section 106(a) of the Indian Self-Determination and Education Assistance Act (25 USC 405J-I).

(5)    **LIMITATION OF COSTS**

The Contractor shall not be obligated to continue performance that requires an expenditure of funds in excess of the amount of funds awarded under this contract. If, at any time, the Contractor has reason to believe that the total amount required for performance of this contract or a specific activity conducted under this contract, the Contractor shall provide reasonable notice to the appropriate Secretary. If the appropriate Secretary does not take such action as may be necessary to increase the amount of funds awarded under this contract, the Contractor may suspend performance of the contract until such time additional funds are awarded.

(6)    **PAYMENT**

(A)    In General

Payments to the Contractor under this contract shall --

(i)    be made as expeditiously as practicable; and

(ii)    include financial arrangements to cover funding during periods covered by joint resolutions adopted by Congress making continuing appropriations, to the extent permitted by such resolutions.

(iii)    Payment to the contractor shall be in an Annual Lump Sum Advance Payment. The Aberdeen Area Indian Health Service, Division of Financial Resources, shall issue payment under the contract within forty-five (45) calendar days after apportionment from the Office of Management and Budget (OMB).

DEFS.' EX. E 006

MENOMINEE INDIAN TRIBE                                    AGREEMENT NO. 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

---

(B) **QUARTERLY, SEMIANNUAL, LUMP-SUM, AND OTHER METHODS OF PAYMENTS**

   (i) **In General**

Pursuant to Section 108(b) of the Indian Self-Determination and Education Assistance Act, and nonwithstanding any other provision of law, for each fiscal year covered by this contract, the Secretary shall make available to the Contractor the funds specified for the fiscal year under the annual funding agreement incorporated by reference pursuant to subsection (f)(2) by paying to the Contractor, on a quarterly basis, one-quarter of the total fiscal year, in a lump-sum payment or as semi-annual payments, or any other method of payment authorized by law, in accordance with such method as may be requested by the Contractor and specified in the annual funding agreement.

   (ii) **Method of Quarterly Payment**

If quarterly payments are specified in the annual funding agreement incorporated by reference pursuant to subsection (f)(2), each quarterly payment made pursuant to clause (a) shall be made on the first day of each quarter of the fiscal year, except that in any case in which in the contract year coincided with the Federal fiscal year, payment for the first quarter shall be made not later than the date that is 10 calendar days after the date on which the Officer of Management and Budget apportions the appropriations for the fiscal year for the programs, services, functions, and activities subject to this contract.

   (iii) **Applicability**

Chapter 39 of Title 31, United States Code, shall apply to the payment of funds due under this contract and the annual funding agreement referred to in clause (i).

(7) **Records and Monitoring**

  (A) **In General**

Except for previously provided copies of tribal records that the Secretary demonstrates are clearly required to be maintained as part of the recordkeeping system of the Department of the Interior or the Department of Health and Human Services (or both), records of the contractor shall not be considered Federal record for purposes of Chapter 5 of Title 5, United States Code.

In carrying out the PFSA's lists in section (a)(2)(A), the contractor shall operate under the provisions of the tribal Privacy Policies.

  (B) **Recordkeeping System**

The contractor shall maintain a recordkeeping system and, upon reasonable advance request, provide reasonable access to such records to the Secretary.

DEFS.' EX. E 007

(C)  **Responsibilities of the Contractor**

The Contractor shall be responsible for managing the day-to-day operations conducted under this contract and for monitoring activities conducted under this contract to ensure compliance with the contract and applicable Federal requirements.  With respect to the monitoring activities of the Secretary, the routine monitoring visits shall be limited to not more than one performance monitoring visit per year or as negotiated, by the head of each operating division: department bureau, or departmental agency, or duly authorized representative of such head unless--

(i)  the Contractor agrees to one or more additional visits; or

(ii)  the appropriate official determines that there is a reasonable cause to believe that grounds for reassumption of the contract, suspension of contract payments, or other serious contract performance deficiency may exist.

No additional visit referred to in clause (ii) shall be made until such time as reasonable advance notice that includes a description of the nature of the problem that requires the additional visit has been given to the Contractor.

(8)  **Property**

(A)  **In General**

As provided in Section 105(f) of the Indian Self-Determination and Education Assistance Act (25 USC 450)(f), at the request of the Contractor, the Secretary may make available, or transfer to the Contractor, all reasonable divisible real property, facilities, equipment, and personal property that the Secretary has used to provide or administer the programs, functions, services and activities.  A mutually agreed upon list specifying the property, facilities, and equipment so furnished shall also be prepared by the Secretary, with the concurrence of the Contractor, and periodically revised by the Secretary, with the concurrence of the Contractor.

(B)  **Records**

The Contractor shall maintain a record of all property referred to in subparagraph (A) or other property acquired by the Contractor under Section 105(f)(2) A of such such Act for purposes of replacement

(C)  **Joint Use Agreement**

Upon the request of the Contractor, the Secretary and the Contractor shall enter into a separate joint use agreement to address the shares used by the parties of real or personal property that is not reasonably divisible.

DEFS.' EX. E 008

MENOMINEE INDIAN TRIBE                         ..EEMENT NO. 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

(D) **Acquisition of Property**

The Contractor is granted the authority to acquire such excess property as the Contractor may determine to be appropriate in the judgement of the Contractor to support the programs, functions, services, and activities operated pursuant to this contract.

(E) **Confiscated or Excess Property**

The Secretary shall assist the Contractor in obtaining such confiscated or excess property as may become available to tribes, tribal organizations, or local governments.

(F) **Screen Identification Card**

A screener identification card (General Services (Administration form 2946) shall be issued to the Contractor not later than the effective date of this contract. The designated official shall, upon request, assist the Contractor in securing the use of the card.

(G) **Capital Equipment**

The Contractor shall determine the capital equipment, leases, rentals, property, or services the Contractor requires to perform the obligations of the Contractor under this subsection, and shall acquire and maintain records of such capital equipment, property rentals, leases, property, or services through applicable procurement procedures of the Contractor.

(9) **Availability of Funds**

Notwithstanding any other provision of law, any funds provided under this contract—

(A) shall remain available until, expended; and

(B) with respect to such funds, no further—

  (i) approval by the Secretary, or

  (ii) justifying documentation from the Contractor, shall be required prior to the expenditure of such funds.

(10) **Transportation**

Beginning on the effective date of this contract, the Secretary shall authorize the Contractor to obtain interagency motor pool vehicles and related services to performance of any activities carried out under this contract.

DEFS.' EX. E 009

**THIS PAGE INTENTIONALLY LEFT BLANK**

DEFS.' EX. E 010

(14) Successor Annual Funding Agreement

   (A) In General

Negotiations for a successor annual funding agreement, provided for in subsection (f)(2) shall begin not later than 120 days prior to the conclusion of the preceding annual funding agreement. Except as provided in Section 105(c)(2) of the Indian Self-Determination and Education Assistance Act (25 USC 450j(c)(2) the funding for each such successor annual funding agreement shall only be reduced pursuant to Section 106(b) of such Act (25 USC 450j-l(b)).

   (B) Information

The Secretary shall prepare and supply relevant information, and promptly comply with any request by the Contractor for information that the Contractor reasonably needs to determine the amount of funds that may be available for a successor annual funding agreement, as provided for in subsection (f)(2) of this contract.

(15) Contract Requirements; Approval by Secretary

   (A) In General

Except as provided in subparagraph (B) for the term of the Contract, section 2103 of the Revised Statutes (25 USC 81) and section 16 of the Act of June 18, 1934 (48 stat. 987, chapter 576), shall not apply to any contract entered into in connection with this contract.

   (B) Requirements

Each contract entered into by the Contractor with a third party in connection with performing the obligation of the Contractor under this contract shall—

   (i)   be in writing;

   (ii)   identify the interested parties, the authorities of such parties, and purposes of the contract;

   (iii)   state of the work to be performed under the contract; and

   (iv)   state the process for making any claim, the payments to be made, and the term of the contract, which shall be fixed.

DEFS.' EX. E 011

MENOMINEE INDIAN TRIBE                                    AGREEMENT NO. 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

c.    OBLIGATIONS OF THE CONTRACTOR

(1)    Contract Performance

Except as provided in subsection (d)(2), the Contractor shall perform the programs,
functions, services, and activities as provided in the annual funding agreement under
subsection (f)(2) of this contract.

(2)    Amount of Funds

The total amount of funds to be paid under this contract pursuant to Section 106 (a)
shall be determined in an annual funding agreement entered into between the Secretary
and the Contractor, which shall be incorporated into this contract.

(3)    Contracted Programs

Subject to the availability of appropriated funds, the Contractor shall administer the
programs, functions, services, and activities identified in this contract and funded
through the annual funding agreement under section (f)(2).

(4)    Trust Services for Individual Indians

To the extent that the annual funding agreement provides funding for the delivery of trust
services to individual Indians that were formerly provided by the Secretary, the Contractor
shall maintain at least the same level of service as was previously provided by the Secretary,
subject to the availability of appropriated funds for such services.  Strictly for the purpose of
this subsection only, "trust services or individual Indians" means only those services
that pertain to land or financial management connected to individually held allotments.

(5)    Fair and Uniform Services

The Contractor shall provide services under this contract in fair and uniform manner and
shall provide access to an administrative or judicial body empowered to adjudicate or
otherwise resolve complaints, claims, and grievances brought by program beneficiaries
against the Contractor arising out of the performance of the contract.

d.    Obligation of the United States

(1)    Trust Responsibility

(A)    The United States reaffirms its trust responsibility to the Menominee Indian Tribe of
Wisconsin to protect and conserve the trust resources of the Indian tribes and of
individual Indians.

DEFS.' EX. E 012

MENOMINEE INDIAN TRIBE                                      AGREEMENT NO. 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

(B)  Nothing in this contract is intended to, nor shall be construed, to terminate, waive, modify, or reduce the trust responsibility of the United States to the tribes or individual Indians.  The Secretary shall act in good faith in upholding said trust responsibility.

(2)  **Good Faith**

To the extent that health programs are included in this contract, and within available funds, the Secretary shall act in good faith in cooperating with the Contractor to achieve the goals set forth in Chapter 18 of Title 25, United States code.

(3)  **Programs Retained**

As specified in the annual funding agreement, the United States hereby retains the programs, functions, services, and activities with respect to the tribe(s) that are not specifically assumed by the Contractor in annual funding agreement under subsection (f)(2).

e.  **Other Provisions**

(1)  **Designated Officials**

Not later than the effective date of this contract, the United States shall provide to the Contractor, and the Contractor shall provide to the United States, as written designation of a senior official to serve as a representative for notices, proposed amendments to the contract, and other purposes for this contract.

(2)  **Contract Modifications or Amendments**

(A)  **General**

Except as provided in subparagraph (B), no modification to this contract shall take effect unless such modification is made in the form of a written amendment to the contract, and the Contractor and the Secretary provide written consent for the modification.

(B)  **Exception**

The addition of supplemental funds for programs, functions, services and activities (or portions thereof) already included in the annual funding agreement under subsection (f)(2), and the reduction of funds pursuant to section 106(b)(2), shall not be subject to subparagraph (A).

DEFS.' EX. E 013

(3) **Officials not to Benefit**

No member of Congress, or resident commissioner, shall be admitted to any share or part of any contract executed pursuant to this contract, or to any benefit that may arise from such contract. This paragraph may not be construed to apply to any contract with a third party entered into under this contract if such contract is made with a corporation for general benefit of the corporation.

(4) **Covenant Against Contingent Fees**

The parties warrant that no person or selling agency has been employed or retained to solicit or secure any contract executed pursuant to this contract upon an agreement, or understanding for a commission percentage, brokerage, or contingent fee, excepting bona fide employees or bona fide established commercial or selling agencies maintained by the Contractor for the purpose of securing business.

f. **Attachments**

(1) **Approval of Contract**

Unless previously furnished to the Secretary, the resolution of the Menominee Indian Tribe of Wisconsin authorizing the contracting of the programs, functions, services, and activities in this contract is attached to this contract as attachment 1.

(2) **Annual Funding Agreement**

(A) **In General**

The annual funding agreement under this contract shall only contain—

(i)  terms that identify the programs, functions, services and activities to be performed or administered, the general budget category assigned, the funds to be provided, and the time and method of payment; and

(ii) such other provisions, including a brief description of the programs, functions, services and activities to be performed (including those supported by financial resources other than those provided by the Secretary), to which the parties agree.

(B) **Incorporation by Reference**

The annual funding agreement is hereby incorporated in its entirety in this contract and attached to this contract as attachment 2.

DEFS.' EX. E 014

MENOMINEE INDIAN TRIBE                    AGREEMENT NO. 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

Dated this __15th__ day of __Dec.__, 1998

THE MENOMINEE INDIAN TRIBE OF WISCONSIN

BY _____
            Tribal Chairman

UNITED STATES OF AMERICA, DEPARTMENT OF HEALTH AND HUMAN
SERVICES, INDIAN HEALTH SERVICE

BY _____
    Area Director, Bemidji Indian Health Service

BY _____
    Contracting Officer, Bemidji Indian Health Service

DEFS.' EX. E 015

ATTACEMENT   1

MENOMINEE NATION
MENOMINEE TRIBAL LEGISLATURE
RESOLUTION NO. 98- 48

AUTHORIZING TRIBAL ADMINISTRATOR TO SIGN CERTAIN APPLICATIONS AND CONTRACTS

WHEREAS, the Menominee Indian Tribe of Wisconsin (the "Tribe") is a federally recognized Indian Tribe as provided by the Menominee Restoration Act, Act Dec. 22, 1973, Pub. L. No. 93-197, 87 Stat. 770, which appears generally as 25 U.S.C. §§ 903 et. seq.; and

WHEREAS, the Tribe, acting through its duly elected governing body, the Menominee Tribal Legislature, has powers to make and enforce laws, negotiate with Federal, State and Local governments and otherwise exercise its powers consistent with the limitations imposed by its Constitution and Bylaws; and

WHEREAS, applications and contracts for funding grants need to be signed and filed within certain time periods, necessitating quick attention; and

WHEREAS, the application process can be expedited by having the Tribal Administrator approve and sign any such grants on behalf of the Menominee Tribal Legislature;

NOW, THEREFORE, BE IT RESOLVED, that the Menominee Tribal Legislature, in regular session assembled, hereby authorizes the Tribal Administrator to approve and sign any grant applications and contracts for grants or programs, including grants that require the Tribe to provide in-kind services, but excluding those contracts and grant applications that require the Tribe to obligate a cash match;

BE IT FURTHER RESOLVED THAT, this resolution supercedes all prior resolutions with respect to any such authorization.

<u>CERTIFICATION</u>

We, the undersigned officers of the Menominee Tribal Legislature, hereby certify that the foregoing resolution was duly ____adopted____ at a meeting held on June _18_, 1998, with a quorum present, by a vote of _7_ for, _0_ opposed, _0_ abstentions and _1_ absent. The undersigned further certify that the foregoing resolution has not been amended or rescinded in any way.

MENOMINEE INDIAN TRIBE OF WISCONSIN

APESANAHKWAT, CHAIRMAN
MENOMINEE TRIBAL LEGISLATURE

____June 18, 1998____
DATE

LISA WAUKAU, SECRETARY
MENOMINEE TRIBAL LEGISLATURE

DEFS.' EX. E 016

# MENOMINEE TRIBE'S 1999 AFA
## 10/1/98-9/30/99
## ATTACHMENT 2-99 TO
## IHS CONTRACT No. 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

DEFS.' EX. E 017

DUPLICATE OF ORIGINAL

## ATTACHMENT 2-99

## TO INDIAN SELF-DETERMINATION AGREEEMENT

## CONTRACT NUMBER 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

## ANNUAL FUNDING AGREEEMENT

## BETWEEN THE SECRETARY OF HEALTH AND HUMAN SERVICES

## AND THE

## MENOMINEE INDIAN TRIBE OF WISCONSIN



## OCTOBER 1, 1998 - SEPTEMBER 30, 1999

men afa 99

DEFS.' EX. E 018

ANNUAL FUNDING AGREEMENT
BETWEEN THE

MENOMINEE INDIAN TRIBE OF WISCONSIN

AND THE

SECRETARY OF HEALTH AND HUMAN SERVICES

OCTOBER 1, 1998 – SEPTEMBER 30, 1999

CONTENTS

SECTION

1.  PURPOSE
2.  LIST OF PROGRAMS, FUNCTIONS, SERVICES, AND ACTIVITIES
      TO BE PERFORMED
3.  FUNDS TO BE PROVIDED
4.  TIME AND METHOD OF PAYMENT
5.  BRIEF DESCRIPTION OF PFSA'S TO TO PROVIDED
6.  OTHER PROVISIONS TO WHICH PARTIES AGREE


ATTACHMENT A – INFORMATIONAL BUDGET

DEFS.' EX. E 019

MENOMINEE INDIAN TRIBE                              ANNUAL FUNDING AGREEMENT '99

### Section 1 - Purpose

This Annual Funding Agreement is entered into by the Menominee Indian Tribe of Wisconsin (referred to in this agreement as Contractor) and the U.S. Department of Health and Human Services, Indian Health Service (referred to in this agreement as IHS.) in acc I.H.S.) in accordance with 108 (25 USC 4501) (c) Section 1, (f)(2) and pursuant to the Self -Determination Model Agreement No: 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, dated January 1, 1999, under the provisions of Title of P.L. 93-638, as amended.

### Section 2 - List of Programs, Functions, Services, and Activities to be Performed

The Menominee Indian Tribe, hereinafter referred to as Contractor shall continue to administer and operate the Menominee Tribal Health Services Program on the Menominee Indian Reservation utilizing the tribal health facility at Keshena, Wisconsin. The Menominee Health Center is fully accredited by the Joint Commission of Accreditation of Healthcare Organizations (JCAHO). The purpose of this comprehensive health service program is to provide high quality ambulatory medical, dental, community health services, and the administration thereof for eligible individuals residing within the target area. The Contractor may also provide services to non-beneficiaries on a fee-for-service basis as authorized by IHS Manual 2-4.3I (emergency cases) and IHS Manual 2-3.3 J (non-emergency cases) 1.

The Contractor agrees to provide the programs, functions, services, and activities (PFSA) as consolidated under the general budget categories listed below and in accordance with the Program Standards listed in the Model Agreement:

- A.  Administrative Services
    1. Administration
    2. Medical Records
    3. Billing
    4. CHS
    5. Housekeeping/Maintenance
- B.  Ambulatory Services
    1. Medical Services, Including:
        a. Physicians
        b. Nurse Practitioner (NP)
        c. Physician Assistant
        d. Pharmacy Services
        e. Laboratory Services
        f. Ambulatory Care - Nursing

DEFS.' EX. E 020

MENOMINEE INDIAN TRIBE                                ANNUAL FUNDING AGREEMENT '99

g. Medical and Technical Relief Coverage including:
   Medical Director, Radiology Technicians, Dentists, Hospital Coverage-Physician, Nutritionist, psychotherapists, cardiologist, physical therapist, pedodontist.

2. Dental Services (Direct and Contrct Health)
3. Audiology
4. Clinic/Program Administration
5. Contract Health Services (CHS, including Inpatient, Outpatient, and Optical)
6. Patient Transportation Services
7. Emergency Medical Services

C. Preventative Health Services
   1. Dental Prevention Services
   2. Environmental Health and Sanitation Services
   3. Public Health Nursing Services (CHNS)
   4. Nutrition Services
   5. Mental Health
   6. Wellness Program
   7. Health Promotion Disease Prevention
   8. Aids Prevention and Aids Health Education
   9. Family Planning Services
   10. Honoring Our Children
   11. Breast/Cervical Cancer
   12. Rural Infant Health
   13. Diabetes

**Section 3 - Funds to be Provided**

The funding amounts available to the Contractor for the period of this annual funding agreement shall be as follows:

| | | | | | | |
|---|---|---|---|---|---|---|
| H/C | 7590390 | J461151 | 9-39146.61 | 41.8B | 55.77 | 2,205,456 |
| CSC IDC | 7590390 | J461170 | 9-39846.61 | 41.8E | 55.77 | 319,200 |
| CSC DIR | 7690390 | J461170 | 9-39846.61 | 41.8A | 55.77 | 152,100 |
| CHS | 759/00390 | J46ZD75 | 9-59046.66 | 41.8B | 55.77 | 1,041,260 |
| MH | 7590390 | J461169 | 9-39146.63 | 41.8B | 55.77 | 7,650 |
| CHR | 7590390 | J461174 | 9-39246.74 | 41.8B | 55.77 | 10 |
| PHN | 7590390 | J461171 | 9-39246.72 | 41.8B | 55.77 | 9,090 |
| DEN | 7590390 | J461164 | 9-39146.62 | 41.8B | 55.77 | 51,080 |
| HE | 7590390 | J461162 | 9-39246.73 | 41.8B | 55.77 | 570 |
| DIR Ops | 7590390 | J461173 | 9-39246.80 | 41.8B | 55.77 | 580 |
| OEH Eq. | 75X0391 | J461172 | 9-29648.71 | 41.8B | 55.77 | 51,344 |
| | | | | | Total | $ 3,838,340 |

(1) The FY'99 estimated amount is based on the final FY'97 base amount, plus FY'98 adjustments.
(2) The Contract Support Costs (CSC) indirect cost amount of $319,200 is considered non-recurring and should be used to support indirect costs only.
(3) H/C includes withholding of $9,134 Bio-Med, which reflects $6,030 Field Services and $3,104 Area position.
(4) BAO will withhold $249,100 of H/C funds to cover salary and fringe costs for C.O. details. $118,600 for MD Culhane and $130,900 for MD Exner, for the period 10/1/98 - 9/30/99. Amount includes $80,000 special pay, ($40,000 each) Also includes $600 assessment.
(5) The OEH equipment funds are recurring for 3 years, '98, '99, & '00.

Page 2

DEFS.' EX. E 021

MENOMINEE INDIAN TRIBE                                    ANNUAL FUNDING AGREEMENT '99

FY'99 Headquarters Tribal Shares @75% for the period 1/1/99 to 9/30/99

| | | | | | | |
|---|---|---|---|---|---|---|
| H/C | 7590390 | J461151 | 9-39146.61 | 41.8B | 55.77 | 55,317 |
| DEN | 7590390 | J461164 | 9-39146.62 | 41.8B | 55.77 | 3,338 |
| MH | 7590390 | J461169 | 9-39146.63 | 41.8B | 55.77 | 4,613 |
| CHS | 759/00390 | J46ZD75 | 9-59046.66 | 41.8B | 55.77 | 4,028 |
| PHN | 7590390 | J461171 | 9-39246.72 | 41.8B | 55.77 | 2,478 |
| HE | 7590390 | J461162 | 9-39246.73 | 41.8B | 55.77 | 3,081 |
| CHR | 7590390 | J461174 | 9-39246.74 | 41.8B | 55.77 | 6,538 |
| Dir Ops | 7590390 | J461173 | 9-39646.80 | 41.8B | 55.77 | 31,985 |
| | | | Total HQ Tribal Shares | | | 111,378 |

FY'99 Headquarters Tribal Shares @25% for the period 10/1/99 to 12/31/99

| | | | | | | |
|---|---|---|---|---|---|---|
| H/C | 7590390 | J461151 | 0-39146.61 | 41.8B | 55.77 | 18,440 |
| DEN | 7590390 | J461164 | 0-39146.62 | 41.8B | 55.77 | 1,112 |
| MH | 7590390 | J461169 | 0-39146.63 | 41.8B | 55.77 | 1,538 |
| CHS | 759/00390 | J46ZX75 | 0-59046.66 | 41.8B | 55.77 | 1,342 |
| PHN | 7590390 | J461171 | 0-39246.72 | 41.8B | 55.77 | 826 |
| HE | 7590390 | J461162 | 0-39246.73 | 41.8B | 55.77 | 1,027 |
| CHR | 7590390 | J461174 | 0-39246.74 | 41.8B | 55.77 | 2,179 |
| Dir Ops | 7590390 | J461173 | 0-39646.80 | 41.8B | 55.77 | 10,662 |
| | | | Total HQ Tribal Shares | | | 37,126 |

Note: Alcohol funds in the amount of $15,741 are incorporated into the Maehnowesekiyah contract as request by Tribe's letter dated September 4, 1998.

FY'99 Bemidji Area Tribal Shares @100% of unencumbered

| | | | | | | |
|---|---|---|---|---|---|---|
| H/C | 7590390 | J461151 | 9-39146.61 | 41.8B | 55.77 | 41,315 |
| DEN | 7590390 | J461164 | 9-39146.62 | 41.8B | 55.77 | 34,276 |
| MH | 7590390 | J461169 | 9-39146.63 | 41.8B | 55.77 | 34,276 |
| HE | 7590390 | J461162 | 9-39246.73 | 41.8B | 55.77 | 27,238 |
| | | | Total Area Tribal Shares | | | 137,105 |

Note: Behavioral Health funds in the amount of $7,512 are incorporated into the Maehnowesekiyah contract as requested by Tribe's letter dated September 4, 1998.

FY'99 Aberdeen Area Tribal Shares

| | | | | | | |
|---|---|---|---|---|---|---|
| H/C | 7590390 | J461151 | 9-39146.61 | 41.8B | 55.77 | 25,193 |
| | | | Total Contract | | | $4,149,242 |

**Section 4 – Time and Method of Payment**

The time and method of payment of funds to the Contractor for the operation and administration of the programs, functions, services, and activities identified under this agreement shall be as follows:

1.  As requested by the Tribe and authorized by Section (a)(6)(B) or the Model Agreement for all programs of a recurring nature for which amounts have been determined prior to the beginning of the Annual Funding Agreement (AFA) Year the Secretary shall provide a single lump sum payment as of the first day of the AFA Year or as soon thereafter as practicable or reasonably possible.

2.  In the event of a "Continuing Resolution" the Secretary will provide the maximum funding allowed.

Page 3

DEFS.' EX. E 022

MENOMINEE INDIAN TRIBE                           ANNUA .FUNDING AGREEMENT '99

Section 5 - Brief Description of PFSA to be Provided

Program, Services, Functions, and Activities.  The Contractor shall operate the following programs.

1.    Administrative Services

    a.    Administration – The Menominee Indian Tribe and its delegate Health Committee is responsible for overall operation of the tribal comprehensive health program, which is under the administrative supervision of the Tribal Health Administrator and medical direction by the Medical Director.  Responsibilities include planning and developing organization objectives, designing operational plans and establishing policy, allocating resources, organizing work processes, staffing, retaining human resources, directing, controlling, and monitoring organizational activities.

    b.    Medical Records - Maintains all outpatient health care records in POMR format, transcribes progress notes, handles record transfers to and from the Menominee Tribal Clinic, provides coding and pricing for all route slips, ensures patient records are maintained in a standardized format according to policy, processes, monitors, and submits ambulatory patient care data to appropriate IHS agency. Ensures proper registration of all patients utilizing services at the clinic.

    c.    Billing - Maintains patient account information such as demographic and insurance coverage through patient registration, processes all service charges and reimbursements for care, tracks third party billings, provides management data for cash flow projections, utilizes and maintains a computer system for processing all billing components, maintains computer security, and provides periodic software upgrades.

    d.    Contract Health Services – A contract health services program is operated for all eligible individuals residing within the Menominee Tribal Clinic's service delivery area.  This includes procurement of health services not available at the clinic. Clinic physicians make referrals to designated preferred health care providers.  A CHS policy and procedure manual defines department operations.

    e.    Maintenance and Housekeeping – Maintenance and housekeeping is responsible for the repair, maintenance and cleaning of the entire health care facility.

2.    Direct Medical Care

    a.    Medical Services – Direct patient care consists of physician, mid-level practitioner including physician assistant, nurse practitioner, and nursing services. Medical care services are directed by a Medical Director who directs patient care at the outpatient clinic.  The ambulatory nursing component consists of state licensed registered nurses (RNS) and licensed practical nurses (LPNs).   Departmental operations are governed by the medical department's policy and procedures manual.

DEFS.' EX. E 023

MENOMINEE INDIAN TRIBE                          ANNUAL FUNDING AGREEMENT '99

b.  Laboratory Services – Two medical technologists and a laboratory aide provide laboratory services under the direct supervision of staff physicians.  The laboratory performs a variety of diagnostic tests, including routine chemistry, urinalysis, hematology, bacteriology, coagulation, endocrinology, and immunology.  Outside reference laboratories are utilized for specialized testing. An approved laboratory policy and procedures manual plan governs the laboratory operation.

c.  Radiology Services – An x-ray technologist provides routine diagnostic x-rays of the musculoskeleton as ordered by staff physicians.  Established protocols are defined in the radiology department's policy and procedures manual.

d.  Pharmacy – The pharmacy department is staffed by three pharmacists and two pharmacy technicians.  The pharmacy services promotes the rational use of pharmaceutical products within community health and patient care management plans;  the correct dispensing, use and administration of pharmaceutical products by patients; clinical staff consultation and monitoring and off-site pharmacy services monitoring.  The pharmacy is responsible for obtaining pharmaceutical drugs from appropriate sources according to standard procedures. Dispensing, counseling and related services shall be provided on receipt of authorized prescription form approved health center and subcontract medical (off site) and dental providers.  Department operations are defined in a pharmacy policy and procedures manual.

e.  Women's Personal Health – The Women's Personal Health Program is staffed by a registered nurse and an outreach worker.  Services offered include pregnancy testing, reproductive health, birth control counseling, follow up on sexually transmitted disease and abnormal pap smears, prenatal education, childbirth preparation classes, and post partum/postnatal services to women of all ages.  The WPH program is a direct service program under this contract with funding support from contract income.  Program direction and supervision is provided by the health administrator and designated staff.

f.  Emergency Medical Services –The emergency medical services department provides twenty four hour emergency medical services to the reservation/county.  It is staffed by state licensed emergency medical technicians.  Levels of care are provided at the EMT Basic, EMT defibrillation and EMT advanced airway levels.  An EMS policies and procedures manual governs the operation. The EMS program is a direct services program under this contract with funding support from contract income.  Program direction and supervision is provided by the health director and designated staff.

3.  Dental

a.  Dental – The dental department is staffed by three dentists, a dental hygienist, five dental assistants and a dental receptionist.  Program services encompass the total practice of general dentistry. Dental hygiene services including education and preventative planning activities are provided by a full time dental hygienist.  The dental policy and procedures manual defines the scope of services.

DEFS.' EX. E 024

i.      AIDS Prevention & AIDS Health Education - The program provides comprehensive HIV/ AIDS related services to the residents of Menominee Reservation/County. The focus is to prevent the spread of HIV infection through education and awareness efforts.

j.      Family Planning Services are references under the Women's Health Program description.

k.      Honoring Our Children - The program facilitates and assists expectant mothers through the process of prenatal care to ensure services are provided to pregnant mothers to promote healthy pregnancies and infants. The program aims to build strong support networks for families through active involvement of community members in services needed and provided. It aims to improve access to health and human services for children and families. There is promotion of healthier life style options and a greater public awareness.

l.      Breast/Cervical Cancer - This program provides screening for mammography and pelvic exams. Community outreach is provided through various media.

m.     Rural Infant Health - The program identifies and provides outreach for high risk and at risk infants from birth to age 3. The program provides transportation to medical appointments and assists with child immunizations. The program will improve and refine a system for comprehensive well child/healthcheck outreach and screening. Provide and assure comprehensive primary and preventative health care to infants and young children, including comprehensive assessments, anticipatory guidance, referrals and follow-up.

n.      Diabetes Program - A diabetic educator will work with community health nurses to reach diabetic patients in the community and will provide consistent follow up. The diabetic educator will be involved with screening and educational efforts that are conducted at work sites, schools and community functions. A diabetic patient management database will be refined to easy assess to patient status, appointment information and audit material. The identification of high risk patients that frequently no show and target for intensive educational efforts.

### Section 6 - Other Provisions to which Parties Agree

1.      Reporting Requirements

      A.    For each fiscal year which the Contractor receives or expends funds pursuant to P.L. 93-638, the Contractor shall submit to the Secretary a single agency audit report required by Chapter 75 of Title 31, United States Code.

      B.    The Contractor shall make an annual report to the Indian people in fulfillment of the Sec. 5 (c) of P.L. 93-638 requirement for reports and information to Indian people. This annual report will include the PFSA provided and the costs incurred. A copy of this report will also be provided to IHS.

DEFS.' EX. E 025

C.  Resource Patient Management System (RPMS) (Automated)
    (1) Patient Registration
    (2) Patient Care Component (dental)
    (3) Patient Care Component (pharmacy)
    (4) Contract Health Services (2.0)
    (5) Immunization Report
    (6) Community Health Activity Report (PHN)

D.  Environmental Health Reporting System (Manual).  Submit to Area Chief Environmental
    Health Services Branch.

2.  The term of this Annual Funding Agreement shall be for the period January 1, 1999 through
    December 31, 1999.

3.  IHS Headquarters PFSA/Tribal Shares
    For FY'99 the IHS Headquarters PFSA/Tribal Shares are available to the Menominee Indian Tribe
    at 100% of unencumbered programs, functions, services, and activities in the amount of $231,199.
    PFSA/Tribal Shares retained by IHS Headquarters for the benefit of the Menominee Indian Tribe
    are as follows:

    | | |
    |---|---|
    | Total Available | 231,199  less retained |
    | Line 126 DIR Support | -35,029 |
    | Line 137 DIR Support HQW | -23,559 |
    | Line 1301 Direct Ops (16.4%) | -8,366 |
    | | 164,245 |
    | ALC funds to Alcohol contract | -15,741 |
    | | 148,504 |

4.  FY'99 Bemidji Area PFSA/Tribal Shares
    For FY'99 the Bemidji Area PFSA/Tribal Shares are available to the Menominee Indian Tribe at 100%
    of unencumbered programs, functions, services, and activities in the amount of $212,100.
    The calculated Great Lakes ITC Field Office PFSA/Tribal Shares $ 37,064 are included in the
    Great Lakes ITC Agreement for the period ending 9/30/99.  PFSA/Tribal Shares retained by the
    Bemidji Area for the benefit of the Menominee Indian Tribe are as follows:

    | | |
    |---|---|
    | Total Available | $212,100  less retained |
    | Hlth Prof. Recruit. | -2,294 |
    | Health Info. Mgmt. | -5,597 |
    | MIS | -22,528 |
    | GLITC | -37,064 |
    | | 144,617 |
    | Behavioral Hlth funds to ALC | -7,512 |
    | | 137,105 |

5.  FY'99 Aberdeen PFSA/Tribal Shares
    The FY'99 Aberdeen PFSA/Tribal Shares in the amount of $25, 193 are hereby added to the
    agreement to augment health programs.

DEFS.' EX. E 026

MENOMINEE INDIAN TRIBE                          ANNU... FUNDING AGREEMENT '99

---

6.  TORT Claims Coverage

   a.  For purposes of Federal Tort Claims Act Coverage, the contractor and its employees (including individuals performing personal services contracts with the contractor to provide health care services) are deemed to be employees of the federal government while performing work under this contract. This status is not changed by the source of the funds used by the contractor to pay the employee's salary and benefits unless the employee receives additional compensation for performing covered services from anyone other than the contractor.

   b.  Under this contract, the contractor's employee may be required as a condition of employment to provide health services to non-IHS beneficiaries in order to meet contractual obligations. These services may be provided in either contractor or non-contractor facilities. The employee's status for Federal Tort Claims Act purposes is not affected.

7.  Program Income, Including Medicare/Medicaid

   All medicare, medicaid or other program income received by the Tribe shall be treated as additional supplemental funding to that negotiated in the Annual Funding Agreement and the Tribe may retain all such income, pursuant to section 106(m) of the Act. Medicare/medicaid collections of the Tribe under Title IV of Public Law 94-437, as amended, shall be used by the Tribe in accordance with any applicable statutory restrictions on the use of such funds. The Tribe is obligated to seek third party reimbursement as provided by federal law.

8.  Eligibility for Services

   In determining eligibility for services, the Tribe shall comply wiht applicable eligibility provisions set forth in the Indian Health Care Improvement Act, as amended, other satutory law and applicable regulations.

Dated this _15th_ Day of _Dec._, 1998

MENOMINEE INDIAN TRIBE OF WISCONSIN

BY _____
                Tribal Chairman

UNITED STATES OF AMERICA, DEPARTMENT OF HEALTH AND
HUMAN SERVICES, INDIAN HEALTH SERVICE

BY _____
        Contracting Officer, Bemidji Indian Health Services

DEFS.' EX. E 027

# EXHIBIT F

ATTACHMENT 2-00

TO INDIAN SELF-DETERMINATION AGREEMENT

CONTRACT NUMBER 239- 99-0014

ANNUAL FUNDING AGREEMENT

BETWEEN THE SECRETARY OF HEALTH AND HUMAN SERVICES

AND THE

MENOMINEE INDIAN TRIBE OF WISCONSIN



BEMIDJI AREA
INDIAN HEALTH
SERVICE

JANUARY 1, 2000 - DECEMBER 31, 2000

DEFS.' EX. F 001

ANNUAL FUNDING AGREEMENT
BETWEEN THE

MENOMINEE INDIAN TRIBE OF WISCONSIN

AND THE

SECRETARY OF HEALTH AND HUMAN SERVICES

January 1, 2000 - SEPTEMBER 30, 2000

## CONTENTS

SECTION

1.   PURPOSE
2.   LIST OF PROGRAMS, FUNCTIONS, SERVICES, AND ACTIVITIES
     TO BE PERFORMED
3.   FUNDS TO BE PROVIDED
4.   TIME AND METHOD OF PAYMENT
5.   BRIEF DESCRIPTION OF PFSA'S TO TO PROVIDED
6.   OTHER PROVISIONS TO WHICH PARTIES AGREE


ATTACHMENT A - INFORMATIONAL BUDGET

DEFS.' EX. F 002

MENOMINEE INDIAN TRIBE          AGREEMENT NO:39-99-0014          ANNUAL FUNDING AGREEMENT '00

## Section 1 - Purpose

This Annual Funding Agreement is entered into by the Menominee Indian Tribe of Wisconsin (referred to in this agreement as Contractor) and the U.S. Department of Health and Human Services, Indian Health Service (referred to in this agreement as IHS) in acc I.H.S.) in accordance with 108 (25 USC 4501) (c) Section 1, (f)(2) and pursuant to the Self -Determination Model Agreement No:  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, dated January 1, 1999, under the provisions of Title of P.L. 93-638, as amended.

## Section 2 - List of Programs. Functions. Services. and Activities to be Performed

The Menominee Indian Tribe, hereinafter referred to as Contractor shall continue to administer and operate the Menominee Tribal Health Services Program on the Menominee Indian Reservation utilizing the tribal health facility at Keshena, Wisconsin.  The Menominee Health Center is fully accredited by the Joint Commission of Accreditation of Healthcare Organizations (JCAHO).  The purpose of this comprehensive health service program is to provide high quality ambulatory medical, dental, community health services, and the administration thereof for eligible individuals residing within the target area.  The Contractor may also provide services to non-beneficiaries on a fee- for- service basis as authorized by IHS Manual 2-4.3I (emergency cases) and IHS Manual 2-3.3 J (non-emergency cases) 1.

The Contractor agrees to provide the programs, functions, services, and activities (PFSA) as consolidated under the general budget categories listed below and in accordance with the Program Standards listed in the Model Agreement:

- A.   Administrative Services
    1.   Administration
    2.   Medical Records
    3.   Billing
    4.   CHS
    5.   Housekeeping/Maintenance
- B.   Ambulatory Services
    1.   Medical Services, Including:
        a.  Physicians
        b.  Nurse Practitioner (NP)
        c.  Physician Assistant
        d.  Pharmacy Services
        e.  Laboratory Services
        f.  Ambulatory Care - Nursing

DEFS.' EX. F 003

MENOMINEE INDIAN TRIBE                                 ANNUAL FUNDING AGREEMENT '00

        g. Medical and Technical Relief Coverage including:
           Medical Director, Radiology Technicians, Dentists, Hospital Coverage-Physician,
           Nutritionist, psychotherapists, cardiologist, physical therapist, pedodontist.
2. Dental Services (Direct and Contract Health)
3. Audiology
4. Clinic/Program Administration
5. Contract Health Services (CHS, including Inpatient, Outpatient, and Optical)
6. Patient Transportation Services
7. Emergency Medical Services

C. Preventative Health Services
1. Dental Prevention Services
2. Environmental Health and Sanitation Services
3. Public Health Nursing Services (CHNS)
4. Nutrition Services
5. Mental Health
6. Wellness Program
7. Health Promotion Disease Prevention
8. Aids Prevention and Aids Health Education
9. Family Planning Services
10. Honoring Our Children
11. Breast/Cervical Cancer
12. Rural Infant Health
13. Diabetes Program

## Section 3 - Funds to be Provided

The funding amounts available to the Contractor for the period of this annual funding agreement shall be as follows:

| | | | | | | |
|---|---|---|---|---|---|---|
| H/C | 7500390 | J461151 | 0-39146.61 | 41.8B | 55.77 | 2,273,576 |
| CSC IDC | 7500390 | J461170 | 0-39846.61 | 41.8E | 55.77 | 319,200 |
| CSC DIR | 7500390 | J461170 | 0-39846.61 | 41.8A | 55.77 | 152,100 |
| CHS | 750/10390 | J46ZG75 | 0-50046.66 | 41.8B | 55.77 | 1,124,770 |
| MH | 7500390 | J461169 | 0-39146.63 | 41.8B | 55.77 | 10,490 |
| CHR | 7500390 | J461174 | 0-39246.74 | 41.8B | 55.77 | 10 |
| PHN | 7500390 | J461171 | 0-39246.72 | 41.8B | 55.77 | 11,680 |
| DEN | 7500390 | J461164 | 0-39146.62 | 41.8B | 55.77 | 60,470 |
| HE | 7500390 | J461162 | 0-39246.73 | 41.8B | 55.77 | 1,270 |
| DIR Ops | 7500390 | J461173 | 0-39246.80 | 41.8B | 55.77 | 580 |
| IPP | 75X0391 | J461168 | 0-29246.77 | 41.8B | 55.77 | 1,000 |
| M&I | 75X0391 | J461167 | 0-29040.76 | 41.8B | 55.77 | 94,966 |
| OEH Eq. | 75X0391 | J461172 | 0-29646.71 | 41.8B | 55.77 | 52,871 |
| | | | Total | | | $ 4,102,983 |

(1) The FY'00 estimated amount is based on the final FY'98 base amount, plus FY'99 adjustments.
(2) The Contract Support Costs (CSC) indirect cost amount of $319,200 is considered non-recurring and should be used to support indirect costs only.
(3) H/C includes withholding of $9,134 Bio-Med, which reflects $6,030 Field Services and $3,104 Area position.
(4) BAO will withhold $252,760 of H/C funds to cover salary and fringe costs for C.O. details. $119,000 for MD Culhane and $133,760 for MD Exner, for the period 10/1/99 - 9/30/00. Amount includes $80,000 special pay, ($40,000 each) Also includes $1,360 assessment fee for each C.O.

DEFS.' EX. F 004

MENOMINEE INDIAN TRIBE                                              ANNUAL FUNDING AGREEMENT '00

FY'00 Headquarters Tribal Shares @75% for the period 1/1/00 to 9/30/00

| | | | | | | |
|---|---|---|---|---|---|---|
| H/C | 7500390 | J461151 | 0-39146.61 | 41.8B | 55.77 | 58,340 |
| DEN | 7500390 | J461164 | 0-39146.62 | 41.8B | 55.77 | 3,552 |
| MH | 7500390 | J461169 | 0-39146.63 | 41.8B | 55.77 | 5,940 |
| CHS | 750/10390 | J46ZG75 | 0-50046.66 | 41.8B | 55.77 | 4,027 |
| PHN | 7500390 | J461171 | 0-39246.72 | 41.8B | 55.77 | 2,559 |
| HE | 7500390 | J461162 | 0-39246.73 | 41.8B | 55.77 | 3,165 |
| CHR | 7500390 | J461174 | 0-39245.74 | 41.8B | 55.77 | 6,747 |
| Dir Ops | 7500390 | J461173 | 0-39646.80 | 41.8B | 55.77 | 33,305 |
| | | | Total HQ Tribal Shares | | | 117,635 |

FY'01 Headquarters Tribal Shares @25% for the period 10/1/00 to 12/31/00

| | | | | | | |
|---|---|---|---|---|---|---|
| H/C | 7510390 | J461151 | 1-39146.61 | 41.8B | 55.77 | 19,447 |
| DEN | 7510390 | J461164 | 1-39146.62 | 41.8B | 55.77 | 1,184 |
| MH | 7510390 | J461169 | 1-39146.63 | 41.8B | 55.77 | 1,980 |
| CHS | 751/20390 | J46ZR75 | 1-59046.66 | 41.8B | 55.77 | 1,343 |
| PHN | 7510390 | J461171 | 1-39246.72 | 41.8B | 55.77 | 853 |
| HE | 7510390 | J461162 | 1-39246.73 | 41.8B | 55.77 | 1,055 |
| CHR | 7510390 | J461174 | 1-39246.74 | 41.8B | 55.77 | 2,249 |
| Dir Ops | 7510390 | J461173 | 1-39646.80 | 41.8B | 55.77 | 11,102 |
| | | | Total HQ Tribal Shares | | | 39,213 |

Note: Alcohol funds in the amount of $16,239 are incorporated into the Maehnowesekiyah contract as request by Tribe's letter dated October 28, 1999.

FY'00 Bemidji Area Tribal Shares @100% of unencumbered

| | | | | | | |
|---|---|---|---|---|---|---|
| H/C | 7500390 | J461151 | 0-39146.61 | 41.8B | 55.77 | 72,106 |
| DEN | 7500390 | J461164 | 0-39146.62 | 41.8B | 55.77 | 65,000 |
| | | | Total Area Tribal Shares | | | 137,106 |

Note: Behavioral Health funds in the amount of $7,510 are incorporated into the Meahnowesekiyah contract as requested by Tribe's letter dated October 28, 1999.

FY'00 Aberdeen Area Tribal Shares

| | | | | | | |
|---|---|---|---|---|---|---|
| H/C | 7500390 | J461151 | 0-39146.61 | 41.8B | 55.77 | 25,193 |
| | | | Total Contract | | | $4,422,130 |

## Section 4 - Time and Method of Payment

The time and method of payment of funds to the Contractor for the operation and administration of the programs, functions, services, and activities identified under this agreement shall be as follows:

1. For all programs of a recurring nature for which amounts have been determined prior to the beginning of the Annual Funding Agreement (AFA) Year the Secretary shall provide a single lump sum payment. The Aberdeen Area Indian Health Service, Division of Financial Resources shall issue payment under the contract within forty-five (45) calendar days after apportionment from the Office of Management and Budget or as soon thereafter as practicable or reasonably possible.

2. In the event of a "Continuing Resolution" the Secretary will provide the maximum funding allowed.

DEFS.' EX. F 005

MENOMINEE INDIAN TRIBE                          ANNUAL FUNDING AGREEMENT '00

### Section 5 - Brief Description of PFSA to be Provided

Program, Services, Functions, and Activities.  The Contractor shall operate the following programs.

1.  Administrative Services

    a.  Administration - The Menominee Indian Tribe and its delegate Health Committee is responsible for overall operation of the tribal comprehensive health program, which is under the administrative supervision of the Tribal Health Administrator and medical direction by the Medical Director.  Responsibilities include planning and developing organization objectives, designing operational plans and establishing policy, allocating resources, organizing work processes, staffing, retaining human resources, directing, controlling, and monitoring organizational activities.

    b.  Medical Records - Maintains all outpatient health care records in POMR format, transcribes progress notes, handles record transfers to and from the Menominee Tribal Clinic, provides coding and pricing for all route slips, ensures patient records are maintained in a standardized format according to policy, processes, monitors, and submits ambulatory patient care data to appropriate IHS agency. Ensures proper registration of all patients utilizing services at the clinic.

    c.  Billing - Maintains patient account information such as demographic and insurance coverage through patient registration, processes all service charges and reimbursements for care, tracks third party billings, provides management data for cash flow projections, utilizes and maintains a computer system for processing all billing components, maintains computer security, and provides periodic software upgrades.

    d.  Contract Health Services - A contract health services program is operated for all eligible individuals residing within the Menominee Tribal Clinic's service delivery area.  This includes procurement of health services not available at the clinic.  Clinic physicians make referrals to designated preferred health care providers.  A CHS policy and procedure manual defines department operations.

    e.  Maintenance and Housekeeping - Maintenance and housekeeping is responsible for the repair, maintenance and cleaning of the entire health care facility.

2.  Direct Medical Care

    a.  Medical Services - Direct patient care consists of physician, mid-level practitioner including physician assistant, nurse practitioner, and nursing services. Medical care services are directed by a Medical Director who directs patient care at the outpatient clinic.  The ambulatory nursing component consists of state licensed registered nurses (RNS) and licensed practical nurses (LPNs).   Departmental operations are governed by the medical department's policy and procedures manual.

DEFS.' EX. F 006

MENOMINEE INDIAN TRIBE                                      ANNUAL FUNDING AGREEMENT '00

b.    Laboratory Services - Two medical technologists and a laboratory aide provide laboratory services under the direct supervision of staff physicians. The laboratory performs a variety of diagnostic tests, including routine chemistry, urinalysis, hematology, bacteriology, coagulation, endocrinology, and immunology. Outside reference laboratories are utilized for specialized testing. An approved laboratory policy and procedures manual plan governs the laboratory operation.

c.    Radiology Services - An x-ray technologist provides routine diagnostic x-rays of the musculoskeleton as ordered by staff physicians. Established protocols are defined in the radiology department's policy and procedures manual.

d.    Pharmacy - The pharmacy department is staffed by three pharmacists and two pharmacy technicians. The pharmacy services promotes the rational use of pharmaceutical products within community health and patient care management plans; the correct dispensing, use and administration of pharmaceutical products by patients; clinical staff consultation and monitoring and off-site pharmacy services monitoring. The pharmacy is responsible for obtaining pharmaceutical drugs from appropriate sources according to standard procedures. Dispensing, counseling and related services shall be provided on receipt of authorized prescription form approved health center and subcontract medical (off site) and dental providers. Department operations are defined in a pharmacy policy and procedures manual.

e.    Women's Personal Health - The Women's Personal Health Program is staffed by a registered nurse and an outreach worker. Services offered include pregnancy testing, reproductive health, birth control counseling, follow up on sexually transmitted disease and abnormal pap smears, prenatal education, childbirth preparation classes, and post partum/postnatal services to women of all ages. The WPH program is a direct service program under this contract with funding support from contract income. Program direction and supervision is provided by the health administrator and designated staff.

f.    Emergency Medical Services -The emergency medical services department provides twenty four hour emergency medical services to the reservation/county. It is staffed by state licensed emergency medical technicians. Levels of care are provided at the EMT Basic, EMT defibrillation and EMT advanced airway levels. An EMS policies and procedures manual governs the operation. The EMS program is a direct services program under this contract with funding support from contract income. Program direction and supervision is provided by the health director and designated staff.

3.    Dental
a.    Dental - The dental department is staffed by three dentists, a dental hygienist, five dental assistants and a dental receptionist. Program services encompass the total practice of general dentistry. Dental hygiene services including education and preventative planning activities are provided by a full time dental hygienist. The dental policy and procedures manual defines the scope of services.

DEFS.' EX. F 007

4.  Community Health
    a.  Environmental Health - An environmental health specialist (sanitarian) is employed to plan, organize, and direct a comprehensive program to identify and address environmental conditions which may effect the health of the Menominee Indian Reservation residents. These areas include, community injury control, water quality, waste management, food, celebrations, institutional environmental health, vector control, recreational sanitation, epidemiological investigations, emergency situations, promotion of tribal codes and ordinances, industrial hygiene, operation and maintenance activities, general administrative activities, annual environmental planning, construction, radon testing and mitigation.

    b.  Community Health Nursing Services - Community Health Nursing provides services in coordination with the staff physicians. The community health nurse incorporates into practice knowledge of clinical nursing, community and social organization, ecology, biological, psychological, and social sciences. The primacy focus of community health nursing is the prevention of illness, the promotion and maintenance of health and the provision of needed therapeutic services. A policy and procedures manual defines department operations.

    c.  Mental Health - The Mental Health department is responsible for providing outpatient mental health services. Individual, family and group therapy is available for family difficulties, marital problems, separation and divorce, parent-child difficulties, depression, anxiety, suicidal thoughts or actions, and school behavior problems. The department is staffed by two masters level psychologists and two masters level clinical social workers. A departmental policy and procedures manual governs program operations.

    d.  Optical - The optical department is staffed by two contracted optometrists, licensed by the Wisconsin State Optometry Board of Examiners. The following services are provided: eye examinations, eye glasses and contact lens. A departmental policy and procedures manual defines program operations.

    e.  Nutrition - A registered dietitian provides nutrition education and counseling services for the Menominee community.

    f.  Audiology - An audiologist consultant is contracted to provided a full range of audiology screening, testing and referral services for the Menominee community.

    g.  Wellness Program - The wellness program is directed by a registered nurse and a health fitness instructor. The program is aimed at reducing the high prevalence of cardiovascular disease for the Menominee people. Prevention activities will be continued and new wellness programs will be developed to reduce the risk of cardiovascular disease of people of all ages (children, youth, and adults) that take place in multiple settings (schools, work sites, and community).

    h.  Health Promotion Disease Prevention - The program focus includes health promotions, health protection and preventative health. A HP/DP committee coordinates community healthy initiative efforts. This includes men's and women's health fairs, walk run competitions.

DEFS.' EX. F 008

MENOMINEE INDIAN TRIBE                                    ANNUAL FUNDING AGREEMENT '00

i.    AIDS Prevention & AIDS Health Education - The program provides comprehensive HIV/
      AIDS related services to the residents of Menominee Reservation/County.  The focus is
      to prevent the spread of HIV infection through education and awareness efforts.

j.    Family Planning Services are references under the Women's Health Program description.

k.    Honoring Our Children - The program facilitates and assists expectant mothers through
      the process of prenatal care to ensure services are provided to pregnant mothers to
      promote healthy pregnancies and infants.  The program aims to build strong support
      networks for families through active involvement of community members in services
      needed and provided.  It aims to improve access to health and human services for children
      and families.  There is promotion of healthier life style options and a greater public
      awareness.

l.    Breast/Cervical Cancer - This program provides screening for mammography and pelvic
      exams.  Community outreach is provided through various media.

m.    Rural Infant Health - The program identifies and provides outreach for high risk and at
      risk infants from birth to age 3.  The program provides transportation to medical
      appointments and assists with child immunizations.  The program will improve and
      refine a system for comprehensive well child/healthcheck outreach and screening.
      Provide and assure comprehensive primary and preventative health care to infants and
      young children, including comprehensive assessments, anticipatory guidance, referrals
      and follow-up.

n.    Diabetes Program - A diabetic educator will work with community health nurses to reach
      diabetic patients in the community and will provide consistent follow up.  The diabetic
      educator will be involved with screening and educational efforts that are conducted at work
      sites, schools and community functions.  A diabetic patient management database will be
      refined to easy assess to patient status, appointment information and audit material.  The
      identification of high risk patients that frequently no show and target for intensive educational
      efforts.

## Section 6 - Other Provisions to which Parties Agree

1.    Reporting Requirements

      A.    For each fiscal year which the Contractor receives or expends funds pursuant to P.L.
            93-638, the Contractor shall submit to the Secretary a single agency audit report
            required by Chapter 75 of Title 31, United States Code.

      B.    The Contractor shall make an annual report to the Indian people in fulfillment of the Sec.
            5 (c) of P.L. 93-638 requirement for reports and information to Indian people.  This annual
            report will include the PFSA provided and the costs incurred.  A copy of this report will
            also be provided to IHS.

DEFS.' EX. F 009

MENOMINEE INDIAN TRIBE                                    ANNUAL FUNDING AGREEMENT '00

C.   Resource Patient Management System (RPMS) (Automated)
     (1) Patient Registration
     (2) Patient Care Component (dental)
     (3) Patient Care Component (pharmacy)
     (4) Contract Health Services (2.0)
     (5) Immunization Report
     (6) Community Health Activity Report (PHN)

D.   Environmental Health Reporting System (Manual).  Submit to Area Chief Environmental
     Health Services Branch.

2.   The term of this Annual Funding Agreement shall be for the period January 1, 2000 through
     December 31, 2000.

3.   IHS Headquarters PFSA/Tribal Shares
     For FY'00 the IHS Headquarters PFSA/Tribal Shares are available to the Menominee Indian Tribe
     at 100% of unencumbered programs, functions, services, and activities in the amount of $246,044.
     PFSA/Tribal Shares retained by IHS Headquarters for the benefit of the Menominee Indian Tribe
     are as follows:

     | | |
     |---|---|
     | Total Available | 246,044 less retained |
     | Line 126 DIR Support | -42,501 |
     | Line 137 DIR Support HQW | -21,745 |
     | Line 1301 Direct Ops (16.4%) | -8,711 |
     | | 173,087 |
     | ALC funds to Alcohol contract | -16,239 |
     | | 156,848 |

4.   FY'00 Bemidji Area PFSA/Tribal Shares
     For FY'00 the Bemidji Area PFSA/Tribal Shares are available to the Menominee Indian Tribe at 100%
     of unencumbered programs, functions, services, and activities in the amount of $212,100.
     The calculated Great Lakes ITC Field Office PFSA/Tribal Shares $ 37,064 are included in the
     Great Lakes ITC Agreement for the period ending 9/30/00.  PFSA/Tribal Shares retained by the
     Bemidji Area for the benefit of the Menominee Indian Tribe are as follows:

     | | |
     |---|---|
     | Total Available | 212,100 less retained |
     | Hlth Prof. Recruit. | -2,290 |
     | Health Info. Mgmt. | -5,600 |
     | MIS | -22,530 |
     | GLITC | -37,064 |
     | | 144,616 |
     | Behavioral Hlth funds to ALC | -7,510 |
     | | 137,106 |

5.   FY'00 Aberdeen PFSA/Tribal Shares
     The FY'00 Aberdeen PFSA/Tribal Shares in the amount of $25, 193 are hereby added to the
     agreement to augment health programs.

DEFS.' EX. F 010

MENOMINEE INDIAN TRIBE                                    ANNUAL FUNDING AGREEMENT '00

6.    TORT Claims Coverage

a.    For purposes of Federal Tort Claims Act Coverage, the contractor and its employees
      (including individuals performing personal services contracts with the contractor to
      provide health care services) are deemed to be employees of the federal government
      while performing work under this contract. This status is not changed by the source
      of the funds used by the contractor to pay the employee's salary and benefits unless
      the employee receives additional compensation for performing covered services from
      anyone other than the contractor.

b.    Under this contract, the contractor's employee may be required as a condition of
      employment to provide health services to non-IHS beneficiaries in order to meet
      contractual obligations. These services may be provided in either contractor or
      non-contractor facilities. The employee's status for Federal Tort Claims Act
      purposes is not affected.

7.    Program Income, Including Medicare/Medicaid

      All medicare, medicaid or other program income received by the Tribe shall be treated as
      additional supplemental funding to that negotiated in the Annual Funding Agreement and
      the Tribe may retain all such income, pursuant to section 106(m) of the Act. Medicare/
      medicaid collections of the Tribe under Title IV of Public Law 94-437, as amended, shall
      be used by the Tribe in accordance with any applicable statutory restrictions on the use
      of such funds. The Tribe is obligated to seek third party reimbursement as provided by
      federal law.

8.    Eligibility for Services

      In determining eligibility for services, the Tribe shall comply with applicable eligibility
      provisions set forth in the Indian Health Care Improvement Act, as amended, other
      statutory law and applicable regulations.

                    Dated this __15th__ Day of __Nov__, 1999


                    MENOMINEE INDIAN TRIBE OF WISCONSIN


             BY _Betty Jo Warpiak, Tribal Administrator_
                          Tribal Chairman


          UNITED STATES OF AMERICA, DEPARTMENT OF HEALTH AND
                HUMAN SERVICES, INDIAN HEALTH SERVICE

             BY _____
                    Contracting Officer, Bemidji Indian Health Services

DEFS.' EX. F 011

# MENOMINEE TRIBE'S MODEL/ANNUAL FUNDING AGREEMENT

# MODIFICATION No. 00-15

# EFFECTIVE 5/30/00

DEFS.' EX. F 012

## MODEL/ANNUAL FUNDING AGREEMENT MODIFICATION

| AGREEMENT NO. | MODIFICATION NO. | EFFECTIVE | REQUISITION NO. | PAGE | OF PAGES |
|---|---|---|---|---|---|
| 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 | 00-15 | 05/30/00 | | 1 | 3 |

| ISSUED BY | CONTRACTOR NAME AND ADDRESS | PAYMENT MADE BY |
|---|---|---|
| **Indian Health Services**<br>**Bemidji Area Office**<br>**522 Minnesota Ave., 211 Fed. Bldg.**<br>**Bemidji, Minnesota  56601** | **Menominee Tribe of Wisconsin**<br>**P.O. Box 910**<br>**Keshena, Wisconsin  54135** | **Indian Health Service**<br>**Aberdeen Area Finance**<br>**115 Fourth Avenue**<br>**Aberdeen, S. Dak. 57401** |

**AUTHORITY: P.L. 93-638 AS AMENDED**

**DESCRIPTION OF MODIFICATIONS**

A.  Annual Funding Agreement 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 is hereby modified to increase the funding amount by $219,054 which reflects the FY 2000 recurring mandatory/congressional increase as identified on the April 21, & May 5, 2000 distribution worksheets and also a $646 adjustment to the OEH equipment funding.  In addition, this modification moves the FY 2001 H.Q. tribal shares amount to the FY 2000 H.Q. tribal shares amount and will be paid this fiscal year.  There will no longer be the 75/25% split for HQ tribal shares.

B.  The funding amounts available to the Contractor for the period of this annual funding agreement shall be as follows:

| 1/1/00 - 12/31/00 | | | | | | Estimated '00 Amount | |
|---|---|---|---|---|---|---|---|
| H/C | 7500390 | J461151 | 0-39146.61 | 41.8B | 55.75 | 2,332,516 | (+58,940) |
| CSC/DIR | 7500390 | J461170 | 0-39846.61 | 41.8A | 55.75 | 155,294 | (+3,194) |
| CSC/IDC | 7500390 | J461170 | 0-39846.61 | 41.8E | 55.75 | 325,084 | (+5,884) |
| CHS | 750/10390 | J46ZG75 | 0-60046.66 | 41.8B | 55.75 | 1,253,610 | (+28,100)(+100,740) |
| PHN | 7500390 | J461171 | 0-39246.72 | 41.8B | 55.75 | 15,520 | (+3,840) |
| HE | 7500390 | J461162 | 0-39246.73 | 41.8B | 55.75 | 1,940 | (+670) |
| MH | 7500390 | J461169 | 0-39146.63 | 41.8B | 55.75 | 14,110 | (+3,620) |
| DEN | 7500390 | J461164 | 0-39146.62 | 41.8B | 55.75 | 73,890 | (+13,420) |
| CHR | 7500390 | J461174 | 0-39246.74 | 41.8B | 55.75 | 10 | |
| DIR OPS | 7500390 | J461173 | 0-39646.80 | 41.8B | 55.75 | 580 | |
| OEH Equipment | 75X0391 | J461172 | 0-29646.71 | 41.8B | 55.75 | 53,517 | (+646) |
| M&I | 75X0391 | J461167 | 0-29040.76 | 41.8B | 55.75 | 94,966 | |
| IPP | 75X0391 | J461168 | 0-29246.77 | 41.8B | 55.75 | 1,000 | |
| M&I | 75X0391 | J461167 | 9-29040.76 | 41.8B | 55.75 | 32,000 | |

|  |  |  |
|---|---|---|
| | Total Base | 4,354,037  (+219,054) |

| 21. NAME AND TITLE OF SIGNER (Type or Print) | 22. NAME OF CONTRACTING OFFICER (Type or Print) |
|---|---|
| | Dennis Murphy, Contracting Officer |

| 11-22 CONTRACTOR SIGNATURE AND DATE | 23. CONTRACTING OFFICER SIGNATURE AND DATE |
|---|---|
| | _[signature]_      5/30/00 |

Funding Certification      Budget  sml · dtd  5/30/00                    Menomin      mod 0015

DEFS.' EX. F 013

## MODEL/ANNUAL FUNDING AGREEMENT MODIFICATION

| AGREEMENT NO. | MODIFICATION NO. | | REQUISITION NO. | PAGE OF PAGES | |
|---|---|---|---|---|---|
| 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 | 00-15 | | | 2 | 3 |

FY'00 Area Tribal Shares @100%

| | | | | | | |
|---|---|---|---|---|---|---|
| H/C | 7500390 | J461151 | 0-39146.61 | 55.75 41.8B | 72,106 | |
| DEN | 7500390 | J461164 | 0-39146.62 | 55.75 41.8B | 65,000 | |
| | | | | Total | 137,106 | |

FY'00 Headquarters Tribal Shares @ 100% for the period 1/1/00 to 12/31/00

| | | | | | | |
|---|---|---|---|---|---|---|
| H/C | 7500390 | J461151 | 0-39146.61 | 55.75 41.8B | 77,787 | (+19,447) |
| DEN | 7500390 | J461164 | 0-39146.62 | 55.75 41.8B | 4,736 | (+1,184) |
| MH | 7500390 | J461169 | 0-39146.63 | 55.75 41.8B | 7,920 | (+1,980) |
| PHN | 7500390 | J461171 | 0-39246.72 | 55.75 41.8B | 3,412 | (+853) |
| HE | 7500390 | J461162 | 0-39246.73 | 55.75 41.8B | 4,220 | (+1,055) |
| CHR | 7500390 | J461174 | 0-39246.74 | 55.75 41.8B | 8,996 | (+2,249) |
| Dir Ops | 7500390 | J461173 | 0-39646.80 | 55.75 41.8B | 44,407 | (+11,102) |
| CHS | 750/10390 | J46ZG75 | 0-50046.66 | 55.75 41.8B | 5,370 | (+1,343) |
| | | | | Total | 156,848 | (+39,213) |

FY'01 Headquarters Tribal Shares @ 0% for the period 10/1/00 to 12/31/00(paid in FY'00)

| | | | | | | |
|---|---|---|---|---|---|---|
| H/C | 7510390 | J461151 | 1-39146.61 | 55.75 41.8B | 0 | (-19,447) |
| DEN | 7510390 | J461164 | 1-39146.62 | 55.75 41.8B | 0 | (-1,184) |
| MH | 7510390 | J461169 | 1-39146.63 | 55.75 41.8B | 0 | (-1,980) |
| PHN | 7510390 | J461171 | 1-39246.72 | 55.75 41.8B | 0 | (-853) |
| HE | 7510390 | J461162 | 1-39246.73 | 55.75 41.8B | 0 | (-1,055) |
| CHR | 7510390 | J461174 | 1-39246.74 | 55.75 41.8B | 0 | (-2,249) |
| Dir Ops | 7510390 | J461173 | 1-39646.80 | 55.75 41.8B | 0 | (-11,102) |
| CHS | 751/20390 | J46ZR75 | 1-51046.66 | 55.75 41.8B | 0 | (-1,343) |
| | | | | Total | 0 | (-39,213) |

FY'00 Aberdeen Area Tribal Shares

| | | | | | | |
|---|---|---|---|---|---|---|
| H/C | 7500390 | J461151 | 0-39146.61 | 55.75 41.8B | 25,193 | |
| | | | | Total Contract | $ 4,673,184 | (+219,054) |

DEFS.' EX. F 014

## MODEL/ANNUAL FUNDING AGREEMENT MODIFICATION

| AGREEMENT NO. | MODIFICATION NO. | | REQUISITION NO. | SET OF PAGES | |
|---|---|---|---|---|---|
| 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 | 00-15 | | | 3 | 3 |

C.   The funding period remains unchanged as a result of this modification.

D.   The funding amount is hereby increased by $219,054 from $4,454,130 to $4,673,184 by reason of this modification.

E.   There are no other changes as a result of this modification.

DEFS.' EX. F 015

# MENOMINEE TRIBE'S MODEL/ANNUAL FUNDING AGREEMENT

# MODIFICATION No. 00-17

# EFFECTIVE 9/27/00

DEFS.' EX. F 016

## MODEL/ANNUAL FUNDING AGREEMENT MODIFICATION

| 1. AGREEMENT NO. | 2. MODIFICATION NO. | 3. EFFECTIVE | 4. REQUISITION NO. | 5. PAGE | OF PAGES |
|---|---|---|---|---|---|
| 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 | 00-17 | 09/27/00 | | 1 | 3 |

| 6. ISSUED BY | 7. CONTRACTOR NAME AND ADDRESS | 8. PAYMENT MADE BY |
|---|---|---|
| Indian Health Services<br>Bemidji Area Office<br>522 Minnesota Ave., 211 Fed. Bldg.<br>Bemidji, Minnesota 56601 | Menominee Tribe of Wisconsin<br>P.O. Box 910<br>Keshena, Wisconsin 54135 | Indian Health Service<br>Aberdeen Area Finance<br>115 Fourth Avenue<br>Aberdeen, S. Dak. 57401 |

9. AUTHORITY: USC 450G ET AL. P.L. 93-638 AS AMENDED
9. Contractor □ is □ is not required to sign this document and return ___ copies to the issuing office.
10. DESCRIPTION OF MODIFICATION:

A. Annual Funding Agreement No. 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 is hereby modified to increase the funding amount by $145,052 which reflects the following:

| H/C | Director's Year End | 14,825 |
|---|---|---|
| H/C | LNF | 130,474 |
| H/C | MOA/IPA Reconciliation | (7,760) additional withholding for C.O.'s to reflect actual cost of $257,800 |
| CHS | | 5,340 |
| CSC IDC | | 2,173 |

B. The funding amounts available to the Contractor for the period of this annual funding agreement shall be as follows:

| 1/1/00 – 12/31/00 | | | | | | Estimated '00 Amount | |
|---|---|---|---|---|---|---|---|
| H/C | 7500390 | J461151 | 0-39146.61 | 41.8B | 55.75 | 2,474,625 | (+137,539) |
| CSC/DIR | 7500390 | J461170 | 0-39846.61 | 41.8A | 55.75 | 155,294 | |
| CSC/IDC | 7500390 | J461170 | 0-39846.61 | 41.8E | 55.75 | 327,257 | (+2,173) |
| CHS | 750/10390 | J46ZG75 | 0-60046.66 | 41.8B | 55.75 | 1,258,950 | (+5,340) |
| PHN | 7500390 | J461171 | 0-39246.72 | 41.8B | 55.75 | 15,520 | |
| HE | 7500390 | J461162 | 0-39246.73 | 41.8B | 55.75 | 1,940 | |
| MH | 7500390 | J461169 | 0-39146.63 | 41.8B | 55.75 | 14,110 | |
| DEN | 7500390 | J461164 | 0-39146.62 | 41.8B | 55.75 | 73,890 | |
| CHR | 7500390 | J461174 | 0-39246.74 | 41.8B | 55.75 | 10 | |
| DIR OPS | 7500390 | J461173 | 0-39646.80 | 41.8B | 55.75 | 580 | |
| OEH Equipment | 75X0391 | J461172 | 0-29646.71 | 41.8B | 55.75 | 53,517 | |
| M&I | 75X0391 | J461167 | 0-29040.76 | 41.8B | 55.75 | 94,966 | |
| IPP | 75X0391 | J461168 | 0-29240.77 | 41.8B | 55.75 | 4,000 | |
| M&I | 75X0391 | J461167 | 9-29040.76 | 41.8B | 55.75 | 32,000 | |

Total Base    4,506,659  (+145,052)

| 11. NAME AND TITLE OF SIGNER (Type or Printed) | 12. NAME OF CONTRACTING OFFICER (Type or Printed) |
|---|---|
| Betty Jo Wozniak<br>Tribal Administrator | Dennis Murphy, Contracting Officer |

| 11a. CONTRACTOR SIGNATURE AND DATE | 12a. CONTRACTING OFFICER SIGNATURE AND DATE |
|---|---|
| *Betty Jo Wozniak*  10-3-00 | *[signature]*  09/27/00 |

Funding Certification    Budget pad dtd 9/26/00         Menomin    mod 0017

DEFS.' EX. F 017

## MODEL/ANNUAL FUNDING AGREEMENT MODIFICATION

| 1. AGREEMENT NO. | 2. MODIFICATION NO. | | 4. REQUISITION NO. | PAGE OF PAGES | |
|---|---|---|---|---|---|
| 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 | 00-17 | | | 2 | 3 |

FY'00 Area Tribal Shares @100%

| H/C | 7500390 | J461151 | 0-39146.61 | 55.75 41.8B | 72,106 |
|---|---|---|---|---|---|
| DEN | 7500390 | J461164 | 0-39146.62 | 55.75 41.8B | 65,000 |

Total          137,106

FY'00 Headquarters Tribal Shares @ 100% for the period 1/1/00 to 12/31/00

| H/C | 7500390 | J461151 | 0-39146.61 | 55.75 41.8B | 77,787 |
|---|---|---|---|---|---|
| DEN | 7500390 | J461164 | 0-39146.62 | 55.75 41.8B | 4,736 |
| MH | 7500390 | J461169 | 0-39146.63 | 55.75 41.8B | 7,920 |
| PHN | 7500390 | J461171 | 0-39246.72 | 55.75 41.8B | 3,412 |
| HE | 7500390 | J461162 | 0-39246.73 | 55.75 41.8B | 4,220 |
| CHR | 7500390 | J461174 | 0-39246.74 | 55.75 41.8B | 8,996 |
| Dir Ops | 7500390 | J461173 | 0-39646.80 | 55.75 41.8B | 44,407 |
| CHS | 750/10390 | J46ZG75 | 0-50046.66 | 55.75 41.8B | 5,370 |

Total          156,848

FY'01 Headquarters Tribal Shares @ 0% for the period 10/1/00 to 12/31/00(paid in FY'00)

| H/C | 7510390 | J461151 | 1-39146.61 | 55.75 41.8B | 0 |
|---|---|---|---|---|---|
| DEN | 7510390 | J461164 | 1-39146.62 | 55.75 41.8B | 0 |
| MH | 7510390 | J461169 | 1-39146.63 | 55.75 41.8B | 0 |
| PHN | 7510390 | J461171 | 1-39246.72 | 55.75 41.8B | 0 |
| HE | 7510390 | J461162 | 1-39246.73 | 55.75 41.8B | 0 |
| CHR | 7510390 | J461174 | 1-39246.74 | 55.75 41.8B | 0 |
| Dir Ops | 7510390 | J461173 | 1-39646.80 | 55.75 41.8B | 0 |
| CHS | 751/20390 | J46ZR75 | 1-51046.66 | 55.75 41.8B | 0 |

Total          0

FY'00 Aberdeen Area Tribal Shares

| H/C | 7500390 | J461151 | 0-39146.61 | 55.75 41.8B | 25,193 |
|---|---|---|---|---|---|

Total Contract    $  4,825,806  (+145,052)

DEFS.' EX. F 018

## MODEL/ANNUAL FUNDING AGREEMENT MODIFICATION

| AGREEMENT NO. | MODIFICATION NO. | | REQUISITION NO. | PAGE OF PAGES |
|---|---|---|---|---|
| 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 | 00-17 | | | 3 | 3 |

C.  The funding period remains unchanged as a result of this modification.

D.  The funding amount is hereby increased by $145,052 from $4,680,754 to $4,825,806 by reason of this modification.

E.  There are no other changes as a result of this modification.

DEFS.' EX. F 019

# MENOMINEE TRIBE'S MODEL/ANNUAL FUNDING AGREEMENT

## MODIFICATION No. 00-18

## EFFECTIVE 10/11/00

DEFS.' EX. F 020

## MODEL/ANNUAL FUNDING AGREEMENT MODIFICATION

| 1. AGREEMENT NO. | 2. MODIFICATION NO. | 3. EFFECTIVE | 4. REQUISITION NO. | 5. PAGE | OF PAGES |
|---|---|---|---|---|---|
| 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 | 00-18 | 10/11/00 | | 1 | 3 |

| 6. ISSUED BY | 8. CONTRACTOR NAME AND ADDRESS | 7. PAYMENT MADE BY |
|---|---|---|
| Indian Health Services<br>Bemidji Area Office<br>522 Minnesota Ave., 211 Fed. Bldg.<br>Bemidji, Minnesota 56601 | Menominee Tribe of Wisconsin<br>P.O. Box 910<br>Keshena, Wisconsin 54135 | Indian Health Service<br>Aberdeen Area Finance<br>115 Fourth Avenue<br>Aberdeen, S. Dak. 57401 |

**9. AUTHORITY: P.L. 93-638 AS AMENDED**

**10. CONTRACTOR IS/IS NOT REQUIRED TO SIGN THIS AMENDMENT AND RETURN __ COPIES TO ISSUING OFFICE.**

**11. DESCRIPTION OF MODIFICATION**

A.   Annual Funding Agreement No. 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 is hereby modified to add the final FY 2000 CSC IDC shortfall distribution in the amount of $10,890 and $6,750 of additional non-recurring CHS funds for a total increase of $17,640. This modification also transfers the CHS (LNF) funding from the CHS accounting data to the H/C accounting data previously added by Modification No. 17.

B.    The funding amounts available to the Contractor for the period of this annual funding agreement shall be as follows:

| 1/1/00 - 12/31/00 | | | | | | Estimated '00 Amount | |
|---|---|---|---|---|---|---|---|
| H/C | 7500390 | J461151 | 0-39146.61 | 41.8B | 55.75 | 2,479,965 | (+5,340) |
| CSC/DIR | 7500390 | J461170 | 0-39846.61 | 41.8A | 55.75 | 155,294 | |
| CSC/IDC | 7500390 | J461170 | 0-39846.61 | 41.8E | 55.75 | 338,147 | (+10,890) |
| CHS | 750/10390 | J46ZG75 | 0-60046.66 | 41.8B | 55.75 | 1,260,360 | (-5,340)(+6,750) |
| PHN | 7500390 | J461171 | 0-39246.72 | 41.8B | 55.75 | 15,520 | |
| HE | 7500390 | J461162 | 0-39246.73 | 41.8B | 55.75 | 1,940 | |
| MH | 7500390 | J461169 | 0-39146.63 | 41.8B | 55.75 | 14,110 | |
| DEN | 7500390 | J461164 | 0-39146.62 | 41.8B | 55.75 | 73,890 | |
| CHR | 7500390 | J461174 | 0-39246.74 | 41.8B | 55.75 | 10 | |
| DIR OPS | 7500390 | J461173 | 0-39646.80 | 41.8B | 55.75 | 580 | |
| OEH Equipment | 75X0391 | J461172 | 0-29646.71 | 41.8B | 55.75 | 53,517 | |
| M&I | 75X0391 | J461167 | 0-29040.76 | 41.8B | 55.75 | 94,966 | |
| IPP | 75X0391 | J461168 | 0-29246.77 | 41.8B | 55.75 | 4,000 | |
| M&I | 75X0391 | J461167 | 9-29040.76 | 41.8B | 55.75 | 32,000 | |

                                        Total Base           4,524,299    (+17,640)

| 13. NAME AND TITLE OF SIGNER (Type or Printed) | 12. NAME OF CONTRACTING OFFICER (Type or Printed) |
|---|---|
| | Bernice Mitchell, Contracting Officer |
| **15. CONTRACTOR SIGNATURE AND DATE** | **12. CONTRACTING OFFICER SIGNATURE AND DATE** |
| | *Bernice Mitchell*      10/11/00 |

Funding Certification      Budget pad    dtd   10/11/00           Menomin      mod 0018

DEFS.' EX. F 021

## MODEL/ANNUAL FUNDING AGREEMENT MODIFICATION

| AGREEMENT NO. | 2. MODIFICATION NO. | 3. | 4. REQUISITION NO. | 5. PAGE OF PAGES | |
|---|---|---|---|---|---|
| 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 | 00-18 | | | 2 | 3 |

FY'00 Area Tribal Shares @100%

| | | | | | |
|---|---|---|---|---|---|
| H/C | 7500390 | J461151 | 0-39146.61 | 55.75 41.8B | 72,106 |
| DEN | 7500390 | J461164 | 0-39146.62 | 55.75 41.8B | 65,000 |
| | | | | Total | 137,106 |

FY'00 Headquarters Tribal Shares @ 100% for the period 1/1/00 to 12/31/00

| | | | | | |
|---|---|---|---|---|---|
| H/C | 7500390 | J461151 | 0-39146.61 | 55.75 41.8B | 77,787 |
| DEN | 7500390 | J461164 | 0-39146.62 | 55.75 41.8B | 4,736 |
| MH | 7500390 | J461169 | 0-39146.63 | 55.75 41.8B | 7,920 |
| PHN | 7500390 | J461171 | 0-39246.72 | 55.75 41.8B | 3,412 |
| HE | 7500390 | J461162 | 0-39246.73 | 55.75 41.8B | 4,220 |
| CHR | 7500390 | J461174 | 0-39246.74 | 55.75 41.8B | 8,996 |
| Dir Ops | 7500390 | J461173 | 0-39646.80 | 55.75 41.8B | 44,407 |
| CHS | 750/10390 | J46ZG75 | 0-50046.66 | 55.75 41.8B | 5,370 |
| | | | | Total | 156,848 |

FY'01 Headquarters Tribal Shares @ 0% for the period 10/1/00 to 12/31/00(paid in FY'00)

| | | | | | |
|---|---|---|---|---|---|
| H/C | 7510390 | J461151 | 1-39146.61 | 55.75 41.8B | 0 |
| DEN | 7510390 | J461164 | 1-39146.62 | 55.75 41.8B | 0 |
| MH | 7510390 | J461169 | 1-39146.63 | 55.75 41.8B | 0 |
| PHN | 7510390 | J461171 | 1-39246.72 | 55.75 41.8B | 0 |
| HE | 7510390 | J461162 | 1-39246.73 | 55.75 41.8B | 0 |
| CHR | 7510390 | J461174 | 1-39246.74 | 55.75 41.8B | 0 |
| Dir Ops | 7510390 | J461173 | 1-39646.80 | 55.75 41.8B | 0 |
| CHS | 751/20390 | J46ZR75 | 1-51046.66 | 55.75 41.8B | 0 |
| | | | | Total | 0 |

FY'00 Aberdeen Area Tribal Shares

| | | | | | |
|---|---|---|---|---|---|
| H/C | 7500390 | J461151 | 0-39146.61 | 55.75 41.8B | 25,193 |

Total Contract    $    4,843,446  (+17,640)

DEFS.' EX. F 022

## MODEL/ANNUAL FUNDING AGREEMENT MODIFICATION

| AGREEMENT NO. | 2. MODIFICATION NO. | | 3. REQUISITION NO. | 4. PAGE OF PAGES | |
|---|---|---|---|---|---|
| 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 | 00-18 | | | 3 | 3 |

C.  The funding period remains unchanged as a result of this modification.

D.  The funding amount is hereby increased by $17,640 from $4,825,806 to $4,843,446 by reason of this modification.

E.  There are no other changes as a result of this modification.

DEFS.' EX. F 023

# EXHIBIT G

# MENOMINEE TRIBE'S 2001 AFA

## EFFECTIVE 1/1/01-12/31/01

## ATTACHMENT 2-01 TO
## IHS CONTRACT No. 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

DEFS.' EX. G 001

## ATTACHMENT 2-01

### TO INDIAN SELF-DETERMINATION AGREEMENT

### CONTRACT NUMBER 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

### ANNUAL FUNDING AGREEMENT

### BETWEEN THE

### SECRETARY OF HEALTH AND HUMAN SERVICES

### AND THE

### MENOMINEE INDIAN TRIBE OF WISCONSIN



BEMIDJI AREA
**INDIAN HEALTH SERVICE**

### JANUARY 1, 2001 - DECEMBER 31, 2001

DEFS.' EX. G 002

ANNUAL FUNDING AGREEMENT

BETWEEN THE

MENOMINEE INDIAN TRIBE OF WISCONSIN

AND THE

SECRETARY OF HEALTH AND HUMAN SERVICES

JANUARY 1, 2001 – DECEMBER 31, 2001

## CONTENTS

SECTION

1. PURPOSE
2. LIST OF PROGRAMS, FUNCTIONS, SERVICES, AND ACTIVITIES TO BE PERFORMED
3. FUNDS TO BE PROVIDED
4. TIME AND METHOD OF PAYMENT
5. BRIEF DESCRIPTION OF PFSA'S TO BE PROVIDED
6. OTHER PROVISIONS TO WHICH PARTIES AGREE

ATTACHMENT A - INFORMATIONAL BUDGET

ATTACHMENT B - 2001 INDICATORS

DEFS.' EX. G 003

## SECTION 1 – PURPOSE

This Annual Funding Agreement is entered into by the Menominee Indian Tribe of Wisconsin (referred to in this agreement as Contractor) and the U.S. Department of Health and Human Services, Indian Health Service (referred to in this agreement as I.H.S.) in accordance with 108 (25 USC 4501)(c) Section 1, (f)(2) and pursuant to the Self-Determination Model Agreement No. 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, dated January 1, 1999, under the provisions of Title P.L. 93-638, as amended.

## SECTION 2 – LIST OF PROGRAMS, FUNCTIONS, SERVICES, AND ACTIVITIES TO BE PERFORMED

The Menominee Indian Tribe, hereinafter referred to as Contractor shall continue to administer and operate the Menominee Tribal Health Services Program on the Menominee Indian Reservation utilizing the tribal health facility at Keshena, Wisconsin. The Menominee Health Center is fully accredited by the Joint Commission of Accreditation of Healthcare Organizations (JCAHO). The purpose of this comprehensive health services program is to provide high quality ambulatory medical, dental, community health services, and the administration thereof for eligible individuals residing within the target area. The Contractor may also provide services to non-beneficiaries on a fee-for-services basis as authorized by I.H.S. Manual 2-4.31 (emergency cases) and I.H.S. Manual 2-3.3 J (non-emergency cases) 1.

The Contractor agrees to provide the programs, functions, services, and activities (PFSA's) as consolidated under the general budget categories listed below and in accordance with the Program Standards listed in the Model Agreement.

A.  **Administrative Services**
    1.    Administration
    2.    Medical Records
    3.    Billing
    4.    CHS
    5.    Housekeeping/Maintenance

B.  **Ambulatory Services**
    1.    Medical Services, including
        a.    Physicians
        b.    Nurse Practitioner (NP)
        c.    Physician Assistant
        d.    Pharmacy Services
        e.    Laboratory Services
        f.    Ambulatory Care – Nursing
        g.    Medical and Technical Relief Coverage including:

DEFS.' EX. G 004

Medical Director, Radiology Technicians, Hospital Coverage-Physician, Nutritionist, psychotherapists, cardiologist, physical therapist, pedodontist.

2. Dental Services (Direct and Contract Health )
3. Audiology
4. Clinic/Program Administration
5. Contract Health Services (CHS, including Inpatient, Outpatient, and Optical)
6. Patient Transportation Services
7. Emergency Medical Services

C. –Preventative Health Services
   1. Dental Prevention Services
   2. Environmental Health and Sanitation Services
   3. Public Health Nursing Services (CHN's)
   4. Nutrition Services
   5. Mental Health
   6. Wellness Program
   7. Health Promotion/Disease Prevention
   8. Aids Prevention and Aids Health Education
   9. Family Planning Services
   10. Honoring Our Children
   11. Breast/Cervical Cancer
   12. Rural Infant Health
   13. Diabetes Program

## SECTION 3 – FUNDS TO BE PROVIDED

The funding amounts available to the Contractor for the period of this annual funding agreement shall be as follows:

| | | | | | | |
|---|---|---|---|---|---|---|
| H/C | 7510390 | J461151 | 1-39146.61 | 41.8B | 55.77 | $2,274,680 |
| CSC IDC | 7510390 | J461170 | 1-39846.61 | 41.8E | 55.77 | 338,147 |
| CSC DIR | 7510390 | J461170 | 1-39846.61 | 41.8A | 55.77 | 155,294 |
| CHS | 751/20390 | J46ZR75 | 1-61046.66 | 41.8B | 55.77 | 1,153,610 |
| MH | 7510390 | J461169 | 1-39146.63 | 41.8B | 55.77 | 14,110 |
| CHR | 7510390 | J461174 | 1-39246.74 | 41.8B | 55.77 | 10 |
| PHN | 7510390 | J461171 | 1-39246.72 | 41.8B | 55.77 | 15,520 |
| DEN | 7510390 | J461164 | 1-39146.62 | 41.8B | 55.77 | 73,890 |
| HE | 7510390 | J461162 | 1-39246.73 | 41.8B | 55.77 | 1,940 |
| IPP | 75X0391 | J461168 | 1-29246.77 | 41.8B | 55.77 | 1,000 |
| M&I | 75X0391 | J461167 | 1-39040.76 | 41.8B | 55.77 | 94,966 |
| OEH Eq. | 75X0391 | J461172 | 1-29646.71 | 41.8B | 55.77 | 54,170 |
| | | Total | | | | $4,277,337 |

4

DEFS.' EX. G 005

1.  The FY'01 estimated amount is based on the final Fy'99 base amount plus Fy'00 adjustments.
2.  The Contract Supports Costs (IDC) amount is considered non-recurring and must be justified.
3.  H/c includes a withholding of $17,000 for Bio-Med.
4.  BAO will withhold $127,580 for C.O. Culhane and $175,730 for C.O. Exner. Amount includes $40,000 each for special pay and $1,460 each adm. Fee.

**FY'01 Headquarters Tribal Shares @100% of unencumbered**

| | | | | | | |
|---|---|---|---|---|---|---|
| H/C | 7510390 | J461151 | 1-39146.61 | 41.8B | 55.77 | $ 79,448 |
| DEN | 7510390 | J461164 | 1-39146.62 | 41.8B | 55.77 | 4,771 |
| MH | 7510390 | J461169 | 1-39146.63 | 41.8B | 55.77 | 8,122 |
| CHS | 751/20390 | J46ZR75 | 1-61046.66 | 41.8B | 55.77 | 5,457 |
| PHN | 7510390 | J461171 | 1-39246.72 | 41.8B | 55.77 | 3,419 |
| HE | 7510390 | J461162 | 1-39246.73 | 41.8B | 55.77 | 4,257 |
| CHR | 7510390 | J461174 | 1-39246.74 | 41.8B | 55.77 | 9,079 |
| Dir Ops | 7510390 | J461173 | 1-39646.80 | 41.8B | 55.77 | 45,915 |
| | | | Total | | | $ 160,468 |

**FY'01 Bemidji Area Tribal Shares @100% unencumbered**

| | | | | | | |
|---|---|---|---|---|---|---|
| H/C | 7510390 | J461151 | 1-39146.61 | 41.8B | 55.77 | $ 72,106 |
| DEN | 7510390 | J461164 | 1-39146.62 | 41.8B | 55.77 | 65,000 |
| | | | Total | | | $ 137,106 |

**FY'01 Aberdeen Area Tribal Shares**

| | | | | | | |
|---|---|---|---|---|---|---|
| H/C | 7510390 | J461151 | 1-39146.61 | 41.8B | 55.77 | $ 25,193 |

Total Contract    $4,600,401

# SECTION 4 – TIME AND METHOD OF PAYMENT

The time and method of payment of funds to the Contractor for the operation and administration of the programs, functions, services, and activities identified under this agreement shall be as follows:

As requested by the Tribe and authorized by section (a)(6)(B) of the Model Agreement, for all programs of a recurring nature for which amounts have been determined prior to the beginning of the Annual Funding Agreement (AFA) Year, the Secretary shall provide a single lump sum payment. The Aberdeen Area Indian Health Service, Division of Financial Resources, shall issue payment under the contract within forty-five (45) calendar days after apportionment from the Office of Management and Budget or as expeditiously as practicable.

DEFS.' EX. G 006

# SECTION 5 – BRIEF DESCRIPTION OF PFS TO BE PROVIDED

Programs, Services, Functions, and Activities. The Contractor shall operate the following programs:

1. **Administrative Services**

   a. Administration – The Menominee Indian Tribe and its delegate Health Committee is responsible for overall operation of the tribal comprehensive health program, which is under the administrative supervision of the Tribal Health Administrator and medical direction by the Medical Director. Responsibilities include planning and developing organization objectives, designing operational plans an establishing policy, allocating resources, organizing work processes, staffing, retaining human resources, directing, controlling, and monitoring organizational activities.

   b. Medical Records – Maintains all outpatient health care records in POMR format, transcribes progress notes, handles record transfers to and from the Menominee Tribal Clinic, provides coding and pricing for all route slips, ensures patient records are maintained in a standardized format according to policy, processes, monitors, and submits ambulatory patient care data to appropriate I.H.S. agency. Ensures proper registration of all patients utilizing services at the clinic.

   c. Billing – Maintains patient account information such as demographic and insurance coverage through patient registration, processes all service charges and reimbursement for care, tracks third party billings, provides management data for cash flow projections, utilizes and maintains a computer system for processing all billing components, maintains computer security, and provides periodic software upgrades.

   d. Contract Health Services – A contract health service program is operated for all eligible individuals residing within the Menominee Tribal Clinic's service delivery area. This includes procurement of health services not available at the clinic. Clinic physicians make referrals to designated preferred health care providers. A CHS policy and procedures manual defines department operations.

   e. Maintenance and Housekeeping – Maintenance and housekeeping is responsible for the repair, maintenance and cleaning of the entire health care facility.

6

DEFS.' EX. G 007

2.    **Direct Medical Care**

    a.    Medical Services – Direct patient care consists of physician, mid-level practitioner including physician assistant, nurse practitioner, and nursing services. Medical care services are directed by a Medical Director who directs patient care at the outpatient clinic. The ambulatory nursing component consists of state-licensed registered nurses (RNS) and licensed practical nurses (LPNs). Department operations are governing by the medical department's policy and procedures manual.

    b.    Laboratory Services – Two medical technologists and a laboratory aide provide laboratory services under the direct supervision of staff physicians. The laboratory performs a variety of diagnostic tests, including routine chemistry, urinalysis, hematology, bacteriology, coagulation, endocrinology, and immunology. Outside reference laboratories are utilized for specialized testing. An approved laboratory policy and procedures manual plan governs the laboratory operation.

    c.    Radiology Services – An X-ray technologist provides routine diagnostic x-rays of the musculoskeleton as ordered by staff physician. Established protocols are defined in the radiology department's policy and procedures manual.

    d.    Pharmacy – The Pharmacy department is staffed by three pharmacists and two pharmacy technicians. The pharmacy services promotes the rational use of pharmaceutical products within community health and patient care management plans; the correct dispensing, use and administration of pharmaceutical products by patients; clinical staff consultation and monitoring and off-site pharmacy services monitoring. The pharmacy is responsible for obtaining pharmaceutical drugs from appropriate sources according to standard procedures. Dispensing, counseling and related services shall be provided on receipt of authorized prescription form approved health center and subcontract medical (off-site) and dental providers. Department operations are defined in a pharmacy policy and procedures manual.

    e.    Women's Personal Health – The Women's Personal Health Program is staffed by a registered nurse and an outreach worker. Services offered include pregnancy testing, reproductive health, birth control counseling, follow up on sexually transmitted disease and abnormal pap smears, prenatal education, childbirth preparation classes, and post partum/postnatal services to women of all ages. The WPH program is a direct service program under this contract with funding support from contract income. Program direction and supervision is provided by the health administrator and designated staff.

DEFS.' EX. G 008

f.      Emergency Medical Services – The emergency medical services department provides twenty- four (24) emergency medical services to the reservation/county. It is staffed by state licensed emergency medical technicians. Levels of care are provided at the EMT Basic, EMT defibrillation and EMT advanced airway levels. An EMS policies and procedures manual governs the operation. The EMS program is a direct services program under this contract with funding support from contract income. Program direction and supervision is provided by the health director and designated staff.

3.    **Dental**

a.      Dental – The dental department is staffed by three dentists, a dental hygienist, five dental assistants and a dental receptionist. Program services encompass the total practice of general dentistry. Dental hygiene services including education and preventative planning activities are provides by a full-time dental hygienist. The dental policy and procedures manual defines the scope of services.

4.    **Community Health**

a.      Environmental Health – An environmental health specialist (sanitarian) is employed to plan, organize, and direct a comprehensive program to identify and address environmental conditions which may effect the health of the Menominee Indian Reservation residents. These areas include, community injury control, water quality, waste management, food, celebrations, institutional environmental health, vector control, recreational sanitation, epidemiological investigations, emergency situations, promotion of tribal codes and ordinances, industrial hygiene, operation and maintenance activities, general administrative activities, annual environmental planning, construction, radon testing and mitigation.

b.      Community Health Nursing Services – Community Health Nursing provides services in coordination with the staff physicians. The community health nurse incorporates into practice knowledge of clinical nursing, community and social organization, ecology, biological, psychological, and social services. The primary focus of community health nursing is the prevention of illness, the promotion and maintenance of health and the provision of needed therapeutic services. A policy and procedures manual defines department operations.

c.      Mental Health – The Mental Health department is responsible for providing outpatient mental health services. Individual, family and group therapy is available for family difficulties, marital problems, separation and divorce, parent-child difficulties, depression, anxiety, suicidal thoughts or actions, and school behavior problems. The department is

DEFS.' EX. G 009

staffed by two masters' level psychologists and two masters level clinical social workers. A department policy and procedures manual governs program operations.

d.   Optical – The Optical department is staffed by two contracted optometrists, licensed by the Wisconsin State Optometry Board of Examiners. The following services are provided: eye examinations, eyeglasses and contact lens. A departmental policy and procedures manual defines program operations.

e.   Nutrition – A registered dietitian provides nutrition education and counseling services for the Menominee community.

f.   Audiology – An audiology consultant is contracted to provide a full range of audiology screening, testing and referral services for the Menominee community.

g.   Wellness Program – The wellness program is directed by a registered nurse and a health fitness instructor. The program is aimed at reducing the high prevalence of cardiovascular disease for the Menominee people. Prevention activities will be continued an new wellness programs will be developed to reduce the risk of cardiovascular disease of people of all ages (children, youth, and adults) that take place in multiple settings (schools, work sites, and community).

h.   Health Promotion Disease Prevention – The program focus includes health promotions, health protection and preventive health. A HP/DP committee coordinates community health initiative efforts. This includes men and women's health fairs, walk run competitions.

i.   AIDS Prevention & AIDS Health Education – The program provides comprehensive HIV/AIDS related services to the residents of Menominee Reservation/County. The focus is to prevent the spread of HIV infection through education and awareness efforts.

j.   Family Planning Services are referenced under the Women's Health program description.

k.   Honoring Our Children – The program facilitates and assists expectant mothers through the process of prenatal care to ensure services are provided to pregnant mothers to promote healthy pregnancies and infants. The program aims to build strong support networks for families through active involvement of community members in services needed and provided. It aims to improve access to health and human services for children and families. There is promotion of healthier life style options and a greater public awareness.

9

DEFS.' EX. G 010

l.   Breast/Cervical Cancer – This program provides screening for
     mammography and pelvic exams.  Community outreach is provided
     through various media.

m.   Rural Infant Health – The program identifies and provides outreach for
     high risk and at risk infants from birth to age 3.  The program provides
     transportation to medical appointments and assists with child
     immunizations.  The program will improve and refine a system for
     comprehensive well child/healthcheck outreach and screening.  Provide
     and assure comprehensive primary and preventative health care to infants
     and young children, including comprehensive assessments, anticipatory
     guidance, referrals and follow-up.

n.   Diabetes Program – A diabetic educator will work with community health
     nurses to reach diabetic patients in the community and will provide
     consistent follow up.  The diabetic educator will be involved with
     screening and educational efforts that are conducted at work sites, schools
     and community functions.  A diabetic patient management database will
     be refined to easy assess to patient status, appointment information and
     audit material.  The identification of high risk patients that frequently no
     show and target for intensive educational efforts.

# SECTION 6 – OTHER PROVISIONS TO WHICH PARTIES AGREE

1.   **Reporting Requirements**

A.   For each fiscal year which the Contractor receives or expends funds
     pursuant to P.L. 93-638, the Contractor shall submit to the Secretary a
     single agency audit report required by Chapter 75 of Title 31, Unites
     States Code.

B.   The Contractor shall make an annual report to the Indian people in
     fulfillment of the Section 5(c) of P.L. 93-638 requirement for reports and
     information to Indian people.  This annual report will include the PFSA's
     provided and the costs incurred.  A copy of this report will also be
     provided to the Bemidji Area Contracting Officer.

C.   Resource Patient Management System (RPMS)(Automated)

     (1)   Patient Registration
     (2)   Patient Care Component (dental)
     (3)   Patient Care component (pharmacy)
     (4)   Contract Health Service (2.0)
     (5)   Immunization Report

DEFS.' EX. G 011

      (6)     Community Health Activity Report (PHN)

D.     Environmental Health Reporting System (Manual).  Submit to Area Chief
      Environmental Health Services Branch.

**2.**    **Term of AFA**

The term of this Annual Funding Agreement shall be for the period January 1,
2001 through December 31, 2001.

**3.**    **I.H.S. Headquarters PFSA/Tribal Shares**

For FY'01 the I.H.S. Headquarters PFSA/Tribal Shares are available to the
Menominee Indian Tribe at 100% of unencumbered programs, functions, services,
and activities in the amount of $259,313.  PFSA/Tribal Shares retained by I.H.S.
Headquarters for the benefit of the Menominee Indian Tribe are as follows:

| | |
|---|---|
| Total Available | $259,313 less retained |
| Line 126 DIR Support | - 43,570 |
| Line 137 DIR Support HQW | - 22,169 |
| Line 149 Info. telecomm | - 7,566 |
| Line 1301 Direct Ops (16.4%) | - 9,005 |
| | $177,022 |
| ALC funds to Alcohol contract | - 16,534 |
| | $160,468 |

**4.**    **FY'01 Bemidji Area PFSA/Tribal Shares**

For FY'01 the Bemidji Area PFSA/Tribal Shares are available to the Menominee
Indian Tribe at 100% of unencumbered programs, functions, services, and
activities in the amount of $212,100.  The calculated Great Lakes ITC
PFSA/Tribal shares of $37,064 are included in the Great Lakes ITC Agreement
for the period ending 9/30/01.  PFSA/Tribal Shares retained by the Bemidji Area
for the benefit of the Menominee Indian Tribe are as follows:

| | |
|---|---|
| Total Available | $212,100 less retained |
| Health Prof. Recruit. | - 2,290 |
| Health Info Mgmt. | - 5,600 |
| MIS | - 22,530 |
| GLITC | - 37,064 |
| | $144,616 |
| Behavioral Health funds to ALC | - 7,510 |
| | $137,106 |

DEFS.' EX. G 012

5.    **FY'01 Aberdeen PFSA/Tribal Shares**

The FY'01 Aberdeen PFSA/Tribal Shares in the amount of $25,193 are hereby added to the agreement to augment health programs.

6.    **Federal Tort Claims Act (25 C.F.R. § 900.186(a))**

For purposes of Federal Tort Claims Act coverage, the contractor and its employees (including individuals performing personal services contracts with the contractor to provide health care services) are deemed to be employees of the Federal Government while performing work under this contract (Refer to Section 102(d) of the ISDA, 25 U.S.C. § 240f(d) and 25 C.F.R. § 900.193). This status is not changed by the source of the funds used by the contractor to pay the employees salary and benefits unless the employee receives additional compensation for performing covered services from anyone other than the contractor. (Refer to 25 C.F.R. § 900.197).

Under this contract, the contractor's employees may be required as a condition of employment may be required as a condition of employment to provide health services to non-IHS beneficiaries in order to meet contractual obligations. These services may be provided in either contractor or non-contractor facilities. The employee's status for Federal Tort Claims purposes is not affected.

7.    **Program Income, Including Medicare/Medicaid**

All medicare, medicaid or other program income received by the Tribe shall be treated as additional supplemental funding to that negotiated in the Annual Funding Agreement and the Tribe may retain all such income, pursuant to Section 106(m) of the Act. Medicare/Medicaid collections of the Tribe under Title IV of Public Law 94-437, as amended, shall be used by the Tribe in accordance with any applicable statutory restrictions on the use of such funds. The Tribe is obligated to seek third party reimbursement as provided by federal law.

8.    **Eligibility for Services**

In determining eligibility for services, the Tribal shall comply with applicable eligibility provisions set forth in the Indian Health Care Improvement Act, as amended, other statutory law and applicable regulations.

DEFS.' EX. G 013

9.    **Contract Support Costs**

For purposes of this annual funding agreement, the parties agree that CSC will be calculated and paid in accordance with §106 of the Indian Self-Determination Act and I.H.S. Circular 2000-01, subject to any statutory requirements imposed by Congress.

The Contractor 's Contract Support Costs (Indirect) will be calculated at the current approved indirect cost rate of 10.88% (FY'00) based on total direct cost.

10.    **Funding Amounts Available in Fiscal Year 2001**

The Tribe shall receive funding for all new services, services increases, Congressional appropriation increases, mandatory, population growth, health services priority system, and other non-recurring resources on the same basis as other tribes using Area TSA percentages.

11.    **AFA Adjustment to User Population for Base Budget Tribes**

For the purpose of having a base budget and in accordance with current IHS guidance, the funding levels heretofore enumerated shall remain constant within the term of this Agreement and subject to the foregoing conditions utilizing the latest Area TSA percentage.

### DATED THIS ___27^{th}___ OF _Oct_ ,2000

## MENOMINEE INDIAN TRIBE OF WISCONSIN

BY _Betty Jo Wozniak_
~~Tribal Chairman~~
BETTY JO WOZNIAK
TRIBAL ADMINISTRATOR

## UNITED STATES OF AMERICA, DEPARTMENT OF HEALTH AND HUMAN SERVICES INDIAN HEALTH SERVICE

BY _____
**Contracting Officer, Bemidji Area Office**

13

DEFS.' EX. G 014

# MENOMINEE TRIBE'S MODEL/ANNUAL FUNDING AGREEMENT

## MODIFICATION No. 01-24

## EFFECTIVE 9/28/01

DEFS.' EX. G 015

## MODEL/ANNUAL FUNDING AGREEMENT MODIFICATION

| AGREEMENT NO. | MODIFICATION NO. | DATE EFFECTIVE | REQUISITION NO. | PAGE | OF PAGES |
|---|---|---|---|---|---|
| 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 | 01-24 | 09/28/01 | | 1 | 2 |

| ISSUED BY | CONTRACTOR NAME AND ADDRESS | PAYMENT MADE BY |
|---|---|---|
| **Indian Health Services** <br> **Bemidji Area Office** <br> **522 Minnesota Ave., 211 Fed. Bldg.** <br> **Bemidji, Minnesota  56601** | **Menominee Tribe of Wisconsin** <br> **P.O. Box 910** <br> **Keshena, Wisconsin   54135** | **Indian Health Service** <br> **Aberdeen Area Finance** <br> **115 Fourth Avenue** <br> **Aberdeen, S. Dak. 57401** |

**AUTHORITY: USC, PUBLIC LAW, 93-638 AS AMENDED**

**CONTRACTOR IS AUTHORIZED TO SIGN THE DOCUMENT AND RETURN TO MAKE MODIFICATIONS TO THE DESCRIPTION OF MODIFICATION**

A.  Annual Funding Agreement No. 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 is hereby modified to increase the funding amount by $69,551
which reflects the FY'01 CSC Indirect shortfall distribution utilizing Pool No. 3 methodology under the current
policy, IHS Circular No. 2000-01.

B.  The funding amounts available to the Contractor for the period of this annual funding agreement are as follows:

| 1/1/01 - 12/31/01 | | | | Estimated '01 Amount | |
|---|---|---|---|---|---|
| H/C | 7510390 | J461151 | 1-39146.61 | 41.8B 55.75 | 2,901,165 |
| CSC/DIR | 7510390 | J461170 | 1-39846.61 | 41.8A 55.75 | 158,555 |
| CSC/IDC | 7510390 | J461170 | 1-39846.61 | 41.8E 55.75 | 407,698  (+69,551) |
| CHS | 751/20390 | J46ZR75 | 1-61046.66 | 41.8B 55.75 | 1,462,000 |
| PHN | 7510390 | J461171 | 1-39246.72 | 41.8B 55.75 | 15,890 |
| HE | 7510390 | J461162 | 1-39246.73 | 41.8B 55.75 | 2,110 |
| MH | 7510390 | J461169 | 1-39146.63 | 41.8B 55.75 | 14,810 |
| DEN | 7510390 | J461164 | 1-39146.62 | 41.8B 55.75 | 90,580 |
| CHR | 7510390 | J461174 | 1-39246.74 | 41.8B 55.75 | 370 |
| OEH Equipment | 75X0391 | J461172 | 1-29646.71 | 41.8B 55.75 | 52,698 |
| M&I | 75X0391 | J461167 | 1-29040.76 | 41.8B 55.75 | 238,000 |
| IPP | 75X0391 | J461168 | 1-29246.77 | 41.8B 55.75 | 7,042 |

Total Base      5,350,918  (+69,551)

| NAME AND TITLE OF SIGNER (TYPE OR PRINT) | NAME OF CONTRACTING OFFICER (TYPE OR PRINT) |
|---|---|
| | Dennis Murphy, Contracting Officer |
| CONTRACTOR SIGNATURE AND DATE | CONTRACTING OFFICER SIGNATURE AND DATE |
| | 9/28/01 |

| Funding Certification      Budget  pad      dtd . 9;/27/01 | | Menomin'      Mod 01-24 |

DEFS.' EX. G 016

## MODEL/ANNUAL FUNDING AGREEMENT MODIFICATION

| 1. AGREEMENT NO. | 2. MODIFICATION NO. | | 4. REQUISITION NO. | | PAGE | OF PAGES |
|---|---|---|---|---|---|---|
| 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 | 01-24 | | | | 2 | 2 |

FY'01 Area Tribal Shares @100%

| | | | | | | |
|---|---|---|---|---|---|---|
| H/C | 7510390 | J461151 | 1-39146.61 | 55.75 | 41.8B | 72,106 |
| DEN | 7510390 | J461164 | 1-39146.62 | 55.75 | 41.8B | 65.000 |
| | | | | | Total | 137,106 |

FY'01 Headquarters Tribal Shares @ 100% for the period 1/1/01 to 12/31/01

| | | | | | | |
|---|---|---|---|---|---|---|
| H/C | 7510390 | J461151 | 1-39146.61 | 55.75 | 41.8B | 92,771 |
| DEN | 7510390 | J461164 | 1-39146.62 | 55.75 | 41.8B | 4,771 |
| MH | 7510390 | J461169 | 1-39146.63 | 55.75 | 41.8B | 8,133 |
| PHN | 7510390 | J461171 | 1-39246.72 | 55.75 | 41.8B | 3,419 |
| HE | 7510390 | J461162 | 1-39246.73 | 55.75 | 41.8B | 4,257 |
| CHR | 7510390 | J461174 | 1-39246.74 | 55.75 | 41.8B | 9,079 |
| Dir Ops | 7510390 | J461173 | 1-39646.80 | 55.75 | 41.8B | 47,580 |
| CHS | 751/20390 | J46ZR75 | 1-61046.66 | 55.75 | 41.8B | 5.457 |
| | | | | | Total | 175,467 |

FY'01 Aberdeen Area Tribal Shares

| | | | | | | |
|---|---|---|---|---|---|---|
| H/C | 7510390 | J461151 | 1-39146.61 | 55.75 | 41.8B | 25,193 |

Total Contract    $    5,688,684   (+69,551)

C.    The AFA funding period is hereby increased by $69,551 from $5,619,133 to $5,688,684 by reason of this modification.

D.    The AFA funding period remains unchanged as result of this modification.

E.    There are no other changes by reason of this modification.

DEFS.' EX. G 017

# MENOMINEE TRIBE'S MODEL/ANNUAL FUNDING AGREEMENT

## MODIFICATION No. 01-25

## EFFECTIVE 10/3/01

DEFS.' EX. G 018

## MODEL/ANNUAL FUNDING AGREEMENT MODIFICATION

| 1. AGREEMENT NO. | 2. MODIFICATION NO. | 3. EFFECTIVE | 4. REQUISITION NO. | 5. PAGE OF PAGES | |
|---|---|---|---|---|---|
| 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 | 01-25 | 10/03/01 | | 1 | 2 |

| 6. ISSUED BY | 8. CONTRACTOR NAME AND ADDRESS | 7. PAYMENT MADE BY |
|---|---|---|
| Indian Health Services<br>Bemidji Area Office<br>522 Minnesota Ave., 211 Fed. Bldg.<br>Bemidji, Minnesota  56601 | Menominee Tribe of Wisconsin<br>P.O. Box 910<br>Keshena, Wisconsin  54135 | Indian Health Service<br>Aberdeen Area Finance<br>115 Fourth Avenue<br>Aberdeen, S. Dak. 57401 |

9. AUTHORITY (USC and CFR, as the case may be as amended)

This agreement shall be reduced to writing and returned to the issuing office

10. DESCRIPTION OF MODIFICATION

A.  Annual Funding Agreement No. 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 is hereby modified to increase the funding amount by $9,420
which reflects the FY'01 CSC Indirect shortfall distribution of excess Area  Pool.  This is a one-time payment
and will be not be carried forward.

B.  The funding amounts available to the Contractor for the period of this annual funding agreement are as follows:

| 1/1/01 - 12/31/01 | | | | Estimated '01 Amount | | | |
|---|---|---|---|---|---|---|---|
| H/C | 7510390 | J461151 | 1-39146.61 | 41.8B | 55.75 | 2,901,165 | |
| CSC/DIR | 7510390 | J461170 | 1-39846.61 | 41.8A | 55.75 | 158,555 | |
| CSC/IDC | 7510390 | J461170 | 1-39846.61 | 41.8E | 55.75 | 417,118 | (+9,420) |
| CHS | 751/20390 | J46ZR75 | 1-61046.66 | 41.8B | 55.75 | 1,462,000 | |
| PHN | 7510390 | J461171 | 1-39246.72 | 41.8B | 55.75 | 15,890 | |
| HE | 7510390 | J461162 | 1-39246.73 | 41.8B | 55.75 | 2,110 | |
| MH | 7510390 | J461169 | 1-39146.63 | 41.8B | 55.75 | 14,810 | |
| DEN | 7510390 | J461164 | 1-39146.62 | 41.8B | 55.75 | 90,580 | |
| CHR | 7510390 | J461174 | 1-39246.74 | 41.8B | 55.75 | 370 | |
| OEH Equipment | 75X0391 | J461172 | 1-29646.71 | 41.8B | 55.75 | 52,698 | |
| M&I | 75X0391 | J461167 | 1-29040.76 | 41.8B | 55.75 | 238,000 | |
| IPP | 75X0391 | J461168 | 1-29246.77 | 41.8B | 55.75 | 7,042 | |

Total Base          5,360,338  (+9,420)

| 11. NAME AND TITLE OF SIGNER (Type or Print) | 12. NAME OF CONTRACTING OFFICER (Type or Print) |
|---|---|
| | Dennis Murphy, Contracting Officer |

| 13. CONTRACTOR SIGNATURE AND DATE | 14. CONTRACTING OFFICER'S SIGNATURE AND DATE |
|---|---|
| | 10/3/01 |

Funding Certification        Budget pad      dtd . 10/2/01                              Menomin        Mod 01-25

DEFS.' EX. G 019

## MODEL/ANNUAL FUNDING AGREEMENT MODIFICATION

| 1 AGREEMENT NO. | 2 MODIFICATION NO. | 3 | 4 REQUISITION NO. | 5 PAGE | OF PAGES |
|---|---|---|---|---|---|
| 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 | 01-25 | | | 2 | 2 |

FY'01 Area Tribal Shares @100%

| | | | | | | |
|---|---|---|---|---|---|---|
| H/C | 7510390 | J461151 | 1-39146.61 | 55.75 41.8B | 72,106 |
| DEN | 7510390 | J461164 | 1-39146.62 | 55.75 41.8B | 65,000 |
| | | | | Total | 137,106 |

FY'01 Headquarters Tribal Shares @ 100% for the period 1/1/01 to 12/31/01

| | | | | | |
|---|---|---|---|---|---|
| H/C | 7510390 | J461151 | 1-39146.61 | 55.75 41.8B | 92,771 |
| DEN | 7510390 | J461164 | 1-39146.62 | 55.75 41.8B | 4,771 |
| MH | 7510390 | J461169 | 1-39146.63 | 55.75 41.8B | 8,133 |
| PHN | 7510390 | J461171 | 1-39246.72 | 55.75 41.8B | 3,419 |
| HE | 7510390 | J461162 | 1-39246.73 | 55.75 41.8B | 4,257 |
| CHR | 7510390 | J461174 | 1-39246.74 | 55.75 41.8B | 9,079 |
| Dir Ops | 7510390 | J461173 | 1-39646.80 | 55.75 41.8B | 47,580 |
| CHS | 751/20390 | J46ZR75 | 1-61046.66 | 55.75 41.8B | 5,457 |
| | | | | Total | 175,467 |

FY'01 Aberdeen Area Tribal Shares

| | | | | | |
|---|---|---|---|---|---|
| H/C | 7510390 | J461151 | 1-39146.61 | 55.75 41.8B | 25,193 |
| | | | | Total Contract    $ | 5,698,104  (+9,420) |

C.  The AFA funding period is hereby increased by $9,420 from $5,688,684 to $5,698,104 by reason of this modification.

D.  The AFA funding period remains unchanged as result of this modification.

E.  There are no other changes by reason of this modification.

DEFS.' EX. G 020

# EXHIBIT H

# MENOMINEE-IHS CONTRACT
# CONTRACT No. 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

DEFS.' EX. H 001

## INDIAN SELF-DETERMINATION AGREEMENT

BETWEEN THE

MENOMINEE INDIAN TRIBE OF WISCONSIN

AND THE

DEPARTMENT OF HEALTH AND HUMAN SERVICES
INDIAN HEALTH SERVICE

AGREEMENT NO. 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



BEMIDJI AREA
INDIAN HEALTH SERVICE

## EFFECTIVE JANUARY 1, 2002

DEFS.' EX. H 002

# SELF-DETERMINATION CONTRACT MODEL

# AGREEMENT BETWEEN THE

# SECRETARY OF HEALTH AND HUMAN SERIVCES

# AND THE

# MENOMINEE INDIAN TRIBE OF WISCONSIN

## CONTENTS

a.    Authority and Purpose

b.    Terms, Provisions, and Conditions

c.    Obligations of the Contractor

d.    Obligations of the United States

e.    Other Provisions

f.    Attachments

1

DEFS.' EX. H 003

### a. Authority and Purpose

#### (1) Authority

This agreement, denoted a Self-Determination Contract (referred to in this agreement as the "Contract"), is entered into by the Secretary of Health and Human Services (referred to in this agreement as the "Secretary"), for and on behalf of the United States pursuant to Title I of the Indian Self-Determination and Education Assistance Act (25 USC 450 et.seq.) and by the authority of the Menominee Indian Tribe of Wisconsin's tribal government (referred to in this agreement as the "Contractor"). The provisions of Title I of the Indian Self-Determination and Education Assistance Act (25 Usc et.seq.) are incorporated in this agreement.

#### (2) Purpose

Each provision of the Indian Self-Determination and Education Assistance Act (25 USC 450 et.seq.) and each provision of this Contract shall be liberally construed for the following related programs, functions, services, and activities (or portion thereof), that are otherwise contractible under section 102(a) of such Act, including all related administrative functions, from the Federal Government to the Contractor.

    (A)    Programs, Functions, Services and Activities: The Contractor shall operate the following programs:

        (1)    Administrative Services
        (2)    Ambulatory Services
        (3)    Preventative Health Services

### b. Term, Provisions, and Conditions

#### (1) Term

Pursuant to section 105(c)(1) of the Indian Self-Determination and Education Assistance Act (25 USC 450j(c)(1), term of this contract shall be three years. Pursuant to section 105(d)(1) of such Act (25 USC 450j(d). Upon the election by the Contractor, the period of this Contract shall be determined on the basis of a calendar year, unless the Secretary and the Contractor agree on a different period in the annual funding agreement incorporated by reference in subsection (f)(2).

DEFS.' EX. H 004

**(2)    Effective Date**

This Contract shall become effective upon the date of the approval and execution by the Contractor and the Secretary, unless the Contractor and the Secretary agree on an effective date other than the date specified in this paragraph.

The effective date of this Agreement shall be January 1, 2002.

**(3)    Program Standards**

The Contractor agrees to administer the program, functions, services and activities (or portions thereof) listed in subsection (a)(2) of the Contract in conformity with the following standards:

Joint Commission on Accreditation of Health Care Organizations.

**(4)    Funding Amount**

Subject to the availability of appropriations, the secretary shall make available to the Contractor to total amount specified in the annual funding agreement incorporated by reference in subsection (f)(2). Such amount shall not be less than the applicable amount determined pursuant to section 106(a) of the Indian Self-Determination and Education Assistance Act (25 USC 450j-l).

**(5)    Limitation of Costs**

The Contractor shall not be obligated to continue performance that requires an expenditure of funds in excess of the amount of funds awarded under this contract. If, at any time, the Contractor has reason to believe that the total required for performance of this contract or a specific activity conducted under this contract, the Contractor shall provide reasonable notice to the appropriate Secretary. If the appropriate Secretary does not take such action as may be necessary to increase the amount of funds under this contract, the Contractor may suspend performance of the contract until such time additional funds are awarded.

**(6)    Payment**

(A)    In General

Payments to the Contractor under this Contract shall –

3

DEFS.' EX. H 005

(i)     be made as expeditiously as practicable; and

(ii)    include financial arrangements to cover funding during periods covered by joint resolutions adopted by Congress making continuing appropriations, to the extent permitted by such resolutions.

(B)    Quarterly, Semiannual, Lump Sum, and Other Methods of Payments

(i)     Pursuant to Section 108(b) of the Indian Self-Determination and Education Assistance Act, and notwithstanding any other provision of law, for each fiscal year covered by this contract, the Secretary shall make available to the Contractor the funds specified for the fiscal year under the annual funding agreement incorporated by reference pursuant to subsection (f)(2) by paying to the Contractor, on a quarterly basis, one-quarter of the total fiscal year, in a lump-sum payment or as semi-annual payments, or any other method of payment authorized by law, in accordance with such method as may be requested by the Contractor and specified in the annual funding agreement. The Contractor has requested annual lump sum payment.

(ii)    Method of Quarterly Payment

If quarterly payments are specified in the annual funding agreement incorporated by reference pursuant to subsection (f)(2), each quarterly payment made pursuant to clause (a) shall be made on the first day each quarter of the fiscal year, except that in any case in which in the contract year coincided with the Federal fiscal year, payment for the first quarter shall be made not later than the date that is 10 calendar days after the date on which the Office of Management and Budget apportions the appropriations for the fiscal year for the programs, functions, services, and activities subject to this contract.

(iii)    Applicability

Chapter 39 of Title 31, United States Code, shall apply to the payment of funds due under this contract and the annual funding agreement referred to in clause (i).

4

DEFS.' EX. H 006

## (7)  Records and Monitoring

### (A)  In General

Except for previously provided copies of tribal records that the Secretary demonstrates are clearly required to be maintained as part of the recordkeeping system of the Department of the Interior or the Department of Health and Human Services (or both), records of the contractor shall not be considered Federal record for purposes of Chapter 5 of Title 5, United States Code.

In carrying out the PFSA's listed in Section (a)(2)(A), the contractor shall adopt the provisions of the Privacy Act as tribal policy.

### (B)  Recordkeeping System

The Contractor shall maintain a recordkeeping system and, upon reasonable advance request, provide reasonable access to such records to the Secretary.

### (C)  Responsibilities of the Contractor

The Contractor shall be responsible for managing the day-to-day operations conducted under this contract and for monitoring activities conducted under this contract to ensure compliance with the contract and applicable Federal requirements. With respect to the monitoring activities of the Secretary, the routine monitoring visits shall be limited to not more than one performance monitoring visit per year or as negotiated, by the head of each operating division, department bureau, or department agency, or duly authorized representative of such head unless—

(i)    the Contractor agrees to one or more additional visits; or

(ii)   the appropriate official determines that there is a reasonable cause to believe that grounds for reassumption of the contract, suspension of contract payments, or other serious contract performance deficiency may exist.

No additional visit referred to in clause (ii) shall be made until such time as reasonable advance notice that includes a description of the nature of the problem that requires the additional visit has been given to the Contractor.

DEFS.' EX. H 007

**(8)   Property**

**(A)   In General**

As provided in Section 105(f) of the Indian Self-Determination and Education Assistance Act (25 USC 450j(f), at the request of the Contractor, the Secretary may make available, or transfer to the Contractor, all reasonable divisible real property, facilities, equipment, and personal property that the Secretary has used to provide or administer the programs, functions, services and activities. A mutually agreed upon list specifying the property, facilities, and equipment so furnished shall also be prepared by the Secretary, with the concurrence of the Contractor, and periodically revised by the Secretary, with the concurrence of the Contractor. The Contractor has requested to take title to all property.

**(B)   Records**

The Contractor shall maintain a record of all property referred to in subparagraph (A) or other property acquired by the Contractor under Section 105(f)(2) A of such Act for purposes of replacement.

**(C)   Joint Use Agreement**

Upon the request of the Contractor, the Secretary and the Contractor shall enter into a separate joint use agreement to address the shares used by the parties of real or personal property that is not reasonably divisible.

**(D)   Acquisition of Property**

The Contractor is granted the authority to acquire such excess property as the Contractor may determine to be appropriate in the judgement of the Contractor to support the programs, functions, services, and activities operated pursuant to this contract.

**(E)   Confiscated or Excess Property**

The Secretary shall assist the Contractor in obtaining such confiscated or excess property as may become available to tribes, tribal organizations, or local governments.

**(F)   Screener Identification Card**

A screener identification care (General Services Administration form 2946) shall be issued to the Contractor not later than the

DEFS.' EX. H 008

effective date of this contract. The designated official shall, upon request, assist the Contractor in securing the use of the card.

(G)  **Capital Equipment**

Contractor shall determine the capital equipment, leases, rentals, property, or services the Contractor requires to perform the obligations of the Contractor under this subsection, and shall acquire and maintain records of such capital equipment, property rentals, leases, property, or services through applicable procurement procedures of the Contractor.

## (9)  Availability of Funds

Notwithstanding any other provision of law, any funds provided under this contract—

(A)   shall remain available until, expended; and

(B)   with respect to such funds, no further –

(i)   approval by the Secretary, or
(ii)  justifying documentation from the Contractor, shall be required prior to the expenditure of such funds.

## (10)  Transportation

Beginning on the effective date of this contract, the Secretary shall authorize the Contractor to obtain interagency motor pool vehicles and related services to performance of any activities carried out under this contract.

## (11)  Federal Program Guidelines, Manuals or Policy Directives

Except as specifically provided in the Indian Self-Determination and Education Assistance Act (25 USC 450 et.seq.) the Contractor is not required to abide by program guidelines, manuals, or policy directives of the Secretary, unless otherwise agreed to by the Contractor and the Secretary, or otherwise required by law.

7

DEFS.' EX. H 009

## (11)  Disputes

### (A)  Third-Party Mediation Defined

For the purposes of this contract, the term "third-party mediation" means a form of mediation whereby the Secretary and the Contractor nominate a third party who is not employed by or significantly involved with the Secretary of the Interior, the Secretary of Health and Human Services, or the Contractor, to serve as a third-party mediator to mediate disputes under this contract.

### (B)  Alternative Procedures

In addition to, or an alternative, to remedies and procedures prescribed by Section 110 of the Indian Self-Determination and Education Assistance Act (25 USC 450m-l), the parties to this contract may jointly—

(i)     submit disputes under this contract to third-party medication;

(ii)    submit the dispute to the adjudicator body of the Contractor including the tribal court of the Contractor.

(iii)   submit the disputes to mediation processes provided for under the laws, policies, or procedures of the Contractor; or

(iv)    use the administrative disputes resolution processes authorized in Subchapter IV of Chapter 5 of Title 5, United States Code.

### (C)  Effect of Decisions

The Secretary shall be bound by decisions made pursuant to the processes set forth in subparagraph (B), except that the Secretary shall not be bound by any decision that significantly conflicts with the interest of Indians or the United States.

## (12)  Administrative Procedures of Contractor

Pursuant to the Indian Civil Rights Act of 1968 (25 USC 1301 et.seq.) the laws, policies, and procedures of the Contractor shall provide for administrative due process (or the equivalent of administrative due process) with respect to programs, functions, services and activities that are provided by the Contractor pursuant to this contract.

8

DEFS.' EX. H 010

### (13)  Successor Annual Funding Agreement

#### (A) In General

Negotiations for a successor annual funding agreement, provided for in subsection (f)(2) shall begin not later than 120 days prior to the conclusion of the preceding annual funding agreement.  Except as provided in Section 105(c)(2) of the Indian Self-Determination and Education Assistance Act (25 USC 450j(c)(2) the funding for each such successor annual funding agreement shall only be reduced pursuant to Section 106(b) of such Act (25 USC 450j-1(b)).

#### (B) Information

The Secretary shall prepare and supply relevant information, and promptly comply with any request by the Contractor for information that the Contractor reasonably needs to determine the amount of funds that may be available for a successor annual funding agreement, as provided for in subsection (f)(2) of this contract.

### (14)  Contract Requirements; Approval by Secretary

#### (A) In General

Except as provided in subparagraph (B) for the term of the Contract, section 2103 of the Revised Statutes (25 USC 81) and section 16 of the Act of June 18, 1934 (48 Stat. 987, chapter 576), shall not apply to any contract entered into in connection with this contract.

#### (B) Requirements

Each contract entered into by the Contractor with a third party in connection with performing the obligation of the Contractor under this contract shall—

(i)     be in writing;

(ii)    identify the interested parties, the authorities of such parties, and purposes of the contract.

(iii)   statement of work to be performed, under the contract; and

(iv)    state the process for making any claim, the payments to be made, and the term of the contract, which shall be fixed.

9

DEFS.' EX. H 011

### c.    Obligations of the Contractor

**(1)    Contract Performance**

Except as provided in subsection(d)(2), the Contractor shall perform the programs, functions, services, and activities as provided in the annual funding agreement under subsection (f)(2) of this contract.

**(2)    Amount of Funds**

The total amount of funds to be paid under this contract pursuant to Section 106 (a) shall be determined in an annual funding agreement entered into between the Secretary and the Contractor, which shall be incorporated into this contract.

**(3)    Contracted Programs**

Subject to the availability of appropriated funds, the Contractor shall administer the programs, functions, services, and activities identified in this contract and funded through the annual funding agreement under section (f)(2).

**(4)    Trust Services for Individual Indians**

To the extent that the annual funding agreement provides funding for the delivery of trust services to individual Indians that were formerly provided by the Secretary, the Contractor shall maintain at least the same level of services as was previously provided by the Secretary, subject to the availability of appropriated funds for such services. Strictly for the purpose of this subsection only, "trust services or individual Indians" means only those services that pertain to land or financial management connected to individually held allotments.

**(5)    Fair and Uniform Services**

The Contractor shall provide services under this contract in fair and uniform manner and shall provide access to an administrative or judicial body empowered to adjudicate or otherwise resolve complaints, claims, and grievances brought by program beneficiaries against the Contractor arising out of the performance of the contract.

10

DEFS.' EX. H 012

**d.    Obligations of the United States**

    **(1)    Trust Responsibility**

        (A)    The United States reaffirms its trust responsibility to the Menominee Tribal Council to protect and conserve the trust resources of the Indian tribes and individual Indians.

        (B)    Nothing in this contract is intended to, nor shall be construed, to terminate, waive, modify, or reduce the trust responsibility of the United States to the tribes or individual Indians. The Secretary shall act in good faith in upholding said trust responsibility.

    **(2)    Good Faith**

    To the extent that health programs are included in this contract, and with available funds, the Secretary shall act in good faith in cooperating with the Contractor to achieve the goals set forth in Chapter 18 of Title 25, United States Code.

    **(3)    Programs Retained**

    As specified in the annual funding agreement, the United States hereby retains the programs, functions, services and activities with respect to the tribe(s) that are not specifically assumed by the Contractor in annual funding agreement under subsection (f)(2).

**e.    Other Provisions**

    **(1)    Designated Officials**

    Not later than the effective date of this contract, the United States shall provide to the Contractor, and the Contractor shall provide to the United States, as written designation of a senior official to serve as a representative for notices, proposed amendments to the contract, and other purposes for this contract.

    **(2)    Contract Modifications or Amendments**

        (A)    **General**

        Except as provided in subparagraph (B), no modification to this contract shall take effect unless such modification is made in the form of a written amendment to the contract, and the Contractor and the Secretary provide written consent for the modification.

11

DEFS.' EX. H 013

(B) **Exception**

The addition of supplemental funds for programs, functions, services, and activities (or portions thereof) already included in the annual funding agreement under subsection (f)(2), and the reduction of funds pursuant to section 106(b)(2), shall not be subject to subparagraph (A).

(3) **Officials not to Benefit**

No member of Congress, or resident commissioner, shall be admitted to any share or part of any contract executed pursuant to this contract, or to any benefit that may arise from such contract. This paragraph may not be construed to apply to any contract with a third party entered into under this contract if such contract is made with a corporation for general benefit of the corporation.

(4) **Covenant Against Contingent Fees**

The parties warrant that no person or selling agency has been employed or retained to solicit or secure any contract executed pursuant to this contract upon an agreement, or understanding for a commission percentage, brokerage, or contingent fee, excepting bona fide employees or bona fide established commercial or selling agencies maintained by the Contractor for the purpose of securing business.

## f.   Attachments

(1) **Approval of Contract** – Unless previously furnished to the Secretary, the resolution of the Menominee Tribal Council's authorizing the contracting of programs, services, functions, and activities identified in this Contract is attached to this Contract as attachment 1.

(2) **Annual Funding Agreement**

(A) **In General**

The annual funding agreement under this contract shall only contain—

(i)   terms that identify the programs, functions, services, and activities to be performed or administered, the general budget category assigned, the funds to be provided, and the time and method of payment; and

12

DEFS.' EX. H 014

(ii)    such other provisions, including a brief description of the programs, functions, services and activities to be performed (including those supported by financial resources other than those provided by the Secretary), to which the parties agree.

(B)   **Incorporation by Reference**

The annual funding agreement is hereby incorporated in its entirety in this contract and attached to this contract as Attachment 2.

Dated this ___14th___ day of ___Dec___, 2001

**MENOMINEE INDIAN TRIBE OF WISCONSIN**

BY ~~Betty Jo Wozniak~~

~~Tribal Chairman~~

BETTY JO WOZNIAK
TRIBAL ADMINISTRATOR

**UNITED STATES OF AMERICA, DEPARTMENT OF HEALTH AND HUMAN SERVICES INDIAN HEALTH SERVICE**

BY _Kathleen Annett ms_

**Area Director, Bemidji Area Office**

BY _D. A. Mark_

**Contracting Officer, Bemidji Area Office**

13

DEFS.' EX. H 015

# MENOMINEE TRIBE'S 2002 AFA

# EFFECTIVE 1/1/02 – 12/31/02

# ATTACHMENT 2-02 TO
# IHS CONTRACT No. 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

DEFS.' EX. H 016

## ATTACHMENT 2-02

TO INDIAN SELF-DETERMINATION AGREEMENT

IHS AGREMENT NUMBER 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

ANNUAL FUNDING AGREEMENT

BETWEEN THE

SECRETARY OF HEALTH AND HUMAN SERVICES

AND THE

MENOMINEE INDIAN TRIBE OF WISCONSIN



BEMIDJI AREA
INDIAN HEALTH SERVICE

## JANUARY 1, 2002 – DECEMBER 31, 2002

DEFS.' EX. H 017

# ANNUAL FUNDING AGREEMENT

# BETWEEN THE

# MENOMINEE INDIAN TRIBE OF WISCONSIN

# AND THE

# SECRETARY OF HEALTH AND HUMAN SERVICES

## JANUARY 1, 2002 – DECEMBER 31, 2002

# CONTENTS

**SECTION**

1. PURPOSE
2. LIST OF PROGRAMS, FUNCTIONS, SERVICES, AND ACTIVITIES TO BE PERFORMED
3. FUNDS TO BE PROVIDED
4. TIME AND METHOD OF PAYMENT
5. BRIEF DESCRIPTION OF PFSA'S TO BE PROVIDED
6. OTHER PROVISIONS TO WHICH PARTIES AGREE

**ATTACHMENT A - INFORMATIONAL BUDGET**
    Area Detail Sheet
    Table #4, Headquarter Tribal Shares

**ATTACHMENT B - 2002 INDICATORS**

**ATTACHMENT C - SUPPORT PACKAGE SELECTION**

2

DEFS.' EX. H 018

## SECTION 1 – PURPOSE

This Annual Funding Agreement is entered into by the Menominee Indian Tribe of Wisconsin (referred to in this agreement as Contractor) and the U.S. Department of Health and Human Services, Indian Health Service (referred to in this agreement as I.H.S.) in accordance with 108 (25 USC 4501)(c) Section 1, (f)(2) and pursuant to the Self-Determination Model Agreement No. 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, dated January 1, 2002, under the provisions of Title P.L. 93-638, as amended.

## SECTION 2 – LIST OF PROGRAMS, FUNCTIONS, SERVICES, AND ACTIVITIES TO BE PERFORMED

The Menominee Indian Tribe, hereinafter referred to as Contractor shall continue to administer and operate the Menominee Tribal Health Services Program on the Menominee Indian Reservation utilizing the tribal health facility at Keshena, Wisconsin. The Menominee Health Center is fully accredited by the Joint Commission of Accreditation of Healthcare Organizations (JCAHO). The purpose of this comprehensive health services program is to provide high quality ambulatory medical, dental, community health services, and the administration thereof for eligible individuals residing within the target area. The Contractor may also provide services to non-beneficiaries on a fee-for-services basis as authorized by I.H.S. Manual 2-4.31 (emergency cases) and I.H.S. Manual 2-3.3 J (non-emergency cases) 1.

The Contractor agrees to provide the programs, functions, services, and activities (PFSA's) as consolidated under the general budget categories listed below and in accordance with the Program Standards listed in the Model Agreement.

A.  **Administrative Services**
   1.   Administration
   2.   Medical Records
   3.   Billing
   4.   CHS
   5.   Housekeeping/Maintenance

B.  **Ambulatory Services**
   1.   Medical Services, including
      a.   Physicians
      b.   Nurse Practitioner (NP)
      c.   Physician Assistant
      d.   Pharmacy Services
      e.   Laboratory Services
      f.   Ambulatory Care – Nursing

3

DEFS.' EX. H 019

    g.    Medical and Technical Relief Coverage including:
        Medical Director, Radiology Technicians, Hospital Coverage-
        Physician, Nutritionist, psychotherapists, cardiologist, physical
        therapist, pedodontist.

2. Dental Services (Direct and Contract Health )
3. Audiology
4. Clinic/Program Administration
5. Contract Health Services (CHS, including Inpatient, Outpatient, and Optical)
6. Patient Transportation Services
7. Emergency Medical Services

C. **Preventative Health Services**
1. Dental Prevention Services
2. Environmental Health and Sanitation Services
3. Public Health Nursing Services (CHN's)
4. Nutrition Services
5. Mental Health
6. Wellness Program
7. Health Promotion/Disease Prevention
8. Aids Prevention and Aids Health Education
9. Family Planning Services
10. Honoring Our Children
11. Breast/Cervical Cancer
12. Rural Infant Health
13. Diabetes Program

## SECTION 3 – FUNDS TO BE PROVIDED

The funding amounts available to the Contractor for the period of this annual funding agreement shall be as follows:

| | | | | | | |
|---|---|---|---|---|---|---|
| H/C | 7520390 | J461151 | 2-39146.61 | 41.8B | 55.77 | $2,835,270 |
| CSC IDC | 7520390 | J461170 | 2-39846.61 | 41.8E | 55.77 | 407,698 |
| CSC DIR | 7520390 | J461170 | 2-39846.61 | 41.8A | 55.77 | 158,555 |
| CHS | 752/30390 | J46ZS75 | 2-62046.66 | 41.8B | 55.77 | 1,253,610 |
| MH | 7520390 | J461169 | 2-39146.63 | 41.8B | 55.77 | 14,810 |
| CHR | 7520390 | J461174 | 2-39246.74 | 41.8B | 55.77 | 370 |
| PHN | 7520390 | J461171 | 2-39246.72 | 41.8B | 55.77 | 15,890 |
| DEN | 7520390 | J461164 | 2-39146.62 | 41.8B | 55.77 | 90,580 |
| HE | 7520390 | J461162 | 2-39246.73 | 41.8B | 55.77 | 2,110 |
| IPP | 75X0391 | J461168 | 2-29246.77 | 41.8B | 55.77 | 1,000 |
| M&I | 75X0391 | J461167 | 2-39040.76 | 41.8B | 55.77 | 95,000 |
| OEH Eq. | 75X0391 | J461172 | 2-29646.71 | 41.8B | 55.77 | 52,698 |
| | | Total | | | | $4,927,591 |

DEFS.' EX. H 020

### FY'02 Headquarters Tribal Shares @100% of unencumbered

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| H/C | 7520390 | J461151 | 2-39146.61 | 41.8B | 55.77 | $ | 80,914 |
| DEN | 7520390 | J461164 | 2-39146.62 | 41.8B | 55.77 | | 4,771 |
| MH | 7520390 | J461169 | 2-39146.63 | 41.8B | 55.77 | | 8,133 |
| CHS | 752/30390 | J46ZS75 | 2-62046.66 | 41.8B | 55.77 | | 5,457 |
| PHN | 7520390 | J461171 | 2-39246.72 | 41.8B | 55.77 | | 3,419 |
| HE | 7520390 | J461162 | 2-39246.73 | 41.8B | 55.77 | | 4,257 |
| CHR | 7520390 | J461174 | 2-39246.74 | 41.8B | 55.77 | | 9,079 |
| Dir Ops | 7520390 | J461173 | 2-39646.80 | 41.8B | 55.77 | | 47,306 |
| | | | Total | | | | $ 163,336 |

### FY'02 Bemidji Area Tribal Shares @100% unencumbered

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| H/C | 7520390 | J461151 | 2-39146.61 | 41.8B | 55.77 | $ | 72,106 |
| DEN | 7520390 | J461164 | 2-39146.62 | 41.8B | 55.77 | | 65,000 |
| | | | Total | | | | $ 137,106 |

### FY'02 Aberdeen Area Tribal Shares

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| H/C | 7520390 | J461151 | 2-39146.61 | 41.8B | 55.77 | $ | 25,170 |

Total Contract    $5,253,202

Commissioned Officer Detail Withholding from H/C:
Culhane, MD  144,100 + 1,400 fee
Exner, MD 154,500 + 1,400 fee
Chelberg, Opt. 51,200 + 1,400 fee

$18,670 H/C withheld for BioMed.

# SECTION 4 – TIME AND METHOD OF PAYMENT

The time and method of payment of funds to the Contractor for the operation and administration of the programs, functions, services, and activities identified under this agreement shall be as follows:

As requested by the Tribe and authorized by section (a)(6)(B) of the Model Agreement, for all programs of a recurring nature for which amounts have been determined prior to the beginning of the Annual Funding Agreement (AFA) Year, the Secretary shall provide a single lump sum payment.  The Aberdeen Area Indian Health Service, Division of Financial Resources, shall issue payment under the contract within forty-five (45) calendar days after apportionment from the Office of Management and Budget or as expeditiously as practicable.

DEFS.' EX. H 021

# SECTION 5 – BRIEF DESCRIPTION OF PFS TO BE PROVIDED

Programs, Services, Functions, and Activities. The Contractor shall operate the following programs:

1. **Administrative Services**

   a. Administration – The Menominee Indian Tribe and its delegate Health Committee is responsible for overall operation of the tribal comprehensive health program, which is under the administrative supervision of the Tribal Health Administrator and medical direction by the Medical Director. Responsibilities include planning and developing organization objectives, designing operational plans an establishing policy, allocating resources, organizing work processes, staffing, retaining human resources, directing, controlling, and monitoring organizational activities.

   b. Medical Records – Maintains all outpatient health care records in POMR format, transcribes progress notes, handles record transfers to and from the Menominee Tribal Clinic, provides coding and pricing for all route slips, ensures patient records are maintained in a standardized format according to policy, processes, monitors, and submits ambulatory patient care data to appropriate I.H.S. agency. Ensures proper registration of all patients utilizing services at the clinic.

   c. Billing – Maintains patient account information such as demographic and insurance coverage through patient registration, processes all service charges and reimbursement for care, tracks third party billings, provides management data for cash flow projections, utilizes and maintains a computer system for processing all billing components, maintains computer security, and provides periodic software upgrades.

   d. Contract Health Services – A contract health service program is operated for all eligible individuals residing within the Menominee Tribal Clinic's service delivery area. This includes procurement of health services not available at the clinic. Clinic physicians make referrals to designated preferred health care providers. A CHS policy and procedures manual defines department operations.

   e. Maintenance and Housekeeping – Maintenance and housekeeping is responsible for the repair, maintenance and cleaning of the entire health care facility.

6

DEFS.' EX. H 022

2.    **Direct Medical Care**

a.    Medical Services – Direct patient care consists of physician, mid-level practitioner including physician assistant, nurse practitioner, and nursing services. Medical care services are directed by the medical director who directs patient care at the outpatient clinic. The ambulatory nursing component consists of state-licensed registered nurses (RNS) and licensed practical nurses (LPNs). Department operations are governing by the medical department's policy and procedures manual.

b.    Laboratory Services – Two medical technologists and a laboratory aide provide laboratory services under the direct supervision of staff physicians. The laboratory performs a variety of diagnostic tests, including routine chemistry, urinalysis, hematology, bacteriology, coagulation, endocrinology, and immunology. Outside reference laboratories are utilized for specialized testing. An approved laboratory policy and procedures manual plan governs the laboratory operation.

c.    Radiology Services – An X-ray technologist provides routine diagnostic x-rays of the musculoskeleton as ordered by staff physician. Established protocols are defined in the radiology department's policy and procedures manual.

d.    Pharmacy – The Pharmacy department is staffed by three pharmacists and two pharmacy technicians. The pharmacy services promote the rational use of pharmaceutical products within community health and patient care management plans; the correct dispensing, use and administration of pharmaceutical products by patients; clinical staff consultation and monitoring and off-site pharmacy services monitoring. The pharmacy is responsible for obtaining pharmaceutical drugs from appropriate sources according to standard procedures. Dispensing, counseling and related services shall be provided on receipt of authorized prescription form approved health center and subcontract medical (off-site) and dental providers. Department operations are defined in a pharmacy policy and procedures manual.

e.    Women's Personal Health – The Women's Personal Health Program is staffed by a registered nurse and an outreach worker. Services offered include pregnancy testing, reproductive health, birth control counseling, follow up on sexually transmitted disease and abnormal pap smears, prenatal education, childbirth preparation classes, and post partum/postnatal services to women of all ages. The WPH program is a direct service program under this contract with funding support from contract income. Program direction and supervision is provided by the health administrator and designated staff.

DEFS.' EX. H 023

f.   Emergency Medical Services – The emergency medical services
     department provides twenty- four (24) emergency medical services to the
     reservation/county. It is staffed by state licensed emergency medical
     technicians. Levels of care are provided at the EMT Basic, EMT
     defibrillation and EMT advanced airway levels. An EMS policies and
     procedures manual governs the operation. The EMS program is a direct
     services program under this contract with funding support from contract
     income. Program direction and supervision is provided by the health
     director and designated staff.

3.   **Dental**

a.   Dental – The dental department is staffed by three dentists, a dental
     hygienist, five dental assistants and a dental receptionist. Program
     services encompass the total practice of general dentistry. Dental hygiene
     services including education and preventative planning activities are
     provides by a full-time dental hygienist. The dental policy and procedures
     manual defines the scope of services.

4.   **Community Health**

a.   Environmental Health – An environmental health specialist (sanitarian) is
     employed to plan, organize, and direct a comprehensive program to
     identify and address environmental conditions which may effect the health
     of the Menominee Indian Reservation residents. These areas include,
     community injury control, water quality, waste management, food,
     celebrations, institutional environmental health, vector control,
     recreational sanitation, epidemiological investigations, emergency
     situations, promotion of tribal codes and ordinances, industrial hygiene,
     operation and maintenance activities, general administrative activities,
     annual environmental planning, construction, radon testing and mitigation.

b.   Community Health Nursing Services – Community Health Nursing
     provides services in coordination with the staff physicians. The
     community health nurse incorporates into practice knowledge of clinical
     nursing, community and social organization, ecology, biological,
     psychological, and social services. The primary focus of community
     health nursing is the prevention of illness, the promotion and maintenance
     of health and the provision of needed therapeutic services. A policy and
     procedures manual defines department operations.

c.   Mental Health – The Mental Health department is responsible for
     providing outpatient mental health services. Individual, family and group
     therapy is available for family difficulties, marital problems, separation
     and divorce, parent-child difficulties, depression, anxiety, suicidal
     thoughts or actions, and school behavior problems. The department is

8

DEFS.' EX. H 024

staffed by two masters' level psychologists and two masters level clinical social workers. A department policy and procedures manual governs program operations.

d.  Optical – The Optical department is staffed by two contracted optometrists, licensed by the Wisconsin State Optometry Board of Examiners. The following services are provided: eye examinations, eyeglasses and contact lens. A departmental policy and procedures manual defines program operations.

e.  Nutrition – A registered dietitian provides nutrition education and counseling services for the Menominee community.

f.  Audiology – An audiology consultant is contracted to provide a full range of audiology screening, testing and referral services for the Menominee community.

g.  Wellness Program – The wellness program is directed by a registered nurse and a health fitness instructor. The program is aimed at reducing the high prevalence of cardiovascular disease for the Menominee people. Prevention activities will be continued an new wellness programs will be developed to reduce the risk of cardiovascular disease of people of all ages (children, youth, and adults) that take place in multiple settings (schools, work sites, and community).

h.  Health Promotion Disease Prevention – The program focus includes health promotions, health protection and preventive health. A HP/DP committee coordinates community health initiative efforts. This includes men and women's health fairs, walk run competitions.

i.  AIDS Prevention & AIDS Health Education – The program provides comprehensive HIV/AIDS related services to the residents of Menominee Reservation/County. The focus is to prevent the spread of HIV infection through education and awareness efforts.

j.  Family Planning Services are referenced under the Women's Health program description.

k.  Honoring Our Children – The program facilitates and assists expectant mothers through the process of prenatal care to ensure services are provided to pregnant mothers to promote healthy pregnancies and infants. The program aims to build strong support networks for families through active involvement of community members in services needed and provided. It aims to improve access to health and human services for children and families. There is promotion of healthier life style options and a greater public awareness.

9

DEFS.' EX. H 025

l.  Breast/Cervical Cancer – This program provides screening for mammography and pelvic exams. Community outreach is provided through various media.

m.  Rural Infant Health – The program identifies and provides outreach for high risk and at risk infants from birth to age 3. The program provides transportation to medical appointments and assists with child immunizations. The program will improve and refine a system for comprehensive well child/healthcheck outreach and screening. Provide and assure comprehensive primary and preventative health care to infants and young children, including comprehensive assessments, anticipatory guidance, referrals and follow-up.

n.  Diabetes Program – A diabetic educator will work with community health nurses to reach diabetic patients in the community and will provide consistent follow up. The diabetic educator will be involved with screening and educational efforts that are conducted at work sites, schools and community functions. A diabetic patient management database will be refined to easy assess to patient status, appointment information and audit material. The identification of high risk patients that frequently no show and target for intensive educational efforts.

# SECTION 6 – OTHER PROVISIONS TO WHICH PARTIES AGREE

1.  **Reporting Requirements**

A.  For each fiscal year which the Contractor receives or expends funds pursuant to P.L. 93-638, the Contractor shall submit to the Secretary a single agency audit report required by Chapter 75 of Title 31, Unites States Code.

B.  The Contractor shall make an annual report to the Indian people in fulfillment of the Section 5(c) of P.L. 93-638 requirement for reports and information to Indian people. This annual report will include the PFSA's provided and the costs incurred. A copy of this report will also be provided to the Bemidji Area Contracting Officer.

C.  Resource Patient Management System (RPMS)(Automated)

(1)  Patient Registration
(2)  Patient Care Component (dental)
(3)  Patient Care component (pharmacy)
(4)  Contract Health Service (2.0)
(5)  Immunization Report

10

DEFS.' EX. H 026

(6)    Community Health Activity Report (PHN)

D.    Environmental Health Reporting System (Manual).  Submit to Area Chief Environmental Health Services Branch.

2.    **Term of AFA**

The term of this Annual Funding Agreement shall be for the period January 1, 2002 through December 31, 2002.

3.    **I.H.S. Headquarters PFSA/Tribal Shares**

For FY'02 the I.H.S. Headquarters PFSA/Tribal Shares are available to the Menominee Indian Tribe at 100% of unencumbered programs, functions, services, and activities in the amount of $274,421.  PFSA/Tribal Shares retained by I.H.S. Headquarters for the benefit of the Menominee Indian Tribe are as follows:

| | |
|---|---|
| Total Available | $274,421 less retained |
| Line 126 DIR Support | -  56,088 |
| Line 137 DIR Support HQW | -  29,117 |
| Line 1301 Direct Ops (16.4%) | -   9,280 |
| | $179,936 |
| ALC funds to Alcohol contract | -  16,600 |
| | $163,336 |

4.    **FY'02 Bemidji Area PFSA/Tribal Shares**

For FY'02 the Bemidji Area PFSA/Tribal Shares are available to the Menominee Indian Tribe at 100% of unencumbered programs, functions, services, and activities in the amount of $212,100.  The calculated Great Lakes ITC PFSA/Tribal shares of $37,064 are included in the Great Lakes ITC Agreement for the period ending 9/30/02.  PFSA/Tribal Shares retained by the Bemidji Area for the benefit of the Menominee Indian Tribe are as follows:

| | |
|---|---|
| Total Available | $212,100 less retained |
| Health Prof. Recruit. | -  2,290 |
| Health Info Mgmt. | -  5,600 |
| MIS | -  22,530 |
| GLITC | -  37,064 |
| | $144,616 |
| Behavioral Health funds to ALC | -   7,510 |
| | $137,106 |

DEFS.' EX. H 027

5.    **FY'02 Aberdeen PFSA/Tribal Shares**

The FY'02 Aberdeen PFSA/Tribal Shares in the amount of $25,190 are hereby added to the agreement to augment health programs.

6.    **Federal Tort Claims Act (25 C.F.R. § 900.186(a))**

For purposes of Federal Tort Claims Act coverage, the contractor and its employees (including individuals performing personal services contracts with the contractor to provide health care services) are deemed to be employees of the Federal Government while performing work under this contract (Refer to Section 102(d) of the ISDA, 25 U.S.C. § 240f(d) and 25 C.F.R. § 900.193). This status is not changed by the source of the funds used by the contractor to pay the employees salary and benefits unless the employee receives additional compensation for performing covered services from anyone other than the contractor. (Refer to 25 C.F.R. § 900.197).

Under this contract, the contractor's employees may be required as a condition of employment may be required as a condition of employment to provide health services to non-IHS beneficiaries in order to meet contractual obligations. These services may be provided in either contractor or non-contractor facilities. The employee's status for Federal Tort Claims purposes is not affected.

7.    **Program Income, Including Medicare/Medicaid**

All medicare, medicaid or other program income received by the Tribe shall be treated as additional supplemental funding to that negotiated in the Annual Funding Agreement and the Tribe may retain all such income, pursuant to Section 106(m) of the Act. Medicare/Medicaid collections of the Tribe under Title IV of Public Law 94-437, as amended, shall be used by the Tribe in accordance with any applicable statutory restrictions on the use of such funds. The Tribe is obligated to seek third party reimbursement as provided by federal law.

8.    **Eligibility for Services**

In determining eligibility for services, the Tribal shall comply with applicable eligibility provisions set forth in the Indian Health Care Improvement Act, as amended, other statutory law and applicable regulations.

9.    **Contract Support Costs**

For purposes of this annual funding agreement, the parties agree that CSC will be calculated and paid in accordance with §106 of the Indian Self-Determination Act and I.H.S. Circular 2001-05, subject to any statutory requirements imposed by Congress.

12

DEFS.' EX. H 028

The Contractor 's Contract Support Costs (Indirect) will be calculated at the current approved indirect cost rate.

10.  **Funding Amounts Available in Fiscal Year 2002**

The Tribe shall receive funding for all new services, services increases, Congressional appropriation increases, mandatory, population growth, health services priority system, and other non-recurring resources on the same basis as other tribes using Area TSA percentages.

11.  **AFA Adjustment to User Population for Base Budget Tribes**

For the purpose of having a base budget and in accordance with current IHS guidance, the funding levels heretofore enumerated shall remain constant within the term of this Agreement and subject to the foregoing conditions utilizing the latest Area TSA percentage.

DATED THIS _14th_ OF _Dec_ ,2001

## MENOMINEE INDIAN TRIBE OF WISCONSIN

BY _Betty Jo Wozniak_
~~Tribal Chairman~~
BETTY JO WOZNIAK
TRIBAL ADMINISTRATOR

## UNITED STATES OF AMERICA, DEPARTMENT OF HEALTH AND HUMAN SERVICES INDIAN HEALTH SERVICE

BY _____

**Contracting Officer, Bemidji Area Office**

13

DEFS.' EX. H 029

# MENOMINEE TRIBE'S MODEL/ANNUAL FUNDING AGREEMENT MODIFICATION

## No. 02-8

## EFFECTIVE 9/30/02

DEFS.' EX. H 030

## MODEL/ANNUAL FUNDING AGREEMENT MODIFICATION

| 1. AGREEMENT NO. | 2. MODIFICATION NO. | 3. EFFECTIVE | 4. REQUISITION NO. | 5. PAGE | OF PAGES |
|---|---|---|---|---|---|
| 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 | 02-8 | 09/30/02 | | 1 | 2 |

| 6. ISSUED BY | 7. CONTRACTOR NAME AND ADDRESS | 8. PAYMENT MADE BY |
|---|---|---|
| Indian Health Services<br>Bemidji Area Office<br>522 Minnesota Ave., 211 Fed. Bldg.<br>Bemidji, Minnesota  56601 | Menominee Tribe of Wisconsin<br>P.O. Box 910<br>Keshena, Wisconsin  54135 | Indian Health Service<br>Aberdeen Area Finance<br>115 Fourth Avenue<br>Aberdeen, S. Dak. 57401 |

9. AUTHORITY: 25 U.S.C. 450 et seq., (P.L. 93-638) as amended

Contractor ☑ is not ☐ is required to sign this document and return _____ copies to the issuing office. ☐ is not

10. DESCRIPTION OF MODIFICATION

A.  Annual Funding Agreement No. 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 is hereby modified to increase the contract amount by $6,181 which reflects the FY'02 Indirect Cost Shortfall distribution.

B.  The funding amounts available to the Contractor for the period of this annual funding agreement are as follows:

| 1/1/02 - 12/31/02 | | | | | | Estimated '02 Amount | |
|---|---|---|---|---|---|---|---|
| H/C | 7520390 | J461151 | 2-39146.61 | 41.8B | 55.75 | 3,267,910 | |
| CSC/DIR | 7520390 | J461170 | 2-39846.61 | 41.8A | 55.75 | 158,555 | |
| CSC/IDC | 7520390 | J461170 | 2-39846.61 | 41.8E | 55.75 | 413,879 | (+6,181) |
| CHS | 752/30390 | J46ZS75 | 2-62046.66 | 41.8B | 55.75 | 1,544,930 | |
| CHS | 75X0390 | J466150 | 90-41346.53 | 41.8B | 55.75 | 2,930 | |
| PHN | 7520390 | J461171 | 2-39246.72 | 41.8B | 55.75 | 16,280 | |
| HE | 7520390 | J461162 | 2-39246.73 | 41.8B | 55.75 | 2,260 | |
| MH | 7520390 | J461169 | 2-39246.63 | 41.8B | 55.75 | 15,530 | |
| DEN | 7520390 | J461164 | 2-39146.62 | 41.8B | 55.75 | 93,720 | |
| CHR | 7520390 | J461174 | 2-39246.74 | 41.8B | 55.75 | 740 | |
| OEH Equipment | 75X0391 | J461172 | 2-29646.71 | 41.8B | 55.75 | 54,200 | |
| M&I | 75X0391 | J461167 | 2-29040.76 | 41.8B | 55.75 | 95,000 | |
| IPP | 75X0391 | J461168 | 2-29246.77 | 41.8B | 55.75 | 8,155 | |
| | 7520390 | J460209 | 2-39146.09 | 41.8B | 55.75 | 2,859 | |

Total Base    5,676,948  (+6,181)

| 11. NAME AND TITLE OF SIGNER (Typed or Printed) | 12. NAME OF CONTRACTING OFFICER (Typed or Printed) |
|---|---|
| | Dennis Murphy, Contracting Officer |

| 11. CONTRACTOR SIGNATURE AND DATE | 12. CONTRACTING OFFICER SIGNATURE AND DATE |
|---|---|
| | _signature_    09/30/02 |

Funding Certification    Budget    SAK    dtd . 9.30.02    Menomin    Mod 02-8

DEFS.' EX. H 031

## MODEL/ANNUAL FUNDING AGREEMENT MODIFICATION

| AGREEMENT NO. | MODIFICATION NO. | | REQUISITION NO. | | PAGE OF PAGES | |
|---|---|---|---|---|---|---|
| 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 | 02-8 | | | | 2 | 2 |

FY'02 Area Tribal Shares @100%

| | | | | | |
|---|---|---|---|---|---|
| H/C | 7520390 | J461151 | 2-39146.61 | 55.75 41.8B | 72,106 |
| DEN | 7520390 | J461164 | 2-39146.62 | 55.75 41.8B | 65,000 |
| | | | | Total | 137,106 |

FY'02 Headquarters Tribal Shares @ 100% for the period 1/1/02 to 12/31/02

| | | | | | |
|---|---|---|---|---|---|
| H/C | 7520390 | J461151 | 2-39146.61 | 55.75 41.8B | 81,258 |
| DEN | 7520390 | J461164 | 2-39146.62 | 55.75 41.8B | 4,771 |
| MH | 7520390 | J461169 | 2-39146.63 | 55.75 41.8B | 8,281 |
| PHN | 7520390 | J461171 | 2-39246.72 | 55.75 41.8B | 3,419 |
| HE | 7520390 | J461162 | 2-39246.73 | 55.75 41.8B | 4,257 |
| CHR | 7520390 | J461174 | 2-39246.74 | 55.75 41.8B | 9,079 |
| Dir Ops | 7520390 | J461173 | 2-39646.80 | 55.75 41.8B | 49,063 |
| CHS | 752/30390 | J46ZS75 | 2-62046.66 | 55.75 41.8B | 5,457 |
| | | | | Total | 165,585 |

FY'02 Aberdeen Area Tribal Shares

| | | | | | |
|---|---|---|---|---|---|
| H/C | 7520390 | J461151 | 2-39146.61 | 55.75 41.8B | 25,170 |
| | | | | Total Contract | $    6,004,809  (+6,181) |

C.   The AFA funding period is hereby increased by $6,181 from $5,998,628 to $6,004,809 by reason of this modification.

D.   The AFA funding period remains unchanged as result of this modification.

E.   There are no other changes by reason of this modification.

DEFS.' EX. H 032

# EXHIBIT I

MENOMINEE TRIBE'S 2003 AFA

EFFECTIVE 1/1/03 – 12/31/03

ATTACHMENT 2-03 TO
IHS CONTRACT No. 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

DEFS.' EX. I 001

## ATTACHMENT 2-03

TO INDIAN SELF-DETERMINATION AGREEMENT

IHS AGREEMENT NUMBER 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

ANNUAL FUNDING AGREEMENT

BETWEEN THE

SECRETARY OF HEALTH AND HUMAN SERVICES

AND THE

MENOMINEE INDIAN TRIBE OF WISCONSIN
CHIPPEWA INDIANS



BEMIDJI AREA
INDIAN HEALTH SERVICE

## JANUARY 1, 2003 – DECEMBER 31, 2003

DEFS.' EX. I 002

| MENOMINEE TRIBE OF WISCONSIN | FY'03 AFA |
|---|---|

ANNUAL FUNDING AGREEMENT

BETWEEN THE

MENOMINEE INDIAN TRIBE OF WISCONSIN

AND THE

DEPARTMENT OF HEALTH AND HUMAN SERVICES
INDIAN HEALTH SERVICE

JANUARY 1, 2003 – DECEMBER 31, 2003

CONTENTS

SECTION

1.  PURPOSE

2.  LIST OF PROGRAMS, FUNCTIONS, SERVICES AND ACTIVITIES TO BE PERFORMED

3.  FUNDS TO BE PROVIDED

4.  TIME AND METHOD OF PAYMENT

5.  BRIEF DESCRIPTION OF PFSA'S

6.  OTHER PROVISIONS TO WHICH PARTIES AGREE

ATTACHMENT A - INFORMATIONAL BUDGET
            Area Detail Sheet
            Table #4, Headquarters Tribal Shares

ATTACHMENT B - 2003 INDICATORS

ATTACHMENT C - SUPPORT PACKAGE SELECTION

2

DEFS.' EX. I 003

| MENOMINEE TRIBE OF WISCONSIN | FY'03 AFA |
|---|---|

## SECTION 1 – PURPOSE

This Annual Funding Agreement is entered into by the Menominee Indian Tribe of Wisconsin (referred to in this agreement as Contractor) and the U.S. Department of Health and Human Services, Indian Health Service (referred to in this agreement as IHS) in accordance with Section 108 (25 USC 450I)(c) Section 1, (f)(2) and pursuant to the Self-Determination Model Agreement No. 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, dated January 1, 2002 under the provision of Title I of P.L. 93-638, as amended.

## SECTION 2 – LIST OF PROGRAMS, FUNCTIONS, SERVICES AND ACTIVITIES TO BE PERFORMED

The Menominee Indian Tribe, hereinafter referred to as Contractor shall continue to administer and operate the Menominee Tribal Health Services Program on the Menominee Indian Reservation utilizing the tribal health facility at Keshena, Wisconsin. The Menominee Health Center is fully accredited by the Joint Commission of Accreditation of Healthcare Organizations (JCAHO). The purpose of this comprehensive health services program is to provide high quality ambulatory medical, dental, community health services, and the administration thereof for eligible individuals residing within the target area. The Contractor may also provide services to non-beneficiaries on a fee-for-services basis as authorized by I.H.S. Manual 2-4.31 (emergency cases) and I.H.S. Manual 2-3.3 J (non-emergency cases) 1.

The Contractor agrees to provide the programs, functions, services and activities (PFSA) as consolidated under the general budget categories listed below in accordance with the Program Standards listed in the Model Agreement.

A.    **Administrative Services**
    1.    Administration
    2.    Medical Records
    3.    Billing
    4.    CHS
    5.    Housekeeping/Maintenance

B.    **Ambulatory Services**
    1.    Medical Services, including
        a.    Physicians
        b.    Nurse Practitioner (NP)
        c.    Physician Assistant
        d.    Pharmacy Services
        e.    Laboratory Services
        f.    Ambulatory Care – Nursing
        g.    Medical and Technical Relief Coverage including:

3

DEFS.' EX. I 004

| MENOMINEE TRIBE OF WISCONSIN | FY'03 AFA |
|---|---|

Medical Director, Radiology Technicians, Hospital Coverage-Physician, Nutritionist, psychotherapists, cardiologist, physical therapist, pedodonist.

2. Dental Services (Direct and Contract Health)
3. Audiology
4. Clinic/Program Administration
5. Contract Health Services (CHS, including Inpatient, Outpatient, and Optical)
6. Patient Transportation Services
7. Emergency Medical Services

C. **Preventive Health Services**
1. Dental Prevention Services
2. Environmental Health and Sanitarian Services
3. Public Health Nursing Services (CHN's)
4. Nutrition Services
5. Mental Health
6. Wellness Program
7. Health Promotion/Disease Prevention
8. Aids Prevention and Aids Health Education
9. Family Planning Services
10. Honoring Our Children
11. Breast/Cervical Cancer
12. Rural Infant Health
13. Diabetes Program

## SECTION 3 – FUNDS TO BE PROVIDED

The funding amounts available to the Contractor for the period of this Annual Funding Agreement shall be as follows:

| | | | | | | |
|---|---|---|---|---|---|---|
| H/C | 7530390 | J461151 | 3-39146.61 | 41.8B | 55.75 | $3,148,815 |
| CSC IDC | 7530390 | J461170 | 3-39846.62 | 41.8E | 55.75 | 413,879 |
| CSC DIR | 7530390 | J461170 | 3-39846.61 | 41.8A | 55.75 | 158,555 |
| CHS | 753/40390 | J46ZF75 | 3-63046.66 | 41.8B | 55.75 | 1,253,610 |
| MH | 7530390 | J461169 | 3-39146.63 | 41.8B | 55.75 | 15,530 |
| CHR | 7530390 | J461174 | 3-39246.74 | 41.8B | 55.75 | 740 |
| PHN | 7530390 | J461171 | 3-39246.72 | 41.8B | 55.75 | 16,280 |
| DEN | 7530390 | J461164 | 3-39146.62 | 41.8B | 55.75 | 93,720 |
| HE | 7530390 | J461162 | 3-39246.73 | 41.8B | 55.75 | 2,260 |
| IPP | 75X0391 | J461168 | 3-29246.77 | 41.8B | 55.75 | 1,000 |
| M&I | 75X0391 | J461167 | 3-29040.76 | 41.8B | 55.75 | 95,000 |
| OEH Eq. | 75X0391 | J461172 | 3-29646.71 | 41.8B | 55.75 | 54,200 |
| | | | Total FY'03 | | | $5,253,589 |

4

DEFS.' EX. I 005

| MENOMINEE TRIBE OF WISCONSIN | | | | | | FY'03 AFA |
|---|---|---|---|---|---|---|

FY'03 Headquarters Tribal Shares @100% of unencumbered

| | | | | | | |
|---|---|---|---|---|---|---|
| H/C | 7530390 | J461151 | 3-39146.61 | 41.8B 55.75 | $ | 81,259 |
| DEN | 7530390 | J461164 | 3-39146.62 | 41.8B 55.75 | | 4,771 |
| MH | 7530390 | J461169 | 3-39146.63 | 41.8B 55.75 | | 8,281 |
| CHS | 753/40390 | J46ZF75 | 3-63046.66 | 41.8B 55.75 | | 5,457 |
| PHN | 7530390 | J461171 | 3-39246.72 | 41.8B 55.75 | | 3,419 |
| HE | 7530390 | J461162 | 3-39246.73 | 41.8B 55.75 | | 4,257 |
| CHR | 7530390 | J461174 | 3-39246.74 | 41.8B 55.75 | | 9,079 |
| DIR Ops | 7530390 | J461173 | 3-39646.80 | 41.8B 55.75 | | 49,062 |
| | | | | Total | $ | 165,585 |

FY'03 Bemidji Area Tribal Shares @ 100% of unencumbered

| | | | | | | |
|---|---|---|---|---|---|---|
| H/C | 7530390 | J461151 | 3-39146.61 | 41.8B 55.75 | $ | 72,106 |
| DEN | 7530390 | J461164 | 3-39146.62 | 41.8B 55.75 | | 65,000 |
| | | | | | $ | 137,106 |

FY'03 Aberdeen Area Tribal Shares

| | | | | | | |
|---|---|---|---|---|---|---|
| H/C | 7530390 | J461151 | 3-39146.61 | 41.8B 55.75 | $ | 25,170 |
| | | | | Total | | $5,581,450 |

Commissioned Officer Detail Withholding from H/C:
Culhane , MD 151,500 + 1,560 adm. fee
Exner, MD 160,200 + 1,560 adm. fee
Chelberg, Opt. 58,100 + 1560 adm. fee
Fuller, Den $94,700 +1,560 adm. fee
$19,800 H/C withheld for BioMed.

## SECTION 4 – TIME AND METHOD OF PAYMENT

The time and method of payment of funds to the Contractor for the operation and administration of the programs, functions, services and activities identified under this agreement shall be as follows:

As requested by the Tribe and authorized by section (a)(6)(B) of the Model Agreement, for all programs of a recurring nature for which amounts have been determined prior to the beginning of the Annual Funding Agreement (AFA) Year, the Secretary shall provide a single lump sum payment. The Aberdeen Area Indian Health Service, Division of Financial Resources, shall issue payment under the contract within forty-five (45) calendar days after apportionment from the Office of Management and Budget or as expeditiously as practicable.

## SECTION 5 – BRIEF DESCRIPTION OF PFSA'S TO BE PROVIDED

Programs, functions, services and activities. The Contractor shall operate the following programs:

5

DEFS.' EX. I 006

| MENOMINEE TRIBE OF WISCONSIN | FY'03 AFA |
|---|---|

1. **Administrative Services**

   a.   Administration – The Menominee Indian Tribe and its delegate Health Committee is responsible for overall operation of the tribal comprehensive health program, which is under the administrative supervision of the Tribal Health Administrator and medical direction by the Medical Director. Responsibilities include planning and developing organization objectives, designing operational plans and establishing policy, allocating resources, organizing work processes, staffing, retaining human resources, directing, controlling, and monitoring organizational activities.

   b.   Medical Records – Maintains all outpatient health care records in POMR format, transcribes progress notes, handles record transfers to and from the Menominee Tribal Clinic, provides coding and pricing for all route slips, ensure patient records are maintained in a standardized format according to policy, processes, monitors, and submits ambulatory patient care data to appropriate I.H.S. agency. Ensures proper registration of all patients utilizing services at the clinic.

   c.   Billing – Maintains patient account information such as demographic and insurance coverage through patient registration, processes all services charges and reimbursement for care, tracks third party billings, provides management data for cash flow projections, utilizes and maintains a computer system for processing all billing components, maintains computer security, and provides periodic software upgrades.

   d.   Contract Health Services – A contract health service program is operated for all eligible individuals residing within the Menominee Tribal Clinic's service delivery area. This includes procurement of health services not available at the clinic. Clinic physicians make referrals to designated preferred health care providers. A CHS policy and procedures manual defines department operations.

   e.   Maintenance and Housekeeping – Maintenance and housekeeping is responsible for the repair, maintenance and cleaning of the entire helath care facility.

2. **Direct Medical Care**

   a.   Medical Services – Direct patient care consists of physician, mid-level practitioner including physician assistant, nurse practitioner, and nursing services. Medical care services are directed by the medical director who directs patient care at the outpatient clinic. The ambulatory nursing component consists of state-licensed registered nurses (RNS) and licensed practical nurses (LPN's). Department operations are governing by the medical department's policy and procedures manual.

6

DEFS.' EX. I 007

| MENOMINEE TRIBE OF WISCONSIN | FY'03 AFA |
|---|---|

b.  Laboratory Services – Two medical technologists and a laboratory aide provide laboratory services under the direct supervision of staff physicians. The laboratory performs a variety of diagnostic tests, including routine chemistry, urinalysis, hematology, bacteriology, coagulation, endocrinology, and immunology. Outside reference laboratories are utilized for specialized testing. An approved laboratory policy and procedures manual plan governs the laboratory operation.

c.  Radiology Services – An X-ray technologist provides routine diagnostic x-rays of the musculoskeleton as ordered by staff physician. Established protocols are defined in the radiology department's policy and procedures manual.

d.  Pharmacy – The Pharmacy department is staffed by three pharmacists and two pharmacy technicians. The pharmacy services promote the rational use of pharmaceutical products within community health and patient care management plans; the correct dispensing, use and administration of pharmaceutical products by patients; clinical staff consultation and monitoring and off-site pharmacy services monitoring. The pharmacy is responsible for obtaining pharmaceutical drugs from appropriate sources according to standard procedures. Dispensing, counseling and related services shall be provided on receipt of authorized prescription form approved health center and subcontract medical (off-site) and dental providers. Department operations are defined in a pharmacy policy and procedures manual.

e.  Women's Personal Health – The Women's Personal Health Program is staffed by a registered nurse and an outreach worker. Services offered include pregnancy testing, reproductive health, birth control counseling, follow up on sexually transmitted disease and abnormal pap smears, prenatal education, childbirth preparation classes, and post partum/postnatal services to women of all ages. The WPH program is a direct service program under this contract with funding support from contract income. Program direction and supervision is provided by the health administrator and designated staff.

f.  Emergency Medical Services – The emergency medical services department providers twenty-four (24) emergency medical services to the reservation/county. It is staffed by state licensed emergency medical technicians. Levels of care are provided at the EMT Basic, EMT defibrillation and EMT advanced airway levels. An EMS policies and procedures manual governs the operation. The EMS program is a direct service program under this contract with funding support from contract income. Program direction and supervision is provided by the health director and designated staff.

7

DEFS.' EX. 1 008

MENOMINEE TRIBE OF WISCONSIN                                    FY'03 AFA

3.   **Dental**

a.   Dental — The dental department is staffed by three dentists, a dental hygienist, five dental assistants and a dental receptionist. Program services encompass the total practice of general dentistry. Dental hygiene services including education and preventative planning activities are provided by a full-time dental hygienist. The dental policy and procedures manual defines the scope of services.

4.   **Community Health**

a.   Environmental Health — An environmental health specialist (sanitarian) is employed to plan, organize, and direct a comprehensive program to identify and address environmental conditions which may effect the health of the Menominee Indian Reservation residents. These areas include, community injury control, water quality, waste management, food, celebrations, institutional environmental health, vector control, recreational sanitation, epidemiological investigations, emergency situations, promotion of tribal codes and ordinances, industrial hygiene, operation and maintenance activities, general administrative activities, annual environmental planning, construction, radon testing and mitigation.

b.   Community Health Nursing Services — Community Health Nursing provides services in coordination with the staff physicians. The community health nurse incorporates into practice knowledge of clinical nursing, community and social organization, ecology, biological, psychological, and social services. The primary focus of community health nursing is the prevention of illness, the promotion and maintenance of health and the provision of needed therapeutic services. A policy and procedures manual defines department operations.

c.   Mental Health — The Mental Health department is responsible for providing outpatient mental health services. Individual, family and group therapy is available for family difficulties, martial problems, separation and divorce, parent-child difficulties, depression, anxiety, suicidal thoughts or actions, and school behavior problems. The department is staffed by two masters' level psychologists and two masters level clinical social workers. A department policy and procedures manual governs program operations.

d.   Optical — The Optical department is staffed by two contracted optometrists, licensed by the Wisconsin State Optometry Board of Examiners. The following services are provided: eye examinations, eyeglasses and contact lens. A department policy and procedures manual defines program operations.

8

DEFS.' EX. I 009

| MENOMINEE TRIBE OF WISCONSIN | FY'03 AFA |
|---|---|

e.  Nutrition – A registered dietitian provides nutrition education and counseling services for the Menominee community.

f.  Audiology – An audiology consultant is contracted to provide a full range of audiology screening, testing and referral services for the Menominee community.

g.  Wellness Program – The wellness program is directed by a registered nurse and a health fitness instructor. The program is aimed at reducing the high prevalence of cardiovascular disease for the Menominee people. Prevention activities will be continued and a new wellness program will be developed to reduce the risk of cardiovascular disease of people of all ages (children, youth and adults) that take place in multiple settings (schools, work sites, and community).

h.  Health Promotion/Disease Prevention – The program focus includes health promotions, health protection and preventive health. A HP/DP committee coordinates community health initiative efforts. This includes men and women's health fairs, walk run competitions.

i.  AIDS Prevention & AIDS Health Education – The program provides comprehensive HIV/AIDS related services to the residents of Menominee Reservation/County. The focus is to prevent the spread of HIV infection through education and awareness efforts.

j.  Family Planning Services are referenced under the Women's Health program description.

k.  Honoring Our Children – The program facilitates and assists expectant mothers through the process of prenatal care to ensure services are provided to pregnant mothers to promote healthy pregnancies and infants. The program aims to build strong support networks for families through active involvement to community members in services needed and provided. It aims to improve access to health and human services for children and families. There is promotion of healthier life style options and a greater public awareness.

l.  Breast/Cervical Cancer – This program provides screening for mammography and pelvic exams. Community outreach is provided through various media.

m.  Rural Infant Health – The program identifies and provides outreach for high risk and at risk infants from birth to age 3. The program provides transportation to medical appointments and assists with child immunizations. The program will improve and refine a system for comprehensive well child/healthcheck outreach and screening. Provide

9

DEFS.' EX. I 010

| MENOMINEE TRIBE OF WISCONSIN | FY'03 AFA |
|---|---|

and assure comprehensive primary and preventative health care to infants and young children, including comprehensive assessments, anticipatory guidance, referrals and follow-up.

n.    Diabetes Program – A diabetic educator will work with community health nurses to reach diabetic patients in the community and will provide consistent follow-up. The diabetic educator will be involved with screening and educational efforts that are conducted at work sites, schools and community functions. A diabetic patient management database will be refined to easy assess to patient status, appointment information and audit material. The identification to high risk patients that frequently no show and target for intensive educational efforts.

## SECTION 6 – OTHER PROVISIONS TO WHICH PARTIES AGREE

1.    **Reporting Requirements**

A.    For each fiscal year with the Contractor receives or expends funds pursuant to P.L. 63-638, the Contractor shall submit to the Secretary a single agency audit report required by Chapter 75 of Title 31, United States Code.

B.    The Contractor shall make an annual report to the Indian people in fulfillment of Section 5 (c) of P.L. 93-638 requirement for reports and information to Indian people. This annual report will include the PFSA's provided and the costs incurred. A copy of this report will also be provided to IHS.

C.    (a)    Resources Patient Management System (RPMS)(Automated)
    1.    Patient Registration
    2.    Patient Care Component (dental)
    3.    Patient Care Component (pharmacy)
    4.    Contract Health Services
    5.    Immunization Report
    6.    Community Health Activity Report (PHN)

D.    Environmental Health Reporting System (Manual). Submit to the Area Chief, Environmental Health Service Branch.

2.    **Team of AFA**

The term of this Annual Funding Agreement shall be for the period January 1, 2003 through December 31, 2003.

10

DEFS.' EX. I 011

| MENOMINEE TRIBE OF WISCONSIN | FY'03 AFA |
|---|---|

3.    **I.H.S. Headquarters PFSA/Tribal Shares**

For FY'03 the I.H.S. Headquarters PFSA/Tribal Shares are available to the Menominee Indian Tribe at 100% of unencumbered programs, functions, services, and activities in the amount of $294,782. PFSA/Tribal Shares retained by I.H.S. Headquarters for the benefit of the Memoninee Indian Tribe are as follows:

| | |
|---|---|
| Total Available | $294,782 less retained |
| Line 126 DIR Support | – 73,197 |
| Line 137 Nat. Support-HQW | – 29,698 |
| Line 1301 Direct Ops (16.4%) | – 9,625 |
| Total | $182,262 |
| ALC funds to Alcohol contract | – 16,677 |
| | $165,585 |

4.    **FY'03 Bemidji Area PFSA/Tribal Shares**

For FY'03 the Bemidji Area PFSA/Tribal Shares are available to the Menominee Indian Tribe at 100% of unencumbered programs, functions, services, and activities in the amount of $212,100. The calculated Great Lakes ITC Field Office PFSA/Tribal Shares of $37,064 are included in the Great Lakes ITC Agreement for the period ending 9/30/03. PFSA/Tribal Shares retained by the Bemidji Area for the benefit of the Menominee Indian Tribe as follows:

| | |
|---|---|
| Total Available | $212,100 less retained |
| Health Prof. Recruit. | – 2,290 |
| Health Info. Mgmt. | – 5,600 |
| MIS | – 22,530 |
| GLITC | –37,064 |
| Total | $144,616 |
| Behavioral Health funds to ALC | – 7,510 |
| | $137,106 |

5.    **FY'03 Aberdeen PFSA/Tribal Shares**

The FY'03 Aberdeen PFSA/Tribal Shares in the amount of $25,170 are hereby added to the agreement to augment health programs.

6.    **Federal Tort Claims Act (25 CFR §900.186(a))**

For purposes of Federal Tort Claims Act coverage, the contractor and its employees (including individuals performing personal services contracts with the contractor to provide health care services) are deemed to be employees of the Federal Government while performing work under this contract (Refer to Section 102(d) of the ISDA, 25 U.S.C. §240f(d) and 25 C.F.R. §900.193). This status is

11

DEFS.' EX. I 012

| MENOMINEE TRIBE OF WISCONSIN | FY'03 AFA |
| --- | --- |

not changed by the source of the funds used by the contractor to pay the employees salary and benefits unless the employee receives additional compensation for performing covered services from anyone other than the contractor. (Refer to 25 C.F.R §900.197).

Under this contract, the contractor's employees may be required as a condition of employment may be required as a condition of employment to provide health services to non-IHS beneficiaries in order to meet contractual obligations. These services may be provided in either contractor or non-contractor facilities. The employees' status for Federal Tort Claims purposes is not affected.

7.    **Program Income, Including Medicare/Medicaid**

All medicare, medicaid or other program income received by the Tribe shall be treatment as additional supplemental funding to that negotiated in the Annual Funding Agreement and the Tribe may retain all such income, pursuant to Section 106(m) of the Act. Medicare/Medicaid collections of the Tribe under Title IV of Public Law 94-437, as amended, shall be used by the Tribe in accordance with any applicable statutory restrictions on the use of such funds. The Tribe is obligated to seek third party reimbursement as provided by federal law.

8.    **Eligibility for Services**

In determining eligibility for services, the Tribe shall comply with applicable eligibility provisions set forth in the Indian Health Care Improvement Act, as amended, other statutory law and applicable regulations.

9.    **Contract Support Costs**

The parties acknowledge that, for purposes of this annual funding agreement, IHS will calculate and pay CSC in accordance with §106 of the Indian Self-Determination Act and IHS Circular 2001-05, subject to any statutory requirements imposed by Congress.

The Contractor's Contract Support Costs (Indirect) will be calculated at the current approved indirect cost rate.

10.    **Funding Amounts Available in Fiscal Year 2003**

The Tribe shall receive funding for all new services, service increases, Congressional appropriations increases, mandatory, population growth, health services priority system, contract support costs, and other non-recurring resources on the same basis as other tribes using Area TSA percentage.

DEFS.' EX. I 013

| MENOMINEE TRIBE OF WISCONSIN | FY'03 AFA |

11.    **AFA Adjustment to User Population for Base Budget Tribes**

For the purpose of having a base budget and in accordance with current IHS guidance, the funding levels heretofore enumerated shall remain constant within the term of this Agreement and subject to the foregoing conditions utilizing the latest Area TSA percentage.

12.    **Monitoring Visit**

Monitoring visits shall be limited to not more than one performance monitoring visit per year, or as negotiated.

Dated this ___3rd___ day of __Dec.__, 2002

MENOMINEE INDIAN TRIBE OF WISCONSIN

TRIBAL CHAIRMAN

UNITED STATES OF AMERICA, DEPARTMENT OF HEALTH AND HUMAN SERVICES, INDIAN HEALTH SERVICE

Contracting Officer, Bemidji Area Office

13

DEFS.' EX. I 014

# MENOMINEE TRIBE'S MODEL/ANNUAL FUNDING AGREEMENT MODIFICATION

## No. 03-10

## EFFECTIVE 4/10/03

DEFS.' EX. I 015

## MODEL/ANNUAL FUNDING AGREEMENT MODIFICATION

| 1. AGREEMENT NO. | 2. MODIFICATION NO. | 3. EFFECTIVE | 4. REQUISITION NO. | PAGE | OF PAGES |
|---|---|---|---|---|---|
| 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 | 03-10 | 04/10/03 | | 1 | 2 |

| 5. ISSUED BY | 6. CONTRACTOR NAME AND ADDRESS | 7. PAYMENT MADE BY |
|---|---|---|
| Indian Health Services<br>Bemidji Area Office<br>522 Minnesota Ave., 211 Fed. Bldg.<br>Bemidji, Minnesota  56601 | Menominee Tribe of Wisconsin<br>P.O. Box 910<br>Keshena, Wisconsin  54135 | Indian Health Service<br>Aberdeen Area Finance<br>115 Fourth Avenue<br>Aberdeen, S. Dak. 57401 |

**8. AUTHORITY (USC 450f) (PL 93-638 as amended)**

**9. (check one) required to sign and return ___ copies to the issuing office**

**10. DESCRIPTION OF MODIFICATION**

A.   Annual Funding Agreement (AFA) 2-03 is hereby modified to increase the funding amount by $766,580
which reflects the following:

| | | |
|---|---|---|
| CSC IDC | (60) | Adjustment per distribution spreadsheet dated 1/31/03 |
| M&I | (2,400) | Non-recurring, per final distribution spreadsheet dated 4/3/03 |
| Equipment | 7,040 | Non-recurring, per final distribution spreadsheet dated 4/3/03 |
| IHCIF (H/C) | 762,000 | Recurring , per HQ distribution spreadsheet dated 3/28/03 |

The purpose and use of IHCIF funds shall be in accordance with Section 1621 of the Indian Health Care Improvement Act.

B.   The funding amounts available to the Contractor for the period of this annual funding agreement are as follows:

| 1/1/03 - 12/31/03 | | | | | | Estimated '03 Amount | |
|---|---|---|---|---|---|---|---|
| H/C | 7530390 | J461151 | 3-39146.61 | 41.8B | 55.75 | 3,910,815 | (+762,000) |
| CSC/DIR | 7530390 | J461170 | 3-39846.61 | 41.8A | 55.75 | 158,555 | |
| CSC/IDC | 7530390 | J461170 | 3-39846.61 | 41.8E | 55.75 | 413,819 | (-60) |
| CHS | 753/40390 | J46ZF75 | 3-63046.66 | 41.8B | 55.75 | 1,253,610 | |
| PHN | 7530390 | J461171 | 3-39246.72 | 41.8B | 55.75 | 16,280 | |
| HE | 7530390 | J461162 | 3-39246.73 | 41.8B | 55.75 | 2,260 | |
| MH | 7530390 | J461169 | 3-39246.63 | 41.8B | 55.75 | 15,530 | |
| DEN | 7530390 | J461164 | 3-39146.62 | 41.8B | 55.75 | 93,720 | |
| CHR | 7530390 | J461174 | 3-39246.74 | 41.8B | 55.75 | 740 | |
| OEH Equipment | 75X0391 | J461172 | 3-29646.71 | 41.8B | 55.75 | 61,240 | (+7,040) |
| M&I | 75X0391 | J461167 | 3-29040.76 | 41.8B | 55.75 | 92,600 | (-2,400) |
| IPP | 75X0391 | J461168 | 3-29246.77 | 41.8B | 55.75 | 1,000 | |

|  |  |  |
|---|---|---|
| | Total Base | 6,020,169 |

| 11. NAME AND TITLE OF SIGNER (Typed or Printed) | 12. NAME OF CONTRACTING OFFICER (Typed or Printed) |
|---|---|
| | Dennis Murphy, Contracting Officer |
| **11a. CONTRACTOR SIGNATURE AND DATE** | **12a. CONTRACTING OFFICER SIGNATURE AND DATE** |
| | 04/10/03 |

Funding Certification        Budget SAK        dtd . 4.09.03        Menomin        Mod 02-10

DEFS.' EX. I 016

## MODEL/ANNUAL FUNDING AGREEMENT MODIFICATION

| AGREEMENT NO. | MODIFICATION NO. | | REQUISITION NO. | PAGE OF PAGES | |
|---|---|---|---|---|---|
| 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 | 03-10 | | | 2 | 2 |

FY'03 Area Tribal Shares @100%

| | | | | | |
|---|---|---|---|---|---|
| H/C | 7530390 | J461151 | 3-39146.61 | 55.75 41.8B | 72,106 |
| DEN | 7530390 | J461164 | 3-39146.62 | 55.75 41.8B | 65,000 |
| | | | | Total | 137,106 |

FY'03 Headquarters Tribal Shares @ 100% for the period 1/1/02 to 12/31/02

| | | | | | |
|---|---|---|---|---|---|
| H/C | 7530390 | J461151 | 3-39146.61 | 55.75 41.8B | 81,259 |
| DEN | 7530390 | J461164 | 3-39146.62 | 55.75 41.8B | 4,771 |
| MH | 7530390 | J461169 | 3-39146.63 | 55.75 41.8B | 8,281 |
| PHN | 7530390 | J461171 | 3-39246.72 | 55.75 41.8B | 3,419 |
| HE | 7530390 | J461162 | 3-39246.73 | 55.75 41.8B | 4,257 |
| CHR | 7530390 | J461174 | 3-39246.74 | 55.75 41.8B | 9,079 |
| Dir Ops | 7530390 | J461173 | 3-39646.80 | 55.75 41.8B | 49,062 |
| CHS | 753/40390 | J46ZF75 | 3-63046.66 | 55.75 41.8B | 5,457 |
| | | | | Total | 165,585 |

FY'03 Aberdeen Area Tribal Shares

| | | | | | |
|---|---|---|---|---|---|
| H/C | 7530390 | J461151 | 3-39146.61 | 55.75 41.8B | 25,170 |
| | | | Total Contract | $ | 6,348,030 (+766,580) |

C.   The AFA funding amount is hereby increased by $766,580 from 5,581,450 to $6,348,030 by reason of this modification.

D.   The AFA funding period remains unchanged as a result of this modification.

E.   There are no other changes by reason of this modification.

DEFS.' EX. I 017

# EXHIBIT J

MENOMINEE TRIBE'S 2004 AFA

EFFECTIVE 1/1/04– 12/31/04

ATTACHMENT 2-04 TO
IHS CONTRACT No. 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

DEFS.' EX. J 001

## ATTACHMENT 2-04

TO

IHS AGREEMENT NUMBER 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

ANNUAL FUNDING AGREEMENT

BETWEEN THE

SECRETARY OF HEALTH AND HUMAN SERVICES

AND THE

MENOMINEE INDIAN TRIBE OF WISCONSIN



BEMIDJI AREA
INDIAN HEALTH SERVICE

## JANUARY 1, 2004 – DECEMBER 31, 2004

DEFS.' EX. J 002

MENOMINEE INDIAN TRIBE OF WISCONSIN                          FY'04 AFA

ANNUAL FUNDING AGREEMENT

BETWEEN THE

MENOMINEE INDIAN TRIBE OF WISCONSIN

AND THE

DEPARTMENT OF HEALTH AND HUMAN SERVICES
INDIAN HEALTH SERVICE

JANUARY 1, 2004 – DECEMBER 31, 2004

CONTENTS

SECTION

1.  PURPOSE

2.  LIST OF PROGRAMS, FUNCTIONS, SERVICES AND ACTIVITIES TO BE
    PERFORMED

3.  FUNDS TO BE PROVIDED

4.  TIME AND METHOD OF PAYMENT

5.  BRIEF DESCRIPTION OF PFSA

6.  OTHER PROVISIONS TO WHICH PARTIES AGREE


ATTACHMENT A - INFORMATIONAL BUDGET
                Area Detail Sheet
                Table #4, Headquarters Tribal Shares

ATTACHMENT B - 2004 INDICATORS

ATTACHMENT C - SUPPORT PACKAGE SELECTION

DEFS.' EX. J 003

| MENOMINEE INDIAN TRIBE OF WISCONSIN | FY'04 AFA |
|---|---|

## SECTION 1 – PURPOSE

This Annual Funding Agreement (AFA) is entered into by the Menominee Indian Tribe of Wisconsin (referred to in this agreement as Contractor) and the United States Department of Health and Human Services, Indian Health Service (referred to in this agreement as IHS) in accordance with (25 USC § 450l) and pursuant to the Self-Determination Model Agreement No. 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 dated January 1, 2002 (Model Agreement) under the provision of Title I of P.L. 93-638, as amended.

## SECTION 2 – LIST OF PROGRAMS, FUNCTIONS, SERVICES AND ACTIVITIES TO BE PERFORMED

The Contractor shall continue to administer and operate the Menominee Tribal Health Services Program on the Menominee Indian Reservation utilizing the tribal health facility at Keshena, Wisconsin. The Menominee Health Center is fully accredited by the Joint Commission of Accreditation of Healthcare Organizations (JCAHO). The purpose of this comprehensive health services program is to provide high quality ambulatory medical, dental, community health services, and the administration thereof for eligible individuals residing within the target area. The Contractor may also provide emergency services to non-beneficiaries on a fee-for-services basis as authorized by 25 U.S.C. § 1680c(c) and 42 C.F.R. § 136.14.

The Contractor agrees to provide the programs, functions, services and activities (PFSA) as consolidated under the general budget categories listed below in accordance with the Program Standards listed in the Model Agreement.

A.    **Administrative Services**
1.    Administration
2.    Medical Records
3.    Billing
4.    CHS
5.    Housekeeping/Maintenance

B.    **Ambulatory Services**
1.    Medical Services, including
    a.    Physicians
    b.    Nurse Practitioner (NP)
    c.    Pharmacy Services
    d.    Laboratory Services
    e.    Ambulatory Care – Nursing
    f.    Medical and Technical Relief Coverage including:
       Medical Director, Radiology Technicians, Hospital Coverage-Physician, Nutritionist, Psychotherapists, Cardiologist, Physical Therapist, Pedodonist.
2.    Dental Services (Direct and Contract Health)
3.    Audiology

3

DEFS.' EX. J 004

| MENOMINEE INDIAN TRIBE OF WISCONSIN | FY'04 AFA |
|---|---|

    4.    Clinic/Program Administration
    5.    Contract Health Services (CHS), including Inpatient, Outpatient, and Optical
    6.    Patient Transportation Services
    7.    Emergency Medical Services

**C.**    **Preventive Health Services**
    1.    Dental Prevention Services
    2.    Environmental Health and Sanitarian Services
    3.    Public Health Nursing Services (CHN's)
    4.    Nutrition Services
    5.    Mental Health
    6.    Wellness Program
    7.    Health Promotion/Disease Prevention
    8.    AIDS Prevention and AIDS Health Education
    9.    Family Planning Services
    10.    Breast/Cervical Cancer
    11.    Rural Infant Health
    12.    Diabetes Program

## SECTION 3 – FUNDS TO BE PROVIDED

The funding amounts available to the Contractor for the period of this AFA:

| | | | | | | |
|---|---|---|---|---|---|---|
| H/C | 7540390 | J461151 | 4-39146.61 | 41.8B | 55.75 | $4,102,424 |
| DEN | 7540390 | J461164 | 4-39146.62 | 41.8B | 55.75 | 99,870 |
| MH | 7540390 | J461169 | 4-39146.63 | 41.8B | 55.75 | 16,110 |
| HE | 7540390 | J461162 | 4-39246.73 | 41.8B | 55.75 | 2,360 |
| PHN | 7540390 | J461171 | 4-39246.72 | 41.8B | 55.75 | 16,540 |
| CHR | 7540390 | J461174 | 4-39246.74 | 41.8B | 55.75 | 880 |
| CHS | 754/50390 | J46ZI75 | 4-64046.66 | 41.8B | 55.75 | 1,610,300 |
| CSC DIR | 7540390 | J461170 | 4-39846.61 | 41.8A | 55.75 | 158,555 |
| CSC IDC | 7540390 | J461170 | 4-39846.62 | 41.8E | 55.75 | 413,819 |
| IPP | 75X0391 | J461168 | 4-29246.77 | 41.8B | 55.75 | 1,000 |
| M&I | 75X0391 | J461167 | 4-29040.76 | 41.8B | 55.75 | 92,600 |
| OEH Eq. | 75X0391 | J461172 | 4-29646.71 | 41.8B | 55.75 | 61,240 |
| | | | Total FY'04 | | | $6,575,698 |

FY'04 Headquarters Tribal Shares @100% of unencumbered

| | | | | | | |
|---|---|---|---|---|---|---|
| H/C | 7540390 | J461151 | 4-39146.61 | 41.8B | 55.75 | $ 81,572 |
| DEN | 7540390 | J461164 | 4-39146.62 | 41.8B | 55.75 | 4,771 |
| MH | 7540390 | J461169 | 4-39146.63 | 41.8B | 55.75 | 8,288 |
| CHS | 754/50390 | J46ZI75 | 4-64046.66 | 41.8B | 55.75 | 5,457 |
| PHN | 7540390 | J461171 | 4-39246.72 | 41.8B | 55.75 | 3,419 |
| HE | 7540390 | J461162 | 4-39246.73 | 41.8B | 55.75 | 4,257 |
| CHR | 7540390 | J461174 | 4-39246.74 | 41.8B | 55.75 | 9,079 |

4

| MENOMINEE INDIAN TRIBE OF WISCONSIN | | | | | | FY'04 AFA |
|---|---|---|---|---|---|---|
| DIR Ops | 7540390 | J461173 | 4-39646.80 | 41.8B | 55.75 | 50,089 |
| | | | Total | | | $ 166,932 |

FY'04 Bemidji Area Tribal Shares @ 100% of unencumbered

| H/C | 7540390 | J461151 | 4-39146.61 | 41.8B | 55.75 | $ 100,316 |
|---|---|---|---|---|---|---|
| DEN | 7540390 | J461164 | 4-39146.62 | 41.8B | 55.75 | 65,000 |
| | | | | | | $ 165,316 |

FY'04 Aberdeen Area Tribal Shares

| H/C | 7540390 | J461151 | 4-39146.61 | 41.8B | 55.75 | $ 25,170 |
|---|---|---|---|---|---|---|
| | | | Total | | | $6,933,116 |

## SECTION 4 – TIME AND METHOD OF PAYMENT

The time and method of payment of funds to the Contractor for the operation and administration of the PFSA identified under this AFA shall be as follows:

As requested by the Contractor and authorized by section (a)(6)(B) of the Model Agreement, for all programs of a recurring nature for which amounts have been determined prior to the beginning of the AFA year, the IHS shall provide a single lump sum payment. The Aberdeen Area of IHS, Division of Financial Resources, shall issue payment under the contract within forty-five (45) calendar days after apportionment from the Office of Management and Budget or as expeditiously as practicable.

## SECTION 5 – BRIEF DESCRIPTION OF PFSA'S TO BE PROVIDED

The Contractor shall operate the following PFSA:

1.    **Administrative Services**

   a.   Administration – Contractor and its delegate Health Committee is responsible for overall operation of the tribal comprehensive health program, which is under the administrative supervision of the Tribal Health Administrator and medical direction by the Medical Director. Responsibilities include planning and developing organization objectives, designing operational plans and establishing policy, allocating resources, organizing work processes, staffing, retaining human resources, directing, controlling, and monitoring organizational activities.

   b.   Medical Records – Contractor maintains all outpatient health care records in Problem Oriented Medical Record (POMR) format, transcribes progress notes, handles record transfers to and from the Menominee Tribal Clinic, provides coding and pricing for all route slips, ensures patient records are maintained in a standardized format according to policy, and processes, monitors, and submits ambulatory patient care data to the I.H.S. The Contractor also ensures proper registration of all patients utilizing services at the clinic.

5

DEFS.' EX. J 006

c.   Billing – The Contractor maintains patient account information, such as demographic and insurance coverage, through patient registration, processes all service charges and reimbursement for care, tracks third party billings, provides management data for cash flow projections, utilizes and maintains a computer system for processing all billing components, maintains computer security, and provides periodic software upgrades.

d.   Contract Health Services – The Contractor operates a CHS program for all eligible individuals residing within the Menominee Tribal Clinic's service delivery area. This includes procurement of health services not available at the clinic. Clinic physicians make referrals to designated preferred health care providers. A CHS policy and procedures manual defines department operations.

e.   Maintenance and Housekeeping – The Contractor's maintenance and housekeeping department is responsible for the repair, maintenance and cleaning of the entire health care facility.

2.   **Direct Medical Care**

a.   Medical Services – The Contractor's direct patient care consists of physicians and mid-level practitioners including a physician assistant, nurse practitioners, and nurses. A medical director oversees patient care at the outpatient clinic. The Contractor's ambulatory nursing component consists of state-licensed registered nurses (RNs) and licensed practical nurses (LPN's). Department operations are governed by the medical department's policy and procedures manual.

b.   Laboratory Services – Two medical technologists and a laboratory aide provide laboratory services under the direct supervision of staff physicians. The laboratory performs a variety of diagnostic tests, including routine chemistry, urinalysis, hematology, bacteriology, coagulation, endocrinology, and immunology. Outside reference laboratories are utilized for specialized testing. An approved laboratory policy and procedures manual plan governs the laboratory's operation.

c.   Radiology Services – An X-ray technologist provides routine diagnostic x-rays of the musculoskeleton as ordered by the staff physician. Established protocols are defined in the radiology department's policy and procedures manual.

d.   Pharmacy – Four pharmacists and three pharmacy technicians staff the pharmacy department. The department is responsible for the rational use of pharmaceutical products within community health and patient care management plans; the correct dispensing, use and administration of

6

| MENOMINEE INDIAN TRIBE OF WISCONSIN | FY'04 AFA |
|---|---|

pharmaceutical products by patients; clinical staff consultation and monitoring; and off-site pharmacy services monitoring. The pharmacy is also responsible for obtaining pharmaceutical drugs from appropriate sources according to standard procedures. Dispensing, counseling and related services shall be provided on receipt of an authorized prescription form approved by the health center or an off-site subcontracted medical and dental provider. Department operations are defined in a pharmacy policy and procedures manual.

e.  Women's Personal Health – Two registered nurses and an outreach worker staff the Women's Personal Health Program Services offered include; pregnancy testing; reproductive health; birth control counseling; follow up on sexually transmitted disease and abnormal pap smears; prenatal education; childbirth preparation classes; and post-partum/postnatal services to women of all ages. The WPH program is a direct service program under this AFA with funding support from contract income. Program direction and supervision is provided by the health administrator and designated staff.

f.  Emergency Medical Services – The emergency medical services (EMS) department provides twenty-four (24) hour emergency medical services to the reservation/county. State licensed emergency medical technicians (EMTs) staff the department. Levels of care are provided at the EMT Basic, EMT defibrillation and EMT advanced airway levels. An EMS policies and procedures manual governs the operation. The EMS program is a direct service program under this AFA with funding support from contract income. Program direction and supervision is provided by the health director and designated staff.

3.  **Dental**

Four dentists, a dental hygienist, five dental assistants and a dental receptionist staff the dental department. Program services encompass the total practice of general dentistry. A full-time dental hygienist and two part-time dental hygienists provide dental hygiene services including education and preventative planning activities. A dental policy and procedures manual defines the scope of services.

4.  **Community Health**

a.  Environmental Health – An environmental health specialist (sanitarian) is employed to plan, organize, and direct a comprehensive program to identify and address environmental conditions that may affect the health of the Menominee Indian Reservation residents. Areas under the sanitarian's supervision include: community injury control, water quality, waste management, food, celebrations, institutional environmental health, vector control, recreational, sanitation, epidemiological investigations,

7

DEFS.' EX. J 008

emergency situations, promotion of tribal codes and ordinances, industrial hygiene, operation and maintenance activities, general administrative activities, annual environmental planning, construction, radon testing and mitigation.

b.    Community Health Nursing Services – A community health nursing program provides services in coordination with the staff physicians. The community health nurse incorporates into practice knowledge of clinical nursing, community and social organization, ecological, biological, psychological, and social services. The primary focus of community health nursing is the prevention of illness, the promotion and maintenance of health and the provision of needed therapeutic services. A policy and procedures manual defines department operations.

c.    Mental Health – The Mental Health department is responsible for providing outpatient mental health services. Individual, family and group therapy is available for family difficulties, marital problems, separation and divorce, parent-child difficulties, depression, anxiety, suicidal thoughts or actions, and school behavior problems. Two masters-level psychologists and one PHD Clinical psychologist staff the department. A department policy and procedures manual governs program operations.

d.    Optical – One Commissioned Officer and one contracted optometrist licensed by the Wisconsin State Optometry Board of Examiners staff the Optical department. The following services are provided: eye examinations, eyeglasses and contact lenses. A department policy and procedures manual defines program operations.

e.    Nutrition – Two registered dietitians provide nutrition education and counseling services for the Menominee community.

f.    Audiology – An audiology consultant is contracted to provide a full range of audiology screening, testing and referral services for the Menominee community.

g.    Wellness Program – A registered nurse and a health fitness instructor direct the wellness program. The program aims to reduce the high prevalence of cardiovascular disease afflicting the Menominee people. Prevention activities will be continued and a new wellness program will be developed to reduce the risk of cardiovascular disease in people of all ages (children, youth and adults) and will take place in multiple settings (schools, work sites, and community).

h.    Health Promotion/Disease Prevention – The program focus includes health promotion, health protection and preventive health. An HP/DP

8

| MENOMINEE INDIAN TRIBE OF WISCONSIN | FY'04 AFA |

committee coordinates community health initiative efforts. This includes men's and women's health fairs and walk/run competitions.

i.      AIDS Prevention & AIDS Health Education – The program provides comprehensive HIV/AIDS related services to the residents of Menominee Reservation/County. The focus is to prevent the spread of HIV infection through education and awareness efforts.

j.      Family Planning Services are referenced under the Women's Health program description.

k.      Breast/Cervical Cancer – This program provides screening for mammography and pelvic exams. Community outreach is provided through various media.

l.      Rural Infant Health – The program identifies and provides outreach for high risk and at risk infants from birth to age 3. The program provides transportation to medical appointments and assists with child immunizations. The program will improve and refine a system for comprehensive well child/health check outreach and screening. The program will provide and assure comprehensive primary and preventative health care to infants and young children, including comprehensive assessments, anticipatory guidance, referrals and follow-up.

m.      Diabetes Program – A diabetes educator will work with community health nurses to reach diabetic patients in the community and will provide consistent follow-up. The diabetes educator will be involved with screening and educational efforts conducted at work sites, schools and community functions. A diabetic patient management database will be refined to create easy assess to patient status, appointment information and audit material. The program will work to identify high-risk patients that frequently miss appointments and target them for intensive educational efforts.

## SECTION 6 – OTHER PROVISIONS TO WHICH PARTIES AGREE

1.      **Reporting Requirements**

A.      For each fiscal year in which the Contractor receives or expends funds pursuant to P.L. 93-638, the Contractor shall submit to the Secretary a single agency audit report required by Chapter 75 of Title 31, United States Code.

B.      The Contractor shall make an annual report to the Indian people in fulfillment requirement set forth in 25 U.S.C. § 450c(c) for reports and information to Indian people. This annual report will include the PFSA

9

DEFS.' EX. J 010

| MENOMINEE INDIAN TRIBE OF WISCONSIN | FY'04 AFA |
|---|---|

provided and the costs incurred. A copy of this report will also be provided to IHS.

C.  The Contractor shall utilize the Resource and Patient Management System (RPMS) (Automated) to track:
1.  Patient Registration
2.  Patient Care Component (dental)
3.  Patient Care Component (pharmacy)
4.  Contract Health Services
5.  Immunization Report
6.  Community Health Activity Report (PHN)

D.  Environmental Health Reporting System.  The Contractor shall utilize the Environmental Health Reporting System to submit environmental health and epidemiological data to the IHS Area Chief, Environmental Health Service Branch.

2.  **Term of AFA**

The term of this AFA shall be for the period January 1, 2004 through December 31, 2004.

3.  **IHS Headquarters PFSA/Tribal Shares**

For FY'04 the IHS Headquarters PFSA/Tribal Shares are available to the Contractor at 100% of unencumbered programs, functions, services, and activities in the amount of $296,681.  PFSA/Tribal Shares retained by IHS Headquarters for the benefit of the Contractor are as follows:

| | |
|---|---|
| Total Available | $296,681 less retained |
| Line 126 DIR Support | - 73,197 |
| Line 137 Nat. Support-HQW | - 30,012 |
| Line 1301 Direct Ops (16.4%) | - 9,826 |
| Sub-Total | $183,646 |
| ALC funds to Alcohol contract | - 16,714 |
| Total | $166,932 |

4.  **FY'04 Bemidji Area PFSA/Tribal Shares**

For FY'04 the IHS Bemidji Area PFSA/Tribal Shares are available to the Contractor at 100% of unencumbered PFSA in the amount of $245,060.  The calculated Great Lakes ITC Field Office PFSA/Tribal Shares of $37,064 are included in the Great Lakes ITC Agreement for the period ending 9/30/04.  PFSA/Tribal Shares retained by the Bemidji Area for the benefit of the Menominee Indian Tribe as follows:

10

DEFS.' EX. J 011

| MENOMINEE INDIAN TRIBE OF WISCONSIN | FY'04 AFA |
|---|---|

| | |
|---|---|
| Total Available | $245,060 less retained |
| Health Prof. Recruit. | -  2,030 |
| MIS | - 31,500 |
| GLITC | -37,064 |
| Sub-total | $174,466 |
| Behavioral Health funds to ALC | -  9,150 |
| Total | $165,316 |

5.    **FY'04 Aberdeen PFSA/Tribal Shares**

The FY'04 Aberdeen PFSA/Tribal Shares in the amount of $25,170 are hereby added to the agreement to augment health programs.

6.    **Federal Tort Claims Act (25 CFR §900.186(a))**

For purposes of Federal Tort Claims Act coverage, the Contractor and its employees (including individuals performing personal services contracts with the Contractor to provide health care services) are deemed to be employees of the Federal Government while performing work under this AFA. (Refer to Section 102(d) of the ISDA, 25 U.S.C. § 240f(d), and 25 C.F.R. § 900.193). This status is not changed by the source of the funds used by the Contractor to pay the employees' salaries and benefits unless the employees receive additional compensation for performing covered services from anyone other than the Contractor. (Refer to 25 C.F.R § 900.197).

Under this AFA, the Contractor's employees may be required as a condition of employment to provide health services to non-IHS beneficiaries in order to meet contractual obligations. These services may be provided in either Contractor or non-Contractor facilities. The employees' status for Federal Tort Claims purposes is not affected. (Refer to 25 C.F.R. § 900.192(d)).

7.    **Program Income, Including Medicare/Medicaid**

All Medicare, Medicaid or other program income received by the Contractor shall be treated as additional supplemental funding to that negotiated in the AFA and the Contractor may retain all such income, pursuant to Section 106(m) of the Act, 25 U.S.C. § 450j-1(m). Medicare/Medicaid collections of the Contractor under Title IV of Public Law 94-437, as amended, shall be used by the Contractor in accordance with any applicable statutory restrictions on the use of such funds. The Contractor is obligated to seek third party reimbursement as provided by federal law.

DEFS.' EX. J 012

| MENOMINEE INDIAN TRIBE OF WISCONSIN | FY'04 AFA |
|---|---|

8. **Eligibility for Services**

In determining eligibility for services, the Contractor shall comply with applicable eligibility provisions set forth in the Indian Health Care Improvement Act, as amended, other statutory law and applicable regulations.

9. **Contract Support Costs**

The parties acknowledge that, for purposes of this AFA, IHS will calculate and pay CSC in accordance with §106 of the Indian Self-Determination Act and IHS Circular 2001-05, subject to any statutory requirements imposed by Congress.

The Contractor's Contract Support Costs (Indirect) will be calculated at the current approved indirect cost rate.

10. **Funding Amounts Available in Fiscal Year 2004**

The total amount of funding in this agreement is subject to adjustment based on changes in appropriations by congressional action in appropriation acts. The Contractor shall be eligible for new services, service increases, mandatories (i.e., built-in budgetary increase justified on the basis of known or predictable increases in costs because of inflation and related factors), population growth, health services priority system, contract support costs, and other non-recurring resources on the same basis as other tribes. Congressional increases that are distributed at the Area level will be distributed based on the Area Tribal Size Adjustment (TSA) percentage for a tribe calculated using the most recent validated and approved Bemidji Area Patient Count.

11. **AFA Adjustment to User Population for Base Budget Tribes**

For the purpose of having a base budget and in accordance with current IHS guidance, the funding levels heretofore enumerated shall remain constant within the term of this AFA and subject to the foregoing conditions utilizing the latest Area TSA percentage.

12. **Monitoring Visit**

Monitoring visits shall be limited to not more than one visit per year, or as negotiated.

DEFS.' EX. J 013

| MENOMINEE INDIAN TRIBE OF WISCONSIN | FY'04 AFA |
| --- | --- |

Dated this 21st day of ____, 2003

MENOMINEE INDIAN TRIBE OF WISCONSIN

TRIBAL CHAIRMAN

UNITED STATES OF AMERICA, DEPARTMENT OF HEALTH
AND HUMAN SERVICES, INDIAN HEALTH SERVICE

Contracting Officer, Bemidji Area Office

13

DEFS.' EX. J 014

# MENOMINEE TRIBE'S MODEL/ANNUAL FUNDING AGREEMENT MODIFICATION

## No. 04-21

## EFFECTIVE 3/1/04

DEFS.' EX. J 015

## MODEL/ANNUAL FUNDING AGREEMENT MODIFICATION

| 1. AGREEMENT NO. | 2. MODIFICATION NO. | 3. EFFECTIVE | 4. REQUISITION NO. | 5. PAGE OF PAGES | |
|---|---|---|---|---|---|
| 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 | 04-21 | 3/1/04 | | 1 | 2 |

| 5. ISSUED BY | 6. CONTRACTOR NAME AND ADDRESS | 7. PAYMENT MADE BY |
|---|---|---|
| Indian Health Services<br>Bemidji Area Office<br>522 Minnesota Ave., 211 Fed. Bldg.<br>Bemidji, Minnesota  56601 | Menominee Tribe of Wisconsin<br>P.O. Box 910<br>Keshena, Wisconsin   54135 | Indian Health Service<br>Aberdeen Area Finance<br>115 Fourth Avenue<br>Aberdeen, S. Dak. 57401 |

8. AUTHORITY  USC 450(g) P.L. 93-638, AS AMENDED

9. Contractor ( ) is not ( X ) is required to sign this document and return ____ copies to the issuing office

10. DESCRIPTION OF MODIFICATION

A.  Annual Funding Agreement No: 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 is hereby modified to increase the funding amount by $1,259.
This increase reflects the following:

CHS **recurring** increase per '04  distribution sheet dated 2/13/04.        19,000
DCSC decrease as requested by tribe, letter dated 2/11/04        (8,638) transfer to Alcohol contract
Indirect CSC decrease per '04 CSC w/.59% recission        (9,103)
    distribution sheet dated 2/17/04.

B.  The funding amounts available to the Contractor for the period of this annual funding agreement are as follows:

| 1/1/04 - 12/31/04 | | | | | | Estimated '04 Amount | |
|---|---|---|---|---|---|---|---|
| H/C | 7540390 | J461151 | 4-39146.61 | 41.8B | 55.75 | 4,102,424 | |
| DEN | 7540390 | J461164 | 4-39146.62 | 41.8B | 55.75 | 99,870 | |
| MH | 7540390 | J461169 | 4-39146.63 | 41.8B | 55.75 | 16,110 | |
| HE | 7540390 | J461162 | 4-39246.73 | 41.8B | 55.75 | 2,360 | |
| PHN | 7540390 | J461171 | 4-39246.72 | 41.8B | 55.75 | 16,540 | |
| CHS | 754/50390 | J46ZI75 | 4-64046.66 | 41.8B | 55.75 | 1,629,300 | (+19,000) |
| CSC/DIR | 7540390 | J461170 | 4-39846.61 | 41.8A | 55.75 | 149,917 | (-8,638) |
| CSC/IDC | 7540390 | J461170 | 4-39846.61 | 41.8E | 55.75 | 404,716 | (-9,103) |
| IPP | 75X0391 | J461168 | 4-29246.77 | 41.8B | 55.75 | 1,000 | |
| M&I | 75X0391 | J461167 | 4-29040.76 | 41.8B | 55.75 | 92,600 | |
| OEH Equipment | 75X0391 | J461172 | 4-29646.71 | 41.8B | 55.75 | 58,273 | |

Total Base            6,573,990  (+1,259)

RECEIVED
INDIAN HEALTH SERVICE
'04 MAR -1  PM 12: 37
BEMIDJI AREA OFFICE
CONTRACTING

| 11. NAME AND TITLE OF SIGNER (Typed or Printed) | 12. NAME OF CONTRACTING OFFICER (Typed or Printed) |
|---|---|
| Joan R. Delabreau, Chairperson | Dennis Murphy, Contracting Officer |

| 11a. CONTRACTOR SIGNATURE AND DATE | 12a. CONTRACTING OFFICER SIGNATURE AND DATE |
|---|---|
| Joan R. Delabreau  2/24/03 | 3/1/04 |

Funding Certification      Budget      SAK        dtd .2.20.04                Menomin        Mod 04 -21

DEFS.' EX. J 016

## MODEL/ANNUAL FUNDING AGREEMENT MODIFICATION

| 1. AGREEMENT NO. | 2. MODIFICATION NO. | | 4. REQUISITION NO. | PAGE OF PAGES | |
|---|---|---|---|---|---|
| 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 | 04-21 | | | 2 | 2 |

FY'04 Area Tribal Shares @100%

| | | | | | |
|---|---|---|---|---|---|
| H/C | 7540390 | J461151 | 4-39146.61 | 55.75  41.8B | 100,316 |
| DEN | 7540390 | J461164 | 4-39146.62 | 55.75  41.8B | 65,000 |
| | | | | Total | 165,316 |

FY'04 Headquarters Tribal Shares @ 100%

| | | | | | |
|---|---|---|---|---|---|
| H/C | 7540390 | J461151 | 4-39146.61 | 55.75  41.8B | 81,572 |
| DEN | 7540390 | J461164 | 4-39146.62 | 55.75  41.8B | 4,771 |
| MH | 7540390 | J461169 | 4-39146.63 | 55.75  41.8B | 8,288 |
| CHS | 754/50390 | J46ZI75 | 4-64046.66 | 55.75  41.8B | 5,457 |
| PHN | 7540390 | J461171 | 4-39246.72 | 55.75  41.8B | 3,419 |
| HE | 7540390 | J461162 | 4-39246.73 | 55.75  41.8B | 4,257 |
| CHR | 7540390 | J461174 | 4-39246.74 | 55.75  41.8B | 9,079 |
| Dir Ops | 7540390 | J461173 | 4-39646.80 | 55.75  41.8B | 50,089 |
| | | | | Total | 166,932 |

FY'04 Aberdeen Area Tribal Shares

| | | | | | |
|---|---|---|---|---|---|
| H/C | 7540390 | J461151 | 4-39146.61 | 55.75  41.8B | 25,170 |

Total Contract    $    6,931,408  (+1,259)

C.   The FY'04 funding amount is hereby decreased by $1,259 from $6,930,149 from $6,931,408 by reason
     of this modification.

D.   Delete '04 Attachment A, Informational Budget, and insert the attached Attachment A
     in lieu thereof.

E.   The FY'04 funding period remains unchanged as a result of this modification.

F.   There are no other changes by reaosn of this modification.

DEFS.' EX. J 017



# MENOMINEE TRIBE'S MODEL/ANNUAL FUNDING AGREEMENT MODIFICATION

## No. 04-25

## EFFECTIVE 8/20/04

DEFS.' EX. J 018

## MODEL/ANNUAL FUNDING AGREEMENT MODIFICATION

| 1. AGREEMENT NO. | 2. MODIFICATION NO. | 3. EFFECTIVE | 4. REQUISITION NO. | PAGE OF PAGES | |
|---|---|---|---|---|---|
| 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 | 04-25 | 08/20/04 | | 1 | 2 |

| 5. ISSUED BY | 6. CONTRACTOR NAME AND ADDRESS | 7. PAYMENT MADE BY |
|---|---|---|
| Indian Health Services<br>Bemidji Area Office<br>522 Minnesota Ave., 211 Fed. Bldg.<br>Bemidji, Minnesota  56601 | Menominee Tribe of Wisconsin<br>P.O. Box 910<br>Keshena, Wisconsin   54135 | Indian Health Service<br>Aberdeen Area Finance<br>115 Fourth Avenue<br>Aberdeen, S. Dak. 57401 |

8. AUTHORITY USC 450 (f) PL 93-638 AS AMENDED

9. Contractor (X) is not ( ) is required to sign this document and return one ( ) copies to the issuing office

10. DESCRIPTION OF MODIFICATION

A.  Annual Funding Agreement No: 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 is hereby modified to increase the funding amount by $966. This modification provides a **non-recurring** interest payment in the amount of $966 due to the Area Contract Support Cost funds being awarded after the 45 day payment requirement stated in the AFA - Section 4, "Time and Method of Payment", clause.

B.  The funding amounts available to the Contractor for the period of this annual funding agreement are as follows:

| 1/1/04 - 12/31/04 | | | | | Estimated '04 Amount | |
|---|---|---|---|---|---|---|
| H/C | 7540390 | J461151 | 4-39146.61 | 41.8B 55.75 | 4,145,150 | |
| DEN | 7540390 | J461164 | 4-39146.62 | 41.8B 55.75 | 100,600 | |
| MH | 7540390 | J461169 | 4-39146.63 | 41.8B 55.75 | 16,280 | |
| HE | 7540390 | J461162 | 4-39246.73 | 41.8B 55.75 | 2,390 | |
| PHN | 7540390 | J461171 | 4-39246.72 | 41.8B 55.75 | 16,570 | |
| CHR | 7540390 | J461174 | 4-39246.74 | 41.8B 55.75 | 980 | |
| CHS | 754/50390 | J46ZI75 | 4-64046.66 | 41.8B 55.75 | 1,629,300 | |
| CSC/DIR | 7540390 | J461170 | 4-39846.61 | 41.8A 55.75 | 149,917 | |
| CSC/IDC | 7540390 | J461170 | 4-39846.61 | 41.8E 55.75 | 405,682 | (+966) |
| IPP | 75X0391 | J461168 | 4-29246.77 | 41.8B 55.75 | 1,000 | |
| M&I | 75X0391 | J461167 | 4-29040.76 | 41.8B 55.75 | 92,600 | |
| OEH Equipment | 75X0391 | J461172 | 4-29646.71 | 41.8B 55.75 | 58,273 | |
| CHEF | 75X0390 | J465175 | 4-41146.51 | 41.8B 55.75 | 160,434 | |

Total Base        6,779,176  (+966)

| 11. NAME AND TITLE OF SIGNER (Type or Printed) | 12. NAME OF CONTRACTING OFFICER (Type or Printed) |
|---|---|
| | Merri Barrett, Contracting Officer |
| 13. CONTRACTOR SIGNATURE AND DATE | 12A. CONTRACTING OFFICER SIGNATURE AND DATE |
| | *Merri Barrett*    08/20/04 |

Funding Certification        Budget:        SAK        dtd.  8.20.04        Menomin        Mod 04 -25

DEFS.' EX. J 019

## MODEL/ANNUAL FUNDING AGREEMENT MODIFICATION

| 1. AGREEMENT NO. | 2. MODIFICATION NO. | | 4. REQUISITION NO. | | PAGE OF PAGES | |
|---|---|---|---|---|---|---|
| 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 | 04-25 | | | | 2 | 2 |

FY'04 Area Tribal Shares @100%

| | | | | | |
|---|---|---|---|---|---|
| H/C | 7540390 | J461151 | 4-39146.61 | 55.75 41.8B | 100,316 |
| DEN | 7540390 | J461164 | 4-39146.62 | 55.75 41.8B | 65,000 |
| | | | | Total | 165,316 |

FY'04 Headquarters Tribal Shares @ 100%

| | | | | | |
|---|---|---|---|---|---|
| H/C | 7540390 | J461151 | 4-39146.61 | 55.75 41.8B | 81,741 |
| DEN | 7540390 | J461164 | 4-39146.62 | 55.75 41.8B | 4,785 |
| MH | 7540390 | J461169 | 4-39146.63 | 55.75 41.8B | 8,312 |
| CHS | 754/50390 | J46ZI75 | 4-64046.66 | 55.75 41.8B | 5,670 |
| PHN | 7540390 | J461171 | 4-39246.72 | 55.75 41.8B | 3,419 |
| HE | 7540390 | J461162 | 4-39246.73 | 55.75 41.8B | 4,257 |
| CHR | 7540390 | J461174 | 4-39246.74 | 55.75 41.8B | 9,079 |
| Dir Ops | 7540390 | J461173 | 4-39646.80 | 55.75 41.8B | 50,329 |
| | | | | Total | 167,592 |

FY'04 Aberdeen Area Tribal Shares

| | | | | | |
|---|---|---|---|---|---|
| H/C | 7540390 | J461151 | 4-39146.61 | 55.75 41.8B | 25,170 |

Total Contract    $    7,137,254  (+966)

C.    The FY'04 funding amount is hereby increased by $966 from $7,136,288 to $7,137,254 by reason of this modification.

D.    The FY '04 funding period remains unchanged as a result of this modification.

E.    There are no other changes by reason of this modification.

DEFS.' EX. J 020

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____

MENOMINEE INDIAN TRIBE          )
OF WISCONSIN,                   )
                                )
                    Plaintiff,  )
                                )
             v.                 )      Case Number: 1:07cv00812
                                )
UNITED STATES OF AMERICA,       )      Hon. Reggie B. Walton
MICHAEL O. LEAVITT, Secretary   )
of the Department of Health and )
Human Services, and CHARLES W.  )
GRIM, Director of the Indian Health )
Service                         )
                                )
                    Defendants. )
_____ )


    Upon consideration of Defendants' Motion to Dismiss, it is hereby

    ORDERED, that Defendants' Motion is GRANTED; and it is further

    ORDERED, that the complaint is dismissed with prejudice and judgment is entered in

favor of Defendants.


Dated: _____                    _____
                                         Reggie B. Walton
                                         United States District Judge